# Exhibit C

Maxwell Agreement

# AT-WILL EMPLOYMENT AGREEMENT FOR PRESS SECRETARY

This Employment Agreement (the "Agreement") effective as of November 1, 2021 is hereby entered into by and between **RC Maxwell** ("Employee"), with an address of **1438 E. Polk Street, Phoenix, AZ** and PROJECT VERITAS ("Project Veritas"), with an address of 1214 West Boston Post Road No 148, Mamaroneck, NY 10543.  In exchange for good and valuable consideration, receipt and sufficiency of which is hereby acknowledged, Employee and Project Veritas agree as follows:

**1.     RESPONSIBILITIES.**  Project Veritas hereby engages Employee's services as a **Press Secretary** in connection with the production of investigative news stories ("News Stories"). Employee shall comply with all instructions, directions, requests, rules and requirements of Project Veritas in connection with such services, regardless of whether or not such instructions, directions, requests, rules or regulations involve matters of artistic taste or judgment.  Project Veritas shall have the complete, final and unfettered control and approval of all business, financial and creative aspects of, and decisions with respect to, the News Stories.  The services to be rendered by Employee shall include all services usually and customarily rendered by and required of persons employed in this capacity, and such other services as may be required of Employee by Project Veritas from time to time.  Employee hereby accepts such employment upon all the terms and conditions herein contained and agrees to keep and perform all of Employee's obligations and agreements hereunder.

**2.     PERFORMANCE STANDARDS.**  Employee shall devote Employee's full working time and attention and best efforts to the performance of Employee's obligations hereunder. Employee's services shall be rendered, either alone or in collaboration with others designated by Project Veritas, as, when and wherever required by Project Veritas in such manner as Project Veritas may direct, under the instructions and in strict accordance with the controls and schedules established by Project Veritas and at the times, places and in the manner required by Project Veritas.  Employee will promptly comply with all instructions, directions, requests, rules and regulations, including matters relating to artistic and/or creative taste and judgment, made or issued by Project Veritas or its designees.  Such services shall be rendered in an artistic, conscientious, efficient and punctual manner to the best of Employee's ability and with full regard to the careful, efficient, economical and expeditious production of the News Stories within the budget and shooting schedule established by Project Veritas.

**3.     EMPLOYMENT ELIGIBILITY.**  To permit Project Veritas to comply with applicable law concerning the engagement of persons and/or entities as employees, Employee will provide to Project Veritas, at the time of submission of this executed Agreement the following forms of proof of authorization to work in the United States:

    1.      A completed federal Form I-9 with copies of two (2) acceptable forms of identification, per the instructions accompanying Form I-9; and

    2.      A completed IRS Form W-4.

Employee's submission of these forms is a prerequisite to Employee's employment by Project Veritas and all of Project Veritas's obligations under this Agreement are expressly conditioned

upon Employee's completion and submission of the above documentation to Project Veritas, in a form acceptable to Project Veritas.

**4.     COMPENSATION.**  On condition that Employee keeps and performs each and all of Employee's obligations and agreements hereunder, for so long as Employee is employed by Project Veritas, Project Veritas agrees to pay Employee and Employee agrees to accept as full compensation for all services and obligations agreed to herein, and for all rights granted hereunder, an annual salary of **One Hundred Thousand dollars** ($**100,000.00**) per year to be paid in accordance with Project Veritas's payroll policies and procedures as in effect from time to time.  Employee agrees that as Employee's employer, Project Veritas may deduct and withhold from all compensation payable to Employee hereunder all amounts required to be deducted or withheld pursuant to any law, statute, ordinance, order, judgment or decree now or hereafter in effect.  Employee will be classified as Exempt for purposes of the Fair Labor Standards Act and comparable state laws.  Nothing herein creates, nor shall it be construed to create any specific period of employment or to entitle Employee to employment for any specific period of time.

**5.     AT-WILL EMPLOYMENT.**  Notwithstanding anything contained herein to the contrary, Employee shall be an at-will employee in all respects, meaning that Project Veritas or Employee may terminate Employee's employment at any time, for any reason, or for no reason.  The term of employment hereunder shall commence on or about **November 1, 2021** as Project Veritas may elect, in Project Veritas's sole discretion, and shall continue thereafter until terminated by Employee or Project Veritas.  Upon separation from employment, Employee agrees to participate in a thirty minute exit interview with a Project Veritas representative.  Employee further agrees that Employee will be available to render services for video or audio retakes after termination, if so requested by Project Veritas.  Employee will be paid for any retakes on a pro-rated hourly basis based on Employee's salary at the time of termination.

