**UNITED STATES DISCRIT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND, | |
| Plaintiffs, | Civil Action No. 7:23-cv-04533 |
| v. | MOTION TO COMPEL ARBITRATION |
| JAMES O'KEEFE, TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP, RC MAXWELL, and ANTHONY IATROPOULOS, | |
| Defendants. | |

**DEFENDANTS, JAMES O'KEEFE AND O'KEEFE MEDIA GROUP'S,**
**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDING**
**AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................iii

I.   PRELIMINARY STATEMENT .............................................................. 1

II.  BACKGROUND ...................................................................................... 4

III. MEMORANDUM OF LAW ..................................................................... 5

    A. The Factors for a Motion to Compel Arbitration and Stay Court Proceedings 5

    B. The Parties Agreed to Arbitrate............................................................ 6

    C. Congress did not Intend the Federal Statutory Claims to be Nonarbitrable ... 6

    D. The Scope of the Arbitration Agreement Applies to Plaintiffs' Claims........... 7

       i.   Counts II-VII and XIII fall with the Scope of the Arbitration Agreement . 10

       ii. Counts VIII, XI, and XII fall within the Scope of the Arbitration

       Agreement............................................................................................ 12

       iii. Count I Falls within the Scope of the Arbitration Agreement.................... 16

    E. Any Nonarbitrable Claims Should be Stayed..................................... 19

IV. CONCLUSION...................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cap Diagnostics, LLC v. Emeritus Med. Tech., LLC,*
  No. 2:23-cv-05242-JLS-E, 2023 WL 8351561 (C.D. Cal Oct 25, 2023) ............................... 7

*Chase Mortg. Co.-West v. Bankers Trust Co.,*
  No. 00 Civ. 8150 (MBM), 2001 WL 547224 (S.D.N.Y. May 23, 2001) ................. 13, 14, 15

*Citizens Bank v. Alafabco, Inc.,*
  539 U.S. 52 (2003) ......................................................................................................... 5, 6

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,*
  58 F.3d 16 (2d Cir. 1995) ...................................................................................................... 7

*Desktop Images, Inc v. Ames,*
  929 F. Supp. 1339 (D. Col. 1996) ........................................................................................ 7

*DIRECTTV, Inc. v Imburgia,*
  577 U.S. 47 (2015) ................................................................................................................. 8

*Gen. Media, Inc. v. Shooker,*
  No. 97 CIV.510 (DAB), 1998 WL 401530 (S.D.N.Y. July 16, 1998) ............................... 6, 7

*Genesco, Inc. v. T. Kakiuchi & Co.,*
  815 F.2d 840 (2d Cir.1987) ...................................................................................... 5, 7, 19, 20

*Givati v. Air Techniques, Inc.,*
  960 N.Y.S 2d 196 (2013) ....................................................................................................... 8

*Katsoris v. WME IMG, LLC,*
  237 F. Supp. 3d 92 (S.D.N.Y. 2017) .............................................................................. 19, 20

*LDS, Inc. v. Metro Canada Logistics, Inc.,*
  28 F. Supp. 2d 1297 (D. Kan. 1998) ..................................................................................... 7

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,*
  252 F. 3d 218 (2d Cir. 2001) ...................................................................................... 7, 8, 10

*Mavel a.s. v. Rye Dev., LLC,*
  626 F. Supp. 3d 33 (D. Mass. 2022) ..................................................................................... 6

*Moore v. Interacciones Glob., Inc.,*
  No. 94-CV-4789 (RWS), 1995 WL 33650 (S.D.N.Y. Jan. 27, 1995) .................................. 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) ................................................................................................................. 19

*NPS Commc'ns, Inc v. Continental Group, Inc.,*
  760 F. 2d 463(2d Cir. 1985) ................................................................................................ 20

*Oldroyd v. Elmira Sav. Bank*,
    134 F.3d 72 (2d Cir.1998) ............................................................................ 5, 19

*Robinson v. Entmt. One US LP*,
    No. 14-cv-1203 (AJN), 2015 WL 3486119 (S.D.N.Y, June 2, 2015) .................................. 5

*Ross v. Bank of America, N.A. (USA)*,
    524 F.3d 217 (2d Cir. 2008) .......................................................................... 12

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999) ........................................................................... 13

*Thomson-CSF, S.A. v. Amer. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995) ........................................................................... 13

*Ward v. TheLadders.com, Inc.*,
    3 F. Supp. 3d 151 (S.D.N.Y 2014) ................................................................. 8, 10

