**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

PROJECT VERITAS and PROJECT     :
VERITAS ACTION FUND,         :   Civil Action No. 7:23-cv-04533
                                  :
               Plaintiffs,   :
                                    :
     -against-          :
                                    :
JAMES O'KEEFE, TRANSPARENCY 1,   :
LLC d/b/a O'KEEFE MEDIA GROUP, RC  :
MAXWELL, and ANTHONY         :
IATROPOULOS,               :
                                    :
               Defendants.  :

---------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

RANDAZZA | LEGAL GROUP

### TABLE OF CONTENTS

1.0    Factual Background ................................................................................................ 1

  1.1    The Employment Agreement ..................................................................... 2

  1.2    Plaintiffs Suspend O'Keefe Pending the Completion of Investigations into His Alleged Misconduct ................................................................................................ 4

  1.3    O'Keefe Breaches his Employment Agreement ........................................ 5

2.0    Legal Standard ...................................................................................................... 9

3.0    Analysis ............................................................................................................... 10

  3.1    O'Keefe Breached His Employment Agreement ...................................... 10

  3.2    O'Keefe Violated the Defend Trade Secrets Act ..................................... 15

  3.3    OMG Tortiously Interfered with Plaintiffs' Contracts ............................ 16

  3.4    Plaintiffs will Suffer Irreparable Harm Absent Injunctive Relief ........... 18

  3.5    The Balance of Equities Tips in Plaintiffs' Favor ................................... 20

  3.6    Injunctive Relief is in the Public Interest ................................................ 21

  3.7    No Bond is Required ................................................................................ 22

4.0    Conclusion .......................................................................................................... 22

RANDAZZA | LEGAL GROUP

# TABLE OF AUTHORITIES

## CASES

*Am. Civil Liberties Union v. Clapper*,
    804 F.3d 617 (2d Cir. 2015).................................................................................... 9

*Barbagallo v. Marcum LLP*,
    925 F. Supp. 2d 275 (E.D.N.Y. Jan. 10, 2013) ......................................................... 20

*BDO Seidman v. Hirshberg*,
    93 N.Y.2d 382, 712 N.E.2d 1220, 690 N.Y.S.2d 854 (1999)............................. 12, 14

*Devos, Ltd. v. Record*,
    No. 15-cv-6916, 2015 U.S. Dist. LEXIS 172929 (E.D.N.Y. Dec. 24, 2015).......... 19

*Doctor's Associates, Inc. v. Stuart*,
    85 F.3d 975 (2d Cir. 1996)...................................................................................... 22

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)...................................................................................... 19

*Harris v. Seward Park Housing Corp.*,
    79 A.D.3d 425 (1st Dep't 2010) .............................................................................. 10

*Health Consultants Grp., LLC v. Dailey*,
    2004 U.S. Dist. LEXIS 27318 (S.D.N.Y. Aug. 24, 2004) ......................................... 21

*Inflight Newspapers v. Magazines In-Flight, L.L.C.*,
    990 F. Supp. 119 (E.D.N.Y. 1997) ......................................................................... 22

*Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004) ........................................................ 13, 14, 19

*Marsh USA Inc. v. Karasaki*,
    No. 08-cv-4195, 2008 U.S. Dist. LEXIS 90986 (S.D.N.Y. Oct. 30, 2008)............... 12, 13, 20

*Marsh USA Inc. v. Schuhriemen*,
    183 F. Supp. 3d 529 (S.D.N.Y. 2016) ..................................................................... 21

*Mercer Health & Benefits LLC v. Digregorio*,
    307 F. Supp. 3d 326 (S.D.N.Y. Apr. 5, 2018) ......................................................... 13

*N. Atl. Instruments Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999)...................................................................................... 19

*Purchasing Assocs. v. Weitz*,
    13 N.Y.2d 267, 196 N.E.2d 245, 246 N.Y.S.2d 600 (N.Y. 1963) ........................... 14

RANDAZZA | LEGAL GROUP

*Reuters Ltd. v. United Press Int'l, Inc.*,
   903 F.2d 904 (2d Cir. 1990).............................................................................. 19

*Stuart'S v. Edelman*,
   196 A.D.3d 711 (2nd Dep't 2021) .................................................................. 16

*Ticor Title Ins. Co. v. Cohen*,
   173 F.3d 63 (2d Cir. 1999)....................................................................... 14, 19

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
   No. 21-952, 2022 U.S. App. LEXIS 6070 (2d Cir. Mar. 9, 2022)..................... 15

*Uni-World Capital L.P. v. Preferred Fragrance, Inc.*,
   73 F. Supp. 3d 209 (S.D.N.Y. 2014) ...................................................... 19, 20, 21

**STATUTES**

18 U.S.C. § 1836............................................................................................ 15, 16

18 U.S.C. § 1839................................................................................................. 15

**RULES**

Rule 65 ............................................................................................................... 22

RANDAZZA | LEGAL GROUP

Defendant James O'Keefe stole the confidential donor list of Plaintiffs Project Veritas ("PV") and Project Veritas Action Fund ("PVAF") for the benefit of himself and his company, Transparency 1, LLC d/b/a O'Keefe Media Group ("OMG").  He did this while still employed with and a member of Plaintiffs' boards of directors, knowing full well he had no right to do so. This misappropriation must immediately be enjoined.

