# UNITED STATES DISCRIT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND,<br><br>         Plaintiffs,<br><br>    v.<br><br>JAMES O'KEEFE, TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP, RC MAXWELL, and ANTHONY IATROPOULOS,<br><br>         Defendants. | Civil Action No. 7:23-cv-04533 |

**DEFENDANTS, JAMES O'KEEFE'S AND O'KEEFE MEDIA GROUP'S, REPLY IN SUPPORT OF RENEWED CROSS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDING AND <u>MEMORANDUM OF LAW IN SUPPORT</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iii

MEMORANDUM OF LAW ......................................................................................................... 1

I.     The Plaintiffs' Claims against O'Keefe/OMG are Almost all Within the Scope of the Arbitration Agreement ........................................................................................ 1

II.    The Plaintiffs' Claims against OMG are also Within the Scope of the Arbitration Agreement ................................................................................................................. 6

III.   Arbitrable Claims Predominate and this Matter Should be Stayed in its Entirety  9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*BOKF, N.A. v. Caesars Entm't Corp.*,
  144 F. Supp. 3d 459 (S.D.N.Y. 2015) .................................................................................. 4

*Chase Mortg. Co.-West v. Bankers Trust Co.*,
  No. 00 Civ. 8150 (MBM), 2001 WL 547224 (S.D.N.Y. May 23, 2001) ............................... 8

*Choctaw Generation Ltd. Partnership v. Am. Home Assurance Co.*,
  271 F.3d 403 (2d Cir. 2006) ................................................................................................. 7

*Doe v. Trump Corp.*,
  6 F.4th 400 (2d. Cir. 2021) ............................................................................................. 7, 8

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
  561 U.S. 287 (2010) ............................................................................................................. 6

*Ross v. Am Exp. Co.*,
  547 F.3d 137 (2d. Cir. 2008) ............................................................................................... 8

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ........................................................................................................ 9, 10

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
  198 F.3d 88 (2d Cir. 1999) .................................................................................................. 6

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
  542 F.3d 354 (2d Cir. 2008) ................................................................................................ 8

*Trs. Of the N.Y. State Nurses Ass'n Pension Plan v. Hakkak,*
  No. 22-cv-5672 (ER), 2023 WL 4967071 (S.D.N.Y. Aug. 3, 2023) .................................... 7

**Statutes**

9 U.S.C. § 3 ............................................................................................................................. 10

COME NOW Defendants, JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP ("O'Keefe" and "OMG", respectively, and "O'Keefe/OMG" or "Defendants" collectively), and reply to Plaintiffs', PROJECT VERITAS and PROJECT VERITAS ACTION FUND ("Veritas" and PVAF", respectively, and, collectively the "Project Veritas Entities" or "Plaintiffs") Response in Opposition to Defendants' Renewed Cross Motion to Compel Arbitration and Stay Proceeding and state as follows:

**MEMORANDUM OF LAW**

**I.   The Plaintiffs' Claims against O'Keefe/OMG are Almost all Within the Scope of the Arbitration Agreement**

The Project Veritas' Entities' Response in Opposition to Defendants' Renewed Cross Motion to Compel Arbitration and Stay Proceeding ("Response to Motion to Compel") (Dkt. 53, pgs. 12-15) seeks to turn the Employment Agreement[1] upside down. They interpret the broad Arbitration Agreement at Paragraph 23.A of the Employment Agreement extremely narrowly while interpreting the narrow Court Exception at Paragraph 23.B so broadly as to encompass the entirety of their 13 count Amended Complaint.

The Arbitration Agreement provides:

> Except as otherwise provided, **all disputes, controversies, or claims arising out of or relating to this Agreement or any alleged breach hereof shall be submitted to mandatory and binding confidential arbitration** before, and in accordance with the then-applicable rules of the American Arbitration Association ("AAA")

---

[1] Unless provided otherwise, defined terms have the same meaning as in Defendants' June 26, 2024, Defendants James O'Keefe and O'Keefe Media Group's Opposition to Plaintiffs' Motion for Preliminary Injunction and Renewed Cross Motion to Compel Arbitration and Stay Proceeding and Memorandum of Law in Support ("Motion to Compel Arbitration"). (Dkt. 52).

1

(*See* Ex. 1, Employment Agreement, ¶23.A, emphasis added).

By contrast, the Court Exception at Paragraph 23.B provides the following limited carveout to the Arbitration Agreement. It states:

> Employee recognizes that **the actual or threatened breach of Employee's restrictions and obligations contained herein** will result in irreparable harm to Project Veritas and that, notwithstanding anything herein to the contrary, **Project Veritas may seek a preliminary and/or final injunction, either in court or from the AAA to enforce those restrictions and obligations or to restrain any actual or threatened breach of those restrictions and obligations**, in addition to any and all additional remedies available at law.

