# Exhibit 4

Objections to Subpoena with Exhibit

# UNITED STATES DISCRIT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES O'KEEFE, TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP, RC MAXWELL, and ANTHONY IATROPOULOS,<br><br>Defendants. | Civil Action No. 7:23-cv-04533<br><br>**DEFENDANT TRANSPARENCY 1, LLC'S OBJECTIONS TO SUBPOENA COMMANDING PRODUCTION OF DOCUMENTS** |

COMES NOW, Plaintiff Defendant, TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP ("Defendant" or "OMG"), by and through its undersigned counsel, and pursuant to Rule 45(d)(2)(B) of the Federal Rules of Civil Procedure objects to Plaintiffs', PROJECT VERITAS and PROJECT VERITAS ACTION FUND ("Plaintiffs" or the "Project Veritas Entities") subpoena issued pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure served on OMG on July 16, 2024 (the "Subpoena") and commanding OMG to produce documents or electronically stored information as follows:

## GENERAL OBJECTIONS

1.      Plaintiff objects to all of the Subpoena's commands for production to the extent they compel OMG to produce documents that are privileged or work product. Plaintiffs served OMG with the Subpoena on July 16, 2024, only 8 business days before

the Subpoena commanded OMG to produce documents at the hearing on Plaintiffs' Motion for Preliminary Injunction of Monday, July 29, 2024.  As provided in the specific objections below, this late service did not provide OMG a reasonable opportunity to comply with the Subpoena's demands for production, and it has therefore been impossible for OMG's counsel to conduct a review for privilege and work product.  This is particularly true taking into account (a) that OMG is serving this objection on July 24, 2024 (only 5 business days after service) in order to provide the Project Veritas Entities a reasonable time to file relevant motions prior to the July 29, 2024, hearing and (b) that the Project Veritas Entities were aware that the limited time they afforded OMG to produce documents would overlap with OMG's preparation of the July 29, 2024 evidentiary hearing.   To the extent this Court denies one or more of OMG's objections and orders full or partial production, OMG will within a reasonable time provide a privilege log of all documents or electronically stored information withheld on the basis of privilege or work product.

2.     Plaintiff objects to the Subpoena's commands for production to the extent they call for OMG to produce documents that are trade secret, confidential, or are commercially or otherwise sensitive in the absence of an adequate confidentiality order. The documents Plaintiff has commanded OMG to produce in requests two through five contain highly sensitive, confidential, and trade secret materials. OMG has not had a realistic opportunity to seek a confidentiality agreement or other measure for protecting OMG's sensitive, confidential, and trade secret materials considering (a) the short time frame between the service of the Subpoena on OMG and the date on which the

production of documents was commanded (a mere 8 business days) (b) that OMG is serving this objection on July 24, 2024 (only 5 business days after service) in order to give the Project Veritas Entities a reasonable time to file relevant motions prior to the July 29, 2024, hearing and (c) that the Project Veritas Entities were aware that the limited time they afforded OMG to produce documents would overlap with OMG's preparation of the July 29, 2024 evidentiary hearing.   To the extent this Court denies one or more of OMG's objections, OMG will within a reasonable time attempt to enter into with Plaintiffs a confidentiality agreement or other measure for protection of OMG's sensitive, confidential, and trade secret materials and if such negotiations are unsuccessful, OMG will move the Court for a protective order providing reasonable protections for the disclosure of such materials.

## **SPECIFIC OBJECTIONS TO COMMANDS FOR PRODUCTION**

**COMMAND FOR PRODUCTION 1:** Documents sufficient to identify all individuals who currently work and/or previously worked as an employee or independent contractor for Transparency 1, LLC d/b/a O'Keefe Media Group through May 1, 2024.

OMG objects to this command for production on the basis of relevance and proportionality.  *See Malibu Media, LLC v. Dow*, No. 15-cv-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept 29, 2016)("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)").

