```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ---------------------------------------x
 3  PROJECT VERITAS, et al.,

 4                         Plaintiff(s),

 5                                          23 CV 4533 (CS)(AEK)
       -vs-
 6                                          CONFERENCE

 7
    JAMES O'KEEFE, et al.,
 8
                           Defendant(s).
 9  ---------------------------------------x

10
         *Proceedings recorded via digital recording device*
11

12                                  United States Courthouse
                                    White Plains, New York
13
                                    September 24, 2024
14

15  Before:  THE HONORABLE CATHY SEIBEL,
                                  District Judge
16

17  A P P E A R A N C E S:

18
    RANDAZZA LEGAL GROUP, PLLC
19       Attorneys for Plaintiffs
    BY:  JAY M. WOLMAN
20

21  CHILDERS LAW, LLC
         Attorneys for Defendants
22  BY:  NICHOLAS P. WHITNEY

23

24

25
                    TABITHA R. DENTE, RPR, RMR, CRR
                            (914) 390-4027
```

1        THE DEPUTY CLERK:  Good morning, Judge.

2        Judge, this matter is Project Veritas v. O'Keefe.  We
3   have on the line representing Plaintiffs Mr. Jay Wolman and
4   representing Defendants Mr. Nicholas Whitney.  And Anthony's on
5   the line as well.

6        THE COURT:  All right, good morning to you both.
7   Sorry to keep you waiting; I had a criminal matter that went
8   long.

9        Let me remind you when you speak to please say your
10  last name, and only your last name, first so that I know which
11  of you is speaking and I don't have to interrupt you to ask.

12       We have a few things percolating.  First of all,
13  Defendants had made a request to file a motion for attorneys'
14  fees, and I have Plaintiff's letter in response.  I, I am...not
15  going to allow that now.

16       First of all, while it may be true that a party who
17  obtains a preliminary injunction is a prevailing party, I don't
18  think a party who fights off a preliminary injunction is
19  necessarily a prevailing party.  There's still a possibility
20  that one side -- that Defendants can obtain a final judgment on
21  one or more claims, and even on the trade secrets claim, and,
22  you know, there's certainly case law to the effect that
23  attorneys' fees under the DTSA is available after resolution of
24  the underlying claim.  *See, e.g., Jane Street v. Millennium,*
25  2024 WL 3460987, at *3 (S.D.N.Y. Jul. 18th, 2024), and *IME*

*WatchDog v. Gelardi*, 2022 WL 16636766, at *3-4 (E.D.N.Y. Nov. 2nd, 2022).  Moreover, if Defendants ultimately prevail, they can move for fees to the extent they may be entitled to them under other provisions, so I'm going to wait on fees.

I'm dubious that Defendant's going to be able to prove that the DTSA claims are brought in bad faith, at least based on what I know so far.  I -- from what I can tell so far, I think they were wrong on what they thought, but I don't think that they knew they were wrong and brought the case just to harass or delay, but that's a decision that is for later on anyway.

The second item is the letter I got on Friday from Defendants saying they want to move for judgment on the pleadings.

This does not really count as a pre-motion letter because not only was it dropped at the eleventh hour when -- without a fair opportunity for the other side to respond, but it doesn't say the grounds on which any motion would be made, and the reason I require a pre-motion letter is because it's my practice to allow the other party to amend once the other party is on notice of the grounds that the moving party is going to assert.  If the opposing party has facts that the opposing party can add, that would be helpful.  The reason I do that is because I don't want to have to grant a motion to dismiss and then have to grant leave to amend and then have to deal with another motion.

