# **Exhibit A**

Representation Agreement



# LEGAL SERVICES FEE AGREEMENT

**RANDAZZA LEGAL GROUP**[1] ("RLG") will provide legal services to **Project Veritas** (referred to informally as "Client") on the terms in this Agreement ("Agreement").

**1.    CONDITIONS.**  There is no relationship until Client returns a signed copy of this Agreement and pays the retainer.  If Client fails to do either one within 3 days, this Agreement is void.

**2.    SCOPE OF SERVICES.**  Client hires RLG to represent Client with respect to bringing claims against James O'Keefe arising from his employment with and separation from Client, including, but not limited to, through litigation and/or arbitration.  Representation of Client in any other matters or beyond this scope must be separately agreed to in writing and a separate retainer will be required.

RLG will not harm the First Amendment, nor through inaction will we allow harm to come to the First Amendment.  In the event that the First Amendment conflicts with your legal interests, we will advise you of this fact and give you the choice of avoiding that conflict or we will allow you to retain alternate counsel.

**3.    LEGAL FEES & RETAINER.**

   a. **Our retainers are held as security deposits**.  You place an initial retainer in our trust account, where it remains as a **security deposit** until the conclusion of the representation.  In some circumstances, upon request and approval, we may apply retainer funds to a bill, but you agree to replenish the retainer within 7 days of use.  Please be advised that our trust account is located in the State of Nevada, and by entering into this agreement, you hereby consent to all trust funds being held in the State of Nevada.[2]  Further, we may request and require an increase in retainer funds, if your volume of work increases.  Think of the retainer as if it were a rental "security deposit," which will remain in trust until the conclusion of the representation.  We do NOT accept credit cards for retainer deposits – check or wire only.

   b. **Before beginning work, RLG requires a security deposit retainer of $25,000, which will be maintained in our trust account (or an escrow account) until the conclusion of representation (or until it is disbursed to pay an outstanding bill).**

   _____ (Client's initials acknowledging that the retainer is held as a security deposit)

   c. After the matter is completed and our invoices have been paid, the balance (if any) of the retainer, less any incidental fees or expenses remaining unpaid at the conclusion, will be returned to you. In the event that our invoices are not being paid

---

[1]    Legal entity is **Randazza Legal Group, PLLC**, a Nevada professional limited-liability company. For purposes of N.Y. Jud. Law 470, RLG's office address is 43-10 Crescent Street, Suite 1217, Long Island City, NY 11101. (template Last revised 02/05/2020).

[2]    If we are going to hold your deposit for a long term, we will endeavor to place it into a separate escrow account, so that you can benefit from it earning interest.  This escrow account will be disclosed to you upon being established.

Page 1 of 16



client's initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

    as set forth below, RLG reserves the right to apply any or all of your trust account balance to outstanding bills without notice to you.

d. **NET 21 PAYMENT DISCOUNT. IF YOU PAY YOUR BILL IN 21 DAYS, YOU WILL RECEIVE A DISCOUNT ON YOUR BILL.** Your bill may be rendered to you with the full, un-discounted amount, and a note telling you your discounted amount. Sometimes, we may render you a bill that has the discounted amount already on there. If you pay your bill within 21 days, the discounted amount will apply. If you fail to pay the bill within 21 days, you will be required to pay the full, undiscounted amount presented on the invoice.

    **On this matter, you will receive a 25 % discount on our legal fees for net 21. Please note that costs, expenses, and attorneys performing paralegal tasks are not discounted.**

    _____ Initial here to attest that you understand that this discount will expire once 21 days passes from the rendering of the bill, thus requiring full payment.

    We will, upon reasonable request, extend this period. However, any extension must be requested via email and must be agreed to via email in less than 30 days from the bill being rendered. Further, while we do not bill for billing inquiries or administrative issues when your account is in good standing, once your account goes late, we will bill for billing inquiries and any administrative issues that might otherwise have been unbilled as a courtesy to you.

e. If you fall behind in your payments, we will pay our bill with your security deposit and terminate the relationship after appropriate notice and taking appropriate measures to protect your interests.

f. Hard costs (as defined under HARD COSTS below) will not be advanced by RLG. If RLG is required to pay your costs for you, RLG will mark them up with a 15% administrative fee.

g. Client agrees to pay RLG at the hourly rates listed on <u>Addendum A</u>, the Firm's current Rate Sheet. <u>Addendum A</u> is hereby incorporated by reference.

h. Client expressly acknowledges that the rates in Addendum A are not set by law but are negotiated between RLG and Client.

i. No work product will be delivered, nor any files transferred of any kind if you have an outstanding balance.

j. As stated above, which Client should presume that all time spent attending to Client's case by any member of RLG's staff will be billed, RLG may elect to "write off" or "no charge" some costs, expenses, and fees for expert services. Any such write-offs are discretionary by RLG, and if any time is written down, it should be considered to be a client-courtesy discount, which can be re-rendered as billable in the event of a billing dispute over other time entries.


