UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROJECT VERITAS and PROJECT
VERITAS ACTION FUND,

    Plaintiffs / Counterclaim Defendants,

    v.

JAMES O'KEEFE, TRANSPARENCY 1,
LLC d/b/a O'KEEFE MEDIA GROUP,

    Defendants / Counterclaimants.

Civil Action No. 7:23-cv-04533

**MEMORANDUM OF LAW**

Counterclaimants JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP (collectively "OMG" or "Defendants"), hereby submit this memorandum of law in support of their Response Letters [ECF Nos. 164 & 167] to Counterclaim-Defendants, PROJECT VERITAS and PROJECT VERITAS ACTION FUND'S (collectively "PV" or "Counterclaim-Defendants") motions [ECF No. 161] to be heard at the status conference scheduled by the Court to be held on June 9, 2025, and in support state:

**I.**    **INTRODUCTION**

OMG submits this memorandum of law in support of the argument it will present at the status conference scheduled by the Court for Monday, June 9, 2025. OMG opposes the relief sought in PV's "response letter" of May 28, 2025 [ECF No. 161] ("PV's Response Letter"), which accuses OMG of various forms of litigation-related misconduct arising

out of OMG's journalism. OMG has not engaged in any misconduct, and the injunction and expanded protective order PV seeks are improper and would violate the First Amendment of the United States Constitution.

## II. REVELANT FACTUAL BACKGROUND

OMG is a media outlet that conducts investigative journalism. The present lawsuit arises from an acrimonious and public split between James O'Keefe ("O'Keefe"), the CEO and public face of OMG, and PV, entities O'Keefe founded. OMG asserts that the split was driven by PV insiders who had conflicts of interest and who sought to suppress O'Keefe's reporting and push him out of PV.

This obviously newsworthy fallout between O'Keefe and PV has generated great interest among OMG's followers, and OMG, as a media outlet, has continued to investigate and report on the events that gave rise to it.

PV accuses OMG of supposed litigation-related misconduct in its reporting on this topic. Specifically, PV accuses OMG of publishing (1) excerpts of video depositions of potential trial witnesses and (2) videos of James O'Keefe approaching and conducting journalistic interviews of potential witnesses. [ECF No. 161]. PV suggests that the latter amounts to "harassing trial witnesses" justifying an injunction against O'Keefe to prevent any further interviews. [ECF No. 161, p. 3]. Further, PV asks the Court to expand the scope of the protective order already governing discovery in this case such that all depositions must hereafter be "taken by telephone or other remote means." [*Id.*]

Notwithstanding PV's accusations, OMG and O'Keefe have committed no wrong and have acted at all times within their rights as citizens and journalists. There is no basis

2

for the relief PV seeks.

## III.  ARGUMENT

### A. OMG Has Not Violated the Protective Order

The Court, having reviewed PV's Response Letter, directed PV to provide an additional letter regarding whether any of the conduct discussed in PV's Response Letter violates the protective order ("Protective Order") [*see* ECF No. 99] governing discovery in this proceeding. [ECF No. 163].  In particular, the Court instructed PV to address Paragraph 3 of the Protective Order, which concerns restrictions on the use of deposition transcripts that have been designated as confidential/restricted.  [*Id.*]

In PV's June 2, 2025, letter responding to the Court's instruction, PV admitted that "PV does not believe that any of the conduct discussed in the letter at ECF No. 161 violates the Protective Order."  [ECF No. 164].  PV reached this conclusion, no doubt, because the confidentiality provisions of the Protective Order only apply where counsel for a party has designated discovery material as confidential/restricted, and the deposition content cited to by PV in PV's Response Letter has not been designated as confidential/restricted by any party. [ECF No. 99, ¶ 1].  Nor could it have been, because none of the published deposition excerpts contain material that qualifies for designation under the Protective Order (*i.e.* information that is "proprietary, a trade secret, or otherwise sensitive non-public information). [*Id.*]

PV nevertheless contends that it cannot be certain no violations have occurred because "PV has not received a copy of the full-length video located on [OMG's] website, which is only otherwise available for a fee payable to [OMG]". [ECF No. 164].  However,

3

as PV surely knows, OMG's subscription fee is only $9.00 a month, and it can be cancelled at any time. PV is apparently unwilling to pay even this nominal $9.00 fee to find out if there is a basis for its accusations against OMG.

