UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x

PROJECT VERITAS and PROJECT VERITAS ACTION FUND,

Plaintiffs,

23 CV 4533(CS)(AEK)

-vs-

DISCOVERY CONFERENCE

JAMES O'KEEFE, TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP, RC MAXWELL, and ANTHONY IATROPOULOS,

Defendants.

--------------------------------------x

United States Courthouse
White Plains, New York
April 28, 2025

** VIA TEAMS VIDEOCONFERENCE **

Before: THE HONORABLE ANDREW E. KRAUSE,
United States Magistrate Judge

APPEARANCES:

LAW OFFICE OF MICHAEL J. HARRIS
Attorneys for Plaintiffs
43 West 43rd Street
Suite 148
New York, New York 10036
MICHAEL J. HARRIS

CHILDERS LAW, LLC
Attorneys for Defendants, O'Keefe and O'Keefe Media Group
215 Northwest 40th Terrace
Suite B
Gainesville, Florida 32605
NICHOLAS P. WHITNEY

**Transcribed from digitally recorded proceedings**

THE DEPUTY CLERK: Good morning, all. This is the matter of Project Veritas versus O'Keefe, Docket No. 23-cv-4533, the Honorable Andrew Krause presiding.

Counsel, note your appearance for the record, starting with plaintiffs' counsel.

MR. HARRIS: Good morning, Your Honor. This is Michael Harris on behalf of the plaintiffs.

THE COURT: Good morning, Mr. Harris. Or good afternoon, I guess.

MR. HARRIS: Good afternoon. That's the second time I did it.

THE COURT: It's just past 12:00.

MR. WHITNEY: And Nick Whitney for James O'Keefe and O'Keefe Media Group.

THE COURT: Good afternoon, Mr. Whitney.

Okay. We are here for a status conference. And good afternoon to you as well, Mr. O'Keefe. We are here for a status conference. We were last together back on March 10th, I believe, and there have been a couple of developments since then. One is that the parties have had at least some further exchange on potential redactions to the transcript for Mr. Barton's deposition. A second is that I issued an order last week regarding the motion for alternative service of the subpoena for Mr. Tyrmand's deposition.

I also did receive from Mr. Harris a letter dated

March 18, 2025, that's at ECF 141, regarding the privilege dispute which we are going to talk about here in a moment, but that's what I have seen on the docket.

Since then also, of course, the plaintiffs have dismissed their claims in this case, so the only remaining causes of action here are the counterclaims filed by the defendants-slash-counterclaimants, Mr. O'Keefe, et al.

I think that's the current state of play. If anybody has any other updates to fill in before we turn to the discovery issues, let me start with you first, Mr. Harris.

MR. HARRIS: No, I don't have anything to add. I will just note that, you know, we are still working on the deposition scheduling, and that's progressing along. And I think we've now had a few meet-and-confers so, you know, we are still working on resolving outstanding issues with respect to the Barton transcript and hoping to have an update to Mr. Whitney either later today or tomorrow.

THE COURT: Okay. Mr. Whitney, anything to add as we get started here?

MR. WHITNEY: In addition, at the end I would like to discuss a subpoena to Joshua Hughes, the IT director for Project Veritas and objections to that subpoena as it may affect deposition scheduling or the discovery schedule.

THE COURT: Okay. We can come back to that in a second.

Let's start with the Barton transcript. So I understand there's been some exchange there from what Mr. Harris just said, and, Mr. Whitney, you are still working through those issues at the moment?

MR. WHITNEY: Yes, Your Honor. We have narrowed it to two designations we would ask Project Veritas to withdraw as well, as they designated a document as confidential, a document we had prior to depositions. So there's three issues remaining there that we have asked them to revisit.

THE COURT: Okay. Well, let's get to an end in that discussion. I mean, let's say that by May 5th why don't you provide me a status report on that issue with respect to the Barton transcript and associated documents. If there are disputes, both sides can submit a short letter not to exceed three pages laying out what the disputes are. Those could be simultaneous submissions I think at this point. I don't think we need to do a sequential submission. Hopefully, the report can be on May 5th that you have worked out your differences and you have a plan for how to produce the materials going forward, but if not, you will let me know on May 5th, and we can schedule a proceeding, if necessary, for me to hear further from you on that.

On the privilege issue, here is what I understand the state of play to be. There was a meet-and-confer that took place with prior counsel so the scope of the dispute was

narrowed from approximately 105 or 107 documents down to 14 documents.

