## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PROJECT VERITAS and PROJECT
VERITAS ACTION FUND,

      Plaintiffs/Counterclaim-
      Defendants,

      v.

JAMES O'KEEFE and TRANSPARENCY
1, LLC d/b/a O'KEEFE MEDIA GROUP,

      Defendants/Counterclaim-
      Plaintiffs.

Civil Action No. 7:23-cv-04533

---

### COUNTERPCLAIM-PLAINTIFFS O'KEEFE'S AND OMG'S MOTION FOR LEAVE TO AMEND COUNTERCLAIMS AND MEMORANDUM OF LAW IN SUPPORT

      Counterclaim-Plaintiffs, JAMES O'KEEFE ("O'Keefe") and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP ("OMG") hereby file this Motion for Leave to Amend Counterclaims and submit this memorandum of law in support thereof pursuant to Fed. R. Civ. P. 15 and 16 and Local Rule 15.1 and 7.1 seeking an order authorizing leave to amend Counterclaims [ECF No. 73] and in support state[1]:

### INTRODUCTION

      Counterclaim-Plaintiffs James O'Keefe and O'Keefe Media Group (collectively,

---

[1] The proposed Amended Counterclaim can be found in both redlined and clean versions as Exhibits A and B, respectively, to Counterclaim Plaintiffs O'Keefe's and OMG's Notice of Motion for Leave to File Amended Counterclaims, filed contemporaneously with this motion and memorandum of law.

"OMG/O'Keefe") respectfully submit this memorandum of law in support of their motion for an order, pursuant to Rules 15(a)(2) and 16(b)(4) of the Federal Rules of Civil Procedure ("FRCP") and Local Rules 15.1 and 7.1, granting leave to amend their counterclaims to include a claim under the Stored Communications Act, 18 U.S.C. § 2701 et seq. ("SCA"). The proposed amendment is based on evidence revealed during these proceedings, which evidence strongly indicates that Counterclaim-Defendants Project Veritas and Project Veritas Action Fund (collectively, "PV") intentionally accessed Mr. O'Keefe's private electronic communications without authorization and in violation of the SCA after his departure from PV in February 2023. The request for leave to amend is supported by good cause and otherwise meets the lenient standard for amending under Rule 15(a)(2).

## REVELANT FACTUAL AND PROCEDURAL BACKGROUND

OMG/O'Keefe seek to amend their counterclaims to assert a claim under the SCA based on evidence revealed during discovery and court proceedings. This case is subject to a scheduling order issued on August 2, 2024, which set a deadline of October 28, 2024, for requesting a pre-motion conference for motions to amend. [ECF No. 68]. OMG/O'Keefe filed a letter requesting a pre-motion conference on May 6, 2025, [ECF No. 150], after the deadline, due to delays beyond OMG/O'Keefe's control.

OMG/O'Keefe submit they that have acted diligently at all times and thus can show "good cause" to be granted leave to amend after the deadline in the scheduling order. Further, amendment is not futile, is sought in good faith, and will not cause prejudice to PV.

2

## ARGUMENT

### I.    STANDARD OF LAW

The Federal Rules of Civil Procedure provide a liberal standard for amending pleadings. Rule 15(a)(2) states that leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Second Circuit, amendments are permitted absent a showing of prejudice or bad faith by the nonmovant. *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). "Mere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Even where the court has issued a scheduling order under Rule 16(b) and the deadline for amending a pleading that appears in that scheduling order has run, a party will still be seen to have satisfied the "good cause" requirement of Rule 16(b)(4) if the party can "demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d. Cir. 2007); Fed R. Civ. P. 16(b)(4).

### II.    O'KEEFE'S MOTION SHOULD BE GRANTED

#### A.  O'Keefe Has Been Diligent and thus has "Good Cause" for Requesting Relief After the Deadline

OMG/O'Keefe have at all times diligently prosecuted this case, and OMG/O'Keefe's current request to amend after the deadline contained in the scheduling order arises as a result of matters beyond OMG/O'Keefe's control. As a result, OMG/O'Keefe satisfies the "good cause" requirement of Rule 16(b)(4).  *Kassner*, 496 F. 3d at 244; Fed R. Civ. P. 16(b)(4).

Specifically, the factual basis on which OMG/O'Keefe seeks to bring its SCA claim has emerged through the course of this proceeding such that the viability of the SCA claim could not have been adequately pled by OMG/O'Keefe until shortly before they submitted their May 6, 2025, request. [ECF 150].

