UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND,<br><br>Plaintiffs/Counterclaim-Defendants,<br><br>v.<br><br>JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP,<br><br>Defendants/Counterclaimants. | Civil Action No. 7:23-cv-04533 |

**COUNTERPCLAIMANTS O'KEEFE'S AND OMG'S
REPLY TO COUNTERCLAIM-DEFENDANTS' BRIEF IN
OPPOSITION TO COUNTERCLAIMANTS' MOTION TO AMEND**

Counterclaimants, JAMES O'KEEFE ("O'Keefe") and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP ("OMG") (together "OMG/O'Keefe"), hereby file this Reply ("Reply") to *Counterclaim-Defendants' Brief in Opposition to Counterclaimants' Motion to Amend* ("Opposition")[ECF No. 184], which opposes OMG/O'Keefe's *Motion for Leave to Amend Counterclaims and Memorandum of Law in Support* ("Motion for Leave to Amend") [ECF No. 176] and submit this memorandum of law in support thereof and in support state[1]:

---

[1] The proposed Amended Counterclaims can be found in both redlined and clean versions as Exhibits A and B, respectively, to Counterclaim Plaintiffs O'Keefe's and OMG's Notice of Motion for Leave to File Amended Counterclaims [ECF No. 175].

**PRELIMINARY STATEMENT**

The Parties agree that the scheduling order ("Scheduling Order") in this case set a deadline for the parties to request a pre-motion conference for motions to amend by October 28, 2024. [ECF No. 68]. They further agree that OMG/O'Keefe filed its letter requesting a pre-motion conference on May 6, 2025 ("Request Letter"), after the deadline. [ECF No. 150]. There is also no dispute that OMG/O'Keefe's May 6, 2025, filing of the Request Letter took place the day immediately after the parties resolved their discussions about what confidentiality designations should apply to the deposition of Joseph Barton. [ECF No. 149].

OMG/O'Keefe's Motion for Leave to Amend should be granted on these facts because OMG/O'Keefe can show "good cause" (diligence) under Rule 16(b)(4) of the Federal Rules of Civil Procedure for filing the Request Letter after the deadline from the Scheduling Order and can also satisfy the more lenient standard to be granted leave to amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure.

PV[2] argues that OMG/O'Keefe's proposed Amended Counterclaim under the Stored Communications Act, 18 U.S.C. § 2701 et seq. ("SCA") is futile under Rule 15(a)(2) because OMG/O'Keefe's proposed Amended Counterclaim fails to state a cause of action under the SCA. However, a cursory review of the proposed Amended Counterclaim shows that OMG/O'Keefe has pled all elements of an SCA claim. PV's argument fails on this point because it subtly tries to impose on OMG/O'Keefe a duty to plead the SCA

---

[2] Unless otherwise provided herein, the abbreviations used in this Reply will be the same as those used in Motion for Leave to Amend [ECF No. 176].

with particularity, an elevated pleading requirement that has no basis in law with regard to the SCA. PV's arguments must fail because it has improperly introduced evidence and matters outside of the pleadings to argue in opposition to the desired amendment.

PV further argues that OMG/O'Keefe did not act diligently under Rule 16(b)(4) because it knew of the factual basis for bringing its SCA claim prior to the deadline in the Scheduling Order. This argument is without factual basis, and, in fact, OMG/O'Keefe only developed an adequate basis for bringing its SCA claim through discovery obtained after the Scheduling Order deadline ("Post-Deadline Discovery").

PV also contends that even if OMG/O'Keefe needed Post-Deadline Discovery to develop a factual basis for its SCA claim OMG/O'Keefe should have sought to amend immediately after the relevant discovery was taken/obtained. But the Post-Deadline Discovery could not be used by OMG/O'Keefe until confidentiality designations pursuant to the Protective Order were resolved, nor could OMG/O'Keefe pursue a contested motion for amendment to their counterclaims when PV was without counsel. The record demonstrates that PV's own actions in over-designating deposition testimony, complicated further by the period of time PV was without counsel, hindered and forestalled OMG/O'Keefe's ability to amend.

