UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND,<br><br>Plaintiffs/Counterclaim-Defendants,<br><br>v.<br><br>JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP,<br><br>Defendants/Counterclaimants. | Civil Action No. 7:23-cv-04533 |

**COUNTERCLAIMANTS' RESPONSE TO COUNTERCLAIM-DEFENDANTS'
BRIEF IN OPPOSITION AND INCORPORATED REQUEST TO EXCEED
THE TEN DEPOSITION LIMIT UNDER RULE 30 FOR GOOD CAUSE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    I.   PV Consented to Exceeding the Ten-Deposition Limit and Waived Any
        Objection: PV's Tactic is Unfair Surprise ............................................................... 3

    II.  Counterclaimants Have Good Cause to Exceed the Ten-Deposition Limit .......... 7

    III. The Rule 26 Factors Favor Granting Leave to Exceed the Limit ........................ 11

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*C.K. through P.K. v. McDonald*,
  345 F.R.D. 262 (E.D.N.Y. 2023) .................................................................................................. 3

*Cohalan v. Genie Indus., Inc.*,
  276 F.R.D. 161 (S.D.N.Y. Aug. 30, 2011) ................................................................................... 5

*Galgano v. County of Putnam*,
  No. 16-cv-3572 (KMK) (PED), 2021 WL 2138759 (S.D.N.Y. May 26, 2021) ................. 8, 12

*Gilead Scis., Inc. v. Safe Chain Sols. LLC*,
  345 F.R.D. 22 (E.D.N.Y. 2024) ................................................................................................ 6, 7

*In re Actos Antitrust Litig.*,
  639 F. Supp.3d 453 (S.D.N.Y. 2022) .......................................................................................... 6

*In re Weatherford Int'l Sec. Litig.*,
  No. 11 CIV. 1646 LAK JCF, 2013 WL 5762923 (S.D.N.Y. Oct. 24, 2013) ......................... 12

*Mitchell v. First Reliance Standard Life Ins. Co.*,
  237 F.R.D. 50 (S.D.N.Y. 2006) ................................................................................................... 5

*Phelan v. Cambell*,
  No. 10-CV-540, 2012 WL 407161 (N.D.N.Y. Jan. 19, 2012) ................................................. 6

*Russell v. Aid to Developmentally Disabled, Inc.*,
  No. 12-CV-0389 (LDH) (AKT), 2016 WL 11735374 (E.D.N.Y. Mar. 31, 2016) ................. 6

*UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*,
  No. 09 Civ. 4286, 2010 WL 743371 (S.D.N.Y. Feb. 24, 2010) .............................................. 5

**Statutes**

18 U.S.C. § 2701 et seq. ...................................................................................................................... 7

**Rules**

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................................ 1, 11

Fed. R. Civ. P. 30(a)(2) ...................................................................................................................... 2

Fed. R. Civ. P. 30(a)(2)(A) ................................................................................................................ 3

Fed. R. Civ. P. 30(a)(2)(A)(i) .................................................................................................. 1, 3, 7

Fed. R. Civ. P. 30(b)(6) ................................................................................................................ 8, 9

**PRELIMINARY STATEMENT**

Counterclaimants James O'Keefe and Transparency LLC d/b/a O'Keefe Media Group (collectively, "Counterclaimants") hereby submit this response to Counterclaim-Defendants Project Veritas and Project Veritas Action Fund (collectively, "PV"'s) argument, raised in their Brief in Opposition to Counterclaimants' Motion for an Order Authorizing Alternative Service on Thomas O'Hara [ECF No. 189], that Counterclaimants should be limited to ten depositions pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i). As set forth below, PV has consented to exceeding the ten-deposition limit through their repeated agreements to deposition schedules that collectively exceed ten depositions, without objection on at least three prior occasions. Moreover, even absent such consent, Counterclaimants have good cause to exceed the limit, and the factors under Rule 26(b)(2)(C) weigh in favor of granting leave to do so. Accordingly, the Court should permit Counterclaimants to proceed with the necessary depositions.

