UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND,<br><br>Plaintiffs/Counterclaim-Defendants,<br><br>v.<br><br>JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP,<br><br>Defendants/Counterclaimants. | Civil Action No. 7:23-cv-04533 |

**COUNTERCLAIMANTS O'KEEFE'S AND OMG'S
REPLY TO COUNTERCLAIM-DEFENDANTS' BRIEF IN
<u>OPPOSITION TO COUNTERCLAIMANTS' MOTION TO AMEND</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

I. THE MERIT OF OMG/O'KEEFE'S SCA CLAIM IS NOW ESTABLISHED ........... 1

II. OMG/O'KEEFE'S CLAIM IS NOT FUTILE UNDER RULE 15(A)(2) ................. 3

III. OMG/O'KEEFE ACTED DILIGENTLY IN FILING THE REQUEST LETTER PURSUANT TO RULE 16(B)(4) ................................................................................ 6

IV. OMG/O'KEEFE'S CLAIM SURVIVES OTHER RULE 15(a)(2) OBJECTIONS 10

V. CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Cano v. DPNY, Inc.*,
  287 F.R.D. 251 (S.D.N.Y. 2012) .................................................................................................. 5

*Duling v. Gristede's Operating Corp.*,
  265 F.R.D. 91 (S.D. N.Y. 2010) ................................................................................................ 10

*Lazette v. Kulmtycki*,
  949 F. Supp. 2d 748 (N.D. Ohio June 5, 2013) ........................................................................... 3

*Levin v. Impact Office, LLC*,
  No. TDC-16-2790, 2017 WL 2937938 (D. Md. July 10, 2017) .................................................. 2

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
  587 F. Supp. 2d 548 (S.D.N.Y, Oct 23, 2008) ............................................................................ 2

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................... 5

Fed. R. Civ. P. 15(a)(2) .................................................................................................................... 3

Fed. R. Civ. P. 56 ............................................................................................................................. 5

Counterclaimants, JAMES O'KEEFE ("O'Keefe") and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP ("OMG") (together "OMG/O'Keefe" or "Counterclaimants"), hereby file this Reply ("Reply") to *Counterclaim-Defendants' Brief in Opposition to Counterclaimants' Motion to Amend* ("Opposition") [ECF No. 184], and in support state[1]:

## I. THE MERIT OF OMG/O'KEEFE'S SCA CLAIM IS NOW ESTABLISHED

At this point, PV's[2] opposition to OMG/O'Keefe's Motion for Leave to Amend is strictly procedural, *i.e.*, the question before the Court is solely whether OMG/O'Keefe will be prevented from filing their Amended Counterclaims based on an alleged lack of diligence. By contrast, the merits of the SCA claim OMG/O'Keefe seek to add have now been conclusively established through discovery. On June 25, 2025, OMG/O'Keefe deposed Mr. Joshua Hughes ("Hughes"), PV's Director of Information Technology (the "Hughes Deposition"). As discussed below, OMG/O'Keefe were only able to take the Hughes Deposition after countless delays and obstructions. Importantly, OMG/O'Keefe deposed Mr. Hughes <u>after</u> filing their Motion for Leave to Amend and, thus, the allegations of the proposed Amended Counterclaims do not reflect Mr. Hughes' testimony. [ECF Nos. 175 & 176]. To the extent any question remained, Mr. Hughes' testimony now shows conclusively that OMG/O'Keefe can not only plead an SCA claim

---

[1] The proposed Amended Counterclaims can be found in both redline and clean versions as Exhibits A and B, respectively, to *Counterclaim Plaintiffs O'Keefe's and OMG's Notice of Motion for Leave to File Amended Counterclaims*. [ECF No. 175].

[2] Unless otherwise provided herein, the abbreviations used in this Reply will be the same as those used in OMG/O'Keefe's *Motion for Leave to Amend Counterclaims and Memorandum of Law in Support* ("Motion for Leave to Amend") [ECF No. 176].

1

but will almost certainly prevail on it.

