UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PROJECT VERITAS and PROJECT VERITAS
ACTION FUND,

        Plaintiffs / Counterclaim Defendants,    **DECISION AND ORDER**

        -against-    23 Civ. 4533 (CS) (AEK)

JAMES O'KEEFE and TRANSPARENCY 1, LLC,
d/b/a O'KEEFE MEDIA GROUP,

        Defendants / Counterclaimants.
------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

        Currently before the Court is the motion of Counterclaimants James O'Keefe and Transparency 1, LLC d/b/a O'Keefe Media Group ("Counterclaimants") seeking leave to effect service of a deposition subpoena on non-party witness Thomas O'Hara by alternative means. ECF Nos. 178, 179, 182. Relatedly, Counterclaimants have applied for a modification of the deposition schedule so that they can depose Hannah Giles, who served as the CEO of Project Veritas following the termination of Counterclaimant James O'Keefe, on August 8, 2025. ECF Nos. 183, 195. Counterclaim Defendants Project Veritas and Project Veritas Action Fund (together, "Project Veritas") oppose the motion for alternative service on the ground that Counterclaimants have not been diligent in their attempts to effect service on Mr. O'Hara, and they oppose both that motion and the application for modification of the deposition schedule on the ground that Counterclaimants should not be allowed to depose any additional witnesses, as such further depositions would exceed the ten-deposition limit set forth in Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure. *See* ECF No. 189.

For the reasons that follow, the motion for alternative service is GRANTED IN PART and the application for modification of the deposition schedule is GRANTED.

## BACKGROUND

Counterclaimants have been trying without success to serve a deposition subpoena on Mr. O'Hara, the "former Project Veritas Chief Financial Officer," who is, according to Counterclaimants, "one of the central characters" in this case. ECF No. 178 at 1. According to Counterclaimants, Mr. O'Hara "is directly involved in the events leading to Mr. O'Keefe's separation from Project Veritas and is indisputably connected to key facts and evidence." *Id.* at 2.

Via a declaration submitted by their counsel, Counterclaimants explained that in October 2024, they attempted to serve a subpoena on Mr. O'Hara at a Bear, Delaware address which they "concluded was the best address result for Mr. O'Hara after conducting a PeopleMap background search" based on the limited information they had about Mr. O'Hara and the limited discovery that had been exchanged at that time. ECF No. 182-1 ("Whitney Decl.") ¶¶ 5-6; *see* ECF No. 178 Ex. A ("October 2024 Subpoena"). The attempt or attempts at service of the October 2024 Subpoena at the Bear, Delaware address were unsuccessful, but counsel "lost contact with the process server" and "were not provided with an Affidavit of Non-Service." Whitney Decl. ¶ 6. A new subpoena was issued on April 11, 2025, *see* ECF No. 178 Ex. B ("April 2025 Subpoena"), after Counterclaimants' counsel coordinated with Project Veritas's counsel about a new date for the deposition; Counterclaimants' process server attempted to serve the April 2025 Subpoena on Mr. O'Hara at the Bear, Delaware address on April 25, 26, and 28, 2025, but was again unsuccessful, Whitney Decl. ¶ 9 & Ex. 1.

Through their review of documents produced in discovery, Counterclaimants found Mr. O'Hara's résumé, which was included as an attachment to an internal Project Veritas email dated September 13, 2023.  Whitney Decl. ¶ 10 & Exs. 2, 3.  The résumé included both a physical address in Pawling, New York and a personal email address for Mr. O'Hara.  *See id.* Ex. 3.  Counterclaimants' counsel again coordinated with Project Veritas's counsel on yet another new date for the deposition, and issued a third subpoena on May 8, 2025, *see* ECF No. 178 Ex. D ("May 2025 Subpoena"); a process server tried to serve the May 2025 Subpoena on Mr. O'Hara at the Pawling, New York address from Mr. O'Hara's résumé, but attempts on May 20, May 27, and June 2, 2025 were all unsuccessful, *see* Whitney Decl. ¶ 11 & Ex. 4.[1]  Prior to attempting service at the Pawling address, Counterclaimants verified that Mr. O'Hara owned the property at that address by searching for the address on the Dutchess County Real Property Tax Service Agency website.  *Id.* ¶ 3 (the "second" paragraph 3[2]) & Ex. 5.  Counterclaimants then conducted a LinkedIn search for Thomas O'Hara and Pawling, New York and found a profile that, according to Mr. O'Keefe, included Mr. O'Hara's photograph.  *Id.* ¶¶ 4-5; *see also id.* ¶ 7 (in a video of a Project Veritas board meeting held on March 22, 2023, the screenshot of attendee "tohara" appears to match the picture in Mr. O'Hara's LinkedIn profile).  Counterclaimants also

