UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------x

PROJECT VERITAS and PROJECT VERITAS ACTION FUND,

Plaintiffs,

23 CV 4533(CS)(AEK)

-vs-

BENCH RULING

JAMES O'KEEFE, TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP, RC MAXWELL, and ANTHONY IATROPOULOS,

Defendants.

--------------------------------------x

United States Courthouse
White Plains, New York
September 22, 2025

Before: THE HONORABLE CATHY SEIBEL,
United States District Judge

APPEARANCES:

LAW OFFICE OF MICHAEL J. HARRIS
Attorneys for Plaintiffs
43 West 43rd Street
Suite 148
New York, New York 10036
MICHAEL J. HARRIS

CHILDERS LAW, LLC
Attorneys for Defendants, O'Keefe and O'Keefe Media Group
215 Northwest 40th Terrace
Suite B
Gainesville, Florida 32605
NICHOLAS P. WHITNEY

THE DEPUTY CLERK: All rise. The Honorable Cathy Seibel presiding. Project Veritas v. O'Keefe.

THE COURT: Good morning, Mr. Harris and Mr. Whitney.

MR. WHITNEY: Good morning.

THE COURT: You can both have a seat.

I am prepared to rule on the motion to amend. Anybody have anything to add not covered by the papers?

MR. HARRIS: Nothing from Project Veritas, Your Honor.

MR. WHITNEY: Nothing, Your Honor.

THE COURT: All right. Make yourselves comfortable. It will take a few minutes.

I am assuming the parties' familiarity with the underlying facts of the case, which I stated on the record in detail during -- which were placed on the record in detail during the evidentiary hearing back on July 29, 2024. See ECF No. 65. I am, therefore, recounting only the background necessary for the resolution of the present motion.

Project Veritas and the Project Veritas Action Fund, which together I am going to call "PV," filed their initial complaint against O'Keefe, and the O'Keefe Media Group, which I am going to call collectively "O'Keefe," on May 31, 2023. PV amended its complaint on October 12, 2023, and on May 29, 2024, filed the motion for a preliminary injunction seeking to enjoin O'Keefe from using PV's confidential information, particularly its donors list.

During the hearing on July 29th and 30th of last year, I heard testimony from witnesses for both parties and ultimately denied the motion. Among the witnesses who testified at the hearing was PV's information technology director Joshua Hughes, who, in pertinent part, testified that PV had access -- sorry -- testified that PV had accessed, and was in possession of, O'Keefe's Telegram messages. Although neither party has provided the transcript of that testimony, the Court obtained it, and it reflects that Hughes testified, among other things, that PV obtained Telegram and iMessage messages "that had been synched on devices at Project Veritas from Mr. O'Keefe's accounts." That's the July 29, 2024 transcript, page 181, lines 17 through 22. He also testified that the timeframe of those messages were from the period "Mr. O'Keefe had his Telegram synched to his laptop." That's page 188 at 4 to 5.

As O'Keefe explains in his reply brief, which is ECF 196 at page 2, "synchronizing via Telegram is a term of art meaning that the Telegram messages did not reside in the local hard drive of the laptop O'Keefe used and PV later possessed. Rather, the Telegram messages always remain on Telegram's third-party server."

After the hearing, the parties proposed a discovery plan and scheduling order, which I entered on August 2nd of last year, which set the deadline for any pre-motion conference in connection with the motion to amend as October 28, 2024. That

order is ECF No. 68.

On August 21, 2024, O'Keefe filed an answer to the amended complaint, which asserted several state law counterclaims against PV, including claims for breach of employment contract, defamation, publication of private facts, intentional infliction of emotional distress, breach of the duty of good faith and fair dealing and breach of fiduciary duty. That's ECF 73. In support of the publication of private facts claim, O'Keefe alleged that "PV servers hosted several of O'Keefe's personal, private (non-public) private Telegram and Apple iMessage accounts," and that "after constructively terminating O'Keefe, Project Veritas accessed his private messaging accounts without O'Keefe's permission." That's in paragraphs 137 and 138 of O'Keefe's answer.

