# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

PROJECT VERITAS *et al.*,

        *Counterclaim-Defendants,*

   *v.*

JAMES O'KEEFE *et al.*,

        *Counterclaimants.*

No. 7:23-CV-04533-CS-AEK

## PROJECT VERITAS' BRIEF IN SUPPORT OF
## <u>PROJECT VERITAS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND ................................... 1

LEGAL STANDARD ................................................................. 4

ARGUMENT .......................................................................... 6

CONCLUSION ...................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006) ................................................................... 4

*Carnegie-Mellon Univ. v. Cohill*,
  484 U.S. 343 (1988) ................................................................... 9

*Chapman v. Crane Co.*,
  694 Fed. Appx. 825 (2d Cir. 2017) ................................... 5, 9, 10

*Chenensky v. New York Life Ins. Co.*,
  942 F. Supp. 2d 388 (S.D.N.Y. 2013) ................................. 9, 10

*Kolari v. New York Presbyterian Hosp.*,
  455 F.3d 118 (2d Cir. 2005) ...................................... 8, 9, 10, 11

*Penske Media Corp. v. Shutterstock, Inc.*, No. 20-CV-04583,
  2024 U.S. Dist. LEXIS 42215 (S.D.N.Y. Mar. 11, 2024) .................. 6, 7

*Rockwell Int'l Corp. v. United States*,
  549 U. S. 457 (2007) ................................................................... 7

*Royal Canin U.S.A., Inc. v. Wullschleger*,
  604 U.S. 22 (2025) ....................................................... 4, 5, 7, 8

*United Food & Commercial Workers Union, Local 919 v. Centermark*
  *Properties Meriden Square*,
  30 F.3d 298 (2d Cir. 1994) ........................................................ 4

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) ................................................................... 8

## Statutes

17 U.S.C §§ 101 *et seq.* ............................................................. 2

18 U.S.C. § 1836 ................................................................................ 1

18 U.S.C. §§ 2701 *et seq* ................................................................. 2

28 U.S.C. § 1367(a) ........................................................................ 5, 7

28 U.S.C. § 1367(c) ........................................................................ 5, 7

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 2

Counterclaim-Defendants Project Veritas and Project Veritas Action Fund (collectively, "PV") hereby file this Brief in Support of PV's Motion to Dismiss the state law counterclaims of Counterclaimants James O'Keefe and Transparency 1, LLC d/b/a O'Keefe Media Group (collectively, "Counterclaimants" or "O'Keefe"). For at least the reasons set forth herein, the Court should grant PV's Motion and dismiss Counterclaimants' state law counterclaims for lack of subject-matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

A detailed recitation of the factual and procedural background of this matter is set forth in PV's opposition to Counterclaimants' motion to amend. (*See* Dkt. 184). PV commenced this action against O'Keefe, PV's founder and former CEO, on May 23, 2023, shortly after O'Keefe's contentious departure from PV. (*See* Dkt. 1). In its original complaint, PV alleged claims for, *inter alia*, violation of the Defend Trade Secrets Act (18 U.S.C. § 1836), breach of contract, breach of fiduciary duty, breach of the duty of loyalty, conversion, and tortious interference with contract. (*See id.*). On October 12, 2023, PV also amended its original complaint to include a request for a declaration that PV is the lawful owner of

certain copyrighted works under the Copyright Act (17 U.S.C §§ 101 *et seq*.).  (*See* Dkt. 16).  On August 21, 2024, Counterclaimants answered PV's amended complaint, and asserted several state law counterclaims, including for, *inter alia*, publication of private facts.  (*See* Dkt. 73).

On March 18, 2025, the parties stipulated to the dismissal of PV's claims against Counterclaimants, by voluntary agreement, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  (*See* Dkt. 140).  As a result, on April 11, 2025, PV moved for a pre-motion conference regarding its anticipated motion to dismiss Counterclaimants' state law claims, in part, for lack of subject-matter jurisdiction. (*See* Dkt. 144).[1]  On May 6, 2025, almost one month later, Counterclaimants requested a pre-motion conference regarding their anticipated motion to amend their counterclaims to add a federal claim under the Stored Communications Act (18 U.S.C. §§ 2701 *et seq*.).  (*See* Dkt. 150).  On May 22, 2025, the Court conducted the pre-motion conference, during which PV noted that Counterclaimants'    proposed    amendment    "seem[ed]    designed    to

---

[1] PV also sought leave to file a motion to dismiss Counterclaimants' state law counterclaims under Federal Rule of Civil Procedure 12(b)(6).  (*See* Dkt. 144).

manufacture federal jurisdiction." (*See* Dkt. 168-1 at 6-7). The Court agreed that "the timing" of Counterclaimants' proposed amendment was "suspicious." (*Id.* at 7). Nonetheless, the Court granted Counterclaimants leave to file their motion to amend, noting that if the motion was denied, the Court would likely "decline to exercise [] supplemental jurisdiction." (*Id.* at 7-8). Counterclaimants filed their motion to amend on June 18, 2025 (Dkt. 176), and PV opposed Counterclaimants' motion on July 9, 2025 (Dkt 184).