**6.     CO-EMPLOYMENT ARRANGEMENT WITH ENGAGE PEO.**  Employee acknowledges and agrees that Project Veritas has established a co-employment arrangement with S2 HR Solutions 1A, LLC, known as Engage PEO ("Engage"), through which Engage provides certain payroll, human resource, tax, administrative and benefit-related services to Project Veritas and its employees, including making payroll payments directly to employees on behalf of Project Veritas.  Employee agrees to provide cooperation to Engage when required to allow Engage to provide such services.  However, unless specifically informed and/or instructed to the contrary by Project Veritas, Employee's duty to perform Employee's obligations under this Agreement shall be to Project Veritas, and Project Veritas shall have the right to direct, control, receive and retain all benefits of Employee's work.

**7.     TRAVEL AND EXPENSE REIMBURSEMENT.**  In accordance with Project Veritas's policies in effect from time to time (as set forth in Project Veritas's Employee Handbook), Project Veritas will pay or reimburse certain expenses, including expenses relating to work-related travel.

**8.     PAID TIME OFF.**  In accordance with Project Veritas's policies in effect from time to time (as set forth in Project Veritas's Employee Handbook), provided Employee consistently works thirty (30) or more hours a week, unlimited paid time off will be available to full time

employees. Time off prior to 30 days, would be taken as unpaid. No PTO will accrue after May 31, 2020. PTO can be taken for any purpose to include sick time, vacation, floating holidays, or any other reason. When using PTO for an unexpected sick day, Employees must contact their manager as soon as possible but not later than thirty (30) minutes prior to the start of their work to inform management that they will not be in unless there are extreme or extenuating circumstances. It is expected that, when sick time is taken, the remaining staff will be informed of any important deadlines that may be impacted so that they may cover the work. In all other cases, Employees must request PTO at least two (2) weeks in advance unless otherwise required by law. PTO requests will be approved by the HR Director and COO for HQS Staff; Field Staff PTO requests will be approved by the National Field Director. No more than two consecutive weeks of PTO can be taken at once without approval of the CEO. Generally, the Company will approve more than two (2) consecutive weeks off at a time only for special circumstances on a case by case basis.

Included within the Company's unlimited PTO policy are paid sick days. Requests to use sick days should follow the procedure stated above. Since these days are included within this policy, they do not roll over or accrue. Please note that, even with the Chicago and California sick leave laws, if a company has an unlimited PTO policy, they do not have to enact a separate paid sick leave Rev. Feb. 2020 26 policy. Thus, sick leave is also unlimited, and the Company does not have a separate sick leave policy.

PTO has no cash value and has no value in case of termination or resignation unless otherwise required by law. Since PTO does not accrue, the Company will not pay out any unused vacation time upon termination except for the currently accrued amount as of May 30, 2020, for existing employees per the policy that existed prior to May 31, 2020, and that is replaced with the policy in this document.

PTO will be granted at managerial discretion, and management may consider factors including but not limited to, requests previously approved, workloads, amount of time recently spent travelling and seniority. During the week leading up to OR immediately after a complete office closure, a limited number of people per department will receive approved vacation; this is critical around the holidays to ensure all business operations can continue to function to the satisfaction of management, who maintain sole discretion to determine and define business operations. The Company expects all employees to maintain the high caliber of performance expected of all employees and that work is being managed and completed around PTO in a timely and professional manner. Therefore, if performance declines because of use or abuse of the PTO policy, the Company reserves the right to review an Employee's use of PTO and take disciplinary action if necessary, up to and including termination of employment.

Unlimited PTO may not be used to extend other forms of leave such as FMLA, Parental, Short- or Long-Term Disability, leaves required by state or local law, or other extended leave situations. Employees should review the Leave of Absence Policy below for more information.

The rate of pay for PTO is based on the employee's regular rate of pay and does not include any special compensation including bonuses and commissions.

While out of the office:

Employees should work with their manager to ensure there is a coverage plan while on PTO in order for Employees to enjoy their time off without disruption from work.

1. Employees should setup an out of office response on email providing contact information for their backup, as well as their voicemail greeting.

2. Employees must prepare a plan of coverage for work prior to any foreseeable absence. This plan should be prepared at least three business days prior to the start of PTO and be reviewed in a meeting with all appropriate persons providing coverage, where necessary.
Employees should refer to their state specific addendum for further information.
Management has the sole right to change this policy (which Employee may use for vacation, illness, bereavement, or personal days). Project Veritas's paid time off policy is subject to change at any time. In the event of any inconsistency between the provisions of this Paragraph and Project Veritas's Employee Handbook, the provisions of the Employee Handbook, as amended from time to time, shall control.