**Statutes**

17 U.S.C. § 101 ............................................................................................ 6

9 U.S.C. § 2 ................................................................................................ 5

9 U.S.C. § 3 ................................................................................................ 1

9 U.S.C. § 4 ................................................................................................ 1

Defend Trade Secrets Act, 18 U.S.C. § 1839(3) .............................................. 6

COME NOW Defendants, JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP ("O'Keefe" and "OMG", respectively, and "Defendants" collectively), pursuant to 9 U.S.C. §§ 3 and 4, and hereby respectfully move this Court for an order (i) compelling arbitration of all counts of the First Amended Complaint filed by Plaintiffs, PROJECT VERITAS and PROJECT VERITAS ACTION FUND ("Veritas" and "PVAF", respectively, and "Plaintiffs" collectively) on October 12, 2023; and (ii) staying this litigation until arbitration is complete ("Motion to Compel and Stay").  In support, Defendants state as follows:

## I.     PRELIMINARY STATEMENT

Defendant O'Keefe began work as the Chief Executive Officer for Plaintiff Veritas in 2010, where he was essential to that organization's founding and to its growth until the time of his termination in 2023.  He also served on the Board of Directors during that entire period.  At some point, certain members of the Board of Directors (the "Board") developed differences with O'Keefe—which differences were largely uncommunicated to O'Keefe himself—and developed a plot to kick him out of Veritas.  O'Keefe's termination took place when certain Board members, in breach of statute and their individual duties as directors, abruptly pushed O'Keefe out of Veritas, resulting in the voluntary resignation of multiple members of the Board in protest over the Board's wrongdoing.  Plaintiff O'Keefe is preparing counterclaims arising from these events, and broadly denies the allegations in Plaintiffs' First Amended Complaint ("Amended Complaint").

The Amended Complaint alleges that O'Keefe entered into an employment

1

agreement with Veritas pursuant to his role as CEO, the operative version of which is alleged to be attached to the Amended Complaint as Exhibit A (the "Employment Agreement"). This lawsuit arises out of the Employment Agreement, which contains a broad arbitration agreement that is subject to the Federal Arbitration Act ("FAA"). Under the FAA, this lawsuit should be stayed in its entirety and Plaintiffs should be compelled to take their claims to arbitration.

The broad arbitration provision appears at Paragraph 23.A. of the Employment Agreement (the "Arbitration Agreement"). It states:

> Except as otherwise provided, all disputes, controversies, or claims arising out of or relating to this Agreement or any alleged breach hereof shall be submitted to mandatory and binding confidential arbitration before, and in accordance with the then-applicable rules of the American Arbitration Association ("AAA").

Plaintiffs' Amended Complaint contains eight counts against Defendant O'Keefe and three counts against Defendant OMG.[1] The eight counts against O'Keefe include counts for breach of contract, violation of the Defend Trade Secrets Act, breach of fiduciary duty, breach of loyalty, conversion, replevin, indemnification, and a count for declaration of ownership of copyright. All arise out of or relate to the Employment Agreement or alleged breaches thereof and thus, on the face of the Arbitration Agreement, should be referred to arbitration.

The three counts against OMG allege that OMG tortiously interfered in Veritas'

---

[1] Plaintiffs' claims against Defendants RC Maxwell and Anthony Iatropoulos (Counts IX and X) were settled during a March 18, 2024, settlement conference before Magistrate Judge Andrew E. Krause [Dkt. 38].

contracts with—respectively—O'Keefe, RC Maxwell, and Anthony Iatropoulos. These three counts should also be referred to arbitration because although OMG is not a party to the Employment Agreement, OMG's tortious interference—as alleged—was intimately founded in and intertwined with the Employment Agreement. This is because these acts of tortious interference were allegedly undertaken by OMG "through its managing member and principal officer, O'Keefe" who himself was allegedly acting in breach of the Employment Agreement in effecting such wrongs.

The only exception to the broad scope of the Arbitration Agreement can be found at Paragraph 23.B. of the Employment Agreement, which allows for Veritas to seek injunctive relief in "court or from the AAA" to "enforce or restrain" "threatened or actual breaches" of the Employment Agreement by O'Keefe (the "Court Exception").

This exception applies to few, if any, of Plaintiffs' claims because Plaintiffs' claims either:

(i)     do not seek to "enforce or restrain" "threatened or actual breaches" of the Employment Agreement because such claims do not sound in contract;

(ii)    do not seek to "enforce or restrain" "threatened or actual breaches" of the Employment Contract because such claims concern alleged obligations contained in the Employment Agreement that are no longer binding on O'Keefe; or

(iii)   do not seek to "enforce or restrain" "threatened or actual breaches" of the Employment Contract because such claims concern alleged violations of the Employment Agreement that Plaintiffs have failed to allege are ongoing or

"threatened" to occur in the future.