## 1.0    Factual Background

As set forth in the First Amended Complaint ("FAC"),[1] Project Veritas and Project Veritas Action Fund are 501(c)(3) and 501(c)(4), respectively, not for profit corporations formed under Virginia law with headquarters in Westchester County, New York.   FAC at ¶ 11.   Both organizations engage in investigations and reporting aimed at exposing corruption, dishonesty, self-dealing, waste, fraud, and other misconduct in both public and private institutions. *Id.* at ¶ 12. As not for profit organizations, Plaintiffs rely on donations from private donors to support their activities.  *Id.* at ¶ 13.  Plaintiffs maintain a database of information about their donors, including the donors' identities and contact information. *Id.* Plaintiffs keep that donor information confidential and protect it from disclosure to the public by, among other things: (1) restricting access to the information; (2) storing it on a password protected computer system; and (3) requiring employees with access to the information to acknowledge its confidentiality and agree not to disclose it.  *Id.*

James O'Keefe founded Project Veritas in 2010. *Id.* at ¶ 14.  He was, through his separation, the Chief Executive Officer of Project Veritas, President of Project Veritas Action Fund, and a member of the Board of Directors of both organizations, though he was suspended (yet not removed) on February 6, 2023.  *Id.*

---

[1] The facts are otherwise attested to in the accompanying **Exhibit 1**, Declaration of Ben Wetmore ("Wetmore Decl.") and **Exhibit 2**, Declaration of Joseph Barton ("Barton Decl.").

RANDAZZA | LEGAL GROUP

## 1.1     The Employment Agreement

On June 22, 2010, O'Keefe entered into the Employment Agreement ("EA") with Plaintiffs, with the operative version being the EA as amended on September 20, 2022, which O'Keefe and Project Veritas signed on September 30, 2022. *Id.* at ¶ 15. A copy of this EA appears at ECF No. 16-1; **Exhibit 3**. As part of the EA, O'Keefe agreed to certain terms and conditions, both during and after the term of his employment. *Id.* at ¶ 16. In ¶ 1(B) of the EA, O'Keefe agreed that he, identified as "Employee" thereunder, "shall devote Employee's full working time and attention and best efforts to the performance of Employee's job." *Id.* at ¶ 17. In ¶ 10(A) of the EA, O'Keefe agreed that:

> Project Veritas shall be the sole owner of any and all rights in and to the results and proceeds of Employee's services to Project Veritas, and it shall have the sole right to use, exploit, advertise and exhibit the foregoing in any and all media, whether now known or hereafter devised throughout the world, in all languages, as Project Veritas in its sole and unfettered discretion shall determine. Employee agrees that anything created by Employee in connection with the services Employee provides to Project Veritas shall belong exclusively to Project Veritas, and not to Employee, including, but not limited to, any and all video, film, photographs, negatives, video footage, images, renderings, audio video works, audio, recordings, multimedia works, music, reproductions, performances, digital media works, still images and/or other images or footage, documents, papers, writings (both published and unpublished), written work product (including drafts), designs, inventions, patents, trademarks, copyrightable materials, ideas, intellectual property, trade secrets, creative concepts, including all compilations, collections, or other work product created within the scope of or in the course of Employee's employment with Project Veritas and Employee's performance pursuant to this Agreement, and derivatives thereof, and the like ("Work(s)").

*Id.* at ¶ 18. In EA ¶ 11, O'Keefe acknowledged that certain information is confidential ("Confidential Information"). *Id.* at ¶ 20. O'Keefe agreed in EA ¶ 11.B to keep all Confidential Information in the "highest confidence" and not to disclose that Confidential Information without Project Veritas's prior written consent. *Id.* "Confidential Information" includes, in relevant part, per EA ¶ 11.A, information regarding Project Veritas's projects, potential projects, organizational practices, and donors and potential donors. *Id.* O'Keefe's obligation to maintain Plaintiffs'

2

Confidential Information in the highest confidence continues beyond his employment (EA ¶ 11.D), to wit:

> Employee expressly agrees that the terms of this paragraph shall survive after the conclusion of Employee's employment with Project Veritas and/or the expiration or termination of this Agreement, and that after leaving employment with Project Veritas, in addition to all other obligations hereunder, Employee will not disclose to any person or entity, or seek from any current or former Project Veritas employee, contractor or vendor, any Confidential Information.

The EA also prohibits O'Keefe from engaging in outside activities that would interfere with or hinder his work for Project Veritas. *Id.* at ¶ 24. Specifically, in paragraph 15 (entitled "Prohibited Outside Activities") O'Keefe agreed that he would not:

> engage in any activity, whether as an employee, contractor, volunteer or in any other capacity for any person or entity other than Project Veritas that will or is likely to (i) hinder, interfere with, or prevent Employee from devoting Employee's full time and attention and best efforts to Employee's work for Project Veritas; (ii) hinder, interfere with, or prevent Employee from fully and properly performing Employee's job responsibilities as assigned to Employee from time to time by Project Veritas; or (iii) give rise to an actual conflict of interest or the appearance of a conflict of interest with Project Veritas and/or its mission or work (any such activity, "Prohibited Outside Activity") without the express written approval by the CEO of Project Veritas.

*Id.* at EA ¶¶ 16 & 17 also prohibits O'Keefe from soliciting two categories of people: donors and employees/contractors of Project Veritas. *Id.* at ¶ 25. First, O'Keefe agreed in EA ¶ 16 that during (and for one year after) his employment he:

> will not, directly or indirectly, individually or in any other capacity solicit, offer employment, employ, or interfere with any Project Veritas employee or contractor, or other person or entity that was a Project Veritas employee or contractor within the twelve (12) months immediately prior to the termination of Employee's employment with Project Veritas, to cease working for or providing services to Project Veritas.

*Id.* at ¶ 26. EA ¶ 17 prohibits O'Keefe, during and after his employment, from contacting, soliciting or otherwise communicating with "any person or entity that is a donor or prospective donor to Project Veritas whom Employee learns of or with whom Employee otherwise comes into

RANDAZZA | LEGAL GROUP

contact as a result of Employee's employment by, or work for Project Veritas." *Id.* at ¶ 27.  The

EA (¶ 22) also requires that, upon separation of employment, that he:

> shall return any and all Project Veritas property of any kind, including, but not limited to, any computers and other electronic devices, recording and communication devices, documents and information (whether in hard copy or electronic and not keep any copies), software or applications, and any work product (whether completed or incomplete) in the same condition in which it was received by Employee, reasonable wear and tear excepted.