(*See* Ex. 1, Employment Agreement, ¶23.B, emphasis added).

There appears to be no dispute between the parties that, at a minimum, Counts 1-7 and 13, "aris[e] out of or relat[e] to the[e] [Employment] Agreement." (Ex. 1, ¶23.B) (See Dkt . 52, pgs. 27-29; Dkt. 53, p. 16). Consequently, these claims are facially captured by the Arbitration Agreement and these claims should be arbitrated unless they are carved out of the Arbitration Agreement by the Court Exception.

On its plain language, the Court Exception will allow a party to the Employment Agreement to escape the arbitration otherwise mandated under the Arbitration Agreement only to the extent (i) the claim brought by the party is for breach of the Employment Agreement and seeks to "enforce" the Employment Agreement's terms or restrain its "actual or threatened breach" and (ii) the relief sought by the party is "a preliminary and/or final injunction."

The Project Veritas Entities disagree with this interpretation of the Court Exception, arguing that the final clause of the Court Exception turns it into a tail that wags

2

the dog, such that all of their counts (whether sounding in contract or not) and all of the relief they seek in those Counts (whether injunctive or not) are captured by the Court Exception. But the final clause of the Court Exception (which states: "in addition to any and all additional remedies available at law") cannot do such heavy lifting, as the Project Veritas Entities ask from it.

For clarity, O'Keefe/OMG add language to the Court Exception below to have it more easily read as the Project Veritas Entities would have this Court interpret it, with Defendants' clarifying additions underlined.

> Employee recognizes that the actual or threatened breach of Employee's restrictions and obligations contained herein will result in irreparable harm to Project Veritas and that, notwithstanding anything herein to the contrary, Project Veritas may seek a preliminary and/or final injunction, either in court or from the AAA to enforce those restrictions and obligations or to restrain any actual or threatened breach of those restrictions and obligations, <u>and</u>, in addition to <u>the specific and narrow access to court proceedings provided by the foregoing language, Project Veritas may also pursue in court</u> any and all additional remedies available at law.

(Ex. 1, Employment Agreement, ¶23.B, emphasis added, revised for clarity).

When made express, the problem with the Project Veritas Entities' reading is obvious: according to the Project Veritas Entities reading, the Court Exception—which appears to be all about providing access to courts for the limited purpose of enjoining "threatened or actual breaches" of contract—actually provides the Project Veritas Entities access to courts for *all* legal remedies for *any* claims whatsoever.

For contrast, O'Keefe/OMG also add language to the Court Exception below to have it more easily read as O'Keefe/OMG would have this Court interpret it, with

3

Defendants' clarifying additions underlined.

> Employee recognizes that the actual or threatened breach of Employee's restrictions and obligations contained herein will result in irreparable harm to Project Veritas and that, notwithstanding anything herein to the contrary, Project Veritas may seek a preliminary and/or final injunction, either in court or from the AAA to enforce those restrictions and obligations or to restrain any actual or threatened breach of those restrictions and obligations, <u>and the court relief afforded under this Paragraph 23.B does not limit the relief that may be pursued in other venues, but rather such relief is</u> in addition to any and all additional remedies available at law.

(Ex. 1, Employment Agreement, ¶23.B, emphasis added, revised for clarity). O'Keefe/OMG's reading not only has the advantage of being much more natural, but it also prevents the Court Exception from being so expansive that the Arbitration Agreement in paragraph 23.A is rendered void.

The Project Veritas Entities complain that the parties—fearing the risk of contradictory outcomes—would not have entered into an Employment Agreement that required legal claims to be arbitrated while allowing some claims seeking injunctive relief to proceed to court. (Dkt. 53, pgs. 14-15). But contracts are to be interpreted according to the plain meaning on their terms without regard to the terms one or the other party wished they had agreed to. *BOKF, N.A. v. Caesars Entm't Corp.*, 144 F. Supp. 3d 459, 465 (S.D.N.Y. 2015). Veritas signed the Employment Agreement through John Sullivan, its General Counsel, so it was fully informed of the terms of the Employment Agreement and cannot now complain about the terms it agreed to. And neither is the risk of contradictory outcomes very significant, because the Project Veritas Entities have every right to raise their requests for injunctive relief in arbitration, which would eliminate the

4

risk of contradictory outcomes. (*See* Ex. 1, Employment Agreement, ¶23.B) ("Project Veritas may seek a preliminary and/or final injunction, *either in court or from the AAA…*") [emphasis added]). Indeed, it is the proposed reading of the Court Exception offered by the Project Veritas Entities that would result in a peculiar outcome, with the facially narrow Court Exception negating the broad Arbitration Agreement found in the preceding paragraph.