The only possible relevance documents relating to current and former employees and independent contractors of OMG could have for the June 29, 2024, hearing on Plaintiffs Motion for Preliminary Injunction is for the purpose of establishing a breach of Paragraph 16 of the Employment Agreement.  That provision purports to forbid O'Keefe

3

from soliciting Project Veritas employees or contractors.  However, the restrictions in Paragraph 16—by its own terms—apply only "during Employee's employment and for a period of 12 months after termination of Employee's employment with Project Veritas." (*See* Employment Agreement at Motion for PI, Ex. 1). The Motion for Preliminary Injunction acknowledges that O'Keefe was terminated on May 15, 2023, and that the one-year time limit in Paragraph 16 "has now expired." (DE 51, p. 12). The Project Veritas Entities cannot be granted a preliminary injunction forbidding O'Keefe from doing something the Employment Agreement no longer prohibits him from doing.  Therefore, documents providing purported evidence of such breach can have no bearing on the hearing on the Project Veritas Entities' Motion for Preliminary Injunction and are wholly irrelevant to it.  It seems that this command for production number one was made in bad faith by the Project Veritas Entities as a means of conducting expedited discovery without asking this Court's permission to do so or having any basis for doing so.

This command for production is also unduly burdensome for the same reason. Because the documents sought are wholly irrelevant to the matters in dispute at the July 29, 2024, hearing, this command for production is unduly burdensome because it serves no evidentiary purpose but would require OMG to turn over to the Project Veritas Entities—who purport to be OMG's competitor—commercially valuable information about its current and former employees and contractors.

**COMMAND FOR PRODUCTION 2**: Documents sufficient to identify all investors, donors, subscribers, and all other persons providing and/or who have provided financial support for Transparency 1, LLC d/b/a O'Keefe Media Group.

OMG objects to this command for production on the basis that is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit. *See Malibu Media, LLC v. Dow*, No. 15-cv-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept 29, 2016)("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)").

As testified to in the declaration of Steven Saldana, attached hereto as **Exhibit A**, this command for production of document calls for highly confidential information. Out of necessity, OMG is highly selective in who it allows to access its information and data. Not only does OMG maintain a great deal of commercially sensitive information, but because of the investigative nature OMG's journalism (and more specifically, the journalism of James O'Keefe), OMG is a constant target of individuals and organizations seeking to defame and falsely harm its reputation. OMG is therefore forced to take extensive precautions to keep bad actors from accessing its information and data. Further, certain of OMG's contributors, and supporters wish to maintain their anonymity, imposing on OMG a duty to protect those individuals' and organizations' identities. (Declaration of Steven Saldana ("Saldana Dec.") ¶ 12).

This command for production also has only very limited relevance to the matters at issue. Plaintiffs seek a preliminary injunction based on certain alleged ongoing breaches of James O'Keefe's duties to the Project Veritas Entities. The current sources of

OMG's revenue—without regard to the relationship such sources of such revenue had or have to the Project Veritas Entities—has nothing to do with the matters in dispute.

Beyond the inherent commercial sensitivity of OMG's sources of revenue (and the confidentiality issues that arise from individual and entities that have provided financial support to OMG and who prefer to remain anonymous) this information is additionally commercially sensitive because the Project Veritas Entities purport to be competitors of OMG. This command number two thus effectively asks OMG to turn over to the Project Veritas Entities a large number of documents of limited relevance but of potentially great competitive value.

Additionally, OMG and James O'Keefe are aware that certain of the individuals who still maintain an affiliation with the Project Veritas Entities and are the driving forces behind the continuance of this frivolous litigation have engaged in ongoing campaigns of defamation and character assassination against both O'Keefe and OMG. OMG is reasonably concerned that should its confidential information fall into the hands of the Project Veritas Entities, it will be misused in the Project Veritas Entities' ongoing efforts to falsely discredit and tarnish the reputation of OMG and O'Keefe.