1           I can't tell from Defendant's letter on what grounds
2 they intend to move and, therefore, Plaintiffs can't tell what
3 -- in what respects they might like to amend, so I think we
4 should follow the usual procedure.
5           Mr. Whitney, how long would it -- would you need to
6 submit a pre-motion letter?
7           MR. WHITNEY:  And, your Honor, we could have that to
8 the Court by, I would think, next Tuesday.  We have a deposition
9 scheduled for the end of this week that will take up the rest of
10 this week.
11          THE COURT:  A week from today?  October 1?
12          MR. WHITNEY:  Yes, your Honor.
13          THE COURT:  All right.  And, you know, that's just a
14 three-page letter, but stating the grounds on which you intend
15 to move, and Plaintiff can respond about a week after that,
16 October 8th, and I'll ask Mr. Clark to find a conference date
17 the following week in which we can discuss it and set a briefing
18 schedule, assuming (indiscernible).
19          MR. WOLMAN:  Your Honor, this is Jay Wolman, I
20 apologize, but I would like a little extra time, because we're
21 running into Rosh Hashanah end of that week --
22          THE COURT:  Okay.  Then tell me --
23          MR. WOLMAN:  -- and I'd like a chance to more
24 thoroughly address it.
25          THE COURT:  That's fine.

1    MR. WOLMAN: I would like, if possible, Friday,
2 October 11th?

3    THE COURT: That's fine, and I'll ask Mr. Clark to
4 find something the week after. I think October 11th, Yom Kippur
5 starts that evening, but we can do something that day. Okay.
6 Oh, and the conference will be the following week, so that's
7 fine.

8    While he's looking for a date, I also got a letter
9 just now this morning from Mr. Wolman, and I'm not really happy
10 with either side dropping last-minute issues. It seems to me,
11 in both cases, I don't see any reason why the -- these issues
12 couldn't have been raised somewhat sooner. The -- granted, the
13 (indiscernible) was only filed a week before the Defendants
14 raised their desire for a 12(c) motion, but they could have put
15 some, some meat on their bones, and I just -- I'm just getting
16 the feeling already that there's a little gamesmanship going on
17 here, which I don't like.

18    But I have a request -- and I understand the parties
19 were talking about a confidentiality order up until yesterday,
20 but, you know, it's really not fair to me, or to the other side,
21 to get a request like this at the eleventh hour.

22    MR. WOLMAN: I apologize, your Honor.

23    THE COURT: That being said, what's the problem with
24 the proposed protective order, Mr. Whitney?

25    MR. WHITNEY: Your Honor, keeping in mind that we

1  received the first request regarding the confidentiality order
2  yesterday, the deposition that Mr. Wolman references in his
3  letter we noticed back on August 29th, so I've spent the morning
4  looking at the law on confidentiality orders.  We -- our general
5  view of confidentiality orders of this nature is that they're
6  rife for abuse and that we will encounter over-designation of
7  materials as confidential or, the other category, they're highly
8  confidential, for which then we'll have to come and challenge.
9           The case law, as I'm sure your Honor is familiar, is
10 that there's a public right of access by default and the moving
11 party has to show good cause.  Nothing in the letter or
12 discussion had demonstrated good cause for a confidentiality
13 order, especially one of this breadth, which would include, by
14 default, the sealing of all depositions, so we're opposed to the
15 breadth.
16          As I discussed with Mr. Wolman yesterday, we
17 recognized that both parties likely have an interest in keeping
18 the identity of certain donors confidential, and I propose that
19 we could do that by agreement in the depositions much in the way
20 we do it with cases involving medical issues or minors and ask
21 that the court reporter only refer to certain donors by their
22 initials.  Other than that, we oppose the confidentiality order.
23          MR. WOLMAN:  I believe my counterpart is
24 misapprehending the nature of this order and this request and is
25 conflating the law relating to sealing with the law regarding

1  confidential of simple discovery.  There is no general public
2  right-of-access issue in the discovery process, it's only with
3  respect to what gets then ultimately filed on the court docket,
4  nor does this proposed order provide for any form of automatic
5  sealing of depositions.  It provides for a tentative
6  designation, but it does not provide -- but then it requires
7  actually making a designation, and anything that then needs to
8  be sealed must comply with the Court's rules and Federal Rule
9  5.2.
10             I am, your Honor, well familiar with the rules
11 regarding sealing and not sealing as one of the attorneys on --
12 who was on brief on *Brown v. Maxwell,* for --
13             THE COURT:  Funny, I was just reading that this
14 morning and it was for a different case.
15             MR. WOLMAN:  So -- yeah, I represented Mr. Sernavich
16 in that one and we obtained the Second Circuit releasing
17 documents that were judicial documents, well familiar with that.
18             This is about protecting what happens in the process
19 and in the discovery process, and this is about confidential
20 material, confidentiality, about trade secrets, about sensitive
21 financial information, sensitive journalistic practices relating
22 to, potentially, sources and donors.  There's a whole host of
23 issues relating to confidentiality in this case, and while I do
24 apologize for the last-minute request, it occurred to me that we
25 didn't have one in advance of this deposition; I was not