Client's Initials

Legal Services Fee Agreement (Rev. 21 July 2020)
May 19, 2023
Page 3 of 9

**4.     OUTSIDE COUNSEL.** In the event that issues arise that **require** consultation from outside attorneys, **including ethics counsel**, we will pass these along to you as costs, which you agree to pay.  This will not be the case if we must retain ethics counsel in order to advise on any failure or omission on our part, but rather if we must consult with ethics counsel to advise you on if you ask us to do something with ethical implications.  Also, sometimes, opposing attorneys threaten ethics issues as a manner of exacting an advantage in litigation.  If this occurs, our hiring of ethics counsel is billable to you, as it is a necessary portion of your representation.  These costs will **not** be marked up.  You will be charged only the actual costs of these outside attorneys' bills.

**5.     BILLING DISPUTES:**  It is possible for mistakes to happen, and Client is not expected to pay for any charges that are incorrect.  Client may call RLG's office with an inquiry concerning billing statements (directed to the Firm Administrator).  Most actual errors can be resolved with a simple phone call, and RLG's staff will inform Client whether a mistake is acknowledged, and promptly send an amended statement showing any adjustment or correction resulting from any such call, or will simply instruct Client of the new balance.  Furthermore, if any charges are disputed in any way other than an error, we are always willing to discuss and negotiate the matter with you.

**Client agrees to bring any billing dispute to RLG's attention within 60 calendar days of the bill being rendered.  This is because as time goes on, memories fade and it may be difficult to recall all details that may go into a billing dispute.  If Client disagrees with any billing entry or any particular bill, RLG will endeavor to resolve it with you informally.  Client agrees that if Client has not raised a concern after 60 days, Client waives the right to challenge the bill in whole or in part.[3]  Client further agrees that any bill that is reduced or adjusted pursuant to Client's request or RLG's decision to compromise the bill will be from that point forward, unchallengeable, as RLG and Client stipulate that Client's payment of a compromised amount will be deemed to be a stipulation that the compromised amount is fair, reasonable, and the result of a settled dispute.  Finally, any bills that already contain a "courtesy discount" or other discount granted by RLG will, in any fee dispute, have that discount reversed.  This does not apply to prompt payment discounts, which are irrevocable if you do indeed pay your bill within 21 days of it being rendered.**

**6.     CREDIT CARD PAYMENTS:**  Client agrees that Client waives the right to any charge-back on any credit card payment.  In the event that Client makes a payment that Client wishes to reverse, Client must dispute the payment with RLG directly, and if this dispute is not resolved to Client's satisfaction, through fee arbitration as provided for elsewhere in this agreement.  In any event, all payments are subject to the dispute period discussed above.  Therefore, any chargeback made more than 21 days after the bill is rendered is deemed to be null and void and Client authorizes RLG to instruct their credit card company that the chargeback is contractually void.

**7.     HARD COSTS AND TRUST ACCOUNTS**.  RLG may incur various costs and expenses ("hard costs") in performing legal services under this agreement, such as the cost of mediation fees, filing fees and other similar out of pocket expenses.  Client agrees to pay all such costs directly.  If RLG must pay these fees on Client's behalf, RLG will add a 15% administrative fee.

---

[3]   This paragraph does not apply to CA or IN Clients.  In the event that your state prohibits this, your state's law or rules will govern.

Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

Legal Services Fee Agreement (Rev. 21 July 2020)
May 19, 2023
Page 4 of 9

These costs and expenses commonly include: notary fees, deposition costs, messenger and other delivery fees, postage, photocopying and other reproduction costs, travel costs including parking, mileage, transportation, meals and hotel costs, investigation expenses, consultants' fees, professional mediator, arbitrator and/or special master fees and other similar items.

With respect to transportation for client matters, RLG reserves the right to fly business-class when traveling to and from client matters, and Client agrees to pay such costs.  When doing so, in the event that we work on your matter during the flight (which we virtually always will), you will be billed only at the lower "travel time" rate, and not the "actual work rate."