To remove any doubt, OMG assures the Court that no materials published behind its paywall (or otherwise) have violated the Protective Order governing discovery in this case.

**B. OMG Has Not Engaged in Witness Tampering, Harassment, or Intimidation**

PV's Response Letter describes OMG's reporting with regard to potential witnesses as "harassing trial witnesses" and seeks to enjoin O'Keefe from such alleged "harassment."

In support, PV claims that OMG has published "videos of [O'Keefe] (or his agents)…appearing at the home of [a] witness" and "seemingly chasing a trial witness through the streets." [ECF No. 161]. As to the latter of these, no video of O'Keefe or any OMG agents chasing a potential witness to this proceeding "through the streets" has ever existed or been published, and OMG does not know the basis of this claim. [*Id*.]

As to the former assertion, it appears to refer to an approximately six-minute interview with George Skakel in front of his home. As the Court will see at the hearing, at the outset of the interview, Mr. Skakel greeted O'Keefe in a friendly manner, telling him "it's nice to see you" and indicating no opposition to O'Keefe approaching him or speaking with him. The interview was at times contentious, but Mr. Skakel never appears intimidated, and he never instructs O'Keefe to leave his property. The content of the interview concerns such topics as Mr. Skakel's undisclosed investments while a member

4

of the Board of Directors of PV and anonymous tweets posted by Mr. Skakel concerning the dispute between O'Keefe and PV. The interview was newsworthy, as it sought to expose the previously secret reasons behind the breakdown in the relationship between PV and O'Keefe. OMG published excerpts of the interview as part of a teaser to a forthcoming documentary on the schism. Nothing about the interview suggests OMG or O'Keefe were attempting to discourage Mr. Skakel from testifying. To the contrary, OMG is the party that noticed and took the deposition of Mr. Skakel in this case.

It is not clear from PV's Response Letter if PV is suggesting that OMG or O'Keefe have committed a criminal infraction, such as witness tampering or witness intimidation. *See* N.Y. Penal Law §§ 215.10-215.14; 215.15-215.17. If so, this suggestion is a non-starter, as all of those crimes require an intent to delay or hinder the witness from testifying, an element that is not present here.[1] *Id.* By contrast, OMG's interview with Mr. Skakel was demonstrably for journalistic purposes since it was published as part of OMG's reporting on the split between PV and O'Keefe. Further—with the exception of Tampering with a Witness in the Fourth Degree—all of these crimes solely concern witnesses to criminal proceedings, another element that is not present here. *See* N.Y. Penal Code § 215.10.

### C. The Protective Order Should Not Be Expanded and No Injunction Should be Issued

Finally, PV seeks to expand the Protective Order that already governs discovery

---

[1] Federal witness tampering is also not applicable here. 18 U.S.C. § 1512. That statute requires both that a person act with an intent to "influence, delay, or prevent testimony" and that the person do so by either "kill[ing] or attempt[ing] to kill" the potential witness, "using physical force or the threat of physical force against" the potential witness; or using "intimidation, threats, or corrupt[] persua[sion]" against the potential witness. None of those are present here.

5

in this case pursuant to Fed. R. of Civ. P. 26(c) and 30(b)(4) and seeks an injunction against O'Keefe to prevent him from interviewing and reporting on potential witnesses. [ECF No. 161].

As an initial matter, it is important to remember the First Amendment context in which PV's requests are being made and that OMG/O'Keefe's rights under the First Amendment pertain both as citizens and members of the media.

The First Amendment provides that "Congress shall make no law. . . abridging the freedom of speech, or of the press. . ." U.S. Const. amend. 1. The First Amendment protects a wide range of expressive activities, including heated or controversial speech. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020) (government generally has no power to restrict expression because of its message); *see also Barboza v. D'Agata*, 151 F. Supp. 3d 363, 370 (S.D.N.Y 2015) ("provocative and challenging" speech protected unless it goes "far above public inconvenience, annoyance or unrest.")