In a letter that provided that update, among others, back in December of 2024, ECF No. 118, Mr. Whitney, you explained that you believed that those 14 documents, while subject to the attorney-client privilege, should be produced because there had been a waiver of the privilege because Project Veritas had put the matters in those letters or in those communications at issue in the litigation.

Was that -- that was your position as of December 2024, correct?

MR. WHITNEY: That was my position.

THE COURT: Okay. And Mr. Harris submitted a letter, as I referenced earlier, March 18, 2025, ECF No. 141, responding in part to that -- or in part I should say responding to the privilege issue identified there, and that the defendants' position, or I should say, the counterclaim-defendants, Project Veritas's position in this letter is that the circumstances have changed in a couple of ways: One, the affirmative claims of Project Veritas had been dismissed, and so the question of what was being put at issue is going to be narrower anyway because now we are only looking at defenses to the counterclaims; and two, there's been an affirmative representation in this letter that Project Veritas has no intention to use any of the materials in these communications to support its defenses to the

counterclaims. That would seem to put us into a bit of a different posture vis-à-vis these documents as set forth by my colleague Judge Gorenstein in the *Windsor Securities LLC* case that both parties rely on in their letters.

So certainly the burden does shift to you, Mr. Whitney, to explain how it is that you believe the counterclaim-defendants have put these materials at issue or are in some way putting these materials at issue if you still think that that is the case. So I am going to give you an opportunity to explain that more in writing if you are intending to continue to pursue this, but maybe you've changed your mind based on that letter. I don't know.

What is your position at this point, Mr. Whitney?

MR. WHITNEY: There is no need for further briefing on this, Your Honor. Given the representation that Project Veritas isn't going to use those 13 or 14 communications, we don't need to pursue it any further.

THE COURT: Okay. Well, great. That solves that issue. So we can mark that motion as moot, and we will move forward. Obviously, if anything changes in that regard -- and I appreciate the way you referenced it, Mr. Harris. I think the way you say said it is, if that changes, the O'Keefe and company will be the first to know so, and if that does change then, obviously, we will have a little bit of a different issue to consider, and if you are specifically going to rely on those

documents, Mr. Harris, I think you would agree that your argument for withholding them is much weaker.

MR. HARRIS: Absolutely.

THE COURT: So all right. We will come back to that in the future if necessary, but hopefully that won't be necessary.

All right. Let's turn, then, to the issue you identified with respect to the subpoena to Mr. Hughes.

Mr. Whitney, why don't you lay out that issue for me? Again, I don't have the benefit of any advance submissions on this, so we are not going to adjudicate this right now, but if you want to tee it up for me, maybe I can give you a little bit of guidance and direction, and if necessary, we can get further submissions and come back and resolve those in short order.

So, Mr. Whitney, I will start with you.

MR. WHITNEY: Yes, Your Honor. Thank you.

Joshua Hughes is the IT director for Project Veritas. He testified last summer during the preliminary injunction hearing. We have sought to depose him. We noticed the deposition and sent a subpoena to Project Veritas attempting to get deposition on May 14th. I wanted to raise the issue because I am not sure, but early this morning or Friday we received objections to the subpoena objecting to the subpoena in its entirety suggesting that if we can't resolve the issue, we may have to come to the Court to -- just for our right to take his

deposition. So I bring that up because the discovery schedule currently has depositions ending July 1st, I believe, and so with the frequency of these status conferences, it might be difficult to get that done if we face objections like this.

THE COURT: Well, I mean, you mean if you face objections like this to other subpoenas?

MR. WHITNEY: Like this, relevant witnesses, and we have received an objection to the subpoena in its entirety, and we have to justify the testimony simply.

THE COURT: Well, look, I certainly can have you in for more frequent conferences. I mean, the schedule is generally dependent on the needs of the case. So I don't like to have you in unnecessarily, but if there are disputes that need to be resolved, particularly with deadlines rapidly approaching, we can have you back in as often as we need to, especially since we've made a practice now of doing these conferences by video. I'm not going to necessarily make you fly back and forth every time we have a conference. Although if we accumulate enough issues, then we may have to do that in person to make sure that we can officially resolve all the matters that we have on the agenda.

But if the objections have just come in today or Friday, then certainly the issues are not ripe for my involvement yet. You should talk to each other about it. Maybe there is some agreement that you can reach as to the scope.