OMG/O'Keefe first received evidence indicating a possible basis for its SCA claim on July 29, 2024. On that day, PV's Information Technology Director, Joshua Hughes ("Hughes" or "Mr. Hughes"), testified at a preliminary injunction hearing in this matter that he had accessed Mr. O'Keefe's private messages in his official role with PV. Because that hearing was concerned with the narrow question of whether OMG/O'Keefe was to be enjoined from certain activity under the employment agreement with PV, OMG/O'Keefe had no opportunity at that time to pursue Hughes' testimony concerning the accessing of O'Keefe's private messages. OMG/O'Keefe then acted diligently to pursue the testimony of PV's corporate representatives[2] on this issue and secure Mr. Hughes' deposition. PV postponed the corporate representatives' deposition on three occasions, and then PV's counsel withdrew, resulting in a stay of all discovery for approximately four months. Mr. Hughes' deposition has been delayed, but is set for Wednesday, June 25th. O'Keefe/OMG intend to explore these issues at the upcoming deposition more fully.

---

[2] Mr. Hughes was designated by PV as its corporate representative on issues related to PV's access to Mr. O'Keefe's private messages. PV's current President, Ben Wetmore, was also designated as a corporate representative, but during his deposition on June 6th, deferred on the issue of PV's accessing and disseminating Mr. O'Keefe's private messages and testified that Mr. Hughes would testify to these issues.

Mr. Hughes' July testimony during the preliminary injunction hearing was the first testimony by an agent or representative of PV suggesting a possible violation of the SCA.  OMG/O'Keefe did not consider that testimony alone enough—undeveloped as it was--to bring a cause of action for violation of the SCA.

Then, in a November 7, 2024, deposition of Project Veritas Action Fund's President Joseph Barton ("Barton") (after the deadline for amendment in the scheduling order), Barton affirmed the likelihood of an SCA violation, testifying that he had personally obtained Mr. O'Keefe's Telegram messages, text messages, emails, and pictures without Mr. O'Keefe's authorization.  Mr. Barton demanded at the outset of his deposition that the transcript be sealed, and PV's counsel "temporarily" designated the entirety of Mr. Barton's deposition testimony as confidential under the protective order ("Protective Order") entered in this proceeding. [ECF Nos. 96 and 99]. PV's blanket confidentiality designations resulted in a six-month process (including a three-month period when PV was without counsel) in which the parties disputed whether and what portions of the Barton deposition was properly designated as confidential.  This dispute was only resolved on May 5, 2025, as reported by OMG/O'Keefe in a status report letter to the Court on that day. [ECF No. 149].  It was the very next day that OMG/O'Keefe submitted to the Court their letter requesting a pre-motion conference to discuss OMG/O'Keefe's anticipated motion to amend its counterclaim, [ECF No. 150], which relies on Mr. Barton's testimony.

Additionally, OMG/O'Keefe's amended counterclaim cites to and relies on a series of text exchanges between Daniel Strack ("Strack"), the former Chief Operating

Officer of PV, and Matthew Tyrmand ("Tyrmand"), a former Board member of PV. These communications were obtained through a third-party document subpoena on Mr. Strack, and they contain communications in which Mr. Tyrmand both indicates his knowledge that PV possessed OMG/O'Keefe's private communications and suggests that he too had such documents. In particular, Tyrmand tells Strack that PV will be "feed[ing]" out O'Keefe's private Telegram messages, and that Tyrmand himself would be "feeding…tons of" O'Keefe's private information to the public through another individual, Kyle Seraphin, who was "going to war" against O'Keefe on social media. [*See* ¶¶ 122-123 of proposed Amended Counterclaim]. The materials referenced by Tyrmand could only have been obtained by him in violation the SCA through his role as a Board member of PV. The day after Mr. Tyrmand wrote that he was feeding Mr. Seraphin with Mr. O'Keefe's private messages, Mr. Seraphin posted Mr. O'Keefe's private messages to X.