Finally, PV contends that OMG/O'Keefe's Motion for Leave to Amend should be denied under Rule 15(a)(2) on the basis that it is filed in bad faith and prejudicial to PV. In fact, the motion is filed in good faith and OMG/O'Keefe is eager to pursue their SCA claim to completion. And case precedent shows that the prejudice PV contends it would suffer—modest additional discovery—does not support denial of a Rule 15(a)(2) request

to amend.

## ARGUMENT

**I. OMG/O'KEEFE'S CLAIM IS ADEQUATELY PLED AND THEREFORE NOT FUTILE UNDER RULE 15(A)(2); <u>AND</u> PV's INTRODUCTION OF MATTERS OUTSIDE THE PLEADINGS TRIGGERS CONVERSION OF THE MOTION TO ONE FOR SUMMARY JUDGMENT UNDER RULE 56, AND OMG/O'KEEFE SHOULD BE PROVIDED A FULL AND FAIR OPPORTUNITY TO RESPOND AND INTRODUCE COUNTER-EVIDENCE**

PV argues that OMG/O'Keefe's Motion for Leave to Amend is futile under Rule 15(a)(2) of the Federal Rules of Civil Procedure because the proposed Amended Complaint fails to state a cause of action. [ECF No. 184, Opposition, pgs. 11, 23-24]. PV's futility argument incorrectly assumes that the SCA requires a plaintiff to plead its case with particularity. The SCA does not require a plaintiff to plead their claim with particularity, and a review of the proposed Amended Complaint shows that OMG/O'Keefe's SCA claim is well pled.

Under the SCA, anyone who

(1) Intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) Intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a)(1)-(2) (2024).

In other words, an SCA claim requires the following distinct elements: (1) the obtaining, altering, or preventing authorized access to (2) an electronic communication

4

(3) while it is in electronic storage (4) as a result of intentional access (5) of a facility (6) through which an electronic service is provided (7) without authorization or in excess of authorization.

There can be no serious doubt that OMG/O'Keefe's proposed Amended Complaint alleges all of these elements. It specifies the existence of electronic communications of O'Keefe (paragraph 114; element 2); that were stored in a facility through which such electronic communications services were provided (paragraph 115, elements 3, 5, and 6); that were intentionally accessed and obtained by PV (paragraph 116, elements 4 and 1); without authorization and against the wishes of O'Keefe (paragraph 116, element 7). [ECF No 175].

It seems that in arguing for the futility of OMG/O'Keefe's amendment, what PV implicitly contends is that it is not enough for OMG/O'Keefe to adequately plead the elements of the SCA, but that they must do so with particularity.

PV complains in its Opposition that OMG/O'Keefe's SCA claim is futile because it "failed to allege a specific personal device that PV accessed or why there was no authorization." [Opposition, p. 24]. Nothing in the statute suggests a complainant must allege the specific device through which the SCA violation occurred: indeed, that information will often be irrelevant or known only to the violator, *as is the case here*. Neither does the statute nor case law requires OMG/O'Keefe to explain why there was no authorization if PV's contention is that OMG/O'Keefe must identify the specific means through which PV accessed O'Keefe's private information. Furthermore, OMG/O'Keefe is not obligated to explain, in light of case law interpreting the SCA, why

5

no express or implied authorization existed on those particular facts.  OMG/O'Keefe did not know these details at the time that it filed with the Court its proposed Amended Counterclaim, and OMG/O'Keefe were not required to know these details at that time.[3] [ECF No. 175].  There is no authority for the proposition that an SCA claim must be pled with particularity.

In arguing for this enhanced pleading standard, PV makes several references to comments made by the Court during the hearing of May 22, 2025. [ECF No. 184, Opposition, pgs. 7-8; 23-24]. However, the context of these statements makes clear that the Court was speaking impressionistically based on counsel's argument, and not on the basis of a contemporaneous review of the pleading requirements under the SCA.  PV contends that the Court's statements constituted *directives* to OMG/O'Keefe as to what an adequate pleading of the SCA required. OMG/O'Keefe believe that PV is straightforwardly incorrect on this point.