**BACKGROUND**

This case arises from the contentious separation of James O'Keefe from PV, involving allegations of misconduct by PV's Board members and executives. Following June 9, 2025, hearing before Magistrate Judge Krause on PV's letter motions addressing alleged witness tampering and intimidation [ECF Nos. 161 and 164], and also addressing Counterclaimants' letter motion seeking an extension of the previously agreed-upon discovery schedule [ECF No. 158], the Court extended discovery such that depositions are to be completed by August 15, 2025. Following the June 9th hearing, the Court

1

adopted the parties' joint letter setting out the schedule for the remaining depositions. [ECF No. 177] The parties have agreed to deposition schedules on at least two occasions, each of which was adopted by the Court as an order [*see* ECF Nos. 153 and 177]. These schedules, which PV agreed to, contemplate more than ten depositions.

Not until Counterclaimants sought leave from this Court to serve former CFO Thomas O'Hara through alternative means did PV raise the ten-deposition limit to frustrate Counterclaimants' ability to complete the agreed-upon deposition schedule adopted as an Order of this Court. [ECF No. 177]. PV's July 10, 2025, opposition brief [ECF No. 189], ostensibly related to alternative service on Mr. O'Hara, but now raising the ten-deposition limit under Rule 30, is just the latest in a string of tactics to frustrate Counterclaimants' ability to conduct discovery in a case initiated by PV. PV's prior tactics included suggesting a stay of all discovery pending resolution of Counterclaimants' pending motion to amend, falsely claiming that O'Keefe had "chase[d] a trial witness through the streets", and making inflated and hyperbolic allegations that Counterclaimants had engaged in witness intimidation. [ECF No. 161] PV later admitted that Counterclaimants had not violated the Protective Order. [ECF No. 164]. At all times since discovery began, Counterclaimants have proceeded with the clear intent to take the necessary depositions of PV's former and current Board members, former executives, and necessary third-party witnesses. The deposition schedules that PV agreed to contemplated depositions in excess of the ten-deposition limit otherwise provided in Rule 30, and PV has effectively waived the ten-deposition limit by mutual agreement and stipulated to the remaining depositions in satisfaction of Rule 30(a)(2).

2

Counterclaimants believe that PV's prior agreements are dispositive of the issue. In any case, Counterclaimants can satisfy the alternative Rule 26 analysis and demonstrate good cause to exceed the ten-deposition limit.

**ARGUMENT**

Federal Rule of Civil Procedure 30(a)(2)(A)(i) presumptively limits each side to ten depositions without leave of court or stipulation by the parties. However, this limit may be exceeded by mutual agreement or upon a showing of good cause consistent with Rule 26(b)(1) and (2). *See C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 269 (E.D.N.Y. 2023) (noting that parties may stipulate to exceed the limit, and courts grant leave where proportional and necessary). As explained above, PV has consented to exceeding the ten-deposition limit. Notwithstanding PV's belated opposition, Counterclaimants have good cause to do so, and the Rule 26 factors support granting leave.

### I. PV Consented to Exceeding the Ten-Deposition Limit and Waived Any Objection: PV's Tactic is Unfair Surprise

Parties may waive the ten-deposition limit by mutual agreement, and Rule 30(a)(2)(A) explicitly allows stipulations to additional depositions without court intervention. *See C.K. through P.K.*, 345 F.R.D. at 269 (parties cooperating in discovery may agree to exceed the limit). Here, PV has consented to exceeding the limit on at least two prior occasions through their agreements to deposition schedules that, in aggregate, exceeded the ten-deposition limit otherwise prescribed in Rule 30. These agreements were memorialized in joint submissions to the Court and adopted as Court Orders, without any objection from PV to the deposition limit.