Contradicting PV's earlier assertions, Hughes testified that PV, through Hughes and at the direction of "PV leadership", accessed O'Keefe's Telegram messages <u>through a third-party service</u> that PV was able to access because O'Keefe had previously logged into that third-party service on a laptop that Mr. O'Keefe left with PV when he was terminated. (T 6:9-16; 7:24-8:10; 10:4-11:3).

| | |
|---|---|
| Q: | In order to access the Telegram messages, were you logged in to James O'Keefe's Telegram account? |
| | . . . . |
| Hughes: | The computer was automatically synchronized with Mr. O'Keefe's Telegram platform. |
| Q: | And so, and that is because James O'Keefe had logged in to Telegram through that computer previously, correct? |
| Hughes: | Yes. . . |
| | . . . . |
| Q: | James O'Keefe had never provided you with his Telegram login and password, had he? |
| Hughes: | That's correct.  I've never had James O'Keefe's login credential to Telegram.  (T 10:4-21) |

"Synchronizing", via Telegram, is a term of art meaning that the Telegram messages did not reside on the local hard drive of the laptop O'Keefe used and PV later possessed. Rather, the Telegram messages always remain on Telegram's third-party server. The private messages PV's leadership directed Mr. Hughes to obtain were accessed in violation of the SCA.  See *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548 (S.D.N.Y, Oct 23, 2008) (communication "stored on an electronic communication service provider's system . . . as opposed to . . . stored on a personal computer, is a stored communications subject to the SCA."); *Levin v. Impact Office, LLC*, No. TDC-16-2790, 2017 WL 2937938 (D. Md. July 10, 2017) (emails accessed on company

2

phone were considered to be stored on Gmail servers for purposes of SCA). In both *Levin* and *Lazette v. Kulmtycki*, 949 F. Supp. 2d 748, 753 (N.D. Ohio June 5, 2013) an employee had returned a company telephone at the end of the employee's employment, and the company had accessed the employee's private email account on a third-party server using a username and password stored on the telephone. In both decisions, the court found the plaintiffs had adequately pled a claim for violation of the SCA. Here, Mr. Hughes testified that PV accessed O'Keefe's private Telegram messages on a third-party server using Mr. O'Keefe's login and password. PV only gained access because Mr. O'Keefe's Telegram login credentials were stored on the laptop he returned to PV when he was terminated. This violates the SCA. *See Id.*[3]

## II.    OMG/O'KEEFE'S CLAIM IS NOT FUTILE UNDER RULE 15(A)(2)

PV argues that OMG/O'Keefe's Motion for Leave to Amend is futile under Rule 15(a)(2) of the Federal Rules of Civil Procedure because the proposed Amended Complaint fails to state a cause of action. [ECF No. 184, pgs. 11, 23-24].

The Hughes Deposition dissolves any lingering debate over the futility of the SCA claim. But even on their face, there can be no serious doubt that OMG/O'Keefe's proposed Amended Counterclaims allege all of the necessary elements of an SCA claim, as presented in detail in OMG/O'Keefe's Motion for Leave to Amend. [ECF No. 176, pgs. 10-11]. It seems that in arguing for futility, what PV is implicitly contending is that

---

[3] Having taken the Hughes Deposition, Counterclaimants are now in a position to plead their SCA claim with greater detail and, if the Court deems such amendment to be necessary, Counterclaimants move the Court to file and updated amendment.

3

OMG/O'Keefe must plead the elements of the SCA with particularity.

PV complains in its Opposition that OMG/O'Keefe's SCA claim is futile because it "failed to allege a specific personal device that PV accessed or why there was no authorization." [ECF No. 176, pg. 24]. Nothing in the statute suggests a complainant must allege the specific device through which the SCA violation occurred: indeed, that information will often be irrelevant or known only to the violator. Neither does the statute require OMG/O'Keefe to explain why there was no authorization.[4] There is no authority for the proposition that an SCA claim must be pled with particularity.

In arguing for this enhanced pleading standard, PV makes several references to comments made by the Court during the hearing of May 22, 2025. [ECF No. 184, pgs. 7-8; 23-24]. However, the context of these statements makes clear that the Court was speaking impressionistically based on counsel's argument, and not on the basis of a contemporaneous review of the pleading requirements under the SCA. PV contends that the Court's statements constituted *directives* to Counterclaimants as to what an adequate pleading of the SCA required. [*Id.* at 23-24]. OMG/O'Keefe believe that PV is straightforwardly incorrect on this point. At any rate, as noted above, the proposed Amended Counterclaims cover all of the ground discussed by the Court at the hearing except identifying a device through which the violation occurred. While OMG/O'Keefe

---

[4] At any rate, OMG/O'Keefe *does* allege that the reason why there was no authorization is because O'Keefe's private messages were accessed without consent: "O'Keefe intended these communications to remain private and not be publicly disclosed. O'Keefe never authorized PV or any of its agents or representatives to access, obtain, or disclose any of these private materials." [ECF No. 175, Ex. A ¶ 116].