---

[1] The affidavit of service attached to counsel's declaration contains information regarding these service attempts that is different from the information provided in Counterclaimants' initial submission.  *Compare* Whitney Decl. Ex. 4 (affidavit of service listing attempts at service on May 20, May 27, and June 2) *with* ECF No. 178 Ex. E (email from process server to counsel dated May 26, 2025, stating "5/26/2025 5:17 PM Server has attempted multiple times with no response, no vehicles.  Garage door has been shut.  Pending specific dates and times of attempts.").

[2] At what would be paragraph 12 of counsel's declaration, the paragraph numbering re-starts at paragraph 3 and resumes from there, *i.e.*, there are two sets of paragraphs numbered 3 through 11 in the declaration.  The remaining citations in this Background section to paragraphs 3 through 11 of the Whitney Declaration are to the "second" paragraphs 3 through 11, found on pages three through six of the declaration.

found that Mr. O'Hara's LinkedIn profile listed his current employer as the Association of National Advertisers ("ANA"); a search of the ANA's website shows potential contact information for Mr. O'Hara. *Id.* ¶ 6.[3] A process server twice attempted to serve the May 2025 Subpoena on Mr. O'Hara at the New York City address for the ANA, but those efforts also were unsuccessful. *Id.* & Ex. 6.[4]

Counterclaimants include in their submissions a copy of a June 10, 2025 email that was sent to Mr. O'Hara at the personal email address on his résumé. *See id.* Ex. 7. Mr. O'Hara has not yet responded to the email, and counsel's office did not receive a message indicating that the email could not be delivered. *Id.* ¶ 8.

Through their motion, Counterclaimants seek the Court's permission to effect alternative service of a deposition subpoena on Mr. O'Hara by (1) certified mail sent to the Pawling, New York address and the ANA address; (2) email to Mr. O'Hara's personal email address and his email address on the ANA's website; and (3) LinkedIn messaging through Mr. O'Hara's LinkedIn profile. *Id.* ¶¶ 9-12.

After filing the motion, Counterclaimants applied for a modification of the deposition schedule so that they could take Ms. Giles's deposition on August 8, 2025, in part because the

---

[3] The phone number for "Tom O'Hara" on the ANA website is missing a digit. *See Contact the ANA*, https://www.ana.net/content/show/id/contact [https://perma.cc/9V8L-3SEU] (last visited Aug. 5, 2025) (phone number is listed as "212.45.8099"). Also, the email address is not listed; rather, a visitor to the website must click on Mr. O'Hara's name, which then allows the user to see Mr. O'Hara's email address and send him an email.

[4] While the ANA website lists "Tom O'Hara" as Executive Vice President of Finance, *see Contact the ANA*, https://www.ana.net/content/show/id/contact [https://perma.cc/9V8L-3SEU] (last visited Aug. 5, 2025), the affirmation of due diligence regarding the attempts at personal service at the building where the ANA offices are located states that the concierge "checked his directory and did not find Thomas O'Hara listed." Whitney Decl. Ex. 6.

4

parties had difficulty finding a mutually agreeable date for the deposition.  *See* ECF No. 183.  Counterclaimants renewed their application on August 1, 2025.  ECF No. 195.

Counterclaim Defendants filed an opposition to both the motion for alternative service and the application to modify the deposition schedule.  They argue that (1) Counterclaimants have not been sufficiently diligent in their efforts to effect personal service of the subpoena on Mr. O'Hara; and (2) in seeking to take Mr. O'Hara's deposition (as well as other depositions, including that of Ms. Giles), Counterclaimants are exceeding, without justification, the ten-deposition limit imposed by the Federal Rules of Civil Procedure.  *See* ECF No. 189.  In accordance with this Court's order, *see* ECF No. 190, Counterclaimants filed a response addressed to the issue of whether they should be permitted to exceed the ten-deposition limit, *see* ECF No. 193.