The parties continued discovery until December 23rd, 2024, when discovery was held in abeyance due to the withdrawal of PV's counsel. See ECF Nos. 117 and 128. Once PV retained new counsel in March of 2025, the discovery deadlines were extended so that all fact discovery was to be completed by August 1st of this year. See minute entry dated March 10, 2025. The deadline for fact depositions was recently extended to September 30th, the end of this month, at O'Keefe's request. ECF 197. Although Magistrate Judge Krause has permitted the parties to schedule an additional deposition after that date. See ECF 209.

On March 18, 2025, PV voluntarily dismissed all of its claims against O'Keefe leaving only O'Keefe's state law counterclaims. ECF 140. On April 11, 2025, PV filed a pre-motion letter requesting a conference to discuss its intended motion to dismiss O'Keefe's counterclaims, arguing both that 12(b)(6) dismissal was warranted, and that the Court should decline to exercise supplemental jurisdiction given that all federal claims had been dismissed. ECF No. 144.

On May 6th, O'Keefe filed a pre-motion letter in anticipation of filing the current motion to amend, which was ECF 150. The letter explained that O'Keefe sought to add a claim under the Stored Communications Act, or SCA, 18 U.S.C. 2701. "Based on evidence and testimony confirming that Project Veritas intentionally accessed Mr. O'Keefe's private communications without authorization after his departure from the organization in February 2023." That was at page 1 of the letter.

The SCA provides a cause of action against a defendant who: "One, intentionally accesses without authorization a facility through which an electronic communication service is provided; or two, intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." *William Gottlieb Management vs. Carlin*, 2024 WL 1311854 at page 4, S.D.N.Y.

March 26, 2024, quoting Section 2701(a).

And, by the way, unless I indicate otherwise, any case quotations today omit internal citations, quotation marks, footnotes, and alterations.

O'Keefe's May 6th letter, ECF 150, specifically cited the July 2024 testimony of Joshua Hughes as "suggesting a good faith basis for this claim" and stated that the proposed amendment "addresses conduct previously raised in O'Keefe's state law counterclaim for publication of private facts."

Nine days later, when O'Keefe filed a letter in response to PV's pre-motion letter, he specifically pointed to the proposed SCA claim to argue that the Court should retain jurisdiction over the remaining claims. That's ECF 155. At a pre-motion conference on May 22nd, I set the briefing schedule for the current motion explaining that the motion to dismiss could be filed once the issue of amendment had been decided, and this motion followed.

The legal standard is as follows: "Where a party's motion to amend would require altering a court's scheduling order, the party must satisfy both Federal Rules of Civil Procedure 15 and 16 to be permitted to amend." *International Technologies Marketing vs. Verint Systems*, 850 F.App'x 38 at 43. Rule 15 of the Federal Rules of Civil Procedure, which governs amendments generally, provides that leave to amend a complaint should be freely given when justice so requires. That's

Rule 15(a)(2). It is within the sound discretion of the district court to grant or deny leave to amend. *Kim vs. Kimm*, 884 F.3d 98 at 105. "Leave to amend, though liberally granted, may properly be denied for: Undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, et cetera." *Ruotolo vs. City of New York*, 514 F.3d 184 at 191, quoting *Foman v. Davis* 371 U.S. 178.

Rule 16, however, imposes a "more exacting standard" for amendments sought after the deadline for amendment, as set out by a scheduling order, has passed. Let me say that one more time. Rule 16, however, imposes a "more exacting standard" for amendments sought after the deadline for amendment, as set out by a scheduling order, has passed. *Farsura vs. QC Terme*, 2023 WL 2919553 at *3, S.D.N.Y. March 14, 2023, report and recommendation adopted, 2023 WL 4348388, S.D.N.Y. July 5th, 2023. "Under Rule 16, a court's scheduling order should not be modified except upon showing of good cause, which requires the moving party to have acted diligently." *International Technologies* at 43. See *Farsura* at *3. "A party is not considered to have been diligent where the proposed amendment is based on information that the party knew or should have known in advance of the motion deadline." *Fresh Del Monte Produce vs. Del Monte Foods*, 304 F.R.D. 170 at 174 to 175, S.D.N.Y. 2014.