On September 22, 2025, the Court issued a bench ruling denying Counterclaimants' motion. (*See* Ex. 1). In doing so, the Court expressed its agreement with PV that "publication of private facts" is likely "not a cognizable claim under New York law." (*See id.* at 16:14-21). The Court also held that "O'Keefe failed to act diligently" in seeking to amend his counterclaims to add a federal claim. (*Id.* at 17:11-15). And, the Court observed that "[t]he timing of O'Keefe's motion, especially considering the substantial delay in seeking amendment despite his awareness of the underlying facts . . . suggest[ed] that the proposed amendment [was] merely a stratagem to avoid dismissal." (*Id.* at 18:18-21). In turn, the Court ordered briefing on "just the supplemental jurisdiction issue," in

view of the fact that no federal claims remain in this case.  (*See id.* at 18:25-19:8).

## LEGAL STANDARD

Federal district courts "are courts of limited jurisdiction," constrained "first[,] by the Constitution," and second, "by statute." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025).  While "a federal court often has power to decide state-law questions," if the operative complaint "presents no federal question," and diversity jurisdiction is otherwise lacking, "a federal court may not hear the suit." *Id.* at 26-27.  In other words, "[i]f a plaintiff files a suit in federal court based on federal claims and later scraps those claims, the federal court cannot go forward with [the] now all-state-claim suit" because the federal court lacks subject-matter jurisdiction. *See id.* at 36.  Moreover, "because it involves a court's power to hear a case," subject-matter jurisdiction "can never be forfeited or waived" and federal courts "have an independent obligation" to determine whether such jurisdiction exists at all stages of a case. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see also United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square*, 30 F.3d 298, 301 (2d Cir. 1994).

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction" over all claims that are "so related to claims" within the court's original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Chapman v. Crane Co.*, 694 Fed. Appx. 825, 828 (2d Cir. 2017). Section 1367(c), in turn, provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim" if (i) "the claim raises a novel or complex issue of State law," (ii) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (iii) "the district court has dismissed all claims over which it has original jurisdiction," or (iv) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). While the decision whether to exercise supplemental jurisdiction under §1367(a) "is to some extent discretionary," once a plaintiff "has ditched all claims involving federal questions, the leftover state claims are supplemental to nothing – and §1367(a) does not authorize a federal court to resolve them." *Royal Canin*, 604 U.S. at 27, 34; *but see Penske Media Corp. v. Shutterstock,*

*Inc.*, No. 20-CV-04583, 2024 U.S. Dist. LEXIS 42215, at *2 (S.D.N.Y. Mar. 11, 2024).

## ARGUMENT

O'Keefe's state law counterclaims must be dismissed.  The Court lacks subject-matter jurisdiction over O'Keefe's state law counterclaims because PV dismissed the federal claims serving as the basis for the Court's original jurisdiction, by agreement of the parties, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and no federal claims remain in the case.  (*See* Dkt. No. 140; *see also* Dkt. 73).  That simple fact alone forecloses the exercise of subject-matter jurisdiction over O'Keefe's state law counterclaims.  Moreover, even if the Court were to hold that it possessed discretion to maintain supplemental jurisdiction over O'Keefe's state law counterclaims, there can be little debate that the Court should decline to exercise such discretion.  Trial is nowhere near in sight and principles of comity militate against the exercise of supplemental jurisdiction where, as here, the only claims remaining in the case potentially implicate unsettled questions of state law.  Put simply, whether the Court concludes that it has discretion to retain

jurisdiction or not, the result must be the same.  O'Keefe's state law counterclaims must be dismissed.

While some courts have suggested that the decision whether to retain supplemental jurisdiction in cases such as this one – where all federal claims have been voluntarily dismissed – is discretionary, *e.g.*, *Penske Media*, 2024 U.S. Dist. LEXIS 42215, at \*2 (citing 28 U.S.C. § 1367(c)), the Supreme Court recently rejected this notion.  Specifically, in *Royal Canin*, the Supreme Court held that "[i]f a plaintiff files a suit in federal court based on federal claims and later scraps those claims, the federal court cannot go forward with [the] now all-state-claim suit."  604 U.S. 22 at 36 (citing *Rockwell Int'l Corp. v. United States*, 549 U. S. 457, 473-474 (2007)).  That is so, the Supreme Court held, because "excising all federal claims destroys federal jurisdiction."  *Id.* at 39.  And, 28 U.S.C. § 1367(a) "does not authorize" the Court to resolve "the leftover state claims" because such claims "are supplemental to nothing."  *Id.*  Simply put, *Royal Canin* compels dismissal of O'Keefe's state law counterclaims.[2]

_____

[2] While the Supreme Court in *Royal Canin* addressed an amended pleading excising all federal claims, rather than, as here, a stipulation of voluntary

Even if the Court were to conclude that the decision whether to exercise supplemental jurisdiction under circumstances such as these is discretionary – again, *Royal Canin* counsels against that conclusion – the facts of this case would not warrant the exercise of any such discretion. It is well-established that when deciding whether to retain supplemental jurisdiction, the general rule is that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), *superseded by statute*, 28 U.S.C. § 1367; *see also Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 123-124 (2d Cir. 2005). Put differently, "in the usual case in which all federal-law claims are eliminated before trial," such as this case, "the balance of factors . . .