**9.  HEALTH INSURANCE.**  In accordance with Project Veritas's policies in effect from time to time (as set forth in Project Veritas's Employee Handbook), Project Veritas provides health insurance to employees who consistently work 30 or more hours a week. Currently, Project Veritas pays 80% of the Employee's health and dental insurance and the Employee pays 20%. Employee may provide health insurance coverage for eligible dependents at Employee's expense. Project Veritas reserves the right to amend or terminate the Health Insurance Policy at its sole discretion. Employee will be eligible for health insurance on the 1st day of the month following the completion of 60 days of working at least 30 hours per week. Project Veritas's health insurance policy is subject to change at any time. In the event of any inconsistency between the provisions of this Paragraph and Project Veritas's Employee Handbook, the provisions of the Employee Handbook, as amended from time to time, shall control.

**10.  NO OBLIGATION TO UTILIZE SERVICES.**  Although Project Veritas shall have the right to utilize Employee's services in and in connection with the News Stories pursuant hereto, and in advertising and promotion thereof, Project Veritas shall have no obligation to do so nor does it make any warranty or representation that it shall do so, or that it will produce, release or distribute any News Story, or that it will continue the release and distribution of any News Story if released, or otherwise exploit any rights granted to Project Veritas hereunder.

**11.  INTELLECTUAL PROPERTY, OWNERSHIP AND FULL AND COMPLETE GRANT OF RIGHT TO PROJECT VERITAS.**  Project Veritas shall be the sole owner of any and all rights in and to the results and proceeds of Employee's services to Project Veritas, and it shall have the sole right to use, exploit, advertise and exhibit the foregoing in any and all media, whether now known or hereafter devised throughout the world, in all languages, as Project Veritas in its sole and unfettered discretion shall determine. Employee agrees that anything created by Employee in connection with the services Employee provides to Project Veritas shall belong exclusively to Project Veritas, and not to Employee, including, but not limited to, any and all video, film, photographs, negatives, video footage, images, renderings, audio video works, audio, recordings, multimedia works, music, reproductions, performances, digital media works, still images and/or other images or footage, documents, papers, writings (both published and unpublished), written work product (including drafts), designs, inventions, patents, trademarks, copyrightable materials, ideas, intellectual property, trade secrets, creative concepts, including all compilations, collections, or other work product created within the scope of or in the course of Employee's employment with Project Veritas and Employee's performance pursuant to this Agreement, and derivatives thereof, and the like ("Work(s)"). Employee further hereby expressly agrees that any and all Work(s) that are created in connection with the services Employee provides to Project Veritas are specially commissioned and are and shall be deemed

Work(s) Made for Hire as that term is understood and enforceable under Copyright law. Employee hereby expressly waives and hereby irrevocably transfers and assigns to Project Veritas all rights in the Work(s), including but not limited to all rights under Section 203 of the Copyright Act together with any "artist's rights" and/or "moral rights" that Employee might otherwise have in the Work(s). To the extent that a question arises about whether Project Veritas owns in its entirety any Work(s) (including whether the Work(s) are Made for Hire), Employee hereby expressly and irrevocably sells, transfers, and assigns to Project Veritas, all right, title, and interest in and to such Work(s) in consideration for the consideration paid to Employee hereunder. Employee further expressly and irrevocably grants to Project Veritas a worldwide, perpetual, exclusive license for the Work(s) from now until the end of time to use, print, reproduce, distribute, perform, rent, loan, edit, modify, publish, display, transfer, sell, assign, create derivative works from and/or based upon, and/or license to others, in any manner, form, or media now known or hereafter invented as Project Veritas so chooses in Project Veritas's sole and complete discretion.

Project Veritas shall also have the right to add to, subtract from, change, arrange, revise, adapt, rearrange, and make variations of any Work(s), and to translate the Work(s) into any and all languages and/or formats, change the sequence, change the characters and the descriptions thereof, change the title of the Work(s), record and photograph the Work(s) with or without sound (including spoken words, dialogue and music synchronously recorded), use the title of any Work(s) or any of their components in connection with works or motion pictures wholly or partially independent thereof, to vend, copy and publish the same as Project Veritas may desire, and to use all or any part thereof in new versions, adaptations and sequels in any and all languages, and to obtain copyright therein throughout the world; and Employee does hereby assign and transfer to Project Veritas all of the foregoing without reservation, condition or limitations and no right of any kind, nature or description is reserved by Employee. All rights granted to Project Veritas hereunder shall vest in Project Veritas immediately and shall remain vested whether this Agreement expires in normal course or is terminated for any cause or reason by either party.