To the extent the Court does find any of Plaintiffs' claims nonarbitrable, Defendants urge the Court to exercise its discretion to stay this case in its entirety on the basis that the arbitrable claims predominate and the non-arbitrable claims are of questionable merit.

## II.   BACKGROUND

For 13 years, Defendant O'Keefe ran Veritas as its CEO and a member of the Board without internal scandal.  Oversight from the Board was exercised in accordance with law, and Veritas subjected itself to independent annual audits.

However, O'Keefe was jarred and shocked in February of 2023 to learn a coup had been launched by certain members of the Board and former officers to force him out of the entity he had built.  While sitting on a plane waiting for takeoff, he learned that an emergency meeting of the Board had been scheduled and that he likely would no longer be the CEO of Veritas by the time his flight landed.  Ultimately, after various delays, this coup was successful. O'Keefe was terminated as CEO and removed from the Board.

Predictably—as the instigators of this attack were repeatedly warned in advance—Veritas went into a tailspin without O'Keefe, the leader that had built and sustained Veritas since its inception.  Instead of working to salvage Veritas' credibility and save the jobs of its employees, Veritas' new leadership has now compounded its failure with pettiness, launching legal action against the former leader it has already wronged.

Veritas is well aware that the Employment Agreement, on which it bases its claims, requires its claims to be arbitrated.  However, in the hopes of embarrassing and punishing

4

O'Keefe with a long, public lawsuit, Veritas has filed its claims with the Court, as opposed

to in their proper forum: arbitration before the American Arbitration Association.

### III.   MEMORANDUM OF LAW

#### A.   The Factors for a Motion to Compel Arbitration and Stay Court Proceedings

Where a court in the Second Circuit is asked to compel arbitration or stay

proceedings pending arbitration under the Federal Arbitration Act, it must address the

following questions:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd      v.      Elmira      Sav.      Bank*, 134      F.3d      72,      75–76      (2d

Cir.1998); *accord Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987);  *see  also*

*Robinson v. Entmt. One US LP*, No. 14-cv-1203 (AJN), 2015 WL 3486119 *4 (S.D.N.Y, June

2, 2015).

Not stated in *Oldroyd* is the further requirement that in order for the FAA to apply,

the contract in question must "evidenc[e] a transaction involving commerce", a lenient

standard that is easily met here since Veritas is a media provider whose content is viewed

all over the country and the world.  *See* 9 U.S.C. § 2; *see also Citizens Bank v. Alafabco, Inc.*,

539 U.S. 52, 56 (2003) ("the phrase 'involving commerce' in the FAA is the 'functional

equivalent of the more familiar term "affecting commerce,"' which signals the broadest

possible exercise of Congress' Commerce Clause power.")

### B.  **The Parties Agreed to Arbitrate**

The first element in the *Oldroyd* test is whether the parties agreed to arbitrate. *Id.* Here, the parties agree that the Employment Agreement contains a valid Arbitration Agreement, they simply disagree about the scope of the Arbitration Agreement [Dkt. 16, Amended Complaint ¶10].

Therefore, the first question under the *Oldroyd* test—whether the parties agreed to arbitrate—is answered yes.

### C.  **Congress did not Intend the Federal Statutory Claims to be Nonarbitrable**

Where a Compliant asserts federal statutory claims, the *Oldroyd* test will also ask if Congress intended those claims to be nonarbitrable. The Amended Complaint alleges two federal statutory claims: its Count II claim for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), and its Count XIII request for a declaration that Veritas is the owner of certain copyrights under 17 U.S.C. § 101.  Where a defendant is moving to compel or stay arbitration under the FAA, the burden is on the party opposing arbitration to demonstrate that the arbitrability of the statutory rights is precluded by the intent of Congress.  *Gen. Media, Inc. v. Shooker*, No. 97 CIV.510 (DAB), 1998 WL 401530, at *10 (S.D.N.Y., July 16, 1998).