*Id.* at ¶ 28.

### 1.2 Plaintiffs Suspend O'Keefe Pending the Completion of Investigations into His Alleged Misconduct

During O'Keefe's employment, the Board became aware of serious allegations by Project

Veritas employees about incredibly troubling workplace and financial misconduct by O'Keefe.

*Id.* at ¶ 30, and, generally, ¶¶ 31-39. On February 6, 2023, by majority vote, the Board placed

O'Keefe on paid leave, suspending his authority to hire and fire staff for 180 days, requiring him

to surrender his company credit card, and restricting his access to proprietary information,

including donor lists, but explicitly indicated that he "remains as CEO and a member of the

Board."[2]  *Id.* at ¶ 42. O'Keefe refused to participate in a February 10, 2023, meeting at which

financial findings were presented to the Board, and O'Keefe was suspended as CEO and from the

Board (but not removed as a member thereof) indefinitely pending the resolution of the Board's

investigation into the allegations of O'Keefe's misconduct.  *Id.* at ¶ 45.  O'Keefe was not formally

removed from the Board until April 24, 2023.  *Id.* at ¶ 49.  O'Keefe was not formally terminated

from his employment by Plaintiffs until May 15, 2023.  *Id.* at ¶ 50.

---

[2] *See also*, Andrew Rice, "*James O'Keefe is on Paid Leave from Project Veritas*," INTELLIGENCER (Feb. 8, 2023) available at https://nymag.com/intelligencer/2023/02/james-okeefe-project-veritas-paid-leave.html

RANDAZZA | LEGAL GROUP

### 1.3    O'Keefe Breaches his Employment Agreement

In response to his suspension, O'Keefe immediately began breaching his obligations under and the restrictive covenants of the EA.  *Id.* at ¶ 51. A series of Telegram messages between O'Keefe and Project Veritas employee Asha Bolton (**Exhibit 4**; Wetmore Decl. at ¶¶ 33-35; Barton Decl. at ¶¶ 33-35) shows O'Keefe soliciting and receiving a list of Plaintiffs' donors:[3]



---

[3] Mr. O'Keefe had saved his Telegram communications to Project Veritas servers, which were otherwise part of Project Veritas's records, as they were significantly work-related communications.  *See* Wetmore Decl. at ¶ 36; Barton Decl. at ¶ 36.

RANDAZZA | LEGAL GROUP

Specifically, on February 22, 2023, Ms. Bolton messaged Mr. O'Keefe: "I am working on the sheet. I am only send things in relation to donations not all messages were donation related. I don't have access to the donation emails in which Jonathan, Joanne & Gillian do." He responded: "Work on documenting all the donors who want the money back . money back - word document." Ms. Bolton then responded with a screenshot (**Exhibit 4**) of the donor list she was creating for Mr. O'Keefe, stating "Yes, I am."



Mr. O'Keefe responded "keep going, I'm assembling text messages." Her response was to give him a link[4] to the donor list and saying "That's a one drive document, it will continue to grow."

O'Keefe knew he was not entitled to the donor list. His girlfriend, Alexandra Rose, hours after the February 6, 2023 meeting, first encouraged him to take it, saying "You need to have a backup of ALL your donors emails" and "You have the right to your donors especially when you quit. I would call any donor you've met recently that has donated and tell them what happened so they can demand their money back." (**Exhibit 5**). But, then, after raising the issue of a potential "non compete or non circumvention employment agreement," she observed "Who the hell wrote

---

4    https://projectveritas-my.sharepoint.com/:w:/p/asha/EY_6bQiRw_VBqtyD5gzCvXQBrVeprC92mj4RsSOLH3ov4g?e=FPZtpE  (no longer functional).

up the contract for PV.  They screwed you over."  *Id.*  That is, Mr. O'Keefe was on notice that

what she originally suggested was impermissible under his contract:[5]



Just five days before O'Keefe and Ms. Bolton compiled the donor list, on February 17,

2023, O'Keefe formed OMG.  FAC at ¶ 52.  OMG noted on its website that it is located in

Mamaroneck, New York, which is where O'Keefe lives and where Project Veritas is

headquartered.  *Id.*  According to its website, OMG is a media organization managed by O'Keefe

with substantially the same mission and structure as Project Veritas.  *Id.* at ¶ 53.  OMG is a

company whose website describes itself as having "an army of journalists" and is building "an

army of investigators and exposers along with the most elite journalists in the world."[6]  *Id.*  The

---

[5] Once more, this is a screenshot from Mr. O'Keefe's Telegram messages that he placed into Plaintiffs' custody.  *See* **Exhibit 5**;Wetmore Decl. at ¶¶ 36; 40-42; Barton Decl. at ¶¶ 36; 40-42.
[6]*See* https://web.archive.org/web/20230531173523/https://okeefemediagroup.com/mission/.