O'Keefe/OMG's Motion to Compel Arbitration also argued that even where the Project Veritas Entities' claims sound in contract and seek injunctive relief, they largely still did not fall within the scope of the Court Exception because the Project Veritas Entities' contract claims largely allege past violations of the Employment Agreement and fail to allege—as is required by the Court Exception—ongoing "actual or threatened breaches." (Ex. 1, Employment Agreement, ¶23.B, pgs. 33-34). The Project Veritas Entities' Response to Motion to Compel rejoins that their currently pending Motion for Preliminary Injunction ("Motion for PI") fills in the gaps, "demonstrate[ing]. . . actual and threatened" breaches where the Amended Complaint has failed to do so. (Dkt. 53, p. 16; Dkt. 50, 51).

But as argued in the Motion to Compel Arbitration, this argument is a non-starter as to many of the breaches of contract alleged by the Project Veritas Entities', since those alleged breaches pertain to contractual provisions that no longer bind O'Keefe and have not bound him since the time of his termination. (*See* Dkt 52, p. 33). Therefore, there can be no "actual or threatened" breaches of such provisions. (*Id.*) Even for those contractual provisions that do still purport to bind O'Keefe, the Motion for PI does not effectively

5

supplement the Amended Complaints' failure to allege "actual and threatened" breaches. As O'Keefe/OMG showed in their Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opposition to PI"), the Motion for PI and its accompanying affidavits have presented zero admissible evidence that O'Keefe has breached the Employment Agreement. (Dkt. 52, pgs. 6-13).

## II.  The Plaintiffs' Claims against OMG are also Within the Scope of the Arbitration Agreement

The Project Veritas Entities also argue that their claims against OMG (Counts 8, 11, and 12 of the Amended Complaint) cannot fall within the scope of the Arbitration Agreement since OMG is not a party to the Employment Agreement contract. (Dkt. 53, pgs. 17-18). O'Keefe/OMG have already addressed this argument in their Motion to Compel, arguing that OMG is entitled to invoke the Arbitration Agreement against Plaintiffs not because it is a party to the Arbitration Agreement but rather under the doctrine of equitable estoppel. (Dkt. 52, pgs. 29-32).

The Project Veritas Entities argue that OMG may not rely on the equitable estoppel doctrine for two reasons. First, according to the Project Veritas Entities, equitable estoppel as a basis for a non-party to compel arbitration was based on a "presumption of arbitrability" that itself was "based on the jurisprudence of *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 99 (2d Cir. 1999)." (Dkt. 53, p. 17). According to the Project Veritas Entities, this jurisprudence, along with the "presumption of arbitrability", "no longer appears to be good law" under *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 288 (2010). (Dkt. 53, p. 17). The Response to the Motion to

6

Compel does not cite to language from *Granite Rock* (or otherwise) showing this purported overruling of the "presumption of arbitrability", but, more importantly, it fails to explain the connection between the "presumption of arbitrability" and the doctrine of equitable estoppel, and, more specifically, why the overruling of the former should result in the overruling of the latter. (*Id.*, pgs. 17-18). Indeed, in contradiction to its own argument, the Project Veritas Entities' analysis in this section of the Response to the Motion to Compel relies on multiple authorities after *Granite Rock* in which equitable estoppel continues to be employed as basis by which non-parties are permitted to compel arbitration. (*Id.*); *See, e.g., Doe v. Trump Corp.*, 6 F.4th 400, 413-14 (2d. Cir. 2021); *Trs. Of the N.Y. State Nurses Ass'n Pension Plan v. Hakkak*, No. 22-cv-5672 (ER), 2023 WL 4967071 (S.D.N.Y. Aug. 3, 2023).

Second, the Response to the Motion to Compel argues that even if the equitable estoppel doctrine remains a basis for a non-party to compel arbitration, OMG is not entitled to employ the doctrine under the specific facts of this case. (*Id.* p. 18). The Project Veritas Entities are incorrect here as well. As argued by O'Keefe/OMG in their Motion to Compel Arbitration, equitable estoppel may be invoked to compel arbitration of an arbitration agreement by a non-party where "the claims that the non-signatory [seeks] to arbitrate [are] intimately founded in and intertwined with the underlying contract obligations." *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2006). Courts have provided a two-part test for determining the existence of such intertwinement, asking whether the non-signatory's claims arise out of and relate to the subject matter of the underlying agreement and whether the non-signatory has a close

7

relationship to a signatory of the agreement. (Dkt. 52, pgs. 29-32); *Chase Mortg. Co.-West v. Bankers Trust Co.*, No. 00 Civ. 8150 (MBM), 2001 WL 547224 at *2-*3 (S.D.N.Y. May 23, 2001); *Trs. Of the N.Y. State Nurses Ass'n Pension Plan*, 2023 WL 4967071 at *5; *see also Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008) (two part-test asks whether "the subject matter of the dispute was intertwined with the contract providing for arbitration" and whether there "was a relationship among the parties which. . . made it inequitable for [the non-compelling party] to refuse to arbitrate").