Further, the Project Veritas Entities have had every opportunity to pursue these materials through the normal discovery channels. *See N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC*, 293 F.R.D. 363 (E.D.N.Y, 2013) (granting expedited discovery in support of motion for preliminary injunction). Indeed, it appears that the Subpoena command number 2, even if it were proportionate, is in violation of the Federal Rules of Civil Procedure as an improper attempt to circumvent the Rule 34 requirement that

documents from parties to a dispute be obtained through requests for production. This case was filed nearly 14-months ago and even the Project Veritas' Entities long-delayed Motion for Preliminary Injunction was filed nearly two months ago. (Dkt. 1, 50, 51). Yet the Project Veritas Entities waited until 8 business days before the evidentiary hearing to seek to develop evidence in support of its (supposedly urgent) need for a preliminary injunction, demanding OMG produce a broad swath of highly confidential documents that could be of value to the Project Veritas Entities both commercially and in their running feud with OMG and O'Keefe, *without so much as proposing any arrangement for protecting any of these confidential materials from public disclosure or misuse.* The timing of the Subpoena thus strongly suggests bad faith.

The document Subpoena is also unduly burdensome because its timing appears designed to surprise OMG and interfere with its preparation of its case. The Project Veritas Entities waited to serve the Subpoena until after OMG had submitted its response brief to the Project Veritas Entities' Motion for Preliminary Injunction (per the scheduling order, this submission was the only opportunity OMG had to address the Motion for Preliminary Injunction prior to the hearing). (Dkt. 51-1, 52). No prior effort had been made by the Project Veritas Entities to develop any evidence from OMG or O'Keefe in support of its motion. This is despite, as described above, the Project Veritas Entities having had an abundance of time to have done so and despite their supposed urgent need for a preliminary injunction. It appears the Project Veritas Entities were waiting out OMG, wanting to first review the argument OMG presented to the Court and then develop their evidence at the last moment in response. *See Kunstler v. City of N.Y.*, 242

F.R.D. 261, 264 (S.D.N.Y 2007) (New York courts frown on trial by ambush.) If the Project Veritas Entities are truly suffering irreparable harm, as they claim, these sorts of tactics should not be necessary for them to make their case.

Finally, as provided in the attached Declaration of Steven Saldana at **Exhibit A**, producing the documents responsive to command two of the Subpoena by the time of the July 29, 2024, hearing would impose a huge burden on OMG. OMG would need to locate a trusted vendor to identify responsive materials, oversee and monitor that vendor's work, review a large volume of documents for confidentiality, provide those same documents to legal counsel to review for responsiveness, work product and privilege, produce privilege logs, and negotiate a satisfactory confidentiality agreement or seek and obtain a protective order, all before the hearing. (Declaration of Steven Saldana, ¶¶ 11-16). This is not a realistic time frame, and neither can the Project Veritas Entities' need for these documents be thought to be great, as they surely would have sought these materials far earlier if they were truly in need of them from an evidentiary point of view.

Therefore, command for production number two is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit.

**COMMAND FOR PRODUCTION 3**: Any and all documents, including but not limited to communications and/or documents regarding communications, regarding Plaintiffs' donors, including, but not limited to, communications with Plaintiffs' donors.

OMG objects to this command for production on the basis that is not proportional to the needs of the case because the burden or expense of the proposed discovery

outweighs its likely benefit. *See Malibu Media, LLC v. Dow*, No. 15-cv-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept 29, 2016)("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)").

This command to produce is grossly overbroad. As stated in OMG's submissions in this case, as well as in the affidavit of James O'Keefe filed on the record in this case, the Project Veritas Entities had thousands and perhaps tens of thousands of contributors during the time O'Keefe helmed those organizations. Neither O'Keefe nor OMG has or ever had the Project Veritas Entities' donor list, and as a result, there is literally no way for OMG to gather and produce the documents responsive to this request. This problem is compounded by the fact that this request is vague, lacking any reference to a time frame, leaving it unclear if it is to be interpreted to apply to the Project Veritas' Entities current donors or its donors at some undefined time in the past. In other words, this command to produce falsely presupposes that OMG has knowledge of Plaintiffs' past and current donors.