1  expecting there to be resistance, since this is a fairly
2  standard order.
3              And as I noted in my letter, it literally is based on
4  the one that the District of Connecticut Civil Court
5  automatically issues in every single case, but I clarified a
6  little bit of it because I find that, you know, it really
7  doesn't cover third parties as well who may want to make
8  confidentiality designations or when third parties have
9  documents and produce them, but other than that, it is the
10 standard one that the District of Connecticut issues.
11             And while, certainly, we're welcome to entertaining
12 other versions that your Honor might prefer, we believe that
13 this case -- that there's no -- this case is an appropriate one
14 for having a confidentiality order, and while a party may abuse
15 that, certainly, with over-designations, we recognize that,
16 there is always a procedure for dealing with that, and if a
17 party is improperly identifying, then that's, you know, on them
18 and, you know, sanctions could potentially issue.  For
19 over-designation.
20             MR. WHITNEY:  May I respond?
21             MR. WOLMAN:  If they have one.
22             THE COURT:  Here's what I think.  It does look fairly
23 standard.  The deposition paragraph, which is paragraph 11, I
24 don't read that as permitting anybody to designate a deposition
25 transcript as confidential or highly confidential unless it

1  meets the definition of confidential or highly confidential in
2  paragraphs 3 and 4, and then only those portions would be kept
3  confidential under the order, so here's what I'm going to do.
4         My guess is that this is not going to be the only
5  dispute you have, so I'm going to refer the parties to the
6  magistrate judge for general pre-trial supervision.  In the
7  meantime, and I know you have a deposition coming up, the
8  parties are to be governed by the provisions of the proposed
9  order, and for the record, that's 81-1 on the docket, and they
10 should tee this -- they should tee up for the magistrate judge
11 their, their objections and their respective positions, and the
12 magistrate judge can adjust as he or she sees fit.  Let me see
13 who your magistrate judge is.  Judge Krause.  Judge Krause can
14 alter as he sees fit.  But for the moment, it seems pretty
15 standard, the public right of access doesn't apply to materials
16 just exchanged between the parties, and I don't think it's
17 necessarily as overbroad as Mr. Whitney thinks.  I recognize he
18 hasn't had a whole a lot of time to review it either, and it is
19 my hope that maybe you'll be able to agree on something, but if
20 not, the issue will be up to...Judge Krause.
21        So let me go back to Mr. Clark for the date for our
22 conference on the proposed 12(c) motion.
23        THE DEPUTY CLERK:  Yes, Judge.  October 17th, 2024, at
24 eleven a.m.
25        MR. WOLMAN:  Your Honor, I am religiously observant,

1  that is the first day of Sukkot and I do not work the first and
2  second days of Sukkot.
3          THE COURT: All right, we'll find another day.
4          MR. WOLMAN: And by the way, I should note that
5  Thursday the 24th and Friday the 25th are Shemini Atzeret and
6  Simchat Tora, and I will not be working either.
7          THE COURT: Okay, we'll work around all of those.
8          But you can work on the sort of middle days of Sukkot,
9  correct?
10         MR. WOLMAN: Yes. The middle days are perfectly fine.
11         THE DEPUTY CLERK: October 23rd, 2024, at two-thirty
12 p.m.
13         THE COURT: Does that work?
14         MR. WOLMAN: Thank you, your Honor.
15         THE COURT: All right, I will talk to you all then,
16 and you should be hearing from Judge Krause fairly soon, but I
17 do encourage you to try to come to an agreement on your own
18 because I think you should be able to do that.
19         All right, thank you, all.
20         MR. WOLMAN: Thank you, your Honor.
21         THE COURT: Bye-bye.
22         MR. WHITNEY: Thank you.
23
24
25