We will often also reserve flexible fares, despite the fare being higher.  The reason being that often hearings change, meetings change, and on average, we believe that clients save money when flexible fares are used, rather than charging clients for change fees or nonrefundable tickets.  When car rentals are required, RLG will rent economy class vehicles unless there is a compelling need for a larger vehicle.  RLG will endeavor to rent economical hotels, but may rent higher end hotels in the interest of geographic convenience.  The default will be an AC Marriott, Aloft or similar hotel.

With respect to costs, you are encouraged to pay all costs yourself, as doing so will incur no service charge.  We recommend keeping a credit card on file, which you will authorize us to charge expenses to.  **We reserve the right to mark costs up by 15% as an administrative charge if we pay the costs for you.  If you pay them directly, you will not incur such a charge.**  In the event that we waive this for you at any time, it does not mean that we waive it indefinitely.

**Please be advised that, if RLG holds any monies in trust for Client, Client consents that it be held in trust in a bank account in the State of Nevada or the Commonwealth of Massachusetts.**

**8.     ORDER OR AGREEMENT FOR PAYMENT OF ATTORNEYS' FEES OR COSTS BY ANOTHER PARTY.**  The court may order, or the parties to the dispute may agree, that another party (such as an insurer or the defendant) will pay some or all of the Client's fees, costs or both.  Should that occur, RLG shall receive as RLG's fees the amount of the award of attorneys' fees and costs as made by the Court or by agreement of the parties to the dispute, less any fees or costs already paid by Client to RLG.

**9.     ATTORNEY DISCHARGE AND WITHDRAWAL.**  Client may discharge RLG at any time.  RLG may withdraw at any time at RLG's discretion **but, with all safeguards due to the client under the rules of professional responsibility**.  Client has been informed that among the events that should be expected to cause RLG's withdrawal from this case are Client's breach of any portion of this Agreement including (and especially) non-payment or late payment of bills.  If Client shall desire to discharge RLG, then RLG shall be paid the amount then due and owing for work performed for Client.

**10.    DISCLAIMER OF GUARANTEE AND ESTIMATES**.  Nothing in this agreement and nothing in RLG's statements to Client will be construed as a promise or guarantee about the outcome of any matter for which Client has retained RLG.  RLG makes no such promises or guarantees.  It is understood that it is impossible to predict how long a case will take, how much it will cost, or what the resulting outcome may be.  RLG does not make and has not made any guarantees to Client about the length or expense of Client's case.  RLG has not made and will not make


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

any guarantee as to the outcome of Client's case. Client has been informed and acknowledges that it is quite likely that the costs, expenses, and fees for expert services incurred in Client's case will substantially exceed the initial retainer fee deposit.

No advice is given regarding tax consequences, and RLG is specifically not providing tax advice, although questions relating to tax matters may very well come up during the course of the case. Client agrees to seek tax advice elsewhere, and hold RLG harmless from any tax effects.

**11. CONCLUSION OF SERVICES.** When RLG's services conclude, all unpaid charges will immediately become due and payable. RLG is authorized to use any funds held in RLG's trust account as a deposit against costs to apply to such unpaid charges. After RLG's services conclude, upon request, Client's file and property will be delivered to Client whether or not Client has paid any fees and/or costs owed to RLG. Client understands that RLG will retain a copy of the file at the Client's expense if the file is returned to Client.

**12. ENTIRE AGREEMENT.** This Agreement contains the entire Agreement of the parties. No other agreement, statement or promise made on or before the effective date of this Agreement will be binding on the parties.

**13. SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.** If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be binding on the parties.

**14. MODIFICATION BY SUBSEQUENT AGREEMENT.** This Agreement may be modified by subsequent Agreement of the parties only by an instrument in writing signed by both of them or an oral agreement only to the extent that the parties carry it out.

**15. GOVERNING LAW AND DISPUTE RESOLUTION.** This agreement is governed by the laws of the Commonwealth of Massachusetts with venue limited to any court in Essex County having jurisdiction; however, any judgment or arbitration award is enforceable in any court having jurisdiction. You agree to submit to binding arbitration in connection with any attorneys' fees dispute arising out of this agreement.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

**16.     ARBITRATION OF DISPUTES.**

You agree, without any limitation, that any disputes that Client may have with RLG will be *first* resolved through mediation.  Mediation is *mandatory*.  In the event that you decline to mediate your dispute with RLG, you agree that you waive any and all claims against RLG, irrevocably, and without any recourse whatsoever until mediation has taken place.  In no uncertain terms, you agree that mediation is a condition precedent before any arbitration or lawsuit.  RLG agrees to pay for the first 2 hours of mediation.  Thereafter, RLG and Client will equally split the cost of mediation.  This mediation shall be in person and in Essex County, Massachusetts, unless other conditions are mutually agreed upon.