Further, the media has a broad right to report on ongoing litigation. *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986) ("A court may impose a prior restraint on the gathering of news about one of its trials only if the restraint is necessitated by a compelling governmental interest.") (citing to *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07 (1982)). And First Amendment analysis broadly construes what entities will qualify as being members of the "media." *See Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) ("[t]he press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion.")

With regard to PV's request for an expansion of the Protective Order, the current

6

Protective Order already allows any party to limit the disclosure of information that party deems to be "proprietary, a trade secret, or otherwise sensitive non-public information." [ECF No. 99]. PV does not explain why these protections are inadequate and why the Protective Order should be expanded such that depositions need to be limited to telephone or other remote means. [ECF No. 161].

Rule 26(a) places the burden on PV to show "good cause" for an expansion of the Protective Order. Fed R. Civ. P. 26(c); *Republic of Turk. v. Christie's, Inc.*, 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018) ("[t]he burden of showing good cause for the issuance of a protective order falls on the party seeking the order."). This showing of "good cause" requires "a particular and specific demonstration of fact." *Republic of Turk.*, 312 F. Supp. 3d at 388.

But PV has not made any meaningful attempt to meet its burden. Nor could it, because the relief PV seeks—that all future depositions be conducted remotely—does not provide PV any relief at all from the supposed harm of OMG using deposition excerpts in its reporting.[2]

With regard to PV's request that the Court enjoin James O'Keefe, it is unclear what exact relief PV is asking for. In PV's own language, it seeks an injunction preventing "O'Keefe from harassing trial witnesses." [ECF No. 161] But as discussed above, O'Keefe's reporting has not constituted witness harassment. It is further unclear how PV would have the Court craft an injunction that does not impair OMG/O'Keefe's First

---

[2] For the same reason, PV lacks a basis under Rule 30(b)(4) for asking that all future depositions be conducted remotely.

7

Amendment rights to report on this case.

Additionally, PV seeks this injunction under Rule 26(c), which concerns discovery activities. Fed. R. Civ. P. 26(c). However, because Rule 26(c) concerns discovery, it does not provide a mechanism by which PV can ask the Court to order OMG and O'Keefe to refrain from conducting journalistic interviews. It seems that what PV really wants is a gag order.

Gag orders constitute prior restraints on speech under the First Amendment. *Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 609 (2d Cir. 1988). There is a "heavy presumption against [the] constitutional validity" of prior restraints on speech. *N.Y. Times Co. v. U.S.*, 403 U.S. 713, 714 (1971). As such, gag orders are "presumptively unconstitutional" and "must survive strict scrutiny." *In re Murphy-Brown, LLC*, 907 F.3d 788, 797 (4th Cir. 2018) (citing to *Nat'l Inst. of Fam. and Life Advocs. v. Becerra*, 585 U.S. 755 (2018) and *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015)). "Gag orders inherently target speech relating to pending litigation, a topic right at the core of public and community life." *Id.*

Not only can PV not meet the exacting standard required for a gag order, but it has made almost no attempt to do so. OMG/O'Keefe's journalistic interviews report on a newsworthy legal dispute, which is "a topic right at the core of public and community life." *Id.* In the absence of an argument from PV that is so powerful as to show that a gag order could meet strict scrutiny and justify a prior restraint on OMG's/OKeefe's speech, PV's request must be denied.

## IV.   CONCLUSION

Based on the argument above, all relief requested in PV's Response Letter should be denied.

WHEREFORE, Counterclaimants JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP respectfully request that the Court enter an order DENYING all relief requested in the May 28, 2025, Response Letter [ECF No. 161] of Counterclaim-Defendants PROJECT VERITAS and PROJECT VERITAS ACTION FUND and all such other relief as the Court deems just and proper.

Date: June 7, 2025.



2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

*/s/ Nicholas P. Whitney*
Nicholas P. Whitney
Florida Bar No. 119450
Seldon J. Childers
Florida Bar No. 61112
jchilders@smartbizlaw.com
nwhitney@smartbizlaw.com
notice@smartbizlaw.com

*Counsel for Defendants and Counterclaim-Plaintiffs O'Keefe & OMG*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on June 7, 2025, which served same electronically upon all counsel of record.

                                                     */s/ Nicholas P. Whitney*
                                                     Attorney