Maybe there is a narrowed scope. Maybe there is some other way of addressing the concerns that are being articulated by Project Veritas. Especially if the witness has already testified at the preliminary injunction hearing, some issues may be not really in need of further examination. Maybe you can rely on some of that testimony for purposes of evidentiary use in this case, and it seems that that would be consistent with the federal rules of evidence in a number of different ways. But again, I don't know what the objections are, so it's hard for me to really weigh in on that in any meaningful way. I don't really want to get into that right now because that's not how I prefer to address disputes.

But, Mr. Harris, why don't you just give me the very brief thumbnail sketch of the reason for the objection?

MR. HARRIS: Sure, Your Honor. I will just note that I think you were absolutely correct. It's not quite ripe. We haven't had an opportunity to meet and confer yet, but the scope of the objection really, insofar as it relates to the entirety of this subpoena, has to do with burden; and, you know, the issue is really that Joshua Hughes, what they have done is they have subpoenaed him in his individual capacity, not as a representative of Project Veritas, and a lot of what they are seeking is stuff that can be obtained from Project Veritas directly. So there is a little bit of a burden issue there. And, I mean, that's the primary issue and the burden --

THE COURT: I guess -- sorry. Go ahead.

MR. HARRIS: The burden also relates to relevance because they are such broad requests that quite a bit of what may be responsive to the document portion of the subpoena is, you know, not going to be relevant.

THE COURT: Okay. I mean, it sounds like there are a couple of different issues there, and when you say that there are documents that could be obtained from Project Veritas, that may be true, and that may make things a bit more efficient to have the documents produced by the parties to the case, but as far as testimony being obtainable through Project Veritas by way of a 30(b)(6) representative or something else, 30(b)(6) testimony is not typically treated as a substitute for individual employee testimony.

I mean, when you say he was subpoenaed in his individual capacity, I'm not really sure what that means other than looking for documents from him individually. He might not have documents individually. If he has documents that are records of the entities, the enterprise Project Veritas, it would seem like discovery document demands would be better directed at the party, but as far as substituting 30(b)(6) testimony for individual testimony, that's generally not a great argument. Again, it's not -- it's not that you couldn't make it, but I'm just reacting to what I have heard so far, which is just a very brief outline.

So I am not going to wade into that further other than to say, talk to each other about it this week, and my standard discovery protocol which I issued in this case calls for the parties to meet and confer to address any outstanding issues and then to bring them to my attention once you've reached the end of that meet-and-confer process. The point of that order is to get those issues teed up promptly, expeditiously so that they can be resolved promptly and expeditiously.

So to your point, your concern that is, Mr. Whitney, about running out of time, again, once the issue is brought to my attention, and after you've really had an opportunity to try to resolve it on your own, I will get you in as soon as my schedule allows. So I encourage you to talk to each other about it today, tomorrow, and start getting the issue teed up by the end of this week if it's not something you are able to figure out on your own. Okay?

MR. WHITNEY: Appreciate it.

THE COURT: Okay. What else? What other discovery issues do we have outstanding at this point from the -- I guess I will -- normally I ask the plaintiff's side first, but really the plaintiff's side, such as it is here, is Mr. Whitney because you are the only one prosecuting any claims.

So what other outstanding issues are there from your perspective, Mr. Whitney?

MR. WHITNEY: We appreciate the Court entering an

order of alternative service. We've subpoenaed that deponent, so we await an appearance of counsel objections there.

THE COURT: Okay. And I think I did require you to file the affidavit of service or some sort of certificate of service on the docket just to confirm that and have a marker for it. So you will do that this week as well?

MR. WHITNEY: We will, Your Honor.

THE COURT: Good. Okay.

MR. WHITNEY: And as Mr. Harris mentioned at the outset, we are busily trying to schedule six or eight depositions that we have remaining. That's it from our side.

THE COURT: Okay. So May 5th you are going to provide me with an update on the Barton transcript. I would also like -- why don't we just use that as a control date for everything we've talked about so far, which is -- so the Barton transcript. Also, why don't you give me an update on where we are with the scheduling of the depositions because I take your point, Mr. Whitney, that July 1st is somehow only two months away, and we are going to be in May by the end this week. So, you know, if we don't have dates for these witnesses soon, we are going to start to be really crunched for time.