These text exchanges between Tyrmand and Strack were produced at the time of Mr. Strack's deposition on November 18, 2024. Pursuant to the Protective Order, PV designated documents produced at Mr. Strack's deposition as confidential on December 2, 2024. PV's counsel then moved to withdraw on December 19, 2024, [ECF. Nos. 110 - 115], before such confidentiality designation could be worked through. By Order dated December 23, 2024, all discovery deadlines were held in abeyance. [ECF No. 117]. The Court granted PV's former counsel's motion to withdraw on January 8, 2025, ordering that all discovery remain held in abeyance until further order of the Court. [ECF No. 128]. PV requested and received an extension of time to appoint new counsel, [ECF No. 131],

and then requested and received an adjournment of the February 24, 2025, status conference until March 10, 2025. [ECF Nos. 134 and 135]. In PV's letter motion requesting to adjourn the status conference, PV relied on the same "good cause" requirement under Rule 16 it now weaponizes to argue against "good cause" for the amendment. [ECF No. 134]. At the March 10th status conference, PV requested and received a 90-day extension of fact discovery. In summary, nothing substantive occurred in the case between December 19th and March 10th, at which time O'Keefe/OMG resumed attempts to schedule postponed depositions. The lingering discovery disputes arising from PV's confidentiality designations under the Protective Order were not resolved until May 5, 2025, [ECF No. 149], just shy of six months after the entirety of Mr. Barton's deposition testimony was designated confidential by PV's prior counsel.

Relatedly, O'Keefe/OMG issued written discovery requests as early as September 6, 2024. After working with PV's prior counsel in good faith to grant requested extensions, PV first produced documents responsive to Counter-Plaintiffs' discovery requests on December 5, 2024 (well after the October 28, 2024, deadline to amend as set forth in the scheduling order. [ECF No. 68]. At the time of PV's initial production on December 5th, PV's prior counsel promised to send separately a flash drive containing Mr. O'Keefe's Telegram messages (indisputably relevant and material to the amended counterclaim under the SCA). The flash drive was never received. Whether through oversight, error, preoccupation with PV's prior counsel's imminent withdrawal, or perhaps the package being simply lost by the carrier, O'Keefe/OMG are presently attempting to obtain those Telegram messages from PV's current counsel.

PV contends that diligence required OMG/O'Keefe to submit the letter concerning amendment to the Court just after the November 7, 2024, deposition of Joseph Barton. [ECF No. 157, p. 2]. This contention does not take seriously the proceedings in this case or the constant procedural matters that PV forced OMG/O'Keefe's counsel to deal with between the November 7, 2024, Barton deposition and OMG/O'Keefe's May 6, 2025, letter. Had O'Keefe/OMG moved to amend immediately following Mr. Barton's November 7th deposition, the Counter-Plaintiffs would have been in violation of the Protective Order by including Mr. Barton's testimony as factual support in their SCA allegations. Given that PV's prior counsel filed a motion to withdraw as counsel, [ECF No. 110], just twelve days after Mr. Barton's deposition, resulting in a stay of discovery in the case, [ECF No. 117], and, in effect, a stay of proceedings, since the Court was not in a position to consider most requests from OMG/O'Keefe while PV was without an advocate, Counter-Plaintiffs could not press their amended counterclaims. PV finally secured replacement counsel over three months later in late February of 2025, [ECF No. 133], and as detailed above, PV's new counsel's first step was to seek further adjournment of proceedings so that counsel could "adequately prepare" for an upcoming scheduling conference and seek an amended scheduling order. [ECF No. 134]. That request was granted. [ECF No. 135]. Through March and April, OMG/O'Keefe's counsel diligently progressed discovery in this case (already compacted by the three-month stay while PV found new counsel) by setting and resetting depositions while trying to persuade PV to resolve the confidentiality disputes discussed above, which disputes concerned the key evidence on which OMG/O'Keefe's SCA claim would be brought.

8

Even ahead of the deadline to amend set forth in the Scheduling Order, OMG/O'Keefe sought on multiple occasions to depose PV's corporate representative, a deposition that is likely to yield testimony that would provide a further basis for a SCA claim. Based on cancellations by PV and changes to the designated corporate representative, OMG/O'Keefe was forced to notice this deposition on three separate occasions: September 13, 2024, November 25, 2024, and April 30, 2025. Since PV designated two separate corporate representatives, only the first part of the PV corporate representative's deposition has taken place (on June 6, 2025). The second part of the PV corporate representative's deposition, that of Mr. Hughes (who PV claims possesses the relevant knowledge regarding O'Keefe's private messages), will not occur until next week. Counter-Plaintiffs' inability to secure Mr. Hughes' testimony as the corporate representative having knowledge of PV's SCA violations is not due to O'Keefe's/OMG's lack of diligence. Rather, Counter-Plaintiffs efforts to obtain the relevant testimony and evidence following Mr. Hughes' limited testimony and key admission during the preliminary injunction hearing is well-documented and recited above.