Assuming, *in arguendo*, that the Court intended to impose additional pleading requirements on OMG/O'Keefe, the Amended Counterclaim is still sufficient. The Court stated that "part of what you're going to have to allege in the amended complaint is why there was no authorization." At paragraph 116 of the Amended Counterclaim, after explaining the context of PV's unauthorized access of O'Keefe's Telegram and Instagram

---

[3] OMG/O'Keefe filed their Notice of Motion for Leave to file Amended Counterclaims on June 18, 2025 [ECF No. 175], which attached the proposed Amended Counterclaims.  As discussed further below, OMG/O'Keefe subsequently took the deposition of PV's Director of Information Technology, Joshua Hughes, on June 25, 2025.  Having deposed Hughes, OMG/O'Keefe is now in a position to plead its SCA claim with much greater detail and moves the Court for leave to file an updated version of its proposed Amended Counterclaims.

messages which were stored on third-party servers and not PV servers, OMG/O'Keefe have alleged the following: "O'Keefe intended these communications to remain private and not be publicly disclosed. O'Keefe never authorized PV or any of its agents or representatives to access, obtain, or disclose any of these private materials."

PV has cleverly attempted to prematurely overcome this straightforward allegation establishing there was no authorization, consistent with the Court's comment, by introducing excerpts of an alleged PV Employee Handbook and a Declaration signed by Joshua Hughes [ECF. No. 184-1, Opposition] who attests that the excerpt of the Employee Handbook attached to his Declaration was effective as of the date of O'Keefe's departure from PV "to the best of [Mr. Hughes'] knowledge, information, and belief."

The Declaration is insufficient, as it does not identify Mr. Hughes' position at PV, nor how he would be in a position to know whether or not the Employee Handbook was in effect at the time of O'Keefe's departure from PV. Worse, the excerpt of the Employee Handbook attached to Mr. Hughes' Declaration does not include the acknowledgment page (the last page of the 135-page Employee Handbook) signed by O'Keefe (as none exists), to demonstrate that O'Keefe acknowledged PV's alleged policies. Troublingly for PV, the acknowledgment page at page 135 of its Employee Handbook states: "THE POLICIES IN THIS HANDBOOK ARE NON-BINDING, GENERAL GUIDELINES WHICH MAY NOT APPLY TO EVERY EMPLOYEE IN EVERY SITUATION. WHEN IT IS NOT PRACTICAL OR DESIRABLE TO FOLLOW THESE GENERAL GUIDELINE POLICIES, THE COMPANY WILL HANDLE THESE SITUATIONS AS IT DEEMS APPROPRIATE."

In other words, the Employee Handbook PV improperly relies upon *as evidence* of O'Keefe's authorization is unenforceable and non-binding according to its own terms. Further, the SCA violations alleged by OMG/O'Keefe do not fall within the scope of the activity that the Employee Handbook purports to immunize (even assuming PV is permitted to define its own duties under the SCA via its Employee Handbook): specifically, the Employee Handbook purports to protect PV from liability for accessing private communications "transmitted over, received by, or stored in or on ECS owned, leased, or operated by, or on behalf of, the Company." But OMG/O'Keefe's claim does not allege an SCA violation to the extent the private communications PV accessed fell within this scope. [See ECF 175, Ex. A, ¶¶ 113-129, 233-237; ECF 184, Ex. 1, p. 42]. Consequently, the violations alleged by OMG/O'Keefe do not fall within the ambit of the supposed exclusions provided by the handbook.