First, on or about April 2025, the parties agreed to a deposition schedule through May and June 2025, which included multiple depositions beyond the initial ones already taken (e.g., Wendy Hersche, David Hersche, Ben Wetmore, Joshua Hughes, and PV itself) [ECF No. 153]. PV expressly stated they were "seeking to cooperate, in good faith," and did not raise the ten-deposition limit despite the schedule contemplating more than ten total depositions. The Court adopted this schedule as an Order, warning that changes would likely be denied absent consent (*id.* at 2). PV has repeatedly attempted to weaponize the "absent consent" language disfavoring modification, most recently to oppose a scheduling change to Hannah Giles' deposition to allow for her deposition on a mutually agreeable date on which PV's counsel confirmed his availability. [ECF No. 183]. Now, absent consent, PV seeks to substantially curtail Counterclaimants' ability to proceed with the agreed-upon depositions.[1]

Second, on May 23, 2025, Counterclaimants moved for a forty-five (45)-day extension of the deposition deadline to August 15, 2025 [ECF No. 158]. PV objected on other grounds (e.g., pending a motion to amend) but did not invoke the ten-deposition limit [ECF No. 161]. The Court granted the extension and authorized an additional deposition (Hannah Giles), again without PV raising the limit (June 10, 2025, Minute Entry).

---

[1] PV did not confer with Counterclaimants to discuss any modifications to the Court's Order at ECF No. 183 before submitting its Brief in Opposition and raising the presumptive ten-deposition limit for the first time in this case.

4

Third, on June 17, 2025, the parties submitted another agreed schedule. By the time of this June 17th joint submission, seven depositions had been taken,[2] including depositions of John Garvey and others, bringing the total well over ten [ECF No. 177]. PV again did not object to the number of depositions, and the Court adopted the schedule as an order, reiterating that non-consensual changes would likely be denied (id. at 3).

PV's failure to raise the issue until now—after consenting to schedules exceeding ten depositions—constitutes waiver. *See Mitchell v. First Reliance Standard Life Ins. Co.*, 237 F.R.D. 50, 54 (S.D.N.Y. 2006) (court would not bar depositions where party failed to raise issue for two months after allegedly defective deposition notices were served). PV's failure to raise the issue for more than two months [*compare* ECF No. 153 and 189] similarly constitutes waiver. "A failure to respond or object to a discovery request in a timely manner waives any objection which may have been available." *Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 163 (S.D.N.Y. Aug. 30, 2011); citing *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.,* No. 09 Civ. 4286, 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010). Counterclaimants requested the now-challenged depositions months ago. In each instance, Counterclaimants sent a Notice of Deposition to PV before serving the

---

[2] Before PV's current counsel appeared in the case, Counterclaimants took the depositions of former PV Board members Joseph Barton and George Skakel and former PV COO Daniel Strack. With PV's current counsel in attendance, Counterclaimants then took the depositions of Dave Herche, Wendy Herche (two prominent PV donors), Ben Wetmore (PV's current Board President), the first phase of PV's corporate representative's deposition (PV designated two corporate representatives), and John Garvey (former PV Board member). Mr. Garvey's deposition occurred on June 17th, the same day the agreed-upon schedule was submitted. Since the joint schedule was adopted as an Order of the Court, Counterclaimants have completed PV's corporate representative's deposition and taken the deposition of Joshua Hughes (PV's IT Director). **In total, Counterclaimants have taken nine depositions, with seven more agreed to by PV.**

5

deponents with subpoenas. PV did not object to a singular Notice. PV's failure to object to the deposition notices in a timely manner constitutes waiver.

PV's tactic in raising the ten-deposition limit in response to a motion addressing alternative service on one of the sixteen deponents PV has agreed to on multiple occasions is unfair surprise. "Discovery is not a matter of gamesmanship nor conducted like a game of chess." *Gilead Scis., Inc. v. Safe Chain Sols. LLC*, 345 F.R.D. 22, 27 (E.D.N.Y. 2024); citing *Russell v. Aid to Developmentally Disabled, Inc.*, No. 12-CV-0389 (LDH) (AKT), 2016 WL 11735374, at *5 (E.D.N.Y. Mar. 31, 2016) (citing *Phelan v. Cambell*, No. 10-CV-540, 2012 WL 407161, at *2 (N.D.N.Y. Jan. 19, 2012), *report and recommendation adopted*, 2012 WL 407147 (N.D.N.Y. Feb. 8, 2012), *aff'd*, 507 F. App'x 14 (2d Cir. 2013)).