4

contend that specific device identification is not an element of an SCA claim, in light of the Hughes Deposition, OMG/O'Keefe are now in a position to include such specific identification in a further amended counterclaim if deemed necessary. *See* fn. 3, above.

PV has cleverly attempted to prematurely offer evidence to defeat OMG/O'Keefe's SCA claim by introducing excerpts of an alleged PV Employee Handbook and a Declaration signed by Joshua Hughes. [ECF. No. 184, Ex. 1]. But PV may not introduce extrinsic evidence at this stage.[5] Based on PV's inclusion of extrinsic evidence, OMG/O'Keefe request that the Court convert the motion and PV's Opposition to one for summary judgment and provide OMG/O'Keefe adequate notice and a full and fair opportunity to submit all additional supporting material contemplated by Rule 56. [6] OMG/O'Keefe would intend to offer evidence to demonstrate the absence of any authorization by O'Keefe, including but not limited to supporting Declarations, deposition testimony (most notably, the recent deposition testimony from Mr. Hughes), and communications between former PV Board members and PV executives demonstrating their accessing and disseminating O'Keefe's private Telegram and Instagram messages.[7]

---

[5] An argument for "futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure" and thus "'[f]utility is generally adjudicated without resort to any outside evidence.'" *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 257-58 (S.D.N.Y. 2012)

[6] PV attempts to circumvent the prohibition on presenting matters outside the pleadings on a motion to dismiss by arguing that the presentation of the Employee Handbook goes to OMG/O'Keefe's diligence. [ECF No. 184, n. 4].

[7] Even if the Employee Handbook could be considered, it is a red herring. First, Mr. Hughes' Declaration is insufficient to authenticate the Employee Handbook because it does not identify Mr. Hughes' position at PV nor how he would be in a position to know

5

**III.     OMG/O'KEEFE ACTED DILIGENTLY IN FILING THE REQUEST LETTER PURSUANT TO RULE 16(B)(4)**

The Scheduling Order in this case set a deadline for the parties to request a pre-motion conference for motions to amend by October 28, 2024. [ECF No. 68]. OMG/O'Keefe filed their letter requesting a pre-motion conference on May 6, 2025 ("Request Letter"), after the deadline. [ECF No. 150]. OMG/O'Keefe's May 6, 2025, filing of the Request Letter took place the day immediately after the parties resolved their discussions about what confidentiality designations should apply to the deposition of Joseph Barton. [ECF No. 149].

First, in arguing that OMG/O'Keefe was not diligent, PV relies on the purported PV Employee Handbook from May 2020 discussed above. [*See* ECF No. 184, pgs. 15-16, Ex. 1]. But the only potential relevance of an employee handbook to an SCA claim is that

---

whether or not the Employee Handbook was in effect at the time of O'Keefe's departure from PV. In fact, the Declaration does not even contend that Mr. Hughes did have such knowledge. It merely attests that the excerpt of the Employee Handbook attached to the Declaration was effective as of the date of O'Keefe's departure from PV "to the best of [Mr. Hughes'] knowledge, information, and belief." Second, the excerpt omits the Employee Handbook's acknowledgement page (attached hereto as **Exhibit 1**), probably because that page *is not signed by O'Keefe,* and so lacks probative value that Mr. O'Keefe was on notice of its contents. Third, the acknowledgement page expressly states, in all capital letters, that the policies in the Employee Handbook *are non-binding*. Fourth,
the SCA violations alleged by OMG/O'Keefe do not fall within the scope of the activity that the Employee Handbook purports to immunize (even assuming PV is permitted to define its own duties under the SCA via its Employee Handbook): specifically, the Employee Handbook purports to protect PV from liability only for accessing private communications "transmitted over, received by, or stored in or on ECS owned, leased, or operated by, or on behalf of, the Company." But Mr. Hughes' testimony demonstrates that PV's SCA violation occurred precisely because the private communications were not stored on PV's ECS. [*See* ECF No. 175, Ex. A, ¶¶ 113-129, 233-237; ECF No. 184, Ex. 1, pg. 42].