## DISCUSSION

**I.     Alternative Service of the Subpoena**

Rule 45 of the Federal Rules of Civil Procedure states that "[s]erving a subpoena requires delivering a copy to the named person . . . ."  Fed. R. Civ. P. 45(b)(1).  The word "delivering" is not defined in the Federal Rules of Civil Procedure, and "there is no Second Circuit case law interpreting the Rule 45 requirement of delivery as requiring personal service."  *SEC v. Pence*, 322 F.R.D. 450, 453 (S.D.N.Y. 2017) (cleaned up).  District courts have therefore "authorized alternative service that is reasonably designed to ensure that a witness actually receives a subpoena."  *Id.* at 454 (quotation marks omitted).  Requests to employ alternative methods of service of subpoenas have been granted "where such service reasonably insures actual receipt of the subpoena by the witness and comports with due process insofar as it is reasonably calculated

under the circumstances to provide the witness with both notice and an opportunity to present objections." *Id.* (cleaned up).

"[S]ome courts have only granted leave to effect alternative service after a showing of diligence in attempting personal service." *Ahmed v. City of New York*, No. 22-cv-8007 (JHR) (JW), 2024 WL 2884039, at *1 (S.D.N.Y. May 23, 2024). Here, Counterclaimants have documented at least nine attempts to serve Mr. O'Hara at three different locations, all without success. This Court finds that Counterclaimants have been sufficiently diligent in their efforts to serve Mr. O'Hara personally. Therefore, the Court grants Counterclaimants' request to serve a subpoena on Mr. O'Hara via alternative means. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116 (PGG), 2009 WL 1313259, at *3 (S.D.N.Y. May 11, 2009) (authorizing service by alternative means where party seeking deposition attempted personal service nine times).

Counterclaimants seek leave to effect service of a subpoena via certified mail sent to Mr. O'Hara's Pawling, New York address. Courts in this District "have routinely authorized service of subpoenas by alternative means—including by certified mail and registered mail." *Keep on Kicking Music, Inc. v. UMG Recordings, Inc.*, No. 23-cv-4400 (JPO) (BCM), 2025 WL 1905090, at *1 (S.D.N.Y. July 10, 2025) (cleaned up). Counterclaimants made several unsuccessful attempts to serve Mr. O'Hara at what they believe is an address for him in Pawling, New York, and they have provided evidence to support their belief that Mr. O'Hara may be found at this address: it is the address on his résumé, Whitney Decl. Ex. 3, and "[a]n address search on the Dutchess County Real Property Tax Service Agency website confirmed Mr. O'Hara was listed as a property owner at the Pawling, New York address prior to [Counterclaimants'] service attempts and as recently as July 1, 2025," *id.* ¶ 3 ("second" paragraph 3) (footnote omitted) & Ex. 5.

6

Accordingly, the Court concludes that service via certified mail to the Pawling, New York address is reasonably calculated to provide Mr. O'Hara with notice and an opportunity to present objections.

Counterclaimants also seek leave to effect service of a subpoena by email sent to Mr. O'Hara's personal email address. "Courts have permitted alternative service by email where appropriate under the circumstances." *Juniper Time Investor, LLC v. Wellington*, No. 19-cv-3393 (NSR), 2022 WL 20582421, at *1 (S.D.N.Y. July 27, 2022); *NYKCool A.B. v. Pacific Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) ("service by email has been judicially approved [where] the movant supplied the Court with some facts indicating that the person to be served would be likely to receive [service] at the given email address."). Counterclaimants obtained Mr. O'Hara's personal email address from his résumé, which they received in discovery. *See* Whitney Decl. ¶ 10 & Exs. 2, 3. As noted above, on June 10, 2025, Counterclaimants' counsel emailed Mr. O'Hara a copy of the subpoena at this email address, and while Mr. O'Hara did not respond to the email, there is no evidence that the email was returned as undeliverable. *See id.* ¶ 8 ("second" paragraph 8) & Ex 7. Courts have found that service by email is reasonably calculated to provide notice when test emails sent to viable addresses do not generate bounce-back responses. *See Toyo Tire & Rubber Co., Ltd. v. CIA Wheel Grp.*, No. 15-cv-246 (DOC), 2016 WL 1251008, at *3 (C.D. Cal. Mar. 25, 2016) ("Many cases have found service of process by email to be reasonably calculated to provide actual notice when the test email is not returned as undeliverable or bounced back.") (citing cases); *see also Fusa Franchisor SPV LLC v. SGB, Inc.*, No. 23-cv-2673 (AB), 2023 WL 8125854, at *2 (C.D. Cal. Aug. 28, 2023) (finding that plaintiff had demonstrated that service by email to defendants was "reasonably calculated to provide notice to the party to be served" where emails sent to addresses

7

at which plaintiff last tried to contact defendants "did not receive a 'bounce back' response"). Under the circumstances presented here, the Court approves alternative service of a subpoena by email to Mr. O'Hara's personal email address, as it is reasonably calculated to provide timely, actual notice of the subpoena to Mr. O'Hara. *See Juniper Time Investor, LLC*, 2022 WL 20582421, at *1 (allowing alternative service of subpoenas by email where the plaintiff "has clearly established its diligence taken to serve [the recipient] and has provided some facts indicating that [the recipient] is able to be contacted at the email address").