See *Red Rock Sourcing vs. JGX*, 2025 WL 524024 at *6, S.D.N.Y. February 18, 2025.

"As with the Rule 15 analysis, the court also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice non-movants." *In re: Tether & Bitfinex Crypto Asset Litigation*, 2024 WL 3520363 at *6, S.D.N.Y. July 24, 2024. See *Kassner vs. 2nd Avenue Deli*, 496 F.3d 229 at 244, and *Ahmed vs. Astoria Bank*, 2015 WL 4394072 at *2, E.D.N.Y. July 16, 2015. "Ultimately whether to permit amendment in light of Rule 16(b) and Rule 15 is a decision that lies within the court's discretion. *In re: Tether & Bitfinex* at *7, and courts analyzing post deadline motions to amend "need not decide whether plaintiff has satisfied the liberal standard of Rule 15(a) unless plaintiff first establishes good cause under Rule 16." *La Liberte vs. Reid*, 2023 WL 6593985 at *3, E.D.N.Y. August 18, 2023, *R&R adopted,* 2023 WL 6370772, E.D.N.Y. September 30, 2023, *appealed dismissed* January 26, 2024.

I will start with the issue of diligence. O'Keefe argues he has satisfied the good cause standard because the factual basis for his SCA claim "has emerged through the course of this proceeding such that the viability of the SCA claim could not have been adequately pled by OMG/O'Keefe until shortly before they submitted their May 6, 2025 request." That's O'Keefe's moving brief at 4.

O'Keefe then immediately concedes, however, that he "first received evidence indicating a possible basis" for the purported amendment on July 29th, 2024, when Joshua Hughes testified that he had accessed O'Keefe's private messages. That's also on page 4. The fact that this testimony took place months before the deadline for amendment suggests that O'Keefe failed to act diligently. See *Fresh Del Monte* at 174 to 75.

PV argues that O'Keefe was on notice even earlier, when PV admitted in its motion for preliminary injunction in May 2024 that it possessed O'Keefe's Telegram messages. See PV's opposition, which is ECF 184 at page 3, and ECF No. 51 at page 5, note 3.

PV also points to its electronic communications policy as evidence that O'Keefe was on notice that he had no expectation of privacy in messages sent from, received by, or stored in PV's systems. That's in PV's opposition at 15 or 16 -- 15 and 16. To the extent PV raises this point to argue that it had authorization to access O'Keefe's messages and the proposed claim is thus futile, this argument is improper at this stage. "Futility is generally adjudicated without resort to any outside evidence" and is based on the legal sufficiency of the allegations in the proposed amended complaint. *Cano vs. DPNY*, 287 F.R.D. 251 at 257, S.D.N.Y. 2012.

PV attempts to circumvent this general rule by claiming that it is introducing the policy as proof that O'Keefe

was on notice of PV's right to access messages on its own servers and therefore was not diligent in amending the complaint. See PV's opposition at 16, note 4. But whether and when O'Keefe was on notice of this policy is not relevant. The question is when he became aware of the facts he seeks to rely on to support his claim; in other words, when he allegedly became aware that PV had accessed the contents of his messaging accounts, which contents were not on PV's servers, without authorization.

So going back to PV's argument that O'Keefe was on notice in May 2024 when PV admitted in its motion for the PI that it had O'Keefe's Telegram messages. According to that PI motion, however, the Telegram messages had been saved to PV's servers (ECF No. 51 at page 5, note 3) rather than obtained directly via O'Keefe's Telegram account as O'Keefe now alleges. This is a meaningful distinction. If the only messages that PV accessed were those stored on PV's systems, then O'Keefe could not state a claim under the SCA, which prohibits unauthorized access to "a facility through which an electronic communication service is provided." 18 U.S.C. 2701. Courts interpreting the statute have understood this to mean that it protects electronic communications "stored on an electronic communication service provider systems after they have been delivered as opposed to emails stored on a personal computer" or a "company computer's memory." *Obeid ex rel. Gemini Real Estate vs. La Mack*, 2017 WL

1215753 at *9, S.D.N.Y. March 31st, 2017. See *Pure Power Boot Camp vs. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548 to 555 to 56, S.D.N.Y. 2008. In other words, even if O'Keefe was aware that PV had accessed O'Keefe's Telegram messages, the key question was how those messages were obtained, whether from the memory of a PV-owned computer or from within O'Keefe's personal messaging accounts maintained by Telegram.