---

dismissal of all federal claims, that is a distinction without a difference. In either case, "[w]ith the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state claims." *Royal Canin*, 604 U.S. 22 at 31. It is also insignificant that *Royal Canin* dealt with a case originating in and removed from state court because "nothing in § 1367(a)'s text distinguishes between cases removed to federal court and cases originally filed there." *Id.* at 23.

8

will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded by statute*, 28 U.S.C. § 1367). That is especially true where, as here, the case is "not even on the eve of the eve of trial," let alone "the eve of trial." *See Chenensky v. New York Life Ins. Co.*, 942 F. Supp. 2d 388, 393 (S.D.N.Y. 2013).

*Chapman* is exemplary. In that case, the Second Circuit affirmed a district court's refusal to exercise supplemental jurisdiction where the plaintiffs "had abandoned their claims giving rise to original jurisdiction; it was still an early stage of the proceedings and discovery was not complete; no dispositive motions had been decided; and interests of comity militated in favor of remand because the case was predominately a matter of state law, potentially implicating unsettled questions of state law." *Chapman*, 694 Fed. Appx. at 829. The circumstances of this case are even more compelling than those in *Chapman*. There is no debate that PV withdrew its claims in March 2025, while discovery was far from complete – in fact, O'Keefe took a deposition on the very date of this filing and the parties continue to work towards resolving outstanding discovery

issues.[3]  Nor is there any dispute that, aside from this motion, dispositive motions have not yet been filed.[4]  As in *Chapman*, these considerations strongly favor dismissal.  *See Chapman*, 694 Fed. Appx. at 829; *see also Kolari*, 455 F.3d at 123, n.6.

---

[3] O'Keefe should not be heard to argue that "substantial judicial resources have already been expended" in this case (Dkt. 155 at 1-2), at least because it was O'Keefe's very conduct that necessitated any such expenditure.  *See, e.g.*, *Chenensky*, 942 F. Supp. 2d at 394.  Indeed, as this Court has already acknowledged, O'Keefe's proposed amendment was likely "merely a stratagem to avoid dismissal."  (Ex. 1 at 18:18-21).  Importantly, PV sought to avoid the expenditure of unnecessary respurces by moving for a stay of discovery pending resolution of PV's motion to dismiss (Dkt. 161), which O'Keefe successfully opposed.  (Dkt. 162; *see* Jun. 9, 2025 Minute Entry).

[4] In fact, as this Court has recognized, only if PV's motion to dismiss on jurisdictional grounds is denied will the parties have to brief the "more involved" issues under Rule 12(b)(6).  (*See* Ex. 1 at 20:7-9).  But if the Court grants PV's motion to dismiss on jurisdictional grounds, the Court will have "saved that work."  (*Id.* at 18:25-19:5).

Perhaps most critically, principles of comity weigh heavily in favor of dismissal because this case is entirely a matter of state law, and there are unquestionably disputes as to the application of that law.  By way of example, O'Keefe's state law counterclaims include a claim for publication of private facts, which played a prominent role in O'Keefe's motion to amend, despite the fact that publication of private facts is likely not a cognizable claim under New York law.  (*See* Ex. 1 at 16:14-21; *see also* Dkt. 176 at 15-16).  If O'Keefe had a nonfrivolous basis for bringing such a claim – as Rule 11 demands – its resolution is properly left to the courts of the State of New York.  Indeed, as the Second Circuit has repeatedly admonished, "a district court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims." *Kolari*, 455 F.3d at 124.

In short, O'Keefe's state law counterclaims should be dismissed because this Court lacks subject-matter jurisdiction.  Further, even if the Court concluded that it possessed discretion to retain supplemental jurisdiction over O'Keefe's state law counterclaims, the Court should decline to exercise such discretion because all of the factors that courts

11

consider in determining whether to exercise such discretion weigh heavily in favor of dismissal.  In either case, the outcome is the same: O'Keefe's state law counterclaims must be dismissed.

## CONCLUSION

For at least the reasons set forth herein, PV respectfully requests that the Court grant PV's motion and dismiss this case for lack of subject-matter jurisdiction.

Respectfully Submitted,

Michael J. Harris

**LAW OFFICE OF
MICHAEL J. HARRIS**
43 West 43rd  Street, Suite 148
New York, NY 10036-7424
Telephone: (203) 231-7490
Email: michael.j.harris56@gmail.com

*Counsel for
Counterclaim-Defendants*

*Project Veritas and
Project Veritas Action Fund*

## CERTIFICATE OF WORD COUNT

The undersigned, Michael J. Harris, hereby certifies that this brief complies with the Individual Rules of Practice of Judge Seibel, as well as Local Rule 7.1(c), in that this brief contains a total of 2,562 words, including footnotes.

Michael J. Harris