Employee acknowledges and agrees that the Work(s) may, at Project Veritas's sole discretion, be registered for copyright in Project Veritas's name both in the United States and elsewhere and that Employee hereby waives any and all rights to register for copyright any Work(s). All commercial recording rights and the proceeds thereof relating to the Work(s) shall be owned and controlled by Project Veritas, and all merchandising and publishing rights in connection with the Work(s) and any News Stories and the proceeds thereof shall be owned and controlled by Project Veritas.

Employee expressly agrees that the terms of this Paragraph 11 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement. Employee specifically acknowledges and agrees that a breach of the restrictions contained in this Paragraph 11 by Employee either during or after employment will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**12.    CONFIDENTIAL INFORMATION.**  Employee acknowledges and agrees that all information from whatever source which Employee learns or with which Employee otherwise comes into contact as a result of Employee's employment by, or work for Project Veritas, concerning in any manner whatsoever any aspect of Project Veritas, its business, employees, independent contractors or volunteers shall be considered confidential and proprietary information ("Confidential Information").  Confidential Information shall include, but not be limited to, information regarding projects and potential projects, organizational practices, donors and potential donors, management, management philosophy, information concerning Project Veritas's employees, contractors, volunteers, sources, methodologies, the targets, subjects or subject matter of any actual or proposed investigation or News Stories, equipment, techniques, technology, software, designs, concepts, drawings, ideas, inventions, experiments, personnel records, specifications, investigations, techniques, models, data, research, development, processes, procedures, know-how, formulas, patterns, devices, compilations, product and pricing information, marketing plans and materials, discussions, timetables, trade secrets, trade names and applications, trademarks and applications, patents, patent applications, customer names, financial information, and the terms and conditions of this Agreement and the terms and conditions of any business, investigatory or reporting relationship, or any other agreement between Project Veritas and Employee or any other Project Veritas employee, contractor or vendor or any third party.  Confidential Information shall not include information that has become publicly known without Employee's breach of this Agreement.  Employee agrees that all Confidential Information shall be maintained by Employee in the highest confidence and that Employee shall never disclose Confidential Information without the prior written consent of Project Veritas, and Employee acknowledges that Employee's agreement to do so is a prerequisite to Employee's engagement by Project Veritas, and to Project Veritas's obligation to pay the consideration provided for herein.  Employee further agrees that Employee will not engage in any form of investment activity, the purchase or sale of any securities, or any other securities-related transaction or activity utilizing or based upon any Confidential Information obtained by Employee.  Employee expressly agrees that the terms of this Paragraph 12 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement, and that after leaving employment with Project Veritas, in addition to all other obligations hereunder, Employee will not disclose to any person or entity, or seek from any current or former Project Veritas employee, contractor or vendor, any Confidential Information.  Employee specifically acknowledges and agrees that a breach of the restrictions contained in this Paragraph 12 by Employee either during or after employment will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**13.    NO RIGHT OF ATTRIBUTION OR CREDIT.**  Project Veritas shall have the right but not the obligation to use and license the use of Employee's name, personal information, image, sobriquet, photograph, likeness, voice, signature and/or caricature (collectively referred to herein as "name and likeness") and any and all other information about or concerning Employee in connection with this Agreement, the work and services performed by Employee pursuant to this Agreement, and/or the work and services performed in any respect or for Project Veritas.  However, Employee forever and unconditionally waives Employee's moral or other right to attribution, to publish or to the integrity in any work or services Employee provides to Project Veritas.  Project Veritas shall not be required to make payment to Employee if Project Veritas so

uses Employee's name and likeness. Employee expressly agrees that the terms of this Paragraph 13 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement by either party. Employee acknowledges and agrees that a breach of the restrictions contained in this Paragraph 13 by Employee either during or after employment will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**14.** **OUTSIDE ACTIVITIES.**

    **A.** **Prohibited Outside Activity.** During Employee's employment, Employee shall not engage in any activity, whether as an employee, contractor, volunteer or in any other capacity for any person or entity other than Project Veritas that will or is likely to (i) hinder, interfere with, or prevent Employee from devoting Employee's full time and attention and best efforts to Employee's work for Project Veritas; (ii) hinder, interfere with, or prevent Employee from fully and properly performing Employee's job responsibilities as assigned to Employee from time to time by Project Veritas; or (iii) give rise to an actual conflict of interest or the appearance of a conflict of interest with Project Veritas and/or its mission or work (any such activity, "Prohibited Outside Activity").

    **B.** **Subsequent Events.** If at any time Employee becomes aware of any facts or circumstances that could cause any activity in which Employee is engaged to become Prohibited Outside Activity (*i.e.*, without limitation, that such activity may interfere with Employee's ability to perform Employee's obligations under this Agreement, or that a conflict or the appearance of a conflict of interest arises or may arise), then Employee will immediately inform Project Veritas of such facts and circumstances, and shall cease performing such activity until Employee has discussed the facts and circumstances with Project Veritas and, if applicable, has obtained (in Project Veritas's sole discretion) a waiver of this policy from Project Veritas.