Here, case precedent shows that both of the alleged federal statutory claims are arbitrable. *See Mavel a.s. v. Rye Development, LLC*, 626 F. Supp. 3d 331, 343 (D. Mass. 2022) (compelling arbitration of Defend Trade Secrets Act cause of action); *see also Cap Diagnostics, LLC v. Emeritus Med. Tech., LLC,* No. 2:23-cv-05242-JLS-E, 2023 WL 8351561

*10 (C.D. Cal Oct 25, 2023) (same); *LDS, Inc. v. Metro Canada Logistics, Inc*, 28 F. Supp. 2d 1297, 1300-01 (D. Kan. 1998) (compelling copyright infringement claim to arbitration where the court was "aware of nothing in the text of the Copyright Act evincing a Congressional intent to preclude arbitration, nor are we aware of any legislative history indicating Congress' intent to prohibit arbitration of copyrights infringement claims."); *cf. Desktop Images, Inc v. Ames*, 929 F. Supp. 1339, 1345-46 (D. Col. 1996) (refusing to compel arbitration of copyright infringement claim *for reason other than* nonarbitrability).

Plaintiffs are thus unable to meet their burden to demonstrate that the arbitrability of their statutory causes of action are precluded by the intent of Congress. *Gen Media* * 10.

### D. The Scope of the Arbitration Agreement Applies to Plaintiffs' Claims

The next element under the *Oldroyd* test is whether the claims Defendants seek to have arbitrated fall within the scope of the Arbitration Agreement.

When determining whether a particular dispute falls within the scope of an agreement's arbitration clause, "a court should classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F. 3d 218, 224 (2d Cir. 2001). Where an arbitration agreement is broad, '"there arises a presumption of arbitrability" and arbitration of even collateral matters will be ordered. *Id.* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). An arbitration agreement will be found to be broad when "parties use expansive language in drafting an arbitration clause, [because] presumably they intend all issues that 'touch matters" within the main agreement to be arbitrated." *Id.* (citing *Genesco*, 815 F.2d at 56).

Interpretation of an arbitration clause is "ordinarily a matter of state law" to which

7

Federal courts will defer, *DIRECTTV, Inc. v Imburgia,* 577 U.S. 47, 54 (2015), and it is a principle of New York contract interpretation that "a court's interpretation of a contract 'should not read a contract so as to render any term, phrase, or provision meaningless or superfluous." *Ward v. TheLadders.com, Inc.,* 3 F. Supp. 3d 151, 162 (S.D.N.Y 2014) (quoting *Givati v. Air Techniques, Inc.,* 960 N.Y.S 2d 196, 198 (2013).

Here, the parties entered into a classically "broad" arbitration agreement, which provides:

> Except as otherwise provided, all disputes, controversies, or claims arising out of or relating to this Agreement or any alleged breach hereof shall be submitted to mandatory and binding confidential arbitration before, and in accordance with the then-applicable rules of the American Arbitration Association ("AAA")

[Employment Agreement, ¶23.A].

This "expansive language" used by the parties "in drafting [their] arbitration clause…[indicates] they intend[ed] all issues that 'touch matters" within the main agreement to be arbitrated." *Louis Dreyfus Negoce,* 252 F.3d at 224.

Plaintiffs, however, ask the Court to interpret the Arbitration Agreement with reference to the narrow exception in Paragraph 23.B of the Employment Agreement, reading that exception so broadly as to make the Arbitration Agreement itself meaningless surplusage. Paragraph 23.B states:

> Employee recognizes that the actual or threatened breach of Employee's restrictions and obligations contained herein will result in irreparable harm to Project Veritas and that, notwithstanding

8

anything herein to the contrary, Project Veritas may seek a preliminary and/or final injunction, either in court or from the AAA to enforce those restrictions and obligations or to restrain any actual or threatened breach of those restrictions and obligation, in addition to any and all additional remedies available at law.

This exception to the broad Arbitration Agreement—the "Court Exception"—is narrowly drafted to allow court proceedings only "to seek a preliminary and/or final injunction" in order to "enforce" or "restrain any actual or threatened breaches of…restrictions and obligations" in the Employment Agreement.  In other words, to the extent a claim otherwise falls within the Arbitration Agreement, Veritas has the choice to bring that claim in court only in so far as such claim (i) seeks an injunction (ii) to restrain or enforce a (iii) breach of the Employment Agreement.   That is all.

However, Plaintiffs grossly misread the last clause of the Court Exception arguing that it allows them to "pursue in this Court 'any and all additional remedies available at law,' notwithstanding the arbitration provisions of the Employment Agreement" [Dkt. 16, ¶10].  Effectively, Plaintiffs are arguing that the facially broad Arbitration Agreement is virtually dissolved by the Court Exception, such that Plaintiffs may bring all legal (and apparently) statutory claims in "court" and seek damages as a remedy therefore.