RANDAZZA | LEGAL GROUP

OMG website even referred to "never be[ing] shut down again" because O'Keefe owns it. *Id.* at ¶ 54. Forming and operating OMG was in violation of the EA's "Prohibited Outside Activities" provision. *Id.* at ¶ 55. O'Keefe misappropriated Project Veritas confidential information by taking donor lists and contact information, equipment, as well as unreleased investigation publications by Project Veritas, rebranded as OMG material. *Id.* at ¶ 72. Similarly, O'Keefe solicited numerous Project Veritas employees and contractors to attempt to poach them to come work for him at OMG. *Id.* at ¶ 75. Such solicitation was by O'Keefe for the benefit of OMG and as an agent thereof. *Id.* at ¶ 76. On February 20, 2023, O'Keefe recorded and published a video on the Vimeo platform (which has since been removed) announcing he was "packing up [his] personal belongings and [he was] intending to start anew," without resigning from his employment or board membership, and generally soliciting current employees of Plaintiffs to work with him, stating "So, our mission continues on. I'm not done," and "The mission will perhaps take on a new name, and it may no longer be called Veritas, Project Veritas. I will need a bunch of people around me, and I'll make sure, I'll make sure you know how to find me."[7] *Id.* at ¶ 77. Such publication was by O'Keefe for the benefit of OMG and as an agent thereof. *Id.* at ¶ 78.

O'Keefe has and continues to solicit Project Veritas's donors, employees and contractors, in direct violation of his EA, for and on behalf of OMG. *Id.* at ¶ 79. As an example of donor solicitation in violation of his EA, on or about May 25, 2023, O'Keefe, from his OMG e-mail address, sent a form solicitation e-mail to at least two Project Veritas donors who are not OMG donors, stating "Hey there, I know you've been a supporter of my work in the last year" and linking to the OMG webpage that solicits monetary "subscriptions." *Id.* at ¶ 80; Wetmore Decl. at ¶¶ 55-

---

[7] *See* https://www.nationalreview.com/news/founder-james-okeefe-claims-project-veritas-ouster-linked-to-pfizer-sting-in-farewell-to-staff/ and https://www.youtube.com/watch?v=1JPxqKjYG9Q.

RANDAZZA | LEGAL GROUP

56; Barton Decl. at ¶¶ 55-56; **Exhibit 6**.  The only way O'Keefe and OMG had those donors'

contact information was because it was part of a confidential list kept by Project Veritas. FAC at

¶ 81. O'Keefe also has misappropriated Project Veritas property by taking Project Veritas's

equipment, donor lists and intellectual property for his own use with OMG.  *Id.* at ¶ 82.  Indeed,

several Project Veritas staff already joined OMG including RC Maxwell and Anthony Iatropoulos,

who may have used Project Veritas property in the course of their employment with OMG.  *Id.* at

¶ 83.  Both Iatropoulos and Maxwell had agreements with PV (ECF Nos. 16-2 & 16-3) containing

the same material terms as O'Keefe's, albeit differently numbered.  *Id.* at ¶¶ 84 & 85.

The EA ¶ 23.B states that if O'Keefe breaches or threatens to breach the EA, Project Veritas

can seek preliminary and permanent injunctive relief in court.  *Id.* at ¶ 86.  In EA ¶ 23.B, O'Keefe

acknowledged that such a breach or threatened breach "will result in irreparable harm to Project

Veritas."  *Id.* at ¶ 87.  Plaintiffs will continue to be irreparably harmed unless the Court orders

O'Keefe to comply with the terms of his EA.  *Id.*  If this Court does not preliminarily enjoin

O'Keefe and OMG from soliciting Project Veritas's donors and employees, they may have

solicited them all by the time Project Veritas wins a judgment prohibiting them from such

solicitation.  *Id.* at ¶ 89.

## 2.0    Legal Standard

"A party seeking a preliminary injunction must generally show a likelihood of success on

the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of

equities tips in the party's favor, and that an injunction is in the public interest." *Am. Civil Liberties

Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  Here, all of these elements are present—

O'Keefe is in breach of his restrictive covenants with Plaintiffs and the Defend Trade Secrets Act,

on account of which Plaintiffs have suffered and will continue to suffer irreparable harm, the

balance of equities is in Plaintiffs' favor, and an injunction is in the public interest.

RANDAZZA | LEGAL GROUP

**3.0    Analysis**

Plaintiffs bring the following claims against O'Keefe and OMG: 1) Breach of Contract vs. O'Keefe; 2) Violation of Defend Trade Secrets Act vs. O'Keefe; 3) Breach of Fiduciary Duty vs. O'Keefe; 4) Breach of Duty of Loyalty vs. O'Keefe; 5) Conversion vs. O'Keefe; 6) Replevin vs. O'Keefe; 7) Indemnification vs. O'Keefe; 8) Tortious Interference vs. OMG (re: O'Keefe); 11) Tortious Interference vs OMG (re: Iatropoulous); 12) Tortious Interference vs. OMG (re: Maxwell); 13) Declaration of Ownership of Copyright vs. O'Keefe.  (ECF No. 16).  This motion is directed to Counts 1, 2, and 8.  While permanent injunctive relief and/or damages are appropriate as to the others, those are the Counts for which a preliminary injunction is necessary.

**3.1    O'Keefe Breached His Employment Agreement**

Plaintiffs have a likelihood of success in their claim for breach of contract.  To state a claim for a breach of contract, a plaintiff must show "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426 (1st Dep't 2010).  These elements are readily met.

There should be no dispute the contract (the EA) exists; in fact, Mr. O'Keefe himself has sought to invoke the arbitration provision, though this matter is exempt by its express terms.  Project Veritas Action Fund is an intended beneficiary of the EA per ¶ 21.  Plaintiffs performed— Mr. O'Keefe was duly paid for his services.  Wetmore Decl. at ¶ 66; Barton Decl. at ¶ 66.

O'Keefe breached the EA in numerous ways outlined above, as well as in others outlined in the FAC (violation of the non-disparagement clause and improper claims of copyright in three books).  As set forth above, O'Keefe was required under the EA ¶ 1.B to devote his full working time and attention and best efforts to the performance of his job. Although O'Keefe was suspended, the formation of OMG, to compete with Project Veritas, violated requirements of ¶ 1.B.