As O'Keefe/OMG demonstrated in their Motion to Compel Arbitration, this test is met here as to OMG. (Dkt. 52, pgs. 29-32). The Response to the Motion to Compel rejoins that even if OMG otherwise satisfies the equitable estoppel test, it still cannot invoke the equitable estoppel doctrine to compel arbitration because the Amended Complaint alleges that OMG is a "third-party wrongdoer" that has engaged in tortious interference. (Dkt. 53, p. 18) (citing *Doe*, 6 F.4th at 413-14, *Ross v. Am Exp. Co.*, 547 F.3d 137, 144 (2d. Cir. 2008), and *Sokol Holdings, Inc.*, 542 F.3d at 354. But this argument is question-begging. It skips over the intertwinement analysis altogether and concludes without proving the very question in dispute: whether OMG is to be considered a third-party to the Arbitration Agreement or whether the subject matter of the claims against OMG and the relationships between the parties render OMG—in equitable terms—a party to the Arbitration Agreement.

As Defendants argued in the Motion to Compel, the latter is the case. OMG therefore satisfies the test for it to be entitled to invoke the doctrine of equitable estoppel and compel the Project Veritas Entities to arbitration on Counts 8, 11, and 12.

**III.     Arbitrable Claims Predominate and this Matter Should be Stayed in its Entirety**

The Project Veritas Entities argue that any non-arbitrable claims or issues in this matter should not be stayed pending arbitration of arbitrable claims and issues. Essentially, the Project Veritas Entities' argument boils down to the assertions that (1) its claims for injunctive relief are non-arbitrable and (2) those claims predominate over the other claims and issues in this case. (Dkt. 53, p. 19). As argued in the Motion to Compel Arbitration and in this brief, the great majority of the Project Veritas Entities' requests for injunctive relief must be arbitrated under the Arbitration Agreement. And that small number that are non-arbitrable are predominated over by the arbitrable claims in this case. (Dkt. 52, pgs. 34-36). Failure to stay this case pending arbitration will result in piecemeal litigation and duplication of discovery and other processes. (*Id.*)

The Project Veritas Entities primarily contend that staying non-arbitrable issues pending arbitration would "back burner" their supposedly pressing need for injunctive relief. (Dkt. 53, p. 19). But even to the extent that such relief is non-arbitrable, the Project Veritas Entities assertion that their need for such relief is time sensitive is belied by the fact that they failed to seek a preliminary injunction for nearly a year after filing their initial complaint in this action.

Finally, recent precedent from the Supreme Court of the United States suggests that a stay of all court proceedings is mandatory where any issue in a suit is subject to arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024). Citing to the FAA, *Spizzirri* provides

> Section 3 of the FAA, entitled "Stay of proceedings where issue therein

9

referable to arbitration," provides that, **when any issue in a suit is subject to arbitration**, the court

> "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

*Id*. (quoting 9 U.S.C. § 3) [emphasis added].

Thus, under *Spizzirri*, it appears that what claims predominate is no longer the relevant question before a court considering a motion to compel arbitration, and rather a court is limited to asking whether there are *any* arbitrable claims in a suit and, if so, mandatorily staying all non-arbitrable claims pending arbitration.[2]

Regardless of the relevant standard, the overwhelming number of claims for relief in this matter are arbitrable, and any non-arbitrable claims for relief in this suit should be stayed pending arbitration.

## CONCLUSION

Based on the above, Defendants request an order from this Court (i) compelling arbitration of all arbitrable claims asserted in the Amended Complaint and (ii) staying all remaining claims in this litigation until arbitration is complete.

WHEREFORE, Defendants respectfully request that the Court enter an order

---

[2] The Project Veritas Entities argue that O'Keefe/OMG have waived reliance on *Spizzirri* since it was not cited to in its Motion to Compel. But the Motion to Compel was filed with this Court a short 5 weeks after *Spizzirri* was issued by the Supreme Court, and O'Keefe/OMG is therefore not at fault for not including it in its Motion to Compel. What's more, the Project Veritas Entities have not cited any authority saying a party that does not cite an authority in its initial brief on a motion but does include that authority in its reply has waived reliance on that authority. Finally, this Court is not constrained by the precedent cited in the parties' brief, and *Spizzirri* is binding on the Court whether or not Defendants raised it in their initial submission or not.

10

compelling arbitration of all claims it deems arbitrable, staying this proceeding as to all counts, and granting Defendants such other relief as the Court deems just and proper.

Dated this 19th day of July 2024.



2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

*/s/ Seldon J. Childers*

Seldon J. Childers

Florida Bar No. 61112
jchilders@smartbizlaw.com
notice@smartbizlaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on July 19, 2024, which served same electronically upon all counsel of record.

>  */s/ Seldon J. Childers*
>  Attorney