Additionally, OMG and James O'Keefe are aware that certain of the individuals who still maintain an affiliation with the Project Veritas Entities and are the driving forces behind the continuance of this frivolous litigation have engaged in ongoing campaigns of defamation and character assassination against both O'Keefe and OMG. OMG is reasonably concerned that should its confidential information fall into the hands of the Project Veritas Entities, it will be misused in the Project Veritas Entities ongoing efforts to falsely discredit and tarnish the reputation of OMG and O'Keefe.

Further, the Project Veritas Entities have had every opportunity to pursue these materials through the normal discovery channels.  *See N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC*, 293 F.R.D. 363 (E.D.N.Y, 2013) (granting expedited discovery in support of motion for preliminary injunction).  Indeed, it appears that the Subpoena command for production of document number 3, even if it were proportionate, is in violation of the Federal Rules of Civil Procedure as an improper attempt to circumvent the Rule 34 requirement that documents from parties to a dispute be obtained through requests for production.  This case was filed nearly 14-months ago and even the Project Veritas' Entities long-delayed Motion for Preliminary Injunction was filed nearly two months ago.  (Dkt. 1, 50, 51)  Yet the Project Veritas Entities waited until 8 business days before the evidentiary hearing to seek to develop evidence in support of its (supposedly urgent) need for a preliminary injunction. The timing of the Subpoena thus strongly suggests bad faith and appears designed not to gather evidence for the hearing but to gain a commercial advance over OMG and to gather fuel for its running feud with OMG and O'Keefe.

The document Subpoena is also unduly burdensome because its timing appears designed to surprise OMG and interfere with its preparation of its case.  The Project Veritas Entities waited to serve the Subpoena until after OMG had submitted its response brief to the Project Veritas Entities Motion for Preliminary Injunction (per the scheduling order, the only opportunity OMG had to address the preliminary injunction motion prior to the hearing).  (Dkt. 51-1, 52)  No prior effort had been made by the Project Veritas Entities to develop any evidence from OMG or O'Keefe in support of its motion.  This is

despite, as described above, the Project Veritas Entities having had an abundance of time to have done so and their supposed urgent need for a preliminary injunction. It appears the Project Veritas Entities were waiting out OMG, wanting to first review the argument it presented to the Court and then develop its evidence at the last moment. *See Kunstler v. City of N.Y.*, 242 F.R.D. 261, 264 (S.D.N.Y 2007) (New York courts frown on trial by ambush.) If the Project Veritas Entities are truly suffering irreparable harm, as they claim, these sorts of tactics should not be necessary for them to make their case.

Finally, as provided in the attached Declaration of Steven Saldana at **Exhibit A**, producing the documents commanded by the Subpoena by the time of the July 29, 2024, hearing would impose a huge burden on OMG. OMG is highly selective in who it allows to access its information and data. Not only does OMG maintain a great deal of commercially sensitive information, but also, because of the investigative nature of OMG's journalism (and more specifically, the journalism of James O'Keefe), OMG is a constant target of individuals and organizations seeking to defame and falsely harm its reputation. OMG is therefore forced to take extensive precautions to keep bad actors from accessing its information and data. Further, certain of OMG's contributors and supporters wish to maintain their anonymity, imposing on OMG a profound duty to protect those individuals' and organizations' identities. (Declaration of Steven Saldana ("Saldana Dec.") ¶ 12). As a result, in order to produce documents responsive to the Subpoena, OMG would need to locate a trusted vendor to identify responsive materials, oversee and monitor that vendor's work, review tens of thousands of pages of documents for confidentiality, provide those same tens of thousands of pages to counsel to review

for responsiveness, work product, and privilege, produce privilege logs, and negotiate a satisfactory confidentiality agreement or seek and obtain a protective order, all before the hearing.  (Declaration of Steven Saldana, ¶¶ 11-16). This is not a realistic time frame, and neither can the Project Veritas Entities need for these documents be thought to be great, as they surely would have sought these materials far earlier if they were truly needed from an evidentiary point of view.

Therefore, this command for production number three is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit.