If RLG is the aggrieved party, and they call for mediation, then you agree that you will participate in the mediation.  If you fail to or refuse to participate in the mediation, then you agree that you waive any counterclaims that you may have against RLG, permanently and irrevocably.

In the event that mediation fails to resolve the matter, you then agree to arbitrate any dispute that you may have with RLG.  You agree that you consent to binding "fee arbitration" before the Massachusetts Bar Association Fee Arbitration Board.  The rules concerning this arbitration program are here:  <https://massbar.org/docs/default-source/fee-arbitration-board/fab-petitions-and-rules/fabrules.pdf>.

In the event that arbitration is over anything other than our fees, you agree to confidential binding arbitration in Essex County, Massachusetts.  The Parties agree that any litigation to compel arbitration or to confirm or vacate an arbitration award shall be resolved in the courts of Essex County, Massachusetts.  The Parties hereby consent to personal jurisdiction and venue in the Commonwealth of Massachusetts for such arbitration and/or litigation.  This Agreement to Arbitrate is intended to be broadly interpreted.  The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate.

The parties must submit their claims to binding arbitration before a private arbitrator.  The parties both agree that they will not use the services of JAMS or AAA for the arbitration, and any arbitration filed under either of those companies' auspices is immediately vacatable, unenforceable, and non-confirmable.  If the parties can not agree on an arbitration provider, they shall use the services of Rob Bare.  Any private arbitration must meet the following conditions:

   a. It may not be through JAMS or AAA.
   b. The arbitrator shall apply Massachusetts law.
   c. The Arbitrator must swear or affirm that they have not presided over a case involving either party or either party's counsel for the prior five years.
   d. The Arbitrator must agree to not take on any matter involving either party or either party's counsel for five years after the arbitration, with any violation of this requiring the disgorgement of any arbitration fees earned.  Any arbitration conducted by an arbitrator who does not so agree shall be unconfirmable.
   e. The arbitration decision may be re-submitted to a new arbitrator in the event of clear error of law or fact.  The party submitting the matter to a new arbitrator shall pay the second arbitrator's fees and expenses. However, if that second arbitrator finds that there was a material error of law or fact in the decision that affected the


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

  outcome of the first arbitration, the other party shall reimburse the re-submitting party for half the second arbitrator's fees and expenses.

 f. If the second arbitrator does not find that there was a material error of law or fact in the decision that affected the outcome of the first arbitration, then the party re-submitting it shall pay the other party's attorneys' fees and expenses expended in the second arbitrator.

 g. The arbitration must be confidential and under seal to the greatest extent possible, with liquidated damages of $25,000 per occurrence for any violation of such confidentiality and/or seal.  Notwithstanding the foregoing, Client shall not be prohibited from making any relevant or necessary disclosures in any grievance or ethics complaint.

***NOTICE: This agreement contains provisions <u>requiring arbitration of fee disputes</u>.  Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements.  Arbitration proceedings are ways to resolve disputes without use of the court system.  By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.***

I have directed additional attention to this Arbitration clause, and I agree to this clause and its limitations on liability for both parties.

_____ **(Client Signature)**

**17. LIEN AND GUARANTEE.**  Client hereby grants RLG a lien on any and all claims or causes of action that are the subject of this engagement.  The lien will be for any sums owing to RLG at the conclusion of services performed.  The lien will attach to any recovery you may obtain, whether by arbitration award, judgment, settlement or otherwise.  The effect of such a lien is that RLG may be able to compel payment of fees and costs from any such funds recovered on your behalf even if RLG has been discharged before the end of the case.  **Because a lien may affect your property rights, you may seek the advice of an independent lawyer of your choice before agreeing to such a lien.  By signing this Agreement, you represent and agree that you have had a reasonable opportunity to consult such an independent lawyer and—whether or not you have chosen to consult such an independent lawyer— you agree that RLG will have a lien as specified above.**

The Client's signatory to this document personally guarantees Client's legal fees, and further agrees to joint and several liability for all legal fees incurred by Client in the event of non-payment. The foregoing section thus may affect the rights of the individual signatory, and all disclaimers therein apply to the signatory as well as the Client.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

**18. CONSULTATION WITH SEPARATE ATTORNEY.** Client acknowledges that she/he has read and fully understands all of the terms and conditions of this Agreement before signing it, and has been given 10 days to contact another attorney to review this fee agreement. Within those 10 days, Client may cancel this agreement and will only be responsible for charges already incurred. Client acknowledges that RANDAZZA LEGAL GROUP has recommended to Client that Client seek the services of a separate attorney to review this fee agreement. Client further acknowledges that he/she is able to request, in writing, more time to accomplish the review, should ten days not be adequate.