Ordinarily, I don't like to get too deep in the weeds of deposition scheduling with the parties because I trust that you will work on this in good faith on your own, but again, given some of the challenges we have had in a number of

different ways in this case over time, I think it would make sense to have a deposition schedule that is adopted as an order of the Court, which can then be adjusted, if necessary, on mutual consent of the parties, assuming the parties both agree, and the adjustment would not require an extension of the overall deadline for completion of fact depositions. If it would -- so typically what I will do in these situations is I will take whatever schedule you've proposed; I will so order it, and I will include some standard language, which basically says in part what I've just said.

If you have a consent application that doesn't require an extension, the application will most certainly be granted. If you have an application that's not on consent or that would require an extension, that application is most likely to be denied. And so that will just sort of put a little bit more force behind the schedule that you agree to.

I understand that you have some non-parties, and that that sometimes can make things complicated. Obviously, you don't have the ability to determine if they are going to show up or if their counsel might come in with some other demands or objections with respect to the subpoena or proposed dates. So again, I am well aware of those challenges and will take that into account, but at least for the witnesses that you do control, we can have a set schedule, and you can have some placeholders in there, right? If there are going to be issues

about the possible deposition of Mr. Hughes, you can have a placeholder date for his deposition pending the resolution of any disputes, whether those resolutions are going to come through internal discussion or through court order.

So let's have by May 5th a full schedule for the depositions of the remaining witnesses, and you can also use that May 5th date to tee up the affirmative dispute letter if there is one with respect to Mr. Hughes. So that will be a separate letter, again, because I am envisioning the first two parts, the Barton transcripts update and the deposition schedule, I am envisioning that as a joint letter, right, because you are just going to be providing a status report hopefully as to agreements that you have reached.

And the Hughes piece, again, it can be part of the joint letter if you've reached an agreement and you have a path forward, but if you have disputes that you are needing to tee up, that should be a separate affirmative letter from Mr. Whitney with a responsive letter from Mr. Harris due three days later. So May 5th is Monday. The response would be due by May 8th.

And I suppose since we are going to do it that way, and I apologize if I am creating confusion here, on the Barton transcript I had asked you for simultaneous submissions on the 5th, but now that we are sort of teeing up a potential dispute, why don't we tee that up on the same schedule? So if there are

affirmative disputes regarding the continued withholding of certain information by Project Veritas from the transcript or related documents, Mr. Whitney, you can submit a letter as to that on May 5th as well.

And your response, Mr. Harris, can come on May 8th.

All right? So we might have just one letter if we have all of the issues worked out. We might have three letters on May 5th, and the three letters would be the deposition schedule on its own, a dispute letter regarding the transcript, and a dispute letter regarding the Hughes subpoena and response.

So we could have anywhere from one to three letters from Mr. Whitney on that date, and depending on what we get, we will get either zero to two responses from Mr. Harris on May 8th; zero if you are in agreement on everything come May 5th, and one or two depending on which issues have led to dispute letters being filed on the 5th.

I think that will make it cleaner. And depending on what you provide, we will get you in for a conference as soon as we can after that.

I am currently scheduled to be on trial during the week of May 12th, but we've just worked through that trial schedule in the final pretrial this morning, and I have a pretty good idea of when there will be breaks in the trial schedule so we certainly will be able to find time during the week of May 12th to get you in for a conference if there are disputes

that are fully teed up by May 8th through the schedule that we've just talked about. We will put all of these dates in the minute entry from today's proceeding so it will be reflected on the docket, but I think that's a path forward as to the Barton transcript, the deposition schedule, and the Hughes subpoena.

Mr. Whitney, anything further that we should address today from your clients' perspective?

MR. WHITNEY: No, Your Honor. Thank you.

THE COURT: Okay. Mr. Harris, what about from your clients' perspective?

MR. HARRIS: I don't believe so, Your Honor.

THE COURT: All right. I am going to hold off on setting our next conference date because I am going to look at what you submit next week. If there are no disputes, then we don't need to have a conference during the week of the 12th, so we will put that on the calendar towards the end of the month instead. But again, if there are disputes that come in next week, we will get the next conference on the calendar by video for the week of the 12th, and we will get those issues resolved as quickly as we can.

Okay? All right. We will stand adjourned for today, everybody. Take good care. Thanks very much.

MR. HARRIS: Thank you.

-o0o-

Certified to be a true and accurate transcript of the digital electronic recording to the best of my ability.

/s/ Darby Ginsberg

U.S. District Court
Official Court Reporter