Now, having encumbered OMG/O'Keefe's ability to bring the SCA claim with countless roadblocks and delays, PV objects that OMG/O'Keefe did not swiftly enough distill the new evidence it obtained into a cause of action for a violation of the SCA. But having caused the delay, PV cannot now argue that O'Keefe was not diligent. In fact, OMG/O'Keefe acted diligently at all times and took all reasonable steps within their power to advance their SCA claim as the viability of this claim became apparent through new evidence. As such, OMG/O'Keefe have demonstrated Rule 16(b)(4) "good cause"

to be granted leave to amend their counterclaim.

### B. OMG/O'Keefe's Amendment is not Futile

Nevertheless, PV argues that even if OMG/O'Keefe demonstrates "good cause" under Rule 16(b)(4), OMG/O'Keefe's motion should be denied regardless under Rule 15(a)(2) on the basis that amendment would be futile. [ECF No. 157]. According to PV, OMG/O'Keefe cannot state a cause of action under the SCA.

In fact, not only can OMG/O'Keefe state a cause of action under the SCA, OMG/O'Keefe are likely to prevail on this claim.

Under the SCA, anyone who

(1) Intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) Intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a)(1)-(2) (2024).

OMG/O'Keefe's proposed Amended Counterclaim appears at Exhibit B of its Notice of Motion for Leave to Amend Counterclaim filed contemporaneously with this memorandum of law. As can be seen at paragraphs 113 through 129 of the proposed Amended Counterclaim, OMG/O'Keefe makes specific allegations of ultimate fact--supported by evidence either contained in the record or obtained in discovery—that PV obtained and accessed O'Keefe's electronic communications through the intentional and unauthorized access of a facility through which an electronic communication service was

provided.

More concretely, the proposed Amended Complaint alleges that while O'Keefe worked for PV, he used private accounts and phone lines to send Telegram messages, Instagram messages, text messages, and email. [proposed Amended Counterclaim ¶ 113]. After O'Keefe left his employment with PV, PV accessed these communications in violation of the SCA and without O'Keefe's authorization and then used those private and often very personal communications to smear and humiliate O'Keefe as well to try to damage him professionally. [proposed Amended Counterclaim ¶¶ 117-118, 122-129].

As a result, OMG/O'Keefe has alleged all elements for a cause of action under the SCA and OMG/O'Keefe's proposed Amended Complaint adequately states a cause of action.

PV seems to want to argue that the SCA is strictly an anti-hacking statute that cannot be used in cases concerning employer abuse of their employee's personal and private information. [ECF No. 157, p. 2]. This is straightforwardly untrue. *See Lazette v. Kulmtycki*, 949 F. Supp. 2d 748, 753 (N.D. Ohio June 5, 2013) (SCA not restricted to hackers and employers can be found liable to employees for violations of the SCA). And a host of Federal District Courts, including the Southern District of New York, have found SCA claims alleging that employers have violated the rights of employees to be legally sufficient even in the absence of any allegation of hacking. *See id.; see also Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 587 F. Supp. 2d 548 (S.D.N.Y, Oct 23, 2008); *Levin v. Impact Office, LLC*, No. TDC-16-2790; 2017 WL 2937938 (D. Md. July 10, 2017); *Joseph v. Carnes*, 108 F. Supp. 3d 613, 616 (N.D. Ill, June 4, 2015).

PV further asserts that OMG/O'Keefe's amendment would be futile since the SCA "does not apply to communications stored on an employer's computers." [ECF No. 157, p. 2]. However, the proposed Amended Complaint does not allege that all or any of intentionally accessed private communications were stored on PV's "computers." The communications in question would have been primarily if not wholly stored on the facilities (servers) of the various electronic service providers (*e.g.* Telegram, Instagram). *See Levin*, 2017 WL 2937938 (emails accessed on company phone were considered to be stored on Gmail servers for purposes of SCA); see also *Pure Power Boot Camp,* 587 F. Supp. 2d at 555 (communication "stored on an electronic communication service provider's system. . . as opposed to. . . stored on a personal computer, is a stored communications subject to the SCA.")