But the larger issue created by PV's introduction of extrinsic evidence at this stage of the proceedings is that PV is not permitted to introduce matters outside the pleadings at this time. As PV knows, an argument for "futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal rules of Civil Procedure" and thus "'[f]utility is generally adjudicated without resort to any outside evidence.'" *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 257-58 (S.D.N.Y. 2012) (quoting *Wingate v. Gives*, No. 05 Civ. 1872, 2009 WL 424359, at *5 (S.D.N.Y. Feb 13, 2009)). PV's introduction of matters outside the pleadings leaves the Court with "two options", *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002): "The court either 'exclude[s] the extrinsic documents' or it "convert[s] the motion to one for summary judgment," giving the parties adequate notice

8

and an opportunity to "submit the additional supporting material contemplated by Rule 56." *Id.* (citations omitted); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *Stolarik v. N.Y. Times Co.*, 323 F. Supp. 3d 523, 538 (S.D.N.Y. 2018).

OMG/O'Keefe would prefer that the Court exclude the extrinsic evidence introduced by PV but recognize that what has been seen cannot be unseen. For that reason, OMG/O'Keefe request that the Court convert the motion and PV's Opposition [ECF No. 184] to one for summary judgment and provide OMG/O'Keefe adequate notice and a full and fair opportunity to "submit the additional supporting material contemplated by Rule 56." *Id.* OMG/O'Keefe attach here as **Exhibit 1** the page of the Employee Handbook omitted by PV and Mr. Hughes, but would intend to offer additional evidence to demonstrate the absence of any authorization by O'Keefe, including but not limited to supporting Declarations, deposition testimony (most notably, the recent deposition testimony from Mr. Hughes, as discussed further below), and communications between former PV Board members demonstrating their knowledge of O'Keefe's intent that the Telegram and Instagram messages remained private.

The dilemma presented by PV's premature introduction of matters outside the pleadings is not one of OMG/O'Keefe's making, and the Counterclaimants should not be prejudiced by PV's decision to offer extrinsic evidence. Indeed, OMG/O'Keefe raised this issue at the pre-motion conference on May 22, 2025 [ECF No. 168, pgs. 3-4], and PV

9

recognizes in its Opposition that the introduction of the Employee Handbook is improper at this stage. [ECF No. 184, pg. 16, fn. 4]. "[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is 'strictly enforce[d]' and 'mandatory.'" *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

## II. OMG/O'KEEFE ACTED DILIGENTLY IN FILING THE REQUEST LETTER

PV argues that OMG/O'Keefe did not act diligently for the purposes of Rule 16(b)(4) of the Federal Rules of Civil Procedure because OMG/O'Keefe had the information needed to allege the SCA claim substantially in advance of the filing of their Request Letter on May 5, 2025. [ECF No. 184, Opposition, pgs. 15-20]. In fact, OMG/O'Keefe did act diligently and filed its Request Letter promptly after learning the new information on which it bases its SCA claim.

First, in arguing that OMG/O'Keefe was not diligent, PV relies on the purported PV Employee Handbook from May 2020.[4] [*See* ECF No. 184, Opposition, pgs. 15-16, Ex. 1]. PV cites to excerpts from that handbook, which make assertions about the ownership of PV's electronic communications systems ("ECS"), PV's right of access to its ECS, and employees' lack of privacy regarding the ECS. [ECF No. 184, Opposition, p. 16].

PV's self-defeating "NON-BINDING" policies cannot have alerted OMG/O'Keefe to the SCA where there is an evidentiary question both about the enforceability of such

---

[4] PV attempts to circumvent the prohibition on presenting matters outside the pleadings on a motion to dismiss by arguing that the presentation of the Employee Handbook goes to OMG/O'Keefe's diligence.

"NON-BINDING" policies and whether O'Keefe was ever presented with such "NON-BINDING" policies, as exemplified by the absence of any document showing he signed the last page of the Employee Handbook as required by PV's HR.

Further, the Employee Handbook is simply a statement of policy. It cannot alone create the basis of a cause of action <u>without any action on the part of PV</u>. In other words, the Employee Handbook and its "NON-BINDING" policies only become relevant once PV has committed a violation of the SCA. Only then would the parties and the Court look to the Employee Handbook to see if it somehow immunized PV's conduct. In the proposed Amended Complaint, OMG/O'Keefe allege that PV <u>actually took concrete actions</u> in violation of the terms of the SCA by improperly obtaining and disseminating his private electronic communications, which concrete actions took place years after May 2020. [See ECF No. 175, Ex. A, ¶¶ 113-129, 233-237]. The Employee Handbook is therefore irrelevant to the question of OMG/O'Keefe's diligence.