PV should not be allowed to now retroactively impose the presumptive ten-deposition limit to block outstanding depositions, including Mr. O'Hara's, after benefiting from extended discovery by belatedly requesting the depositions of O'Keefe and OMG's corporate representative, both of which were set for August 5, 2025. This is especially true given the Court's reliance on the parties' agreements in managing the case. PV has previously agreed to all of the depositions that are contemplated in the Court's Order adopting the parties' joint deposition schedule. Courts grant leave where prior stipulations support exceeding the ten-deposition limit. See *In re Actos Antitrust Litig.*, 639 F. Supp.3d 453, 455 (S.D.N.Y. 2022) (finding good cause and granting plaintiffs leave to take 15 depositions where defendants had initially agreed to 15 depositions).

## II. Counterclaimants Have Good Cause to Exceed the Ten-Deposition Limit

Even if the Court looks past PV's prior agreements, Counterclaimants can demonstrate good cause for exceeding the presumptive limit, as required under Rule 30(a)(2)(A)(i). Good cause exists where the complexity of the case and the number of key witnesses necessitate additional depositions to ensure a fair resolution. Moreover, the impending August 15th discovery deadline justifies enforcement of the prior agreements setting the remaining depositions <u>in the next three weeks</u>. *See Gilead Scis., Inc.*, 345 F.R.D. at 28 (granting additional depositions without exhaustion of the limit due to case exigencies and necessity where fact discovery was to be completed in the next 60 days).

This case involves the tumultuous separation of O'Keefe from PV, implicating numerous Board members and executives in allegations of misconduct, including breach of contract, breach of fiduciary duties, defamation, and violations of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq. Counterclaimants' depositions have been focused on those directly involved in the surprise ouster of O'Keefe from PV, the groundbreaking undercover journalism organization he had founded and led for more than a decade. These included former Board members (Joseph Barton, George Skakel, John Garvey, Matt Tyrmand) and executives (e.g., Daniel Strack, Thomas O'Hara, Barry Hinckley, Joshua Hughes). In the aftermath of O'Keefe's termination, all but one of the above-listed individuals departed PV[3], and a new Board and team of executives took

---

[3] Joshua Hughes, PV's IT Director, is the only individual from the O'Keefe-era PV team that has remained.

7

over. These include Ben Wetmore (the current President of the Board) and Hannah Giles (the CEO who assumed O'Keefe's role in the months following his departure).

The turnover from the old guard to the new guard at PV has substantially complicated discovery in this case. PV's former Board members and executives are technically third parties to the suit, despite their instigating the events leading to this action, including the decision to file a federal complaint against O'Keefe and his new media organization, O'Keefe Media Group. As such, Counterclaimants have been forced to track down each of these third parties, and each possesses only remnants of the documentary evidence they otherwise would have had access to by virtue of their former roles with PV.

Counterclaimants' attempts to take PV's corporate representative's deposition were postponed or otherwise delayed by PV on no less than three occasions. The first attempt to take the 30(b)(6) deposition of PV was in the fall of 2024, and those depositions were not completed until June of this year. Unlike the circumstances underlying the decision in *Galgano v. County of Putnam*, No. 16-cv-3572 (KMK) (PED), 2021 WL 2138759, at *1 (S.D.N.Y. May 26, 2021), Counterclaimants have exhausted PV's institutional knowledge. Mr. Wetmore, who testified as PV's corporate representative on all issues other than those surrounding PV's information technology systems, disclaimed knowledge of the facts underlying the present dispute during his deposition. When asked about the present lawsuit and PV's pursuit of a preliminary injunction against O'Keefe and OMG in the summer of 2024, Mr. Wetmore testified: "When I come into the organization, you know, I am going off of the attestations that had been made to me about

8

the facts in that case." When asked about PV's provision of O'Keefe's private communications to outside actors, including Kyle Seraphin and the anonymous account on X known as James O'Keefe the Panty Thief, Mr. Wetmore similarly testified that he did not know who within PV had accessed and released O'Keefe's private communications.