6

the handbook could conceivably be presented for the defense of authorization after a concrete allegation of violation is made.  In other words, the Employee Handbook was irrelevant to the question of diligence because a mere statement of company policy cannot have put OMG/O'Keefe on notice of an *actual violation* of the SCA.  In the proposed Amended Complaint, OMG/O'Keefe allege that PV took concrete actions in violation of the SCA by improperly obtaining and disseminating Mr. O'Keefe's private electronic communications. PV's improper access took place years after PV's publication of its Employee Handbook in May 2020.  [*See* ECF No. 175, Ex. A, ¶¶ 113-129, 233-237]. The Employee Handbook is therefore irrelevant to the question of OMG/O'Keefe's diligence.

Second, PV points to its May 29, 2024, motion for preliminary injunction as providing an adequate basis for OMG/O'Keefe's SCA claim. [ECF No. 184, pgs. 16-18]. Specifically, that motion cites to three of O'Keefe's Telegram communications and states that PV had been able to access them because *O'Keefe had saved them to PV's servers*. [ECF No. 51 at 5, n.3]. The preliminary injunction motion did not put OMG/O'Keefe on notice to plead an SCA claim because, in its preliminary injunction motion, PV incorrectly asserted that the Telegram messages were *saved to PV's servers*, an assertion only later corrected and clarified by Mr. Hughes during his June 2025 deposition.[8]

---

[8] Mr. Hughes also testified in this case at the hearing on the motion for preliminary injunction, which took place on July 29, 2024. Contrary to PV's contention, [ECF No. 184, n. 5], the preliminary injunction hearing did not provide OMG/O'Keefe an opportunity to explore Mr. Hughes' testimony to cultivate the basis for an SCA claim. Had O'Keefe's counsel used the cross-examination to explore potential SCA claims (which was outside the scope of the hearing), PV would have surely objected, and the Court would have prohibited such line of questioning.

7

As argued in the Motion for Leave to Amend, Counterclaimants did not have in their possession adequate new information to amend their pleading to add a claim for violation of the SCA until Post-Deadline Discovery.[9] [ECF No. 176, pgs. 5-9]. This Post-Order Discovery evidence—along with the actual private communications that surfaced through PV's public defamation campaign against O'Keefe—displayed PV accessing and sharing O'Keefe's private communications in such volume and with such malice that it became no longer plausible to believe that PV had accessed O'Keefe's private communications solely through lawful means.

Third, PV contends that even if O'Keefe needed Post-Deadline Discovery, OMG/O'Keefe should have sought to amend immediately after Barton's November 7, 2024, deposition. [ECF No. 184, pgs. 18-20]. As argued at length in OMG/O'Keefe's Motion for Leave to Amend, PV well knows that delay in this regard was due to PV's own actions. [*See* ECF No. 176, pgs. 5-9]. PV's hindering activity included, (1) chronically

---

[9] Specifically, OMG/O'Keefe relied on the deposition testimony of Joseph Barton ("Barton") taken on November 7, 2024, and the Strack/Tyrmand text messages obtained on November 18, 2024. [*See* ECF No. 176, pgs. 5-6]. In his deposition testimony, Barton admitted that "in virtue of" his position as President of Project Veritas Action Fund he had obtained a flash drive of O'Keefe's private information, compiled by an auditing team. [T 112-113; T 112:5-9]. He continued: "I provided myself with the document. Is that what you want to hear?" [*Id.*] Likewise, the Strack/Tyrmand exchanges attest to PV compiling "tons of" O'Keefe's private information and weaponizing it in a public defamation campaign. [ECF No. 176, pgs. 5-6]. As with Mr. Barton's testimony, the documents produced by Mr. Strack at his November 18, 2024, deposition, and by Mr. Skakel at his November 19, 2024, deposition remained subject to privilege claims that were only resolved upon PV's engagement of replacement counsel.