Counterclaimants also seek to effect service of a subpoena on Mr. O'Hara by certified mail sent to the ANA's New York address, email sent to an ANA email address, and LinkedIn messaging to his LinkedIn account. As to service by certified mail to ANA's New York office, it is unclear from the record before the Court whether Mr. O'Hara can be found at that location. On June 20, 2025, the first occasion that the process server went to the ANA's New York office, the concierge for the building "[c]hecked his directory and did not find Thomas O'Hara listed." Whitney Decl. Ex. 6. The process server returned to the building for a second attempt on June 24, 2025; on that occasion, the concierge called up to the ANA's offices, just as he had on June 20, and again, no one answered the phone. *See id.* Thus, on both occasions, access to the ANA's offices was "refused." *Id.* The Court therefore finds that Counterclaimants have failed to demonstrate that service by certified mail to this address is reasonably calculated to provide notice to Mr. O'Hara.

The Court similarly concludes thar Counterclaimants have failed to demonstrate that service by email to the ANA email address for "Tom O'Hara" or by LinkedIn messaging to Mr. O'Hara's LinkedIn account is reasonably calculated to provide notice. Counterclaimants have provided no evidence either of these methods of communication are viable ways to reach Mr.

8

O'Hara—there is no indication that counsel ever attempted to contact Mr. O'Hara via any ANA email address, nor is there any evidence to suggest that Mr. O'Hara actively uses his LinkedIn account.[5]

Based on the foregoing, Counterclaimants have established that service on Mr. O'Hara by certified mail to his Pawling, New York address and by email to his personal email address—and only these two methods—is likely to reach Mr. O'Hara and is reasonably calculated to give him notice of the subpoena. Accordingly, these two alternative means of effecting service of a deposition subpoena on Mr. O'Hara are hereby authorized.

## II.   Exceeding the Rule 30(a)(2)(A)(i) Ten-Deposition Limit

Project Veritas contends that further modifications of the deposition schedule are inappropriate because such changes would permit Counterclaimants to exceed the ten-deposition limit found in Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure. Rule 30(a)(2)(A)(i) provides that "[a] party must obtain leave of court [to take a deposition], and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):  (A) if the parties have not stipulated to the deposition and: (i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants." Fed. R. Civ. P. 30(a)(2)(A)(i). Project Veritas maintains that "[i]n addition to the nine depositions that Counterclaimants have already taken, at least seven remain outstanding, including the depositions of Mr. O'Hara and Ms. Giles, as well as Barry Hinckley, Kyle

---

[5] Following an initial review of the motion papers, the Court ordered Counterclaimants to file a supplemental submission which was supposed to provide, among other things, information about the email addresses they sought to use to effect service, including any attempts to contact Mr. O'Hara at those email addresses and any responses they received.  ECF No. 180 at 2-3.  Similarly, Counterclaimants were directed to provide information about any attempts to message Mr. O'Hara on LinkedIn, including any responses they received to such messages.  *Id.* at 3.  None of this information was included in the Whitney Declaration.

Seraphin, Matt Tyrmand, Paul Calli, and Ken Larney." ECF No. 189 at 6.  According to Project Veritas, these further depositions are "inconsistent with the parties' prior agreements," and are "unreasonably cumulative or duplicative" and "do not and provide a benefit greater than their burden." *Id.* at 6-7.

Over the course of this litigation, however, Project Veritas has repeatedly agreed to Counterclaimants' stated intent to take more than ten depositions.  In a letter dated March 18, 2025, Project Veritas's newly-retained counsel acknowledged, without raising any objections, that Counterclaimants intended to take seven or eight more depositions.  *See* ECF No. 141 at 2.  At that point, Counterclaimants had already taken at least three depositions—of Daniel Strack, George Skakel, and Joseph Barton, *see* ECF No. 100; *see also* ECF No. 189 at 1-2—and had moved for permission to effect alternative service of a subpoena to take the deposition of Matthew Tyrmand, *see* ECF No. 101.  In a joint letter filed on May 5, 2025, the parties' agreed-upon tentative deposition schedule included eleven additional depositions (beyond the three that had been taken by Counterclaimants at that point) that Counterclaimants intended to take.  *See* ECF No. 149.  The Court adopted the proposed schedule on May 9, 2025.  *See* ECF No. 153.  In a letter dated May, 28, 2025, Project Veritas sought a stay of discovery in light of Counterclaimants' anticipated motion for leave to amend their counterclaims, but it did not object to Counterclaimants' plan to exceed the deposition limit; rather, Project Veritas acknowledged that Counterclaimants intended to take eleven more depositions.  *See* ECF No. 161.  In another joint letter filed on June 17, 2025, the parties' agreed-upon schedule for the remaining depositions included a list of nine depositions that Counterclaimants intended to take, which would place the total number of depositions taken by Counterclaimants beyond ten.  *See*