Nonetheless, this question was answered in July 2024 by Hughes's testimony at the PI hearing. Hughes specifically stated that PV possessed Telegram and iMessage messages "that had been synched on devices at Project Veritas from Mr. O'Keefe's accounts." That's the July 29, 2024 transcript at 181, also 188. According to O'Keefe's own definition of synchronization, by admitting that PV accessed synched messages from O'Keefe's account, Hughes put O'Keefe on notice that PV had accessed these messages "via telegram's third-party server." O'Keefe's reply at 2. Because the proposed SCA claim is premised on precisely this allegation -- that PV accessed O'Keefe's private messages via Telegram and similar messaging accounts without authorization -- O'Keefe could have asserted the SCA claim a year ago.

O'Keefe argues that he "did not consider that testimony alone enough, undeveloped as it was, to bring a cause of action for violation of the SCA." That's O'Keefe's brief at 5. He therefore sought Mr. Hughes's deposition, but it was

postponed several times and had not yet taken place by the time the instant motion was filed. Also O'Keefe's brief at 5. O'Keefe further claims that the deposition testimony of the Project Veritas Action Fund's president Joseph Barton on November 7, 2024, "affirmed the likelihood of a SCA violation," but that disputes as to confidentiality designations prevented him from relying on this testimony until the day before the instant motion was filed. Again, brief at 5. Similarly, the proposed amendment relies on text exchanges between PV's former chief operating officer and a PV board member, which were produced in November, confidentiality of which was still in dispute when PV's counsel withdrew and discovery was held in abeyance. That's in O'Keefe's brief at 5 to 7.

Although O'Keefe states that the lingering discovery disputes arising from PV's confidentiality designations under the protective order were not resolved until May 5th, 2025, the letter he cites as resolving these disputes makes no references to the confidentiality of these text messages. That's ECF 149. And it is thus unclear when the parties reached agreement as to this issue.

Finally, O'Keefe avers that he is still waiting on a flash drive of his Telegram messages that PV promised to send in response to discovery requests issued on September 6, 2024. That's in his brief at 7.

First, it is not clear why O'Keefe considered Hughes's

testimony insufficient, especially given that the recent deposition testimony that O'Keefe insists "conclusively established his claim" -- that's in O'Keefe's reply at 2 -- apparently provided very little detail beyond what was established at the PI hearing. And while O'Keefe argues that issues with confidentiality also delayed his amendment, this argument is undercut by the fact that he made no effort to file the motion with redactions or request an extension for amendment until the confidentiality was resolved.

Regardless, even if O'Keefe was able to amass additional evidence, including the Hughes deposition, the Barton deposition, and the text messages, to "affirm the likelihood" of his SCA claim after the deadline for amendment had passed, O'Keefe's brief at 15, this does not suffice to show good cause, given that the "essential allegations" underlying the proposed SCA claim (in O'Keefe at 15) were available to O'Keefe prior to the deadline. See *La Liberte* at *5 where good cause was not found where "plaintiff possessed sufficient information from the outset of the case to assert a proposed claim, even if plaintiff believes that discovery revealed additional evidence to bolster her proposed claims." *380544 Canada vs. Aspen*, 2011 WL 4089876 at *4, S.D.N.Y. September 14, 2011, holding that even where documents obtained later in discovery may have buttressed plaintiff's allegations, good cause was not shown because the substance of the proposed allegations could have been included

in the amendment before the deadline. *Point 4 Data vs. Tri-State Surgical*, 2012 WL 2458060 at *7, E.D.N.Y. June 27, 2012, finding no good cause where plaintiff's delayed amendment to develop a "more solid basis" for their claim, *affirmed* 2012 WL 3306612, August 13, 2012, also E.D.N.Y.; see also *Bender vs. GSA*, 2006 WL 1643345 at page 1, S.D.N.Y. June 9th, 2006, noting that analyzing a motion to amend requires the Court merely to access -- merely to -- try again. Requires that the Court merely assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof. Moreover, O'Keefe's claimed desire to accumulate additional evidence prior to amending is undercut by the fact that much of the evidence on which he was purportedly waiting before moving to amend had still not been obtained at the time his motion was filed. The deposition of Mr. Hughes had still not been taken, and the flash drive containing his Telegram messages had still not been received. See his brief at 5 and 7.

Further, as O'Keefe essentially concedes later in his brief, the counterclaims he filed on August 21st, 2024, well before the amendment deadline, demonstrate that he could have asserted an SCA claim at this time and failed to do so -- at that time, I mean, and failed to do so.

In connection with his argument that the proposed amendment would not prejudice PV, O'Keefe points out that the initial counterclaims included "scores of allegations concerned

with PV's acquisition, misuse, and disclosure of O'Keefe's private and personal information and digital communications that PV accessed," several of which "track almost exactly the essential allegations that must be made under the SCA." That's O'Keefe's brief at 15 to 16. Indeed, in support of the counterclaim for publication of private facts, O'Keefe alleges that "Project Veritas servers posted several of O'Keefe's personal private (non-public) messaging accounts, including his Telegram and Apple iMessage accounts" and that "after constructively terminating O'Keefe, Project Veritas accessed his private messaging accounts without O'Keefe's permission." That's ECF No. 73 at paragraphs 137 to 138. The fact that O'Keefe affirmatively alleged in August 2024 that PV viewed his messages by "accessing his private messaging accounts" shows that he understood that his Telegram account, which contained messages hosted by Telegram, was accessed, not merely PV's own servers, and undermines his current argument that Hughes's June 25 deposition was needed to "correct and clarify" PV's assertion that the messages had been saved to PV's servers.

Further, while O'Keefe's motion was filed before the close of fact discovery, allowing the proposed amendment would almost certainly result in a further discovery extension, which may prejudice PV by requiring it to "expend significant additional resources" and "significantly delay resolution of the dispute." *Scalia vs. Sarene Services*, 740 F.Supp.3d 251 at 276,

E.D.N.Y. 2024. See *La Liberte* at *6.

Although the substance of the allegations that would support the proposed SCA claim were discussed at the PI hearing, and previously asserted in support of the publication of the private facts claim, as discussed above, the evidence required to prove and oppose each claim would likely be quite different. For example, defending against an SCA claim would require the parties to explore technical issues such as whether messages were accessed from computer memory or directly from interfaces such as Telegram, as well as whether PV's actions were authorized within the meaning of the SCA in light of its electronic communications policy. See PV's opposition at 24 and O'Keefe's reply at *5 and note 7.

And given PV's position that publication of private facts is not a cognizable claim under New York law, see PV's opposition 17 note 6, a position with which I am inclined to agree, see *Sweigert vs. Goodman*, 2024 WL 4493768 at *6, S.D.N.Y. October 11, 2024, *reconsideration denied*, 2024 WL 5047302, December 9, 2024, it is far from clear that the discovery PV would have already conducted to oppose this claim would suffice to oppose a claim brought under a new legal theory.

O'Keefe argues in his reply at 10 that the need for additional discovery is insufficient to establish prejudice. But the case he cites addressed prejudice in the context of a Rule 15 analysis rather than a Rule 16 analysis. See *Duling vs.*

*Gristede's*, 265 F.R.D. 91 at 99 to 101, S.D.N.Y. 2010; that's therefore distinguishable given that Rule 16 -- given that "Rule 16(b) was designed to offer a measure of certainty in pretrial proceedings ensuring that at some point both the parties and the pleadings will be fixed." *Red Rock Sourcing* at *4. See also *Ahmed* at *3, rejecting the argument that an amendment sought shortly before the end of fact discovery wouldn't result in prejudice where the deadline to amend had passed and the proposed amendment would substantially alter the theory of the case.

And even if I were to agree with O'Keefe that the proposed amendment would not prejudice PV, which I do not, the absence of prejudice to the nonmoving party does not require me to allow amendment given my finding that O'Keefe failed to act diligently. See *Ahmed* at *3.

Moreover, under both Rule 16 and the more lenient standard of Rule 15, "leave to amend is not appropriate where, as here, the motion is filed solely in anticipation of an adverse ruling." *Dellefave vs. Access Temporaries*, 2001 WL 25745 at *9, S.D.N.Y. January 10th, 2001; see *Franconero vs. Universal Music*, 2011 WL 566794 at *6, S.D.N.Y. February 11, 2011, noting that granting a motion to amend on the eve of an adverse ruling would be especially prejudicial, *affirmed* 542 F.App'x 14; and *Berman v. Parco*, 986 F.Supp. 195 at 218 to 19, S.D.N.Y. 1997, which denied leave to amend under Rule 16 where

the amendment appeared to be in anticipation of an adverse ruling.

Here, O'Keefe first informed the Court that he sought to amend on May 6, 2025, (ECF No. 150) less than a month after PV pointed out that all federal claims had been dismissed and argued that the Court should decline to exercise jurisdiction over the state law counterclaims. See ECF 144. In O'Keefe's reply letter on May 15, 2025, he argued that the proposed SCA claim, which he had first mentioned only nine days earlier in the face of possible dismissal on grounds of subject matter jurisdiction, could provide a basis for federal jurisdiction. That's ECF 155. And then in his memoranda in support of the instant motion, he states that "OMG/O'Keefe should be permitted to pursue these claims, not least of all because PV purports to plan to soon file a motion to dismiss that it contends will result in dismissal of certain of OMG/O'Keefe's other claims in this action." That's in his brief at 17.

The timing of O'Keefe's motion, especially considering the substantial delay in seeking amendment despite his awareness of the underlying facts, as discussed above, suggests that the proposed amendment is merely a stratagem to avoid dismissal.

For these reasons, the motion for leave to amend is denied. The Clerk has to terminate motion number 175, and now we have to talk about the motion to dismiss.

What I am going to suggest is that the parties brief

just the supplemental jurisdiction issue, and if I decide to retain, then we move on to 12(b)(6); but if I don't, I will have saved that work, and I think the supplemental jurisdiction issue isn't going to be complicated, and I can get to it fairly quickly.

So I guess it would be your motion, Mr. Harris, to tell me why I shouldn't exercise supplemental jurisdiction over the counterclaims.

MR. HARRIS: Yes. Thank you, Your Honor. Are you asking me to tell you now or we are going to brief it?

THE COURT: Tell me when you would like to brief it.

MR. HARRIS: Probably within the next three weeks, I would say.

THE COURT: Okay. That would take us to -- let's see, October 14th.

And when can you respond, Mr. Whitney?

MR. WHITNEY: It looks like three weeks after that would be November 4th.

THE COURT: Okay. Let's see, I am off by a day, actually. Three weeks from today is -- oh, it's a holiday. That's why I got confused. Okay. So three weeks thereafter would be November 4th. And reply, Mr. Harris?

MR. HARRIS: Would two weeks be agreeable?

THE COURT: All right. November 18th.

Let me ask Mr. Clark for to find a date for let's say

three weeks later for me to give a ruling from the bench if I am going to do it from the bench. That will force me to jump the line with this motion.

(Pause)

THE DEPUTY CLERK: Yes, Judge. December 12th, 2025, at 2:15 p.m.

THE COURT: All right. And then if I deny the motion, we will set a schedule then for the 12(b)(6), which I imagine will be more involved.

All right. Anything more we should do at this time?

MR. WHITNEY: Not from O'Keefe, Your Honor.

MR. HARRIS: Nothing from plaintiff, Your Honor. Thank you.

THE COURT: All right. Thank you both.

-o0o-

I, Darby Ginsberg, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Darby Ginsberg, RPR, RCR

Official Court Reporter
Southern District of New York