    **C.** **Request for Waiver by Employee.** Project Veritas will consider requests for waivers of the restrictions contained in this Paragraph 14 in specific instances if a request is made in writing to Project Veritas prior to Employee's engaging in prohibited outside activity; Project Veritas may grant or deny such waivers in its sole discretion.

    **D.** **Prohibition on Use of Project Veritas Time or Assets for Outside Activity.** Employee is prohibited from using any Project Veritas resources, including, but not limited to, Employee's working time for Project Veritas, titles, materials, equipment, internet access, emails, cell phones, computers, tablets, printers, office space, intellectual property or any other Project Veritas asset in the performance, consideration or coordination of any outside activity, whether or not such outside activity constitutes Prohibited Outside Activity.

    **E.** **No Disclosure of Third-Party Confidential Information to PV.** Employee will not provide to Project Veritas or any of its affiliates, officers, employees, or independent contractors any confidential information received by Employee as a result of any outside activity where doing so would violate any confidentiality agreement or any other duty of

Employee to such organization or individual. Under no circumstances shall Employee provide to Project Veritas any information received by Employee from, or concerning, any outside activity relating to any candidate for political office, any political party, or any other organization that advocates for the election of candidates to political office.

    **F.**    **Enforcement**. Employee specifically acknowledges and agrees that a breach of the restrictions contained in this Paragraph 14 by Employee will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**15.**    **NON-SOLICITATION OF PROJECT VERITAS EMPLOYEES OR CONTRACTORS.** Employee warrants and agrees that, during Employee's employment and for a period of twelve (12) months after the termination of Employee's employment with Project Veritas, Employee will not, directly or indirectly, individually or in any other capacity, including, but not limited to as a consultant to, or an employee, officer, director, manager, stockholder, partner, member or other owner or participant in any business entity, (i) solicit or endeavor to entice any Project Veritas employee or contractor, or other person or entity that was a Project Veritas employee or contractor within the twelve (12) months immediately prior to the termination of Employee's employment with Project Veritas, to cease working for or providing services to Project Veritas, or (ii) offer employment or any consulting or other form of arrangement to, or materially interfere with the business relationship of Project Veritas with, any person or entity who at the time of the termination of Employee's employment with Project Veritas or within the twelve (12) months immediately prior to the termination of Employee's employment with Project Veritas was employed by, associated with, or a consultant, contractor, customer, partner or client of, or a supplier to Project Veritas, or had a material business relationship with Project Veritas. Employee expressly agrees that the terms of this Paragraph 15 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement. Employee specifically acknowledges and agrees that a breach of the restrictions contained in this Paragraph 15 by Employee either during or after employment will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**16.**    **NON-SOLICITATION OF PROJECT VERITAS DONORS.** Employee warrants and agrees that during and after Employee's employment, Employee shall not contact, solicit or otherwise communicate with any person or entity that is a donor or prospective donor to Project Veritas whom Employee learns of or with whom Employee otherwise comes into contact as a result of Employee's employment by, or work for Project Veritas. Employee expressly agrees that the terms of this Paragraph 16 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement. Employee specifically acknowledges and agrees that a breach of the restrictions contained in this Paragraph 16 by Employee either during or after employment will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**17.     NON-DISPARAGEMENT.**  Employee warrants and agrees that during and after Employee's employment, Employee shall not, directly or indirectly, make any disparaging statements or other negative remarks, written or oral, about Project Veritas, or any of its directors, officers, employees, contractors, donors, agents, attorneys or representatives, Employee's employment by Project Veritas, the subject matter of this Agreement, any Work(s) or News Stories, or the services rendered by Employee or others in connection with any Work(s) or News Stories.  Employee expressly agrees that the terms of this Paragraph 17 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement.  Employee specifically acknowledges and agrees that a breach of the restrictions contained in this Paragraph 17 by Employee either during or after employment will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.  This Paragraph 17 shall not prohibit Employee from testifying as a witness in any court proceeding or governmental investigation.

**18.     PUBLICITY RESTRICTIONS.**  Employee warrants and agrees that during and after Employee's employment, Employee shall not, individually, or by means of press agents or publicity or advertising agencies or others, employed or paid by Employee or otherwise, circulate, publish or otherwise disseminate any photographs, video, news stories or articles, books or other publicity relating, directly or indirectly, to Project Veritas, or any of its directors, officers, employees, contractors, donors, agents, attorneys or representatives, Employee's employment by Project Veritas, the subject matter of this Agreement, any Work(s) or News Stories, or the services rendered by Employee or others in connection with any Work(s) or News Stories, unless the same are first approved in writing by Project Veritas.  Employee expressly agrees that the terms of this Paragraph 18 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement.  Employee specifically acknowledges and agrees that a breach of the restrictions contained in this Paragraph 18 by Employee either during or after employment will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**19.     NO RIGHT TO BIND PROJECT VERITAS.**  Employee acknowledges and agrees that, unless authorized in advance, in writing, by Project Veritas, Employee has no right or authority to bind Project Veritas, and that Employee will not purport to enter into any agreements for Project Veritas or on Project Veritas's behalf.

**20.     EMPLOYEE WARRANTIES.**  Employee hereby acknowledges, agrees and warrants that Employee shall devote Employee's full time and attention, best efforts and best talents and ability to Project Veritas as specified herein, and observe and be governed by the rules of conduct established by Project Veritas.  Employee hereby warrants that Employee is not under any obligation or restriction, created by law or otherwise, which would in any manner or to any extent prevent or restrict Employee from entering into and fully performing Employee's obligations under this Agreement.  Employee warrants that Employee has not entered into any agreement or commitment that would prevent or limit Employee's right or ability to fulfill Employee's commitments hereunder and that Employee will not enter into any such agreement

or commitment without Project Veritas's prior written approval.  Without limiting the foregoing, Employee specifically warrants that it will not share non-public information concerning any person, organization or entity in violation of any legal or contractual obligation of Employee.

**21.     WARRANTIES RELATED TO CREATED MATERIAL.**  Employee hereby warrants and agrees that all material, works, writing, ideas, or dialogue written, composed, prepared, submitted, contributed or interpolated by Employee in connection with the News Stories or their preparation or production, shall be wholly original with Employee or in the public domain throughout the world, and shall not be copied in whole or in part from any other work, except that submitted to Employee by Project Veritas as a basis for such material.  Employee further warrants that neither the material nor any part thereof will violate the rights of privacy or constitute a libel or slander against any person, firm, or corporation, and that the material will not infringe upon the copyright, trademark, literary, dramatic or photoplay rights of any person or right of privacy of any person or company.

**22.     NON-DISCLOSURE OF INFORMATION REGARDING POLITICAL CAMPAIGNS AND CANDIDATE ADVOCACY GROUPS.**  Unless directed by Project Veritas in the course of Employee's employment, Employee agrees and warrants that Employee will not share with Project Veritas or any of its officers, directors, employees, contractors, agents or affiliates, or use in Employee's employment by or work for Project Veritas, any non-public information obtained by Employee from any source regarding any political campaign or any individual, entity or organization involved in advocating for political candidates.

**23.     APPLICATION TO CERTAIN OTHER ENTITIES.**  Employee acknowledges and agrees that Project Veritas at times provides services to certain other entities, including, but not limited to, Project Veritas Action Fund, with respect to, among other things, undercover investigations and reporting, and audio and video editing and production.  Employee acknowledges and agrees that Employee's acknowledgements, agreements, warranties and obligations set forth in Sections 11-22, 24 and 26-32 of this Agreement also apply to any such other entities.

**24.     ADDITIONAL DOCUMENTS.**  Employee agrees to execute and deliver to Project Veritas such further documents as Project Veritas may require in order to effectuate the purposes and intents of this Agreement, including without limitation, perfecting the chain of title of the Work(s), the transfer of rights to Project Veritas and the creation and perfection of any security interests.  Employee irrevocably grants Project Veritas a limited power coupled with an interest to execute such instruments in Employee's name and as Employee's attorney-in-fact.  Project Veritas shall provide Employee with copies of any documents executed by Project Veritas on behalf of Employee.

**25.     TERMINATION.**  Employee's employment with Project Veritas is at-will.  Either Project Veritas or Employee may terminate this agreement for any reason whatsoever or for no reason, at any time, upon providing the other party with written notice.

**26.     RETURN OF ORGANIZATION PROPERTY.**  Employee warrants and agrees that upon termination of Employee's employment, Employee shall return any and all Project Veritas property of any kind, including, but not limited to, any computers and other electronic devices,

recording and communication devices, documents, software or applications, and any work product in the same condition in which it was received by Employee, reasonable wear and tear excepted.  Without limiting the foregoing, Employee agrees and warrants that upon termination of Employee's employment by either Employee or Project Veritas, employee will immediately turn over and/or return any written, video or audio work product relating to any actual of potential investigations, Work(s) or News Stories, whether completed or in process.  Without limiting the foregoing, Employee warrants and agrees that Employee shall fully comply with any and all document retention or similar policies then in effect, including with regard to the return of all Project Veritas-related materials pursuant to that policy.  Employee expressly agrees that the terms of this Paragraph 26 shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement and that a breach of the obligations contained in this Paragraph 26 by Employee will cause irreparable harm to Project Veritas, and that Project Veritas shall be entitled to injunctive relief, without the requirement to post a bond, to enforce its provisions in addition to damages and any other remedies available to Project Veritas.

**27.    CHOICE OF LAW; VENUE.**  All disputes, controversies, or claims arising under or relating to this Agreement or any alleged breach hereof shall be governed by the laws of the State of New York without regard to its choice of law principles.  Subject to Paragraph **[30]** below, Employee hereby irrevocably consents to the exclusive jurisdiction of the State and Federal courts located in Westchester or New York County, New York, for the enforcement of and resolution of any disputes under this Agreement, and to stay, confirm, modify or vacate any arbitration award.

**28.    REMEDIES.**  All remedies accorded herein or otherwise available to either Project Veritas or Employee shall be cumulative, and no one such remedy shall be exclusive of any other.  Without waiving any rights or remedies under this Agreement or otherwise, the Parties may recover any damages arising out of any breach of this Agreement and may institute and maintain subsequent actions for additional damages which may arise from the same or other breaches.  The pursuit by either Project Veritas or Employee of any remedy under this Agreement or otherwise shall not be deemed to waive any other or different remedy which may be available under this Agreement or otherwise, either at law or in equity.  Notwithstanding the foregoing, Employee expressly agrees that due to the nature of the obligations to Employee by Project Veritas under this Agreement, no breach by Project Veritas will cause Employee irreparable harm or otherwise entitle Employee to injunctive or other equitable relief.  Employee agrees that the rights and remedies available to Employee in the event of a breach of this Agreement by Project Veritas shall be strictly limited to the right, if any, to recover damages in an action at law, and Employee shall not be entitled by reason of any such breach to terminate or rescind this Agreement, to avoid the restrictions on Employee's conduct contained herein, to restrain Project Veritas's exercise of any of Project Veritas's rights hereunder, to enjoin Project Veritas's use of the results and proceeds of Employee's services hereunder, or to restrain the use, exhibition or exploitation of any Work(s) or News Stories.  Employee further acknowledges and agrees that the amount of damages to Project Veritas in the event of a breach by Employee of any of Paragraphs 11-22, 24, 26 or 27 of this Agreement would be difficult to calculate and that $10,000 is a reasonable measure of the actual damages that are probable in the event of a breach of one of those paragraphs by Employee.  Employee therefore agrees that in the event of a breach of any one of Paragraphs 11-22, 24, 26 or 27 of this Agreement, Project Veritas shall be entitled

to an award of liquidated damages in the amount of $10,000 for each such breach unless actual damages in an amount in excess of $10,000 can be proven by Project Veritas. To the extent permitted by applicable law, in the event that an action is brought to enforce the terms of this Agreement, the substantially prevailing party shall be entitled to an award of costs, including reasonable attorneys' fees.

**29.    DISPUTE RESOLUTION.** Except as otherwise provided, all disputes, controversies, or claims arising out of or relating to this Agreement or any alleged breach hereof shall be submitted to mandatory and binding arbitration before, and in accordance with the then-applicable rules of the American Arbitration Association ("AAA") in either Westchester or New York County, New York. Employee recognizes that by signing this Agreement, Employee is giving up any rights Employee may have had to a trial by jury. To the extent permitted by applicable law, the parties hereto agree to share equally the costs of the selected arbitrator(s) and any AAA costs. Employee recognizes that the actual or threatened breach of Employee's restrictions and obligations contained in Paragraphs 11-22, 24, 26 or 27 of this Agreement will result in irreparable harm to Project Veritas and that, notwithstanding anything herein to the contrary, Project Veritas may seek a preliminary and/or final injunction, either in court or from the AAA to enforce those restrictions and obligations or to restrain any actual or threatened breach of those restrictions and obligations, in addition to any and all additional remedies available at law. Should Project Veritas obtain a preliminary or final injunction in any court or from the AAA, then, to the extent permitted by applicable law, Employee shall then immediately become liable to pay the attorneys' fees and costs incurred by Project Veritas to obtain the injunction.

To the fullest extent permitted by law, Employee acknowledges and agrees that no class or collective actions can be asserted in arbitration, court or otherwise (class action waiver) for any matters relating to my employment relationship with Project Veritas. This class action waiver precludes any party from participating in or being represented in any class or representative action regarding a claim relating to my employment relationship with Project Veritas. However, if under applicable law a representative claim under state law is deemed un-waivable and such an action is pursued in court, Employee agrees that any such representative claim will be severed and stayed pending resolution of claims that are arbitrable

**30.    WAIVER.** The waiver by either party or any breach of this Agreement shall not constitute a waiver of any subsequent breach. Any waiver must be in writing to be effective.

**31.    ASSIGNMENT.** Employee may not assign Employee's rights or obligations pursuant to this Agreement, except with the prior written authorization of Project Veritas. This Agreement shall inure to the benefit of Project Veritas and its administrators, successors, assigns, licensees, grantees, and associated, affiliated and subsidiary companies, and Employee agrees that Project Veritas may freely assign any or all of its rights and obligations under this Agreement without the consent of Employee and that any assignee of Project Veritas may freely assign this Agreement and the rights and benefits hereunder, in whole or in part, to any person, firm or corporation.

**32.    HEADINGS.** The paragraph headings and subheadings used in this Agreement are inserted only for the purpose of reference and shall not be deemed to govern, limit, modify, or in

any other manner affect the scope, meaning, or intent of the provisions of this Agreement or any part thereof; nor shall such headings otherwise be given any legal effect.

**33.    ILLEGALITY.**  Nothing contained herein shall require the commission of any act or the payment of any compensation which is contrary to applicable law or regulation.  If there shall exist any conflict between any provision contained herein and any applicable law or regulation, the latter shall prevail and the specific provision or provisions herein affected shall be curtailed, limited or eliminated to the extent (but only to the extent) necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

**34.    AUTHORITY.**  Employee represents that Employee has the legal capacity to enter into this Agreement and is fully authorized to do so, and that Employee's entry into this Agreement is not restricted by, and will not result in violation of any obligation or agreement between Employee and any other person or entity, or any legal process or decree.

**35.    NOTICES.**  All notices pursuant to this Agreement shall be delivered in person, via nationally recognized overnight carrier, or via e-mail, addressed as follows:

>   If to Employee:  **RC Maxwell - 1438 E. Polk Street, Phoenix, AZ**

>   If to Project Veritas:  Human Resources Director, Project Veritas 1214 West Boston Post Road No 148, Mamaroneck, NY 10543 and HRDirector@ProjectVeritas.com; a courtesy copy shall be sent to James O'Keefe, President at the same address and James@ProjectVeritas.com.

>   The notice address or e-mail address for a party may be changed by providing notice of such change to the other party in compliance with this Paragraph 36.

>   Notice shall be effective:  (i) when delivered if delivered in person, (ii) if sent via e-mail, when sent if sent during regular business hours or on the next business day if sent outside regular business hours, (iii) if sent by nationally recognized overnight carrier, on the next business day after being deposited, postage prepaid, for next day delivery.

**36.    CONSTRUCTION**:  When construing this Agreement, it shall be deemed to have been fully negotiated between parties of equal bargaining power and it shall not be construed against any party as the drafter of the Agreement, or considered a contract of adhesion.

**37.    ENTIRE AGREEMENT**:  This Agreement contains the entire agreement between the parties with respect to the subject matter of this Agreement, and supersedes all prior negotiations, representations, agreements and understandings with respect thereto.  Employee acknowledges that no representation or promise not expressly contained in this Agreement has been made by Project Veritas or any of Project Veritas's agents, employees or representatives.

**38.    AMENDMENT**:  This Agreement cannot be modified, supplemented or amended except by a written instrument executed by the parties hereto.

**39.    SEVERABILITY**:  In the event any provision of this Agreement is deemed to be void, invalid, or unenforceable, that provision shall be modified, if permissible, or severed from the

remainder of this Agreement so as not to cause the invalidity or unenforceability of the remainder of this Agreement. All remaining provisions of this Agreement shall then continue in full force and effect. If any provision shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope and breadth permitted by law.

**40.    INTENT TO BE BOUND**: Employee acknowledges and agrees that Employee has had ample opportunity to consult with an attorney of Employee's choice before affixing Employee's signature below indicating Employee's unequivocal intent to be bound by the terms of this Agreement.

If the above terms and conditions meet with your approval, and if you agree with the statements and factual representations made herein, then please acknowledge your acceptance hereof by signing in the space provided below. A copy of a signature is deemed to have the same legal effect as an original signature and this Agreement may be signed in counterparts which, when taken together, shall constitute the entire, executed agreement.

By signing in the spaces provided below, Employee and Project Veritas accept and agree to all the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates indicated below.

EMPLOYEE

Signature: *R.C. Maxwell*    Date: 11/13/21

Print Name: R.C. Maxwell

PROJECT VERITAS

Signature [signature]    Date: November 15, 2021

Name: John Sullivan
Title: General Counsel & CCO