Of course, even on the face of the Court Exception, it is clear this is not what is meant by the phrase "in addition to any and all additional remedies available at law." This clause simply clarifies that the narrow injunctive "court" relief made available by the Court Exception should not be read to prevent Veritas from pursuing other relief through the Arbitration Agreement or otherwise.  To read the exception to allow Veritas to pursue in "court" *both* injunctive relief for breaches of the Employment Agreement *and*

"any and all additional remedies available at law," would mean that almost any dispute Veritas could envision bringing against O'Keefe would be captured by the broad Arbitration Agreement only to be immediately released by the Court Exception.

Plaintiffs urge the Court not to interpret the Employment Agreement in this way. On this reading, the Arbitration Agreement would be rendered largely meaningless surplusage in violation of New York principles of contract interpretation. *Ward*, 3 F. Supp. 3d at 162. The Plaintiffs' proposed reading also clashes with the "presumption of arbitrability" that applies where, as here, the arbitration agreement is "broad." *Louis Dreyfus Negoce S.A*, 252 F. 3d at 224.

With a clear understanding of the effect of the last clause of the Court Exception, Defendants now analyze Plaintiffs' specific claims and demonstrate that each falls within the scope of the arbitration agreement.

i. <u>Counts II-VII and XIII fall within the Scope of the Arbitration Agreement</u>

Counts II-VII and XIII of the Amended Complaint all are brought against Defendant O'Keefe, and they all fall within the scope of the Arbitration Agreement.

These counts allege violation of the Defend Trade Secrets Act, breach of fiduciary duty, breach of loyalty, conversion, replevin, indemnification, and a count for declaration of ownership of copyright. Each of these counts share their factual basis with a breach of the Employment Agreement alleged by Plaintiffs in their Count I. These claims are thus simply claims for breach of the Employment Agreement repackaged into new legal

theories. Consequently, they all "aris[e] out of or relat[e] to the" Employment Agreement [Employment Agreement, ¶23.A].

Plaintiffs' allegations against O'Keefe can be reduced to six factual assertions:

1. O'Keefe engaged in generally unprofessional managerial behavior [See Amended Complaint, ¶ 31-35].

2. O'Keefe mismanaged Veritas' finances [See Amended Complaint, ¶ 36-38].

3. O'Keefe began competing with Veritas after his alleged suspension but prior to his termination [See Amended Complaint ,¶ 52-56].

4. O'Keefe disparaged Veritas [See Amended Complaint, ¶56-71].

5. O'Keefe misappropriated certain property of Veritas, including copyrights [See Amended Complaint, ¶72, ¶90-107].

6. O'Keefe solicited donors and employees of Veritas [See Amended Complaint, ¶73-83].

Each of these categories of allegations are denied, but more importantly, each of these supposed actions provide *both* the factual basis for one or more of Veritas' claims for breach of contract in Count I *and* the factual basis for one of the seven other counts brought by Veritas against O'Keefe.

Specifically, as to Count II alleging violation of the Defend Trade Secrets Act, *compare* Amended Complaint ¶141 (Count II) *with* ¶¶ 113-115 (Count I); as to Count III alleging breach of fiduciary duty, *compare* Amended Complaint ¶152 (Count III) *with* ¶¶ 112-13, 115-16, 121-122, 123-26, 130-31 (Count I); as to Count IV alleging a breach of fiduciary duty, *compare* Amended Complaint ¶158 (Count IV) *with* ¶¶ 112-13, 115-16, 121-

122, 123-26, 130-31 (Count I); as to Count V alleging conversion, *compare* Amended Complaint ¶¶ 162-164 (Count V) *with* ¶¶ 115-116 and 129-130 (Count I); as to Count VI alleging replevin, *compare* Amended Complaint ¶¶ 169 (Count VI) *with* ¶¶ 114-115 (Count I); as to Count XIII for declaration of ownership of copyright *compare* Amended Complaint ¶¶ 267-75 (Count XIII) *with* ¶¶ 114-116 (Count I). [2]

Therefore, all of these counts "aris[e] out of or relat[e] to this Agreement or any alleged breach thereof" and thus fall within the Arbitration Agreement. [Employment Agreement, ¶ 23.A]. At the same time, none of Counts II-VII and XIII fall within the exception in Paragraph 23.B of the Employment Agreement. Even where these counts seek injunctive relief, none of them sound in contract and thus the relief they seek is not for the purpose of remedying "any actual or threatened breaches of" of the Employment Agreement [Employment Agreement, ¶ 23.B].

Consequently, these counts all fall within the scope of the Arbitration Agreement.

ii. Counts VIII, XI, and XII fall within the Scope of the Arbitration Agreement

Count VIII, XI, and XII allege that OMG tortiously interfered with Veritas' employment agreements with, respectively, O'Keefe, RC Maxwell, and Anthony Iatropoulos. [3]

---

[2] In addition, Count VII for indemnification is not ripe. It seeks to hold O'Keefe liable "[t]o the extent Plaintiffs may be subject to investigation and/or action against them" in the future. This is a speculative injury that is likely to never occur. *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 226 (2d Cir. 2008) (claim not ripe where "the injury is merely speculative and may never occur.")

[3] As mentioned previously, RC Maxwell and Anthony Iatropoulos are named defendants in this case, with Counts IX and X, respectively, brought against them for breach of

All of the above counts (VIII, XI, and XII) "aris[e] out of or relat[e] to this Agreement or any alleged breach thereof" and therefore fall within the arbitration agreements. At the same time, none of these counts fall within the exceptions. Even where these counts seek injunctive relief, none of them sound in contract and thus the relief they seek is not for the purpose of remedying "any actual or threatened breaches of" of the employment agreements.

Though OMG is not a party to the Employment Agreement, it may nonetheless compel arbitration of these counts under a theory of estoppel. *Thomson-CSF, S.A. v. Amer. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (estoppel theory is an exception to the rule that an arbitration agreement will apply only to signatories).

Under estoppel theory "[a] signatory will be estopped 'to avoid [ ] arbitration with a non-signatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" *Chase Mortg. Co.-West v. Bankers Trust Co.*, No. 00 Civ. 8150 (MBM), 2001 WL 547224 at *2 (S.D.N.Y. May 23, 2001), *quoting Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., supra*, 198 F.3d 88, 98 (2d Cir. 1999). The two factors a court will consider in determining whether intertwinement is present are whether the nonsignatory's claims arise under the subject matter of the underlying agreement and whether there is a "close relationship" between the defendant signatory and the defendant non-signatory. *Chase*

---

contract. The claims against Defendants Maxwell and Iatropoulos were settled during a March 18, 2024, settlement conference before Magistrate Judge Andrew E. Krause, though those claims have not yet been formally dismissed by Plaintiffs [Dkt. 38].

*Mortg. Co.-West,* 2001 WL 547224 at *2–*3.

Plaintiffs' Count VIII alleges that OMG interfered with the Employment Agreement "through its managing member and principal officer, O'Keefe" [Dkt. 16, Amended Complaint, ¶¶ 186, 189, 192, 195, 198, 201, 205]. And the interference alleged in Count VIII is precisely the procuring of O'Keefe's supposed breaches of the Employment Agreement alleged at Count I [Dkt. 16, Amended Complaint, *compare* ¶¶108-137 *with* ¶¶177-211]. In effect, Plaintiffs contend O'Keefe interfered with the Employment Agreement by causing himself to breach it.

Therefore, the "issues [OMG] is seeking to resolve in arbitration are intertwined with the agreement that [Veritas] has signed." *Chase Mortg. Co.-West,* 2001 WL 547224 at *2–*3.  Plaintiffs' claims arise under the subject matter of the Employment Agreement in that they expressly concern breaches of the Employment Agreement.  And there is a close relationship between the defendant signatory (O'Keefe) and the defendant non-signatory (OMG), insofar as Plaintiffs allege O'Keefe is the sole member of OMG (an LLC), which O'Keefe allegedly formed immediately after being placed on leave by Veritas to compete with Veritas.  [Dkt. 16, Amended Complaint, ¶4, ¶¶52-55]; *Id*.

Counts XI and XII are also intertwined with the Employment Agreement.

Count XI alleges that Iatropoulos, a former employee of Veritas, breached a provision of his employment agreement with Veritas by failing to return its equipment. It further alleges that "OMG through its managing member and principal officer, O'Keefe, intentionally and improperly procured" this breach, thus tortiously interfering with this contract [Dkt. 16, Amended Complaint, ¶¶243-47; *See also* Dkt 16, Ex. B, the

14

employment agreement between Iatropoulos and Veritas is the "Iatropoulos Agreement"].

Count XII makes essentially the same allegations as does Count XI, only regarding Maxwell's employment agreement with Veritas.  [Dkt. 16, Amended Complaint, ¶¶255-62; *See also* Dkt. 16, Ex. C, the employment agreement between Maxwell and Veritas is the "Maxwell Agreement"].

Regarding both of these counts, there is once again a close relationship between the defendant signatory (O'Keefe) and the defendant non-signatory (OMG), as addressed above.  [Dkt. 16, Amended Complaint, ¶4, ¶¶52-55]; *Chase Mortg. Co.-West,* 2001 WL 547224 at *2–*3.  Plaintiffs' claims also arise under the subject matter of the Employment Agreement in that the alleged breaches by Iatropoulos and Maxwell (and procurement thereof by OMG) were part of the same series of transactions and occurrences by which O'Keefe left his employment with Veritas.[4]  *Id.*

Therefore, Counts XI and XII against OMG are intertwined with the employment agreements and OMG may seek to compel arbitration of these counts as a nonsignatory on the basis of estoppel.

---

[4] Alternatively, OMG invokes the estoppel doctrine to compel arbitration under the arbitration provisions in the Iatropoulos Agreement and the Maxwell Agreement, respectively, which are materially identical to the one in O'Keefe's Employment Agreement [See Dkt. 16, Amended Complaint, Ex. B ¶ 25; Ex. C ¶ 29]. Under these agreements, there is a close relationship between the signatories (Iatropoulos and Maxwell) and the defendant non-signatory (OMG), since OMG is alleged to effectively be O'Keefe, for whom Iatropoulos and Maxwell are alleged to have worked at both Veritas and OMG.  Likewise, the claims against OMG arise under the same subject matter as the Iatropoulos Agreement and the Maxwell Agreement since Counts XI and XII allege tortious interference with these very agreements.

iii. <u>Count I Falls within the Scope of the Arbitration Agreement</u>

Plaintiffs' Count I brings nine separate alleged bases for breach of contract against O'Keefe. All nine bases fall within the scope of the Arbitration Agreement.  They are all "disputes, controversies, or claims arising out of or relating to" the Employment Agreement "or any alleged breach" thereof because they allege breaches of the Employment Agreement [Employment Agreement, ¶23.A].  Consequently, the only real question is whether any of these claims are nonarbitrable because the Court Exception applies to them.  With one potential exception, they are not.

Count I's alleged contractual claims primarily fall into two categories regarding the Court Exception:

  i.  those that do not seek to "enforce or restrain" "threatened or actual breaches" of the Employment Agreement because such claims concern alleged obligations contained in the Employment Contract that are no longer binding on O'Keefe [Employment Agreement, ¶ 23.B]; or

  ii.  those that do not seek to "enforce or restrain" "threatened or actual breaches" of the Employment Agreement because such claims concern alleged violations of the Employment Agreement that Plaintiffs have failed to allege are ongoing or "threatened" to occur in the future [Employment Agreement, ¶ 23.B].

This first category—alleged breaches of provisions in the Employment Agreement that are no longer binding on O'Keefe—include the following:

  - O'Keefe's alleged duty to devote his full working time, attention, and best

16

efforts to the performance of his job [Dkt. 16, Amended Complaint ¶ 112, Ex. A ¶ 1.B].

- O'Keefe's alleged duty, during his employment with Veritas, not to engage in ventures that gave rise to conflicts of interest with Veritas [Dkt. 16, Amended Complaint ¶ 121, Ex. A ¶ 15].

- O'Keefe's alleged duty, during his employment with Veritas, to abide by the Veritas handbook and policies  [Dkt. 16, Amended Complaint ¶ 130, Ex. A ¶ 27].

None of these alleged duties currently apply to O'Keefe, and there is therefore no way "a preliminary and/or final injunction" could "enforce" or "restrain" their "actual or threatened breach" [Employment Agreement, ¶ 23.B].  Thus, claims for violations of these supposed duties do not fall within the Court Exception and must be arbitrated.

The second category—claims concerning alleged violations of the Employment Contract that Plaintiffs have failed to allege are ongoing or "threatened" to occur in the future—include the following:

- The alleged breach of Paragraph 10.A's assertion that work product derived from O'Keefe's services belonged to Veritas [Dkt. 16, Amended Complaint ¶ 114, Ex. A ¶ 10.A].

- The alleged breach of Paragraph 11's confidentiality requirement [Dkt. 16, Amended Complaint ¶ 117, Ex. A ¶ 11].

17

- The alleged breach of Paragraph 12's non-disparagement provision [Dkt. 16, Amended Complaint ¶ 119, Ex. A ¶ 12].

- The alleged breach of Paragraph 16's requirement that O'Keefe not solicit Veritas past and present employees and contractors for 12 months after his employment [Dkt. 16, Amended Complaint ¶ 123, Ex. A ¶ 67].

- The alleged breach of Paragraph 17's requirement that O'Keefe not solicit Veritas present or prospective donors during and for 12 months after his employment [Dkt. 16, Amended Complaint ¶ 125, Ex. A ¶ 17].

As to each of these supposed duties, Plaintiffs allege past breaches, but do not allege these supposed breaches are ongoing nor that there is a basis to believe they are "threatened" to happen again in the future.  In other words, since no current or "threatened" future breach is alleged, these claims do not allege a breach that can be "enforce[ed]" or "restrain[ed]" through injunctive relief.  Such claims cannot fall within the Court Exception since the Court Exception only applies to claims seeking an injunction to "enforce" or "restrain" an "actual or threatened breach" [Employment Agreement, ¶ 23.B].

Of the nine breaches alleged in Count I, the sole supposed breach that might be seen to fall within the Court Exception arises under Paragraph 22 of the Employment Agreement, which requires O'Keefe to return Veritas' property on separation from employment [Dkt. 16, Amended Complaint, ¶¶ 127-129, Ex. A ¶ 22].  But even this claim

may be subject to dismissal on a Federal Rule of Civil Procedure 12(b)(6) motion, since the allegations that O'Keefe possesses Veritas' property are conclusory.

### E.  <u>Any Nonarbitrable Claims Should be Stayed</u>

Finally, the *Oldroyd* test requires that if the "court concludes that some, but not all of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *Oldroyd,* 134 F.3d at 75-72.  "The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket" *Genesco, Inc.*, 815 F.2d at 856 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, fn. 20 (1983)).

In exercising its discretion "[t]he Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Id.* at 110-11 (quotation omitted); *see also Moore v. Interacciones Glob., Inc.*, No. 94-CV-4789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants.").

Broad stay orders are particularly appropriate if the arbitrable claims predominate in the lawsuit and the nonarbitrable claims are of questionable merit.  *Genesco, Inc.*, 815 F.2d at 856 (citing *NPS Commc'ns, Inc v. Continental Group, Inc.*, 760 F. 2d 463, 465 (2d Cir.

1985).

Defendants submit that if the Court finds that some nonarbitrable claims are present in this case, it should exercise its discretion to stay the entire case pending arbitration.

As discussed previously, the only claim in this dispute that may be nonarbitrable is a single allegation of breach of contract in Count I, which itself appears to be too conclusory to state a cause of action [*See* Dkt. 16, Amended Complaint ¶¶172-76, ¶¶129-30].

It is desirable to avoid piecemeal resolution of the various disputes in this case, especially since the potentially nonarbitrable claim share common issues of law and fact with the arbitrable claims.  Specifically, the questions of whether O'Keefe possesses Veritas property that he is required to return overlaps factually and legally with the other claims in the case which concern, broadly, whether O'Keefe violated his duties to Veritas as an employee and board member.  *Katsoris,* 237 F. Supp. 3d at 110-11 (S.D.N.Y. 2017).

The arbitrable claims thus predominate, and, further, the nonarbitrable claim is of questionable merit.  *Genesco, Inc.*, 815 F.2d at 856.

Finally, it cannot be suggested that there is any urgency to resolve any nonarbitrable claims in this Court.  While the Amended Complaint asserts on numerous occasions that Plaintiffs plan to seek preliminary injunctive relief,  [See Amended Complaint, ¶¶89, 137, 208, 248, 263, Prayer for Relief (h) and (i)], the reality is that this case was filed over ten months ago, and not only have Plaintiffs not sought temporary injunctive relief, they have moved for and received multiple extensions of time to meet

their deadlines [*See, e.g.*, Dkts. 12, 14, and 23]. In light of this history, there is no urgency for the Court to resolve any nonarbitrable claim of Plaintiffs, and all claims in this dispute should be stayed pending resolution of the arbitrable claims.

## IV.     CONCLUSION

Based on the above, Defendants request an order from this Court (i) compelling arbitration of all arbitrable claims asserted in the Amended Complaint and (ii) staying this litigation until arbitration is complete.

WHEREFORE, Defendants respectfully request that the Court enter an order compelling arbitration of all claims it deems arbitrable, staying this proceeding as to all counts, and granting Defendants such other relief as the Court deems just and proper.

Dated this 16th day of April 2024.



CHILDERS LAW, LLC
2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

/s/ Seldon J. Childers

Seldon J. Childers

Florida Bar No. 61112
jchilders@smartbizlaw.com
notice@smartbizlaw.com
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on April 16, 2024 which served same electronically upon all counsel of record.

*s/ Seldon J. Childers*
Attorney