RANDAZZA | LEGAL GROUP

As set forth above, O'Keefe agreed in the EA ¶ 10.A that all of the work and work product derived from O'Keefe's services belonged to Project Veritas. O'Keefe's use of donor lists and contact information, equipment, as well as already filmed and/or released investigation publications by Project Veritas, rebranded as OMG material. violates ¶ 10.A as he is using property of Project Veritas without authorization.

As set forth above, O'Keefe agreed in the EA ¶ 11 that any and all information O'Keefe learned in the course of his employment was confidential. O'Keefe's use of donor lists and contact information, equipment, as well as unreleased investigation publications by Project Veritas, rebranded as OMG material. violates ¶ 11 and breaches the confidentiality to which he is obligated.

As set forth above, O'Keefe agreed in the EA ¶ 15 that he would not engage in ventures giving rise conflicts of interest with Project Veritas. O'Keefe's formation and operation of OMG while employed at Project Veritas without express written consent violates ¶ 15 as OMG competes with Plaintiffs and is a direct conflict of interest.

As set forth above, O'Keefe agreed in the EA ¶ 16 that he would not solicit Project Veritas past and present employees and contractors during and for 12 months after his employment. O'Keefe violated ¶ 16 by soliciting past and present Project Veritas employees and contractors, beginning February 20, 2023.

As set forth above, O'Keefe agreed in the EA ¶ 17 that he would not solicit Project Veritas present or prospective donors during and for 12 months after his employment. O'Keefe violated ¶ 17 by soliciting present and/or prospective donors.

As set forth above, O'Keefe agreed in the EA ¶ 22 to return Project Veritas property at separation from employment. Demand was made on May 17, 2023, for O'Keefe to return all of

Plaintiffs' property in his possession.  O'Keefe violated ¶ 22 by failing to return donor lists and contact information, equipment, as well as already filmed and/or released investigation publications by Project Veritas.

As set forth in the FAC, a direct and proximate result of O'Keefe's foregoing breaches of contract, Plaintiffs have suffered actual damages, which they are entitled to recover from O'Keefe. ECF No. 16 at ¶ 132; *see also*, Wetmore Decl. at ¶ 74; Barton Decl. at ¶ 74.

O'Keefe has not answered the FAC, so his defenses are unknown.  There can be no reasonable dispute he breached the EA, so, at best, he may try to argue it is unenforceable. However, he would be wrong to do so.  He cannot "demonstrate an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct," or show that Plaintiffs have not "in good faith sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 712 N.E.2d 1220, 1226, 690 N.Y.S.2d 854 (1999).  As in *BDO Seidman*, where a restrictive covenant was found partially enforceable, these restrictions are reasonable restraints that are "no greater than is required for the protection of the legitimate interest of the employer;" "do[] not impose undue hardship on the employee;" and "[are] not injurious to the public." 712 N.E.2d at 1223.

The restrictions are reasonable.  Notably, "New York courts have routinely found one-year restrictions to be reasonable," and "New York state courts have upheld non-solicitation agreements imposing client-based restrictions without geographic limitation as reasonable in scope." *Marsh USA Inc. v. Karasaki*, No. 08-cv-4195, 2008 U.S. Dist. LEXIS 90986, at * 47-49 (S.D.N.Y. Oct. 30, 2008).  Here, the non-solicitation of employees and contractors provision is limited in time to one-year.  While that time has now expired, this Court should ensure that Mr. O'Keefe cannot continue to use the fruits of his past violations and it is inequitable to suggest he can avoid his

RANDAZZA | LEGAL GROUP

contractual obligations merely because Plaintiffs attempted to resolve the matter with him in good faith.  (*See* ECF Nos. 12 & 14).[8]

Similarly, "New York courts have routinely found that an individual does not suffer undue hardship where a restrictive covenant merely prohibits him from soliciting his former employer's clients for a reasonably defined period of time."  *Mercer Health & Benefits LLC v. Digregorio*, 307 F. Supp. 3d 326, 351 (S.D.N.Y. Apr. 5, 2018).  Here, donors stand in the shoes of clients. Restrictions on the use of trade secrets and confidential information in the solicitation of prospective clients can be justified based on the need to protect that information. *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc*., 323 F. Supp. 2d 525, 540 (S.D.N.Y. 2004); *see also Marsh USA Inc. v. Karasaki*, 2008 U.S. Dist. LEXIS 90986, at *52-53 (S.D.N.Y. Oct. 30, 2008). While the provision as to non-solicitation of donors is unrestricted by time, it is reasonable as well.  Even prior to his separation, a significant following strongly identified O'Keefe with Project Veritas, going so far as to make "James O'Keefe IS Project Veritas" trend on Twitter.[9]  No one person is Project Veritas; a successor CEO, Hannah Giles, for example, was as much responsible for the ACORN story that led to the formation of Project Veritas as O'Keefe was.  *See* Wetmore Decl. at ¶ 77; Barton Decl. at ¶ 77.  Even if none of this had happened, and O'Keefe was simply

---

[8] Defendants were on notice of the suit as early as May 31, 2023, when they set up a legal defense fund for this matter.  *See*  https://web.archive.org/web/20230531220338/https://secure.aned ot.com/liberty-guard/omg;  and  https://okeefemediagroup.com/subscribe/.  Service, following attempts at negotiations, could not be perfected until October 17, 2023.  (*See* ECF Nos. 14 & 18). The docket otherwise reflects attempts to serve the other defendants and resolve the matter without incurring unnecessary litigation expenses on all sides.  Given the passage of time, Plaintiffs had been awaiting O'Keefe's and OMG's defenses before filing this motion; instead, they have sought to compel arbitration.  Thus, this is the first realistic opportunity for Plaintiffs to seek a preliminary injunction.

[9] *See* Libby Emmons, "BREAKING: Project Veritas employees' letter targeting James O'Keefe leaked, 'James O'Keefe IS Project Veritas' trends on Twitter," THE POST MILLENNIAL (Feb. 9, 2023)  available  at  https://thepostmillennial.com/breaking-project-veritas-employees-letter-targeting-james-okeefe-leaked-james-okeefe-is-project-veritas-trends-on-twitter.

permanently incapacitated, Project Veritas is strong enough to function without O'Keefe.  But, with O'Keefe actively diverting donors from Project Veritas to the for-profit OMG (and himself, as its sole owner), and where he is so identified in the public realm with Project Veritas, a permanent non-solicitation of vendors provision is necessary.

With O'Keefe so tied to the image of Project Veritas, and that he personally was responsible for hiring much of Plaintiffs' staff and soliciting its donors, the restrictions on him serve the legitimate interests of Plaintiffs in avoiding having these key individuals diverted from them.  Where covenants are reasonable, "enforcement will be granted to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999) (*citing Purchasing Assocs. v. Weitz*, 13 N.Y.2d 267, 196 N.E.2d 245, 246 N.Y.S.2d 600 (N.Y. 1963)). "Furthermore, whether viewed conceptually as a type of special service, an offshoot from an employer's interest in safeguarding customer information, or as a distinct cognizable interest, it is now clear that under New York law an employer also has a legitimate interest in protecting client relationships developed by an employee at the employer's expense." *Johnson Controls*, 323 F. Supp. 2d at 534; *see also BDO Seidman*, 712 N.E.2d at 1224-25. Here, O'Keefe was "special or unique," having been the Chairman, CEO, and President, the figurehead of the organization, and enforcement is necessary to prevent solicitation and use of the donor list he developed while being paid by Project Veritas to do so.  Thus, Plaintiffs are likely to succeed on the merits of their breach of contract claim.

RANDAZZA | LEGAL GROUP

**3.2     O'Keefe Violated the Defend Trade Secrets Act**

Plaintiffs are likely to succeed on their claim under the Defend Trade Secrets Act.  As the

Second Circuit outlined:

> Under Section 1836 of the DTSA, the owner of a "trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." § 1836(b)(1). For "financial, business, scientific, technical, economic, or engineering information" to constitute a "trade secret," two factors must be satisfied: (A) the owner must have "taken reasonable measures to keep such information secret"; and (B) the information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . ." 18 U.S.C. § 1839(3), (3)(A)-(B).

*Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 U.S. App. LEXIS 6070, at *2-3 (2d

Cir. Mar. 9, 2022).  These elements are met.

Plaintiffs' Confidential Information, including its donor lists and employee lists, and

unaired programming, are "trade secrets" within the meaning of 18 U.S.C. § 1839(3).  Plaintiffs

take reasonable measure to keep such information secret, including requiring employees to sign

non-disclosure agreements.  Wetmore Decl. at ¶ 82; Barton Decl. at ¶ 82; *see also, Turret Labs*

*USA, supra* at * 5 (observing that non-disclosure agreements are reasonable measures).  And, the

information has independent economic value, it is not generally known to and not readily

ascertainable to others, like O'Keefe and OMG, who can obtain economic value from the

disclosure thereof.  Wetmore Decl. at ¶ 83; Barton Decl. at ¶ 83.

Plaintiffs' trade secrets relate to Plaintiffs' services, including investigative journalism and

broadcasting, used in and/or intended for use in interstate commerce.  O'Keefe took and failed to

return Plaintiffs' donor lists and contact information, equipment, as well as already unreleased

investigation publications by Project Veritas all of which are trade secrets. O'Keefe

misappropriated Plaintiffs' said trade secrets as set forth above by converting them to the use of

RANDAZZA | LEGAL GROUP

OMG in competition with Plaintiffs.  O'Keefe's misappropriation was willful and malicious for, as having been CEO, he knew what belonged to Plaintiffs and is sufficiently sophisticated that he knew he could not convert it to his own use or for the use of OMG.

Injunctive relief is proper under the Defend Trade Secrets Act per 18 U.S.C. § 1836(3)(A), to prevent actual misappropriation "on such terms as the court deems reasonable," so long as it does not function to preclude an employment relationship or a restraint on a profession, trade, or business.  Enjoining O'Keefe from using Plaintiffs' trade secrets would do none of those things— he is still free to practice journalism, just without Plaintiffs' donor lists and other material, which is how every journalist not affiliated with Project Veritas does it.  Thus, as Plaintiffs are likely to succeed, the injunction should issue.

### 3.3   OMG Tortiously Interfered with Plaintiffs' Contracts

O'Keefe cannot do through OMG what he cannot do on his own.  Plaintiffs are, therefore, likely to succeed on their tortious interference claims.[10]  Under New York law, "[t]o recover damages for tortious interference with contract, the plaintiff must prove the existence of a valid contract with a third party, the defendant's knowledge of that contract, the defendant's intentional and improper procurement of a breach of that contract, and damages." *Stuart'S v. Edelman*, 196 A.D.3d 711, 712 (2nd Dep't 2021).  Each of these elements are met.

As to the first two elements, there can be no question.  The EA is a valid and binding contract between Project Veritas and O'Keefe.  Project Veritas Action Fund is an intended beneficiary of the EA.  And, OMG had knowledge of the EA as its managing member and primary officer and agent was O'Keefe, a party to the contract.

---

[10] Attention here is given to the tortious interference with O'Keefe's agreement, as there is no immediate harm arising from the interference with the contracts with Iatropoulos or Maxwell.

RANDAZZA | LEGAL GROUP

OMG intentionally and improperly procured breaches of the EA. As set forth above, O'Keefe was required under the EA ¶ 1.B to devote his full working time and attention and best efforts to the performance of his job. Although O'Keefe was on Paid Time Off, the formation of OMG, to compete with Project Veritas, violated requirements of ¶ 1.B.

As set forth above, O'Keefe agreed in the EA ¶ 10.A that all of the work and work product derived from O'Keefe's services belonged to Project Veritas. O'Keefe's use of donor lists and contact information, equipment, as well as already filmed and/or released investigation publications by Project Veritas, rebranded as OMG material. violates ¶ 10.A as he is using property of Project Veritas without authorization. OMG, through its managing member and principal officer, O'Keefe, intentionally and improperly procured such violation.

O'Keefe agreed in the EA ¶ 11 that any and all information O'Keefe learned in the course of his employment was confidential. O'Keefe's use of donor lists and contact information, equipment, as well as unreleased investigation publications by Project Veritas, rebranded as OMG material, violates ¶ 11 and breaches the confidentiality to which he is obligated. OMG, through its managing member and principal officer, O'Keefe, intentionally and improperly procured such violation and breach.

As set forth above, O'Keefe agreed in the EA ¶ 15 that he would not engage in ventures giving rise conflicts of interest with Project Veritas. O'Keefe's formation and operation of OMG while employed at Project Veritas without express written consent violates ¶ 15 as OMG competes with Plaintiffs and is a direct conflict of interest. OMG, through its managing member and principal officer, O'Keefe, intentionally and improperly procured such violation.

As set forth above, O'Keefe agreed in the EA ¶ 16 that he would not solicit Project Veritas past and present employees and contractors during and for 12 months after his employment.

17

RANDAZZA | LEGAL GROUP

O'Keefe violated ¶ 16 by soliciting past and present Project Veritas employees and contractors, beginning February 20, 2023.   OMG, through its managing member and principal officer, O'Keefe, intentionally and improperly procured such violation.

As set forth above, O'Keefe agreed in the EA ¶ 17 that he would not solicit Project Veritas present or prospective donors during and for 12 months after his employment.  O'Keefe violated ¶ 17 by soliciting present and/or prospective donors.  OMG, through its managing member and principal officer, O'Keefe, intentionally and improperly procured such violation.

As set forth above, O'Keefe agreed in the EA ¶ 22 to return Project Veritas property at separation from employment. Demand was made on May 17, 2023, for O'Keefe to return all of Plaintiffs' property in his possession.  O'Keefe violated ¶ 22 by failing to return donor lists and contact information, equipment, as well as already filmed and/or released investigation publications by Project Veritas. OMG, through its managing member and principal officer, O'Keefe, intentionally and improperly procured such violation.

And, as to the final element, as a direct and proximate result of O'Keefe's breaches of contract, intentionally and improperly procured by OMG, Plaintiffs have suffered actual damages, which they are entitled to recover from OMG.  FAC ¶ 206; Wetmore Decl. at ¶ 86; Barton Decl. at ¶ 86.  Thus, Plaintiffs are likely to succeed on their tortious interference claim against OMG.

### 3.4    Plaintiffs will Suffer Irreparable Harm Absent Injunctive Relief

Plaintiffs have suffered and will continue to suffer irreparable harm unless the Court enjoins Defendants' misconduct.  First, O'Keefe acknowledged in the EA that his breaches of his obligations and these restrictive covenants caused irreparable harm to Plaintiffs.  Second, if O'Keefe and OMG are not enjoined Plaintiffs will continue to lose donors, employees and suffer reputational harm and injury to its goodwill.  *See* Wetmore Decl. at ¶ 88; Barton Decl. at ¶ 88.

RANDAZZA | LEGAL GROUP

As the Court is aware, "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc*., 903 F.2d 904, 907 (2d Cir. 1990) (internal quotation marks omitted). A plaintiff must establish "that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted).

In the Second Circuit, breaches of restrictive covenants support a finding of irreparable harm. *See, e.g., N. Atl. Instruments Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (relying on former employee's acknowledgement that a breach of his agreement would cause "irreparable injury" to the employer); *Devos, Ltd. v. Record*, No. 15-cv-6916, 2015 U.S. Dist. LEXIS 172929 at *22-23 (E.D.N.Y. Dec. 24, 2015) (finding irreparable harm where the restrictive covenant agreement stated that a breach would cause irreparable injury, that damages would be unascertainable in monetary terms, and that the plaintiff would have no adequate remedy at law); *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 236-37 (S.D.N.Y. 2014) (citing provision that any breach of the non-compete agreement "may result in irreparable harm and continuing damages to the Employer and its business and that the Employer's remedy at law for any such breach or anticipated or threatened breach will be inadequate"). It is well established that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm. *Johnson Controls, Inc.*, 323 F. Supp. 2d at 532 (collecting cases). As the Second Circuit has recognized, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). The same rationale holds true for donors. Plaintiffs' loss of current donors and

RANDAZZA | LEGAL GROUP

goodwill resulting from the breach of O'Keefe's non-solicitation agreements is no exception. The total monetary value of Plaintiffs' loss of donors would be very difficult, if not impossible, to calculate with precision, especially in light of disparaging remarks he may have made. Nor could the lost goodwill that Plaintiffs built with these donors be easily quantified and compensated. *See Uni-World Capital L.P.*, 73 F. Supp. 3d at 236; *see also Marsh USA Inc. v. Karasaki*, 2008 U.S. Dist. LEXIS 90986 at *40-41 (S.D.N.Y. Oct. 30, 2008). Thus, Plaintiffs have suffered and will continue to suffer irreparable harm in the absence of an injunction.

### 3.5    The Balance of Equities Tips in Plaintiffs' Favor

The balance of the equities falls entirely in favor of Plaintiffs. Plaintiffs' allegations set forth the various injuries they would suffer if O'Keefe is not enjoined. On the other hand, O'Keefe would suffer no prejudice under the proposed injunction. There is no hardship on O'Keefe or the public – the EA contains a non-solicitation agreement, not a post-separation non-compete agreement. He can build OMG up with new people and new donors, just as he did with Project Veritas. This does not prevent O'Keefe from soliciting donors or employes based on "pre-existing" relationships or through his "own independent efforts, unassisted by the firm." *Barbagallo v. Marcum LLP*, 925 F. Supp. 2d 275, 294 (E.D.N.Y. Jan. 10, 2013). In fact, it appears O'Keefe, through OMG, has taken a different approach, with member subscriptions.[11] Enforcement of the restrictions will not limit Defendants' enterprise in any meaningful way.

Plaintiffs merely seek to restore the *status quo ex ante* and prevent Defendants from breaching their duties. An injunction would not prevent Defendants from engaging in fair competition with Plaintiffs. On the other hand, if immediate equitable relief is not granted, Defendants will be able to continue to compete unfairly with Plaintiffs using Plaintiffs'

---

[11] *See* https://okeefemediagroup.com/subscribe/

RANDAZZA | LEGAL GROUP

confidential information and undermining Plaintiffs' substantial investment of time, resources and goodwill in its relationships.[12] Therefore, the balance of the equities weighs decidedly in favor of Plaintiffs. *Compare Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 537-37 (S.D.N.Y. 2016) (observing with respect "to the balance of equities," that the individual defendant was unlikely to suffer "great hardship" if he was prevented for one year from soliciting the plaintiffs' clients, while plaintiff could have "face[d] the prospect of losing business to a major competitor, transported by a high-level company official").

### 3.6    Injunctive Relief is in the Public Interest

Enforcing O'Keefe's agreement, holding him accountable to the law, and holding OMG to what it knows O'Keefe is bound to do is in the public interest.  "In order for a restrictive covenant to be deemed to unreasonably interfere with the interests of the public, it would either have to seek to protect an interest not legally recognized or deprive the public of essential goods and services." *Health Consultants Grp., LLC v. Dailey*, 2004 U.S. Dist. LEXIS 27318, at *18 (S.D.N.Y. Aug. 24, 2004).  Plaintiffs' interests in protecting their confidential information and precluding unfair competition is legally recognized.  Similarly, the public would not be deprived of any essential good or service; every other journalist is able to perform in the absence of Plaintiffs' confidential information. "If anything, the public interest would be advanced by such an injunction, because, on the facts here, such an injunction would tend to encourage parties to abide by their agreements." *Uni-World Capital L.P.*, 73 F. Supp. 3d at 237.  Thus, the public interest factor is satisfied and the injunction should issue.

---

[12] Although such investment was significantly done through O'Keefe, he did so as an agent of Plaintiffs, for their benefit, and he was paid for such.  Wetmore Decl. at ¶ 91; Barton Decl. at ¶ 91. O'Keefe already received the agreed-upon return on his investment of time—his paycheck.

### 3.7     No Bond is Required

"The language of Rule 65(c) confers broad discretion on the trial judge to set the amount of the bond, even to dispense with the bond requirement altogether." *Inflight Newspapers v. Magazines In-Flight, L.L.C.*, 990 F. Supp. 119, 140 (E.D.N.Y. 1997). Defendants are not likely to suffer any harm absent the posting of a bond and as such the bond requirement is unnecessary. *See Doctor's Associates, Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).  Being forced to compete on a level playing field is not a hardship.  To the extent that any bond is required, it should be nominal, especially in light of Plaintiffs' strong likelihood of success in its claims.

### 4.0     Conclusion

O'Keefe, knowing he was not allowed to do so, intentionally took and used Plaintiffs' confidential information for his benefit and for that of his company, OMG.[13]  He blatantly violated his agreement.  He violated that Defend Trade Secrets Act.  Such malfeasance cannot be condoned and has worked a real harm to Plaintiffs.

In light of the foregoing, the Court should issue a preliminary injunction enjoining O'Keefe and OMG from: (1) contacting or soliciting Plaintiffs' donors; (3) contacting or soliciting Plaintiffs' employees or contractors; (4) obtaining, using or disclosing any of Plaintiffs' Confidential Information (as defined in the EA) in violation of the EA's provisions regarding Confidential Information and under the Defend Trade Secrets Act; and (5) keeping and failing to return any and all property belonging to Plaintiffs, and find that Plaintiffs are entitled to attorneys' fees and costs to obtain such injunctive relief.  An immediate injunction is necessary because without it any final injunction Plaintiffs win in the future will be rendered ineffectual or meaningless.  If O'Keefe and OMG are not enjoined from soliciting Plaintiffs' donors and

---

[13] It is nominally his.  Plaintiffs reserve the right to seek a declaration that the beneficial ownership actually belongs to Project Veritas and compel transfer of the legal title to the membership interest.

RANDAZZA | LEGAL GROUP

employees and misappropriating its Confidential Information, they will have solicited all or enough donors and employees and misappropriated enough Confidential Information such that a final award enjoining them from continuing that conduct will be meaningless.

Dated: May 29, 2024.                    Respectfully Submitted,

                                        /s/ Jay M. Wolman
                                        Jay M. Wolman (JW0600)
                                        RANDAZZA LEGAL GROUP, PLLC
                                        100 Pearl Street, 14th Floor
                                        Hartford, CT 06103
                                        Tel: (888) 887-1776
                                        Email: jmw@randazza.com

RANDAZZA | LEGAL GROUP

Civil Action No. 7:23-cv-04533

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on 29th day of May, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

*/s/ Jay M. Wolman*
Jay M. Wolman (JW0600)

24

RANDAZZA | LEGAL GROUP