**COMMAND FOR PRODUCTION 4**: Any and all documents, including but not limited to communications and/or documents regarding communications, regarding this lawsuit, including, but not limited to, the facts and circumstances giving rise to this lawsuit.

OMG objects to this command for production on the basis that is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit.  *See Malibu Media, LLC v. Dow*, No. 15-cv-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept 29, 2016)("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)").

This request is grossly overbroad, seeking all documents and communications "regarding this lawsuit."  The Project Veritas Entities made no effort to limit this request to accommodate the fact that the Subpoena was issued on short notice to, supposedly, generate evidence for a preliminary injunction hearing that is not even scheduled to last an entire day.  The Project Veritas Entities cannot possibly absorb and make use of

documents responsive to a request this broad where they will receive responsive documents on the same day as a single-day hearing. This command also facially calls for a host of documents that will be attorney-client privileged, but it fails to carve out such document from the terms of the command, thus imposing on OMG the extra obligation of creating an extensive privilege log.

Additionally, OMG and James O'Keefe are aware that certain of the individuals who still maintain an affiliation with the Project Veritas Entities and are the driving forces behind the continuance of this frivolous litigation have engaged in ongoing campaigns of defamation and character assassination against both O'Keefe and OMG. OMG is reasonably concerned that should its confidential information fall into the hands of the Project Veritas Entities, it will be misused in the Project Veritas Entities ongoing efforts to falsely discredit and tarnish the reputation of OMG and O'Keefe.

Further, the Project Veritas Entities have had every opportunity to pursue these materials through the normal discovery channels. *See N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC*, 293 F.R.D. 363 (E.D.N.Y, 2013) (granting expedited discovery in support of motion for preliminary injunction). Indeed, it appears that the Subpoena command number 4, even if it were proportionate, is in violation of the Federal Rules of Civil Procedure as an improper attempt to circumvent the Rule 34 requirement that documents from parties to a dispute be obtained through requests for production. This case was filed nearly 14-months ago and even the Project Veritas' Entities long-delayed Motion for Preliminary Injunction was filed nearly two months ago. (Dkt. 1, 50, 51). Yet the Project Veritas Entities waited until 8 business days before the evidentiary hearing to

seek to develop evidence in support of its (supposedly urgent) need for a preliminary injunction. The timing of the Subpoena thus strongly suggests bad faith and appears designed not to gather evidence for the hearing but to gain a commercial advance over OMG and to gather fuel for its running feud with OMG and O'Keefe.

The document Subpoena is also unduly burdensome because its timing appears designed to surprise OMG and interfere with its preparation of its case. The Project Veritas Entities waited to serve the Subpoena until after OMG had submitted its response brief to the Project Veritas Entities Motion for Preliminary Injunction (per the scheduling order, the only opportunity OMG had to address the preliminary injunction motion prior to the hearing). (Dkt. 51-1, 52). No prior effort had been made by the Project Veritas Entities to develop any evidence from OMG or O'Keefe in support of its motion. This is despite, as described above, the Project Veritas Entities having had an abundance of time to have done so and their supposed urgent need for a preliminary injunction. It appears the Project Veritas Entities were waiting out OMG, wanting to first review the argument it presented to the Court and then develop its evidence at the last moment. *See Kunstler v. City of N.Y.*, 242 F.R.D. 261, 264 (S.D.N.Y 2007) (New York courts frown on trial by ambush.) If the Project Veritas Entities are truly suffering irreparable harm, as they claim, these sorts of tactics should not be necessary for them to make their case.

Finally, as provided in the attached Declaration of Steven Saldana at **Exhibit A**, producing the documents sought by command number 4 by the time of the July 29, 2024, hearing would impose a huge burden on OMG. OMG is highly selective in who it allows to access its information and data. Not only does OMG maintain a great deal of

commercially sensitive information, but also, because of the investigative nature of OMG's journalism (and more specifically, the journalism of James O'Keefe), OMG is a constant target of individuals and organizations seeking to defame and falsely harm its reputation.  OMG is therefore forced to take extensive precautions to keep bad actors from accessing its information and data.  Further, certain of OMG's contributors and supporters wish to maintain their anonymity, imposing on OMG a profound duty to protect those individuals' and organizations' identities.  (Declaration of Steven Saldana ("Saldana Dec.") ¶ 12).  As a result, OMG would need to locate a trusted vendor to identify responsive materials, oversee and monitor that vendor's work, review thousands of pages of documents for confidentiality, provide those same thousands of pages to counsel to review for responsiveness, work product, and privilege, produce privilege logs, and negotiate a satisfactory confidentiality agreement or seek and obtain a protective order, all before the hearing.  (Declaration of Steven Saldana, ¶¶ 11-16). This is not a realistic time frame, and neither can the Project Veritas Entities' need for these documents be thought to be great, as it surely would have sought these materials far earlier if they were truly needed from an evidentiary point of view.

Therefore, this command for production is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit.

**COMMAND FOR PRODUCTION 5**: Any and all documents, including but not limited to communications and/or documents regarding communications, regarding Plaintiffs, created and/or modified on or after February 1, 2023.

OMG objects to this command for production on the basis that is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit. *See Malibu Media, LLC v. Dow*, No. 15-cv-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept 29, 2016)("subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)").

This request is grossly overbroad, seeking all documents and communications "regarding Plaintiffs" since February 1, 2023. Responsive documents will run in the thousands if not tens of thousands. O'Keefe continued to work for the Plaintiffs for nearly three months after February 1, 2023, meaning many of his communications during that period would be "regarding Plaintiffs." This is not even to mention that the Project Veritas Entities had played a central role in O'Keefe's life well over a decade while he helmed those organizations, and the split between O'Keefe and OMG has been a major news story at the national level. Taking into account this background, O'Keefe himself will have a very large number of communications "regarding Plaintiffs", not to mention OMG's communications "regarding Plaintiffs". The Project Veritas Entities made no effort to limit this request to accommodate the fact that the Subpoena was issued on short notice and designed to, supposedly, provide evidence for a preliminary injunction hearing that is not even scheduled to last a day. The Project Veritas Entities cannot possibly absorb and make use of documents responsive to a request this broad where they will receive responsive documents on the same day as a single-day hearing. And

once again, this command facially calls for a large number of documents that will be attorney-client privileged, but it fails to carve out privileged documents from the terms of the command for production, thus imposing on OMG the extra obligation of creating an extensive privilege log.

Additionally, OMG and James O'Keefe are aware that certain of the individuals who still maintain an affiliation with the Project Veritas Entities and are the driving forces behind the continuance of this frivolous litigation have engaged in ongoing campaigns of defamation and character assassination against both O'Keefe and OMG. OMG is reasonably concerned that should its confidential information fall into the hands of the Project Veritas Entities, it will be misused in the Project Veritas Entities ongoing efforts to falsely discredit and tarnish the reputation of OMG and O'Keefe.

Further, the Project Veritas Entities had every opportunity to pursue these materials through the normal discovery channels. *See N. Atl. Operating Co., Inc. v. Evergreen Distribs., LLC*, 293 F.R.D. 363 (E.D.N.Y, 2013) (granting expedited discovery in support of motion for preliminary injunction). Indeed, it appears that the Subpoena, even if it were proportionate, is in violation of the Federal Rules of Civil Procedure as an improper attempt to circumvent the Rule 34 requirement that documents from parties to a dispute be obtained through requests for production. This case was filed nearly 14-months ago, and even the Project Veritas' Entities long-delayed Motion for Preliminary Injunction was filed nearly two months ago. (Dkt. 1, 50, 51). And yet the Project Veritas Entities waited until 8 business days before the evidentiary hearing to seek to develop evidence in support of its (supposedly urgent) need for a preliminary injunction. The

timing of the Subpoena thus strongly suggests bad faith and appears designed not to gather evidence for the hearing but to gain a commercial advance over OMG and to gather fuel for its running feud with OMG and O'Keefe.

The document Subpoena is also unduly burdensome because its timing appears designed to surprise OMG and interfere with its preparation of its case. The Project Veritas Entities waited to serve the Subpoena until after OMG had submitted its response brief to the Project Veritas Entities Motion for Preliminary Injunction (per the scheduling order, the only opportunity OMG had to address the preliminary injunction motion prior to the hearing). (Dkt. 51-1, 52). No prior effort had been made by the Project Veritas Entities to develop any evidence from OMG or O'Keefe in support of its motion. This is despite, as described above, the Project Veritas Entities having had an abundance of time to have done so and their supposed urgent need for a preliminary injunction. It appears the Project Veritas Entities were waiting out OMG, wanting to first review the argument it presented to the Court and then develop its evidence at the last moment. *See Kunstler v. City of N.Y.*, 242 F.R.D. 261, 264 (S.D.N.Y 2007) (New York courts frown on trial by ambush.) If the Project Veritas Entities are truly suffering irreparable harm, as they claim, these sorts of tactics should not be necessary for them to make their case.

Finally, as provided in the attached Declaration of Steven Saldana at **Exhibit A**, producing the documents commanded by the Subpoena by the time of the July 29, 2024, hearing would impose a huge burden on OMG. OMG is highly selective in who it allows to access its information and data. Not only does OMG maintain a great deal of commercially sensitive information, but also, because of the investigative nature of

OMG's journalism (and more specifically, the journalism of James O'Keefe), OMG is a constant target of individuals and organizations seeking to defame and falsely harm its reputation.  OMG is therefore forced to take extensive precautions to keep bad actors from accessing its information and data.  Further, certain of OMG's contributors and supporters wish to maintain their anonymity, imposing on OMG a profound duty to protect those individuals' and organizations' identities.  (Declaration of Steven Saldana ("Saldana Dec.") ¶ 12).  As a result, in order to respond to command for production number five, OMG would need to locate a trusted vendor to identify responsive materials, oversee and monitor that vendor's work, review thousands of pages of documents for confidentiality, provide those same thousands of pages to counsel to review for responsiveness, work product, and privilege, produce privilege logs, and negotiate a satisfactory confidentiality agreement or seek and obtain a protective order, all before the hearing.  (Declaration of Steven Saldana, ¶¶ 11-16). This is not a realistic time frame, and neither can the Project Veritas Entities' need for these documents be thought to be great, as they surely would have sought these materials far earlier if they were truly needed from an evidentiary point of view.

Therefore, this command for production is not proportional to the needs of the case because the burden or expense of the proposed discovery outweighs its likely benefit.

Dated this 24th day of July 2024.



**CHILDERS LAW, LLC**

2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

_/s/ Seldon J. Childers_

Seldon J. Childers

Florida Bar No. 61112
jchilders@smartbizlaw.com
notice@smartbizlaw.com
_Counsel for Defendant_

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing document (including any attached exhibits and documents) was served electronically on July 24, 2024 upon all counsel of record.

_s/ Seldon J. Childers_
Attorney

**EXHIBIT A**

# UNITED STATES DISCRIT COURT
## SOUTHERN DISTRICT OF NEW YORK

PROJECT VERITAS and PROJECT
VERITAS ACTION FUND,

        Plaintiffs,

   v.

JAMES O'KEEFE, TRANSPARENCY 1,
LLC d/b/a O'KEEFE MEDIA GROUP, RC
MAXWELL, and ANTHONY
IATROPOULOS,

        Defendants.

Civil Action No. 7:23-cv-04533

DECLARATION OF
STEVEN SALDANA

I, STEVEN SALDANA, hereby depose and declare:

1.      I am over 18 years old and otherwise competent to make this declaration.

2.      I have personal knowledge of all matters testified to herein.

3.      I am an employee of Transparency 1, LLC d/b/a/ O'Keefe Media group ("OMG"). My title is Operations Manager.

4.      I have been appointed by OMG to serve as its keeper of records for the purposes of the subpoena served on OMG on July 16, 2024, in the above-cited case (the "Subpoena").

5.      Therefore, pursuant to the Subpoena, I plan to appear at the July 29, 2024, hearing on Plaintiffs Motion for Preliminary Injunctive to provide relevant testimony

6.      In addition to ordering OMG to appear and testify, the Subpoena also commands OMG's keeper of records to bring with me at the time of my testimony certain documents and electronically stored information.

7.     However, gathering and providing to Plaintiffs the materials sought pursuant to commands for production numbers two through five, as attached to the Subpoena, will place an immense burden on OMG, considering the time frame Plaintiffs have allowed OMG to comply, a mere 8 business days.

8.     OMG is a small organization. We do not have a dedicated informational technology specialist. We have four full-time W2 employees and various independent contractors who work with OMG on an as-needed, part-time, or project-based basis.

9.     I have been assigned responsibility for gathering and processing materials sought under the Subpoena.  This is because I am the only person in the organization, other than our CEO James O'Keefe, with sufficient knowledge of OMG's operations and informational technology infrastructure necessary to oversee this task.

10.     Because of my limited expertise in informational technology, OMG would need to engage an outside vendor to identify documents responsive to Plaintiffs' broad requests.

11.     Engaging an outside vendor will itself be a time-consuming process.  Out of necessity, OMG is highly selective in who it allows to access its information and data.  Not only does OMG maintain a great deal of commercially sensitive information, but because of the investigative nature of the journalism of OMG (and more specifically, James O'Keefe), OMG is a constant target of individuals and organizations seeking to defame and falsely harm its reputation. OMG is therefore forced to take extensive precautions to keep bad actors from accessing our information and data.  Further, certain OMG contributors and supporters wish to maintain their anonymity, imposing on OMG a profound duty to protect those individuals' and organizations' identities.

12.    As a result, OMG takes great caution protecting the integrity of its data and information by, among other things (a) requiring two-factor authentication to access its systems; (b) placing strictly observed restrictions on who within the organization may access what data and information; (c) closely vetting all employees, independent contractors, and vendors with whom OMG works to ensure they are not acting out of a desire to do OMG harm; and (d) where necessary based on the nature of the task, only working with vendors who OMG has a pre-existing relationship or who are referred by a highly trusted source.

13.    The vendor OMG would engage to locate documents responsive to the broad commands for production numbers two through five would need to be someone with whom OMG has a pre-existing relationship or who is referred by a highly trusted source.  OMG does not currently have a pre-existing relationship with a qualified vendor, and so will need to locate a vendor by contacting its network of trusted organizations and individuals.

14.    I anticipate sourcing and vetting a vendor, reviewing the scope of the engagement, and implementing associated security measures would take more than two weeks, and likely longer. Once engaged, my dedicated focus would be required on an ongoing basis to oversee the collection of documents, point the vendor to the relevant platforms and systems, and review the status of the work. I anticipate this process could take in excess of many weeks of active work. Because of my central role with OMG, much of OMG's work would be substantially hindered during the period I was preoccupied with this task.

15.    Based on the breadth of commands numbers two through five, I estimate the vendor would ultimately obtain thousands of pages of potentially responsive documents, many of which will be among the most sensitive documents in OMG's possession.  I further understand that after the vendor's work is done, these materials would need to be provided to legal counsel for a

comprehensive review for responsiveness, privilege and work product.  These materials would also need to be reviewed internally for confidentiality.  I further understand that in order to protect privileged, work product, and confidential information from production, counsel will need to prepare privilege logs and take additional steps to protect OMG's highly confidential information. I understand this process can take additional weeks or months.

16.     Finally, to the extent that OMG's confidential information, including information about financial supporters, is to be disclosed, OMG will need to provide advance notice to notify certain of those individuals to give them adequate time to take legal action to intervene if necessary to protect their sensitive information. OMG takes its obligations and commitments to privacy seriously, and must be given sufficient time to provide necessary forewarning.

I declare under penalty of perjury that the foregoing is true and correct.


*Steven Saldana*
Steven Saldana (Jul 24, 2024 21:13 EDT)

Steven Saldana