_____ (Client's initials)

**THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS CONTAINED IN THIS DOCUMENT AND AGREE TO THESE TERMS AS OF THE DATE RLG FIRST PROVIDED SERVICES. IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY FOR ALL OBLIGATIONS UNDER THIS AGREEMENT. CLIENT SHALL RECEIVE A FULLY EXECUTED DUPLICATE OF THIS AGREEMENT.**

DATED: 05 / 21 / 2023

PROJECT VERITAS

By: _Tom O'Hara_

Tom OHara
For Project Veritas

EIN: 272894856

DATED: _____

RANDAZZA LEGAL GROUP, PLLC

By: _____

For Randazza Legal Group, PLLC.

## CLIENT CONTACT INFORMATION

CLIENT NAME: Tom oHara

COMPANY NAME: Project Veritas

MAILING ADDRESS: 135 Hoyt Ave

Mamaroneck

New York

10543

CELL PHONE: ███████

ALTERNATE PHONE: ███████

EMAIL ADDRESS: ███████████████████

WEBSITE(S): Www.projectveritas.com

PERSONS AUTHORIZED TO DISCUSS LEGAL MATTERS
FOR COMPANY OR ORGANIZATION:

NOTES:

Client's Initials

Addendum A
**RATE SHEET**

Client agrees to pay RLG at the following hourly rates:

| Timekeeper | Hourly Rate | Effective discount rate for net 21 |
|---|---|---|
| Marc J. Randazza – Partner | $ 1,000.00 /hr | $750.00 /hr |
| Other Partner Level Attorneys | $ 750.00 /hr | $562.50 /hr |
| Associates | $ 450.00 /hr | $337.50 /hr |
| Attorneys Performing Paralegal Tasks | $ 200.00 /hr | $200.00 /hr |
| Paralegals | $ 175.00 /hr | $131.25 /hr |

*Discount for Prompt Payment—Client will receive this discount only if full payment on the invoice is received by RLG within 21 calendar days of the invoice date. If payment is not received within this time period, the full rates will apply.

Note that attorneys performing paralegal tasks are <u>not</u> discounted, as often we blend attorney tasks with paralegal tasks. Accordingly, this hourly rate already represents a significant discount.


Initial Here

Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

Addendum B
## OPTIONAL CLIENT CREDIT CARD AUTHORIZATION

I, __Hannah Giles__, (hereinafter, the "Client") hereby authorize RANDAZZA LEGAL GROUP, PLLC to charge my credit card for legal services upon the rendering of bills:

NAME ON CARD: Thomas OHara

BILLING ADDRESS: 135 Hoyt Ave

Mamaroneck

New York

CARD NUMBER: ███████████

EXPIRATION DATE: ███     CVV: ███

SIGNATURE: *Tom O'Hara*

DATE SIGNED: 05 / 21 / 2023

**IMPORTANT NOTICE:**

**Client agrees that Client waives the right to any charge-back on any credit card payment. In the event that Client makes a payment that Client wishes to reverse, Client must dispute the payment with RLG directly, and if this dispute is not resolved to Client's satisfaction, through fee arbitration as provided for elsewhere in this agreement. In any event, all payments are subject to the dispute period discussed above. Therefore, any chargeback made more than 30 days after the bill is rendered is deemed to be null and void and Client authorizes RLG to instruct their credit card company that the chargeback is contractually void.**


Initial here


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

Addendum D
**DUTY TO PRESERVE EVIDENCE**

Once a case enters the discovery phase, the parties are expected to exchange documents and other evidence. The purpose of discovery is for the parties to produce relevant documents, but relevancy can be construed quite broadly. A document you believe is not relevant to the case might still be relevant to another party who is trying to prove their theory.

A party has a duty to preserve evidence before, during, and sometimes after litigation. Specifically, when a party knows that evidence under its control is relevant to pending litigation or should know that evidence may be relevant to future litigation, the party has an obligation to preserve that evidence. In other words, your duty to preserve evidence begins when you have reason to believe that litigation is imminent, even before any litigation is filed.

Documents which need to be preserved can vary. You must first to determine where the relevant documents might reside. Keep in mind that the files might not be in your physical possession, but as long as they are under your control, you have a duty to preserve them. Documents could be your email inbox, on your laptop computer, in your Dropbox account, on your smartphone, or in an online service. The documents themselves can likewise vary. Relevant documents in litigation can include emails, text messages, Facebook messages, QuickBooks files, voicemails, Word documents and PDFs, calendar entries, Excel files, social media profiles, videos, and photographs.

The best practice we can recommend is for you to do your best to not delete *anything* once you are involved in litigation or once you have reason to believe that litigation is imminent. This includes making sure that such files are not deleted automatically – if your file systems are set to delete emails older than 120 days, for instance, you have a duty to suspend that practice to make sure nothing is deleted. If you get a new phone or laptop, this also means that you should either keep that device available for document recovery or create a complete backup of the files on that device before disposing of it.

A party that fails to preserve relevant documents and information may be sanctioned by the court. Sanctions can range from a slap on the wrist (a monetary fine) to an impediment to victory (court instructs the jury to assume that the information that was lost was detrimental to the party that lost it) to case-ending (court enters judgment against the party who lost the information). Case-ending sanctions are very rare and typically only levied against parties who have committed multiple infractions throughout discovery. However, it does happen.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former cell phones, computer systems and other media and devices (including personal digital assistants, voice-messaging systems, and online repositories).

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP3 files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO).

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible.

You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI. This duty extends to ESI within your control, such as data you may obtain or demand from vendors such as web hosts and payment processors, i.e., PayPal or Venmo. The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary.

**Preservation Requires Immediate Intervention**. Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

**Suspension of Routine Destruction.** You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;

- Using data or media wiping, disposal, erasure or encryption utilities or devices;

- Overwriting, erasing, destroying or discarding back up media;

- Re-assigning, re-imaging or disposing of systems, servers, devices or media;


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and,

- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion.** You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to you or your employees and officers. It's simply an event that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation by Imaging.** You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file. With respect to the hard drives and storage devices of each person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from January 1, 2014 to present, as well as recording and preserving the system time and date of each such computer.  Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. Each such image should be preserved without alteration.

**Preservation in Native Form.** You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible

**Metadata.** You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the

Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

**Servers.** With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

**Home Systems, Laptops, Online Accounts and Other ESI Venues.** Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message folders) should be preserved.

**Ancillary Preservation.** You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like. You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate.** As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

**Agents, Attorneys and Third Parties.** Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney,


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

**System Sequestration or Forensically Sound Imaging.** We suggest that, with respect the person or persons responsible for the content of your web pages, removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the event you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols.** We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics.

**Do Not Delay Preservation.** You should not defer preservation steps pending settlement or any other discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

**Confirmation of Compliance. Please sign below to acknowledge that you have received and reviewed this information concerning your duty to preserve evidence. If you have any questions, please reach out to our office as soon as possible.**

DATED: 05 / 21 / 2023         By: *Jem O'Hara* (signature)

Hannah Giles
For Project Veritas


Client's Initials

Doc ID: e0abacee8114f40f098c5d456a275c810dfcdb09

# Dropbox Sign

Audit trail

| | |
|---|---|
| Title | Fee Agreement |
| File name | 2023.05.19 Projec...Fee Agreement.pdf |
| Document ID | e0abacee8114f40f098c5d456a275c810dfcdb09 |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Pending signature |

## Document history

**SENT** 05 / 19 / 2023 18:04:26 UTC
Sent for signature to Hannah Giles ▮▮▮▮▮▮▮▮▮▮▮▮ and Marc J. Randazza (mjr@randazza.com) from staff@randazza.com
IP: 24.234.218.148

**VIEWED** 05 / 19 / 2023 19:28:39 UTC
Viewed by Hannah Giles ▮▮▮▮▮▮▮▮▮▮▮▮
IP: 75.105.35.187

**SIGNED** 05 / 22 / 2023 00:58:19 UTC
Signed by Hannah Giles ▮▮▮▮▮▮▮▮▮▮▮▮
IP: 73.227.71.142

**INCOMPLETE** 05 / 22 / 2023 00:58:19 UTC
This document has not been fully executed by all signers.

Powered by Dropbox Sign