Finally, PV argues that PV's employee handbook contained a policy authorizing PV to access certain electronic data and that PV was thereby released from any duties to its employees under the SCA. [ECF No. 157, p. 2]. PV's introduction of the employee handbook at this stage of the proceedings is improper, as the amended counterclaim stands or falls based on the allegations in the Amended Complaint. PV implicitly asks the Court to consider documents beyond the four corners of the Amended Complaint, an improper exercise at this stage of the proceedings, and invites converting the motion into a motion for summary judgment. Even so, Courts interpreting the SCA have read policies of this sort narrowly, requiring record evidence *not merely* that the employee's communications are accessible to the company because of the employee's use of a company system, *but rather* that the actual communications themselves fall within the

terms of the policy, literally construed. *See Carson v. Emergency MD, LLC*, No. 22-1139, 2023 WL 1861053, at *4 (4th Cir. Feb. 9, 2023) (refusing to find that an employee had authorized company access under the terms of an employee handbook policy where there was no evidence that the emails had been "sent and received on the employer's computers" as the policy required.); *see also Pure Power Boot Camp,* 587 F. Supp. 2d at 559 (refusing to find an employee had authorized company access under the terms of an employee handbook policy where there was no evidence that the emails had been "created on, sent through, or received from" the employer's computer, as the policy required).

Likewise, here, the employee handbook relied on by PV does not render the proposed Amended Counterclaim futile.  By its own terms, the policy in the handbook is limited to "information transmitted over, received by, or stored in or on [electronic communication systems] owned, lease, or operated by, or on behalf of, the Company." [See ECF No. 157, Ex.1].  Once again, the proposed Amended Complaint does not allege that all or any of the intentionally accessed private communications fall within these terms.  [*See* proposed Amended Complaint ¶¶113-129].  In fact, the whole point of the new cause of action is that PV logged into private accounts of O'Keefe maintained on servers wholly unrelated to PV and accessed content that originated with devices that PV had no claim to or interest in.

*Pure Power Boot Camp*, a decision out of the Southern District of New York, is directly on point.  There, a former employee's emails were accessed by the company after the employee left his username and password information stored on company

computers. *Pure Power Boot Camp,* 587 F. Supp. 2d at 552.  The Court in *Pure Power Boot Camp* found that the company had used the unintentionally left behind passwords to "log directly onto Microsoft's Hotmail system where the e-mails were stored" and that this was a violation of the SCA.  *Id.* at 556.  The Court further found that the employee had not provided the company authorization to access his emails, either implicitly, by accidentally leaving behind his username and password, or expressly, through a policy in the employee handbook, since, on the evidence available, it could not be said whether all or any of the communications in question fall within the scope of the policy. *Id.* at 559. The facts of *Pure Power Boot Camp* are analogous to the fact pattern presented in the proposed Amended Complaint, where PV accessed O'Keefe's personal and private communications, at least in part, as a result of information on devices PV took possession of after O'Keefe's departure from PV or as a result of passwords of O'Keefe's that had been obtained by PV employees.   [See proposed Amended Complaint ¶ 119].  O'Keefe did not explicitly authorize this access through his private use of those platforms, and, as discussed above, the Court's construction of a PV electronic communications systems policy must be left for another day, since Counter-Plaintiffs SCA allegations do not rest on the employee handbook. PV invites error by asking the Court to prematurely determine whether the specific communications in question fall within the scope of the policy contained in the PV employee handbook.[3]

---

[3] *See also* the decisions in *Levin* and *Lazette*. In both of those cases, an employee had returned a company telephone at the end of the employee's employment and the company had accessed the employee's private email account using a username and password stored on the telephone.  In

### C. OMG/O'Keefe's Amendment is not Prejudicial nor is it in Bad Faith

In the context of a motion to amend, evaluation of prejudice requires consideration of whether the new claim would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial. . . [and] significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). "A party cannot claim unfair surprise when it has been provided with notice of the subject of the amendment to a complaint, by discovery or documents, well in advance of the actual amendment." *Esquire Radio & Electrs., Inc. v. Montgomery Ward & Co., Inc*, 804 F.2d 787, 795 (2d Cir. 1986). Relatedly, unfair surprise will not be present where allegations in pending claims "relate closely" to those in the new claim. *Daniels v. Loizzo*, 174 F.R.D 295, 298 (S.D.N.Y. 1997). These standards are to be interpreted in light of the judicial policy in favor of deciding cases on merits rather than on procedural technicalities. *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006).

OMG/O'Keefe filed their original counterclaim ten months ago, on August 21, 2024. That counterclaim contains scores of allegations concerned with PV's acquisition, misuse, and disclosure of O'Keefe's private and personal information and digital communications that PV accessed through its position as O'Keefe's former employer. [*See, e.g.*, ECF No. 73, ¶¶ 73-97]. In particular, the original Counterclaim's third count for Publication of Private Facts tracks almost exactly the essential allegations that must be

---

both decisions, the Courts found the plaintiffs had adequately pled a claim for violation of the SCA. *Levin*, 2017 WL 2937938; *Lazette*, 949 F. Supp. 2d at 753.

made under the SCA.  Paragraph 138 of the original Counterclaim states:

> 138.   After constructively terminating O'Keefe, Project Veritas accessed his private messaging accounts without O'Keefe's permission.   Project Veritas then went further, and published O'Keefe's private messages without his consent.

PV contends that the allegations in OMG/O'Keefe's Publication of Private Facts claim are irrelevant from the point of view of an analysis of notice because, according to PV, "that state law claim was never viable under New York law."  [ECF No. 157, p. 3]. PV's point seems to be that OMG/O'Keefe's amendment would unfairly surprise PV since the allegations in the original Counterclaim that overlap and intertwine with the SCA claim support a cause of action that, PV contends, is subject to dismissal.

PV does not cite to any authority in support of this supposed exception to the general principle that allegations in a pleading put the opposing party on notice of those allegations.   But even giving credence to this theory, PV's argument only begs the question of why PV waited eight months to raise the prospect of moving to dismiss some of OMG/O'Keefe's claims for failure to state a cause of action. [See PV letter to the Court of April 11, 2025, ECF No. 144].  PV's prejudice, if any, is self-inflicted. PV was without counsel for three months, and in the periods where it had counsel, PV did not diligently pursue discovery (since the original Counterclaim was filed OMG/O'Keefe has taken no less than eight depositions; PV has taken none). PV's real concern is that it is now running out of time to build its defense.[4] As such, it hopes to file a last-minute motion to dismiss

---

[4] Even so, Magistrate Judge Krause has granted PV's recent application to take the deposition of James O'Keefe, curing any claims of prejudice.

to avoid the consequences of its inaction. PV's argument is further suspect because it cannot articulate the need for additional discovery and has not sought any additional discovery (other than O'Keefe's deposition) having had notice of these claims. PV acted in violation of the SCA, and if anybody possesses superior knowledge of how O'Keefe's private messages were accessed, it is PV.

PV is entitled to pursue this tactic if it chooses, but it cannot contend that it lacked notice of allegations made in a ten-month old Counterclaim based on a supposed legal deficiency that PV has only recently raised.

As a result, OMG/O'Keefe's cause of action under the SCA "relates closely" to the allegations already made in the original Counterclaim and does not expose PV to "unfair surprise." *Daniels*, 714 F.R.D at 298; *Esquire Radio*, 804 F.2d at 795. To the extent PV contends that it needs a further reasonable extension of discovery in order to prepare its defense of OMG/O'Keefe's SCA claim, OMG/O'Keefe would not oppose that relief.

Finally, OMG/O'Keefe's motion is not sought in bad faith. The proposed Amended Counterclaim raises serious violations of federal statute which resulted in immense harm to O'Keefe and OMG. After obtaining O'Keefe's private and personal communications in violation of the SCA, PV used those communications to embarrass O'Keefe and try to destroy him personally and professionally. The SCA provides remedies for this wrongdoing, including attorney's fees and punitive damages. OMG/O'Keefe should be permitted to pursue these claims, not least of all because PV purports to plan to soon file a motion to dismiss that it contends will result in dismissal of certain of OMG/O'Keefe's other claims in this action, and the Court has been clear that

17

it consistently grants the opportunity to amend when presented with a motion seeking dismissal.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, OMG/O'Keefe requests that the court grant their motion to amend their Counterclaims.

WHEREFORE, Counterclaim-Plaintiffs respectfully request that the Court enter an order authorizing leave to file the amended counterclaims attached as Exhibit B to Counterclaim-Plaintiff O'Keefe's and OMG's Notice of Motion for Leave to File Amended Counterclaims [ECF No. 175] and all such other relief as the Court deems just and proper.

Dated:  June 18, 2025.



CHILDERS LAW, LLC

2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

<u>/s/ Nicholas P. Whitney</u>

Nicholas P. Whitney
Florida Bar No. 119450
Seldon J. Childers
Florida Bar No. 61112
jchilders@smartbizlaw.com
nwhitney@smartbizlaw.com
notice@smartbizlaw.com

*Counsel for Defendants and Counterclaim-Plaintiffs O'Keefe & OMG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on June 18, 2025, which served same electronically upon all counsel of record.

<u><em>/s/ Nicholas P. Whitney</em></u><br>Attorney