<u>Second</u>, PV points to its May 29, 2024, motion for preliminary injunction as providing an adequate basis for OMG/O'Keefe's SCA claim. [ECF No. 184, Opposition, pgs. 16-18]. Specifically, that motion cites to three of O'Keefe's Telegram communications and states that PV had been able to access them because O'Keefe had saved them to PV's servers. [ECF No. 51 at 5, n.3]. If O'Keefe had in fact voluntarily saved his Telegram and Instagram to PV's servers as PV alleged in May 2024, then an SCA violation may not have been indicated. In other words, the preliminary injunction motion does not reveal an SCA violation on its face because it merely alleges that PV accessed material contained in its own servers.

11

> As OMG/O'Keefe has already explained in the Motion for Leave to Amend:
>
> > . . . the proposed Amended complaint does not allege that all or any of the intentionally accessed private communications were stored on PV's "computers." The communications in question would have been primarily if not wholly stored on the facilities (servers) of the various electronic service providers.

[ECF No. 176, Motion for Leave to Amend, p. 12].

As a result, PV's allegations in the motion for preliminary injunction did not and could not have provided OMG/O'Keefe a basis for its SCA claim.

Interestingly, this allegation made in PV's motion for preliminary injunction—that PV had been able to access O'Keefe's private Telegram communications because he had voluntarily saved them to PV's servers—appears to have been mistaken or deceptively articulated. When OMG/O'Keefe were finally able to depose PV's IT Director, Joshua Hughes last month (See infra, § II, Third, 1, for the delays PV caused in obtaining this deposition), Hughes' testimony contradicted PV's earlier assertions. Hughes' testimony shows that PV, through Hughes at the direction of "PV leadership", accessed O'Keefe's Telegrams through a third-party service that PV was able to access because O'Keefe had previously logged into that service on a PV laptop. (T 6:9-16; 7:24-8:10; 10:4-11:3). Mr. Hughes also confirmed that O'Keefe never authorized him to access O'Keefe's Telegram conversations and iMessages. Accessing an employee's private communications through this means definitively constitutes "unauthorized" access of an "electronic communication" under the SCA.[5] 18 U.S.C. § 2701(a)(1)-(2) (2024).

---

[5] See *Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 587 F. Supp. 2d 548 (S.D.N.Y, Oct 23, 2008) (communication "stored on an electronic communication service provider's system. . . as opposed to. . . stored on a personal computer, is a stored communications subject to the SCA."); *Levin v. Impact Office, LLC,*

12

Because the preliminary injunction motion asserted that PV accessed O'Keefe's private communications through O'Keefe's voluntary placement of those communications on PV's servers, it did not provide OMG/O'Keefe with adequate new information to add a claim for an SCA violation.[6]

As argued in the Motion for Leave to Amend, OMG/O'Keefe did not have in its possession adequate new information to amend its pleading to add a claim for violation of the SCA until Post-Deadline Discovery. Specifically, OMG/O'Keefe relied on the deposition testimony of Joseph Barton ("Barton") taken on November 7, 2024, and the Strack/Tyrmand text messages obtained on November 18, 2024. [ECF No. 176, Motion for Leave to Amend, pgs. 5-6]. In his deposition testimony, Barton admitted that in virtue of his position as President of Project Veritas Action Fund he had obtained a flash drive

---

No. TDC-16-2790; 2017 WL 2937938 (D. Md. July 10, 2017) (emails accessed on company phone were considered to be stored on Gmail servers for purposes of SCA). In both *Levin* and *Lazette v. Kulmtycki*, 949 F. Supp. 2d 748, 753 (N.D. Ohio June 5, 2013) an employee had returned a company telephone at the end of the employee's employment and the company had accessed the employee's private email account using a username and password stored on the telephone. In both decisions, the Courts found the plaintiffs had adequately pled a claim for violation of the SCA.

[6] And of course, the Hughes deposition testimony could not play this role either, since that deposition was only taken last month, on June 25, 2025. As noted by the Parties in their respective submissions, the Hughes deposition was not the first time he has testified in the case. He also testified at the hearing on the motion for preliminary injunction, which took place on July 29, 2024. As explained in OMG/O'Keefe's Motion for Leave to Amend, the preliminary injunction hearing did not provide OMG/O'Keefe an opportunity to drill down into Mr. Hughes' testimony for the purposes of cultivating the basis for an SCA claim. [ECF No. 174, p. 4]. PV responds that this contention "beggars belief," though PV does not explain why it strikes PV as implausible. [ECF No. 184, no. 5]. At any rate, the preliminary injunction hearing was primarily concerned with whether O'Keefe had "stolen" PV's donor list or disparaged PV to donors after he was terminated. Mr. Hughes testified only briefly, and somewhat surprisingly, that he was in possession of all of O'Keefe's text messages and communications – a point that was used to exploit that PV lacked any real basis to claim O'Keefe was improperly contacting donors. If OMG/O'Keefe's counsel had treated its cross-examination of Mr. Hughes like a deposition, exploring topics beyond the scope of the hearing and exploring PV's unauthorized access of O'Keefe's Telegram and Instagram messages, including the how/who/when/what/where/why of PV's obtaining those messages, PV would have surely objected and the Court would have prohibited such line of questioning.

13

of O'Keefe's private information, compiled by an auditing team. [T 112-113]. Pressed on what authority he had to access O'Keefe's private information, Barton testified that it was in "virtue of my position." [T 112:5-9]. He continued: "I provided myself with the document. Is that what you want to hear?" [*Id.*] Likewise, the Strack/Tyrmand exchanges attest to PV compiling "tons of" O'Keefe's private information and weaponizing it in a public defamation campaign. [ECF No. 176, Motion for Leave to Amend, pg. 5-6]. As with Mr. Barton's testimony, the documents produced by Mr. Strack at his November 18, 2024, deposition, and by Mr. Skakel at his November 19, 2024, deposition remained subject to privilege claims that were only resolved upon PV's engagement of replacement counsel.

This Post-Order Discovery evidence—along with the actual private communications that surfaced through PV's public defamation campaign against O'Keefe—displayed PV accessing and sharing O'Keefe's private communications in such volume and with such malice that it became no longer plausible to believe that the only mechanism through which PV had accessed O'Keefe's private communications was through lawful means.

As a result, it was not until OMG/O'Keefe had received and reviewed this Post-Order Discovery that OMG/O'Keefe had obtained adequate new information to amend their complaint to add a claim for violation of the SCA.

<u>Third</u>, PV contends that even if O'Keefe needed Post-Deadline Discovery to develop a factual basis for its SCA claim, OMG/O'Keefe should have sought to amend immediately after Barton's November 7, 2024, deposition as opposed to waiting to file

14

the Request Letter until May 6, 2025. [ECF No. 184, Opposition, pgs. 18-20].

In fact, PV well knows that any delay in this regard by OMG/O'Keefe was due to PV's own actions in hindering OMG/O'Keefe. This hindering included, among other things:

1. Frustrating OMG/O'Keefe's ability to obtain testimony regarding PV's accessing of O'Keefe's private messages by chronically postponing the deposition of PV's corporate representatives. OMG/O'Keefe first noticed PV's corporate representative on September 13, 2024 (before the Scheduling Order deadline), then again on November 25, 2024, and again on April 30, 2025. The actual deposition did not take place until June 6 and June 25, 2025 (as two corporate representatives were appointed, one of them being Mr. Hughes, after the filing of the Request Letter). Even then, the first appointed corporate representative deferred, insisting he lacked knowledge concerning PV's accessing and use of O'Keefe's private communications. Consequently, OMG/O'Keefe had to wait for Mr. Hughes' phase of the corporate representative deposition on June 25th to obtain the needed testimony.

2. Frustrating OMG/O'Keefe's ability to obtain relevant document discovery. OMG/O'Keefe issued written discovery requests as early as September 6, 2024, but as of the filing of this Reply (and despite assurances from PV's counsel), OMG/O'Keefe still has not received a promised flash drive of O'Keefe's private Telegram messages in PV's possession. Reviewing specifically what messages PV has accessed, and any associated metadata, would have helped OMG/O'Keefe determine if there were a basis for concluding those messages were accessed in violation of the SCA.

15

3. Frustrating OMG/O'Keefe's ability to advance their case in general by being effectively unrepresented during much of the period in which PV contends OMG/O'Keefe should have submitted their Request Letter. PV's prior counsel filed a motion to withdraw on December 19, 2024 [ECF No. 113], resulting in a stay of discovery in the case [ECF No. 117] and, in effect, a stay of proceedings (since the Court was not in a position to consider most requests from OMG/O'Keefe while PV was without an advocate). PV secured replacement counsel over three months later in late February of 2025 [ECF No. 133], who then sought and was granted a further adjournment to familiarize himself with the case. [ECF No. 134].

4. Most importantly, PV delayed and frustrated OMG/O'Keefe's ability to file their Request Letter by designating the discovery on which OMG/O'Keefe relies for the SCA claim as "Confidential" under the protective order governing this case ("Protective Order") [ECF Nos. 96 and 99]. At the time of the taking of the Barton deposition, PV designated the entirety of the deposition as "Confidential" under the Protective Order and demanded that it be sealed. Likewise, PV's counsel designated as "Confidential" the text messages between Daniel Strack and Matthew Tyrmand two weeks after those messages were obtained by OMG/O'Keefe in discovery in late November of 2024. As noted previously, the parties resolved their disagreements over the scope and applicability of PV's Barton designations on May 5, 2025 [ECF No. 149] and OMG/O'Keefe filed its Request Letter the following day. [ECF NO. 150]. Effectively, what PV is arguing is that in order to have acted with diligence, OMG/O'Keefe needed to have abandoned negotiations with PV's counsel regarding PV's confidentiality

designations (which negotiations were made necessary by PV) and either (i) sought to amend the Protective Order; (ii) sought to challenge PVs counsel's designations under the Protective order; or (iii) sought to file its amended complaint under seal to protect the confidentiality of the materials designated as "Confidential" by PV.  Further, OMG/O'Keefe was to have pursued this inefficient and resource-wasting course during a time period, the majority of which PV was without counsel and the case was effectively stayed.  PV has not provided any authority for the outsized duty of diligence it seeks to impose on OMG/O'Keefe, nor does such authority exist.

Fourth, PV contends that the similarity between OMG/O'Keefe's SCA claim, and its Publication of Private Facts count (Count IX) shows that OMG/O'Keefe had enough information to bring an SCA claim at the time of their original pleading.  [ECF No. 184, Opposition, p 16, no. 6].  PV is correct that for the purposes of putting PV on notice of its wrongdoing, the two claims "track[] [each other] almost exactly," since the heart of both claims are the same—improper and unauthorized disclosure of private information. [*Id.* quoting ECF No. 176, Motion for Leave to Amend, pgs. 15-16]. However, from a pleading perspective, the claims are distinct.  The crucial difference between a publication of private facts claim and a claim under the SCA is that SCA claims have several technical requirements, requiring the pleader to evaluate such questions as whether the private information in question constitutes an "electronic communication", whether the electronic communication is in "electronic storage", and whether such storage takes place in a "facility through which an electronic service is provided."   18 U.S.C. § 2701(a)(1)-(2) (2024).  A publication of private facts claim may exist even where the communications in

17

question were in fact stored on PV's servers, but an SCA violation appears to require that the communications have been accessed on a third-party server, a fact that was not evident until Post-Order Discovery occurred. In other words, a plaintiff who can adequately plead a private facts count is not necessarily in a position to plead an SCA claim, as was the case here until OMG/O'Keefe obtained the Post-Order Discovery.

### III.    OMG/O'KEEFE'S CLAIM SURVIVES A RULE 15 ANALYSIS

Finally, PV argues that without regard to whether OMG/O'Keefe can demonstrate diligence for the purposes of a Rule 16(b)(4) analysis, OMG/O'Keefe's Motion for Leave to Amend fails to satisfy the "freely given" standard of Rule 15(a)(2). [ECF No. 184, Opposition, pgs. 21-24]. PV argues that this is because OMG/O'Keefe has engaged in delay, bad faith, and that amendment would prejudice PV.

For delay, PV relies on the same argument it relied on for its lack of diligence argument addressed in the preceding section. [ECF No. 184, Opposition, p 21-22]. In reply, OMG/O'Keefe references the Court to its previous argument on this point as well.

As to bad faith, PV seems to be arguing lack of sincerity, contending that OMG/O'Keefe seeks to file its SCA claim to aid in its journalistic endeavors.[7] OMG/O'Keefe assures the Court this is not the case. [ECF No. 184, Opposition, p 22-23]. The personal consequences arising from PV's SCA violation have been enormous and

---

[7] PV's contention is disingenuous at best, as it immediately published the Complaint [ECF No. 1] on its website when it filed in May 2023, released the results of its internal audit following O'Keefe's termination to the *Washington Post* and *New York Times*, sat for numerous interviews with outlets such as *Rolling Stone* disparaging O'Keefe, and continues to attack O'Keefe on social media. Most pertinent to the present motion, OMG/O'Keefe's SCA claim arises from PV's efforts to destroy O'Keefe by releasing his private messages as part of PV's "ill-advised publications" and "extrajudicial behavior".

18

traumatic for O'Keefe.  OMG/O'Keefe seeks to file its proposed Amended Complaint for the purpose of prosecuting the proposed Amended Complaint, and it is prepared to pursue PV through to trial and to be made whole through a money judgment.

Finally, PV argues that it would be prejudiced by an amendment because such amendment would force PV to expend additional resources to conduct discovery and prepare for trial.  [ECF No. 184, Opposition, p 23].   But "the need for new discovery is not sufficient to constitute undue prejudice on its own." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 99-101 (S.D. N.Y. 2010); *see also Agerbring v. Model Serv. LLC*, 155 F.Supp. 3d 448, 454-55 (S.D.N.Y. 2016) (stating that "[w]hile some additional discovery will certainly be necessary, the possibility 'that an amendment will require the expenditure of additional time, effort, or money [does] not constitute 'undue prejudice.'") (quoting *A.V. by Versace, Inc. v Gianni Versace S.p.A*, 87 F.Supp.2d 281, 299 (S.D.N.Y. 2000). Here, any additional discovery will be modest, focusing on which of O'Keefe's personal communication PV accessed and how it did so.  This information is straightforward and easily known to PV, and the only reason why PV will need to expend substantial resources during such discovery is if it seeks to obstruct OMG/O'Keefe in its effort to uncover the relevant facts.

## CONCLUSION

For the reasons set forth herein, the Court should grant OMG/O'Keefe's Motion for Leave to Amend or, in the alternative, convert the motion and PV's Brief in Opposition to a motion for summary judgment given PV's presentation of matters outside of the pleadings in order to allow OMG/O'Keefe a full and fair opportunity to respond with

counter-evidence or, also in the alternative, allow OMG/O'Keefe to file a further amended complaint to incorporate allegations based on the recent testimony of Joshua Hughes, and provide all such further relief that is necessary and proper.

Dated: July 23, 2025.



2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

*/s/ Nicholas P. Whitney*

Nicholas P. Whitney
Florida Bar No. 119450
Seldon J. Childers
Florida Bar No. 61112
jchilders@smartbizlaw.com
nwhitney@smartbizlaw.com
notice@smartbizlaw.com

*Counsel for Counterclaimants*
*O'Keefe & OMG*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on July 23, 2025, which served same electronically upon all counsel of record.

*/s/ Nicholas P. Whitney*
Attorney

20