The remaining depositions on the deposition schedule jointly submitted by the parties are directed at answering questions that PV's current and former Board members and executives have been unable to answer. Factoring in the depositions that have occurred since the joint submission on June 17th, the following remain: (1) Thomas O'Hara; (2) Barry Hinckley; (3) Kyle Seraphin; (4) Matt Tyrmand; (5) Hannah Giles; (6) Paul Calli[4]; and (7) Ken Larrey.[5]

Thomas O'Hara, Barry Hinckley, and Matt Tyrmand each possess unique knowledge about the events leading to O'Keefe's ouster and PV's internal decisions to publicly attack O'Keefe through the point of each of their respective resignations from PV. Previous depositions have illuminated that Matt Tyrmand and Kyle Seraphin were in direct contact and each bear some responsibility in the publication and dissemination of O'Keefe's private communications that were improperly accessed by PV's IT Director

---

[4] Counterclaimants are willing to forego the deposition of Mr. Calli, who has filed a Motion to Quash Subpoena in the Southern District of Florida. The Court rightly noted at the most recent hearing that Mr. Calli's deposition would likely involve procedural entanglements, since Mr. Calli is a practicing lawyer, member of the Florida Bar, and former counsel to PV.

[5] The joint submission also includes the upcoming deposition of James O'Keefe on August 5th, and a Rule 30(b)(6) deposition of OMG on the same day. Those depositions are not included in the above count as they are being pursued by PV, not Counterclaimants.

9

at the direction of PV's leadership following O'Keefe's termination. Hannah Giles, as the successor CEO, possesses relevant knowledge about PV's decision to access and disseminate O'Keefe's private communications and PV's decision to release the results of an internal audit conducted following O'Keefe's departure to further disparage him. Additionally, Ms. Giles was the CEO at the time that PV defamed O'Keefe and her testimony is critical to further developing O'Keefe's defamation claim. And finally, Ken Larrey has been identified as a likely actor behind the James O'Keefe the Panty Thief X account. No one deposed to date has been able to conclusively identify the person or persons behind this anonymous X account, and Mr. Larrey's testimony could be helpful in this regard and relevant to O'Keefe's claims for defamation, publication of private facts, and violation of the SCA.

Limiting Counterclaimants to ten depositions upon PV's opposition to alternative service on Mr. O'Hara would unfairly prejudice Counterclaimants, who would be effectively deprived of critical depositions without prior notice that PV intended to enforce a ten-deposition limit. PV's late reversal of position would deprive Counterclaimants of any ability to prioritize depositions with an understanding that only ten depositions were available.[6] The depositions are targeted, non-duplicative, and set to be completed in the next three weeks. After considering Counterclaimants' voluntary

---

[6] The prejudice also has real-world financial impacts on Counterclaimants, who have pursued the agreed-upon third party depositions with diligence, and expended significant resources to coordinate the upcoming depositions. For example, Counterclaimants spent significant time locating Mr. Tyrmand and briefing the Court on the circumstances justifying alternative service. Similarly, the catalyst for this brief was a motion for alternative service on Mr. O'Hara. And Counterclaimants have prepared notices and subpoenas and engaged process servers to expeditiously effect service on the remaining deponents following the most recent hearing in line with the Court's directives.

10

waiver of their ability to take Mr. Calli's deposition, the agreed-upon deposition schedule will only result in 15 total depositions. Exceeding the presumptive limit by five (5) depositions, given PV's prior agreements and the near-absolute turnover in PV's leadership, is justified given the case's complexity and Counterclaimants' diligent and targeted efforts to take depositions. On this record, with PV consenting to depositions until the 11th hour, strict enforcement of the ten-deposition limit otherwise provided for in Rule 30 would be manifestly unfair.

### III. The Rule 26 Factors Favor Granting Leave to Exceed the Limit

Rule 26(b)(2)(C) directs courts to consider whether (i) the discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) whether the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; and (iii) whether the proposed discovery is proportional to the needs of the case. These factors support Counterclaimants.

First, the additional depositions are not cumulative or duplicative. Each witness on the deposition schedule adopted by the Court possesses relevant information that prior deponents, including PV's corporate representative, have been unable to provide. *See* Section II above.

Second, Counterclaimants have not had ample opportunity to obtain this information elsewhere. Despite diligent efforts, including prior depositions and document production, the remaining witnesses' testimony is uniquely available through depositions. *See In re Weatherford Int'l Sec. Litig.,* No. 11 CIV. 1646 LAK JCF, 2013 WL

5762923, at *3 (S.D.N.Y. Oct. 24, 2013) (finding plaintiffs had not had ample opportunity to discover information where thirteen (13) of thirty (30) individuals were former employees residing outside New York). As in *In re Weatherford,* given that "some of [the deponents] are outside the jurisdiction of this court and are unlikely to appear at trial; without oral depositions, the [Counterclaimants] may never have access to these individuals or the evidence they possess." In the present action, Barry Hinckley, Matt Tyrmand, Hannah Giles, Ken Larrey, and Kyle Seraphin are outside the jurisdiction of this Court. Each has been served in Texas and/or Florida.[7] Thus, five of the six remaining deponents on the agreed-upon schedule are unlikely to appear at trial, and these depositions are likely Counterclaimants' only opportunity to secure relevant testimony and information from these individuals. "The lack of prior opportunity or alternate means to discover the information sought weighs in favor of granting leave to conduct more than ten depositions." *Id.*

Third, the remaining six depositions are proportional to the needs of this case. The reputational and financial harm PV inflicted on Counterclaimant James O'Keefe has drawn national attention, and PV and its former Board members set for deposition have disseminated private communications via X and other social media outlets, released the results of an internal audits through *The New York Times*, and defamed O'Keefe through outlets such as *The Washington Post* and *Rolling Stone*. In contrast to *Galgano v. County of Putnam*, 2021 WL 2138759 (S.D.N.Y. May 26, 2021), the court denied blanket authority for

---

[7] Ironically, Mr. O'Hara, whose deposition catalyzed the present briefing, does appear to reside in New York.

12

thirty depositions where the request was unprioritized and uncoordinated. Here, Counterclaimants' requests were coordinated with PV, they are targeted, and the testimony will build on exhausted depositions, aligning with Rule 26.

## CONCLUSION

For the foregoing reasons, the Court should reject PV's argument and confirm that Counterclaimants may exceed the ten-deposition limit, consistent with the parties' prior agreements and the needs of the case.

Respectfully submitted,

Dated: July 25, 2025.



2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

*/s/ Nicholas P. Whitney*

Nicholas P. Whitney
Florida Bar No. 119450
Seldon J. Childers
Florida Bar No. 61112
jchilders@smartbizlaw.com
nwhitney@smartbizlaw.com
notice@smartbizlaw.com

*Counsel for Defendants and
Counterclaimants O'Keefe & OMG*

13

**CERTIFICATE OF COMPLIANCE**

The undersigned, Nicholas P. Whitney, hereby certifies that this Response complies with the Individual Rules of Practice of Judge Seible, as well as Local Rule 7.1(c), in that this Response contains 3,351 words, including footnotes.

*/s/ Nicholas P. Whitney*
Attorney


**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on July 25, 2025, which served same electronically upon all counsel of record.

*/s/ Nicholas P. Whitney*
Attorney