8

postponing the deposition of PV's corporate representatives[10]; (2) frustrating OMG/O'Keefe's ability to obtain relevant document discovery[11]; (3) frustrating OMG/O'Keefe's ability to advance their case in general by being effectively unrepresented during much of the period in which PV contends OMG/O'Keefe should have submitted their Request Letter, [*See* ECF No. 176, pg. 8]; and (4) delaying and frustrating OMG/O'Keefe's ability to file their Request Letter by designating the discovery on which OMG/O'Keefe relies for the SCA claim as "Confidential" under the Protective Order governing this case ("Protective Order") [ECF Nos. 96 and 99], [*See* ECF No 176, pg. 8].  With regard to the latter, PV's diligence argument effectively contends that in order to have acted with diligence, Counterclaimants needed to have abandoned negotiations with PV's counsel regarding PV's confidentiality designations (which negotiations were made necessary by PV) and either (i) sought to amend the Protective Order; (ii) sought to challenge PVs counsel's designations under the Protective Order; or (iii) sought to file its amended complaint under seal to protect the confidentiality of the materials designated as "Confidential" by PV. [ECF No 184, pgs. 18-19 & no. 7].  Further, Counterclaimants were to have pursued this inefficient course during a time period in which PV was without counsel and the case was effectively stayed.  There is no authority

---

[10] *See* ECF No. 176, pgs. 5-9.  Further, the actual deposition (first phase; two corporate representatives were designated by PV) did not take place until June 6, 2025. Even then, the first designated corporate claimed ignorance about PV's accessing and use of O'Keefe's communications. So, OMG/O'Keefe had to wait for Mr. Hughes' phase of the corporate representative deposition on June 25th to obtain the needed testimony.

[11] *See* ECF No. 176, pg. 7. Reviewing specifically what Telegram messages PV has accessed, and any associated metadata, would have helped OMG/O'Keefe determine if there were a basis for concluding those messages were accessed in violation of the SCA.

9

for this outsized duty of diligence PV seeks to impose on OMG/O'Keefe.

## IV. OMG/O'KEEFE'S CLAIM SURVIVES OTHER RULE 15(a)(2) OBJECTIONS

PV argues that the Motion for Leave to Amend should be denied under Rule 15(a)(2). [ECF No. 184, pgs. 21-24]. As to PV's claims of bad faith, PV seems to be arguing lack of sincerity.[12] [ECF No. 184, p 22-23]. This is not the case. Counterclaimants seek to prosecute the proposed Amended Counterclaims, and they are prepared to pursue PV through to trial and to be made whole through a money judgment.

Finally, PV argues that an amendment would be prejudicial because such amendment would force PV to expend additional resources to conduct discovery and prepare for trial. [ECF No. 184, pg. 23]. But "the need for new discovery is not sufficient to constitute undue prejudice on its own." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 99-101 (S.D. N.Y. 2010). Here, any additional discovery will be modest, focusing on which of O'Keefe's personal communication PV accessed and how it did so. And such information is entirely internal to PV.

## V. CONCLUSION

For the reasons set forth herein, the Court should grant OMG/O'Keefe's Motion for Leave to Amend and provide all such further relief that is necessary and proper.

Dated: August 1, 2025.

---

[12] PV is contending that OMG/O'Keefe seeks to file their SCA claim to aid in their journalistic endeavors. PV's contention is disingenuous at best, as it immediately published the Complaint [ECF No. 1] on its website when it filed in May 2023, released the results of its internal audit following O'Keefe's termination to the *Washington Post* and *New York Times*, sat for numerous interviews with outlets such as *Rolling Stone* disparaging O'Keefe, and continues to attack O'Keefe on social media.

10



2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

*/s/ Nicholas P. Whitney*

Nicholas P. Whitney
Florida Bar No. 119450
Seldon J. Childers
Florida Bar No. 61112
jchilders@smartbizlaw.com
nwhitney@smartbizlaw.com
notice@smartbizlaw.com

*Counsel for Counterclaimants
O'Keefe & OMG*

## CERTIFICATE OF COMPLIANCE

The undersigned, Nicholas P. Whitney, hereby certifies that this Response complies with the Individual Rules of Practice of Judge Seible, as well as Local Rule 7.1(c), in that this Response contains 3,066 words, including footnotes.

*/s/ Nicholas P. Whitney*
  Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on August 1, 2025, which served same electronically upon all counsel of record.

*/s/ Nicholas P. Whitney*
Attorney