10

ECF No. 174.[6]  The Court adopted this proposed schedule as well on June 20, 2025.  *See* ECF No. 177.  In sum, Project Veritas repeatedly consented to Counterclaimants' plan to take more than ten depositions throughout the course of the litigation.  The suggestion that this is somehow inconsistent with the parties' prior agreements is belied by the filings on the docket, and Project Veritas's objection at this late stage of fact discovery is not well-founded.

Rule 30(a)(2)(A) requires a party to obtain leave of the court to take more than ten depositions "if the parties have not stipulated to the deposition."  But here, Project Veritas has long known about, and acquiesced to, Counterclaimants' intention to take more than ten depositions, as evidenced by the fact that the parties agreed upon two different deposition schedules (both adopted by the Court) which provided for Counterclaimants to take more than ten depositions.  Even if Project Veritas is now reconsidering its prior agreements regarding depositions, it would be unreasonable to limit Counterclaimants to ten depositions when they have been proceeding in discovery with the understanding that Project Veritas had stipulated to Counterclaimants being able to exceed the limit.  *See C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 267 (E.D.N.Y. 2023) ("With respect to depositions specifically, the outer limit of the number of depositions is clear by rule:  each party may conduct up to ten depositions without leave of the court.  *See* Fed. R. Civ. P. 30(a)(2)(A)(i).  Parties cooperating with each other in discovery, however, may agree amongst themselves to go beyond that prescribed limit."), *aff'd*, No. 22-cv-01791 (NJC) (JMW), 2024 WL 127967 (E.D.N.Y. Jan. 11, 2024).  Furthermore, "[u]nder the Federal Rules and common law, courts have routinely held that objections not timely stated may be deemed waived."  *McGullam v. Cedar Graphics, Inc.*, No. 04-cv-2891

---

[6] Counterclaimants note in their response on the issue of exceeding the ten-deposition limit that by that point, they had "**taken nine depositions, with seven more agreed to by [Project Veritas]**."  ECF No. 193 at 5 n. 2 (emphasis in original).

11

(DRH) (AKT), 2007 WL 708800, at *2 (E.D.N.Y. Mar. 6, 2007) (ten-deposition limit of Rule 30(a)(2)(A) was waived by defense counsel's failure to object to exceeding the limit at three court conferences). Project Veritas's failure to raise this issue at any time prior to its opposition to the most recent motions constitutes a waiver of its objections.

For all these reasons, Counterclaimants may take all the remaining depositions they seek to take that are listed in the schedule at ECF No. 177.[7]

Moreover, in light of delays caused by the pendency of the motion for alternative service and the application to modify the deposition schedule, the Court hereby extends the deadline for completion of all fact depositions to September 30, 2025. The parties are directed to meet and confer about proposed new dates for the completion of all remaining depositions and to provide a revised proposed schedule to the Court by August 12, 2025.

## CONCLUSION

For the foregoing reasons, Counterclaimants' motion for service by alternative means (ECF No. 178) is GRANTED IN PART, and Counterclaimants' application to modify the deposition schedule (ECF No. 183), as renewed (ECF No. 195), is GRANTED. **By no later than August 12, 2025**, the parties must submit a joint proposed revised schedule for any remaining depositions, with all fact depositions to be completed by **September 30, 2025**.

---

[7] Because the Court finds that Project Veritas has consented to exceeding the ten-deposition limit and/or waived any objections to allowing Counterclaimants to do so, it need not address Counterclaimants' other arguments as to why the Court should grant them leave to take more than ten depositions.

Counterclaimants may serve a subpoena on Mr. O'Hara by certified mail to the Pawling, New York address and by email to Mr. O'Hara's personal email address, and must file proof of service on the docket no later than one week after service is completed.

Dated: August 5, 2025
      White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge