```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
PROJECT VERITAS and PROJECT VERITAS
ACTION FUND,

                              Plaintiffs,

                                    23 CV 4533(CS)(AEK)
     -vs-
                                    BENCH RULING

JAMES O'KEEFE, TRANSPARENCY 1, LLC
d/b/a O'KEEFE MEDIA GROUP, RC MAXWELL,
and ANTHONY IATROPOULOS,

                              Defendants.
----------------------------------------x

                                    United States Courthouse
                                    White Plains, New York
                                    September 22, 2025


Before:   THE HONORABLE CATHY SEIBEL,
                              United States District Judge

APPEARANCES:

LAW OFFICE OF MICHAEL J. HARRIS
     Attorneys for Plaintiffs
     43 West 43rd Street
     Suite 148
     New York, New York 10036
MICHAEL J. HARRIS

CHILDERS LAW, LLC
     Attorneys for Defendants, O'Keefe and O'Keefe Media Group
     215 Northwest 40th Terrace
     Suite B
     Gainesville, Florida 32605
NICHOLAS P. WHITNEY
```

1              THE DEPUTY CLERK:  All rise.  The Honorable Cathy
2    Seibel presiding.  Project Veritas v. O'Keefe.
3              THE COURT:  Good morning, Mr. Harris and Mr. Whitney.
4              MR. WHITNEY:  Good morning.
5              THE COURT:  You can both have a seat.
6              I am prepared to rule on the motion to amend.  Anybody
7    have anything to add not covered by the papers?
8              MR. HARRIS:  Nothing from Project Veritas, Your Honor.
9              MR. WHITNEY:  Nothing, Your Honor.
10             THE COURT:  All right.  Make yourselves comfortable.
11   It will take a few minutes.
12             I am assuming the parties' familiarity with the
13   underlying facts of the case, which I stated on the record in
14   detail during -- which were placed on the record in detail
15   during the evidentiary hearing back on July 29, 2024.  See ECF
16   No. 65.  I am, therefore, recounting only the background
17   necessary for the resolution of the present motion.
18             Project Veritas and the Project Veritas Action Fund,
19   which together I am going to call "PV," filed their initial
20   complaint against O'Keefe, and the O'Keefe Media Group, which I
21   am going to call collectively "O'Keefe," on May 31, 2023.  PV
22   amended its complaint on October 12, 2023, and on May 29, 2024,
23   filed the motion for a preliminary injunction seeking to enjoin
24   O'Keefe from using PV's confidential information, particularly
25   its donors list.

1          During the hearing on July 29th and 30th of last year,
2  I heard testimony from witnesses for both parties and ultimately
3  denied the motion.  Among the witnesses who testified at the
4  hearing was PV's information technology director Joshua Hughes,
5  who, in pertinent part, testified that PV had access -- sorry --
6  testified that PV had accessed, and was in possession of,
7  O'Keefe's Telegram messages.  Although neither party has
8  provided the transcript of that testimony, the Court obtained
9  it, and it reflects that Hughes testified, among other things,
10 that PV obtained Telegram and iMessage messages "that had been
11 synched on devices at Project Veritas from Mr. O'Keefe's
12 accounts."  That's the July 29, 2024 transcript, page 181, lines
13 17 through 22.  He also testified that the timeframe of those
14 messages were from the period "Mr. O'Keefe had his Telegram
15 synched to his laptop."  That's page 188 at 4 to 5.
16         As O'Keefe explains in his reply brief, which is ECF
17 196 at page 2, "synchronizing via Telegram is a term of art
18 meaning that the Telegram messages did not reside in the local
19 hard drive of the laptop O'Keefe used and PV later possessed.
20 Rather, the Telegram messages always remain on Telegram's third-
21 party server."
22         After the hearing, the parties proposed a discovery
23 plan and scheduling order, which I entered on August 2nd of last
24 year, which set the deadline for any pre-motion conference in
25 connection with the motion to amend as October 28, 2024.  That

1  order is ECF No. 68.

2          On August 21, 2024, O'Keefe filed an answer to the
3  amended complaint, which asserted several state law
4  counterclaims against PV, including claims for breach of
5  employment contract, defamation, publication of private facts,
6  intentional infliction of emotional distress, breach of the duty
7  of good faith and fair dealing and breach of fiduciary duty.
8  That's ECF 73.  In support of the publication of private facts
9  claim, O'Keefe alleged that "PV servers hosted several of
10 O'Keefe's personal, private (non-public) private Telegram and
11 Apple iMessage accounts," and that "after constructively
12 terminating O'Keefe, Project Veritas accessed his private
13 messaging accounts without O'Keefe's permission."  That's in
14 paragraphs 137 and 138 of O'Keefe's answer.

15         The parties continued discovery until December 23rd,
16 2024, when discovery was held in abeyance due to the withdrawal
17 of PV's counsel.  See ECF Nos. 117 and 128.  Once PV retained
18 new counsel in March of 2025, the discovery deadlines were
19 extended so that all fact discovery was to be completed by
20 August 1st of this year.  See minute entry dated March 10, 2025.
21 The deadline for fact depositions was recently extended to
22 September 30th, the end of this month, at O'Keefe's request.
23 ECF 197.  Although Magistrate Judge Krause has permitted the
24 parties to schedule an additional deposition after that date.
25 See ECF 209.

1            On March 18, 2025, PV voluntarily dismissed all of its
2   claims against O'Keefe leaving only O'Keefe's state law
3   counterclaims.  ECF 140.  On April 11, 2025, PV filed a
4   pre-motion letter requesting a conference to discuss its
5   intended motion to dismiss O'Keefe's counterclaims, arguing both
6   that 12(b)(6) dismissal was warranted, and that the Court should
7   decline to exercise supplemental jurisdiction given that all
8   federal claims had been dismissed.  ECF No. 144.
9            On May 6th, O'Keefe filed a pre-motion letter in
10  anticipation of filing the current motion to amend, which was
11  ECF 150.  The letter explained that O'Keefe sought to add a
12  claim under the Stored Communications Act, or SCA, 18 U.S.C.
13  2701.  "Based on evidence and testimony confirming that Project
14  Veritas intentionally accessed Mr. O'Keefe's private
15  communications without authorization after his departure from
16  the organization in February 2023."  That was at page 1 of the
17  letter.
18           The SCA provides a cause of action against a defendant
19  who:  "One, intentionally accesses without authorization a
20  facility through which an electronic communication service is
21  provided; or two, intentionally exceeds an authorization to
22  access that facility; and thereby obtains, alters, or prevents
23  authorized access to a wire or electronic communication while it
24  is in electronic storage in such system."  *William Gottlieb*
25  *Management vs. Carlin*, 2024 WL 1311854 at page 4, S.D.N.Y.

1  March 26, 2024, quoting Section 2701(a).
2          And, by the way, unless I indicate otherwise, any case
3  quotations today omit internal citations, quotation marks,
4  footnotes, and alterations.
5          O'Keefe's May 6th letter, ECF 150, specifically cited
6  the July 2024 testimony of Joshua Hughes as "suggesting a good
7  faith basis for this claim" and stated that the proposed
8  amendment "addresses conduct previously raised in O'Keefe's
9  state law counterclaim for publication of private facts."
10         Nine days later, when O'Keefe filed a letter in
11 response to PV's pre-motion letter, he specifically pointed to
12 the proposed SCA claim to argue that the Court should retain
13 jurisdiction over the remaining claims.  That's ECF 155.  At a
14 pre-motion conference on May 22nd, I set the briefing schedule
15 for the current motion explaining that the motion to dismiss
16 could be filed once the issue of amendment had been decided, and
17 this motion followed.
18         The legal standard is as follows:  "Where a party's
19 motion to amend would require altering a court's scheduling
20 order, the party must satisfy both Federal Rules of Civil
21 Procedure 15 and 16 to be permitted to amend." *International*
22 *Technologies Marketing vs. Verint Systems*, 850 F.App'x 38 at 43.
23 Rule 15 of the Federal Rules of Civil Procedure, which governs
24 amendments generally, provides that leave to amend a complaint
25 should be freely given when justice so requires.  That's

1  Rule 15(a)(2). It is within the sound discretion of the
2  district court to grant or deny leave to amend. *Kim vs. Kimm*,
3  884 F.3d 98 at 105. "Leave to amend, though liberally granted,
4  may properly be denied for: Undue delay, bad faith or dilatory
5  motive on the part of the movant, repeated failure to cure
6  deficiencies by amendments previously allowed, undue prejudice
7  to the opposing party by virtue of allowance of the amendment,
8  futility of amendment, et cetera." *Ruotolo vs. City of New*
9  *York*, 514 F.3d 184 at 191, quoting *Foman v. Davis* 371 U.S. 178.
10           Rule 16, however, imposes a "more exacting standard"
11 for amendments sought after the deadline for amendment, as set
12 out by a scheduling order, has passed. Let me say that one more
13 time. Rule 16, however, imposes a "more exacting standard" for
14 amendments sought after the deadline for amendment, as set out
15 by a scheduling order, has passed. *Farsura vs. QC Terme*, 2023
16 WL 2919553 at *3, S.D.N.Y. March 14, 2023, report and
17 recommendation adopted, 2023 WL 4348388, S.D.N.Y. July 5th,
18 2023. "Under Rule 16, a court's scheduling order should not be
19 modified except upon showing of good cause, which requires the
20 moving party to have acted diligently." *International*
21 *Technologies* at 43. See *Farsura* at *3. "A party is not
22 considered to have been diligent where the proposed amendment is
23 based on information that the party knew or should have known in
24 advance of the motion deadline." *Fresh Del Monte Produce vs.*
25 *Del Monte Foods*, 304 F.R.D. 170 at 174 to 175, S.D.N.Y. 2014.

1  See *Red Rock Sourcing vs. JGX*, 2025 WL 524024 at *6, S.D.N.Y.
2  February 18, 2025.
3           "As with the Rule 15 analysis, the court also may
4  consider other relevant factors, including, in particular,
5  whether allowing the amendment of the pleading at this stage of
6  the litigation will prejudice non-movants."  *In re:  Tether &*
7  *Bitfinex Crypto Asset Litigation*, 2024 WL 3520363 at *6,
8  S.D.N.Y. July 24, 2024.  See *Kassner vs. 2nd Avenue Deli*, 496
9  F.3d 229 at 244, and *Ahmed vs. Astoria Bank*, 2015 WL 4394072 at
10 *2, E.D.N.Y. July 16, 2015.  "Ultimately whether to permit
11 amendment in light of Rule 16(b) and Rule 15 is a decision that
12 lies within the court's discretion.  *In re:  Tether & Bitfinex*
13 at *7, and courts analyzing post deadline motions to amend "need
14 not decide whether plaintiff has satisfied the liberal standard
15 of Rule 15(a) unless plaintiff first establishes good cause
16 under Rule 16."  *La Liberte vs. Reid*, 2023 WL 6593985 at *3,
17 E.D.N.Y. August 18, 2023, *R&R adopted,* 2023 WL 6370772, E.D.N.Y.
18 September 30, 2023, *appealed dismissed* January 26, 2024.
19          I will start with the issue of diligence.  O'Keefe
20 argues he has satisfied the good cause standard because the
21 factual basis for his SCA claim "has emerged through the course
22 of this proceeding such that the viability of the SCA claim
23 could not have been adequately pled by OMG/O'Keefe until shortly
24 before they submitted their May 6, 2025 request."  That's
25 O'Keefe's moving brief at 4.

1           O'Keefe then immediately concedes, however, that he
2  "first received evidence indicating a possible basis" for the
3  purported amendment on July 29th, 2024, when Joshua Hughes
4  testified that he had accessed O'Keefe's private messages.
5  That's also on page 4.  The fact that this testimony took place
6  months before the deadline for amendment suggests that O'Keefe
7  failed to act diligently.  See *Fresh Del Monte* at 174 to 75.
8           PV argues that O'Keefe was on notice even earlier,
9  when PV admitted in its motion for preliminary injunction in
10 May 2024 that it possessed O'Keefe's Telegram messages.  See
11 PV's opposition, which is ECF 184 at page 3, and ECF No. 51 at
12 page 5, note 3.
13          PV also points to its electronic communications policy
14 as evidence that O'Keefe was on notice that he had no
15 expectation of privacy in messages sent from, received by, or
16 stored in PV's systems.  That's in PV's opposition at 15 or
17 16 -- 15 and 16.  To the extent PV raises this point to argue
18 that it had authorization to access O'Keefe's messages and the
19 proposed claim is thus futile, this argument is improper at this
20 stage.  "Futility is generally adjudicated without resort to any
21 outside evidence" and is based on the legal sufficiency of the
22 allegations in the proposed amended complaint.  *Cano vs. DPNY*,
23 287 F.R.D. 251 at 257, S.D.N.Y. 2012.
24          PV attempts to circumvent this general rule by
25 claiming that it is introducing the policy as proof that O'Keefe

1 was on notice of PV's right to access messages on its own
2 servers and therefore was not diligent in amending the
3 complaint. See PV's opposition at 16, note 4. But whether and
4 when O'Keefe was on notice of this policy is not relevant. The
5 question is when he became aware of the facts he seeks to rely
6 on to support his claim; in other words, when he allegedly
7 became aware that PV had accessed the contents of his messaging
8 accounts, which contents were not on PV's servers, without
9 authorization.

10          So going back to PV's argument that O'Keefe was on
11 notice in May 2024 when PV admitted in its motion for the PI
12 that it had O'Keefe's Telegram messages. According to that PI
13 motion, however, the Telegram messages had been saved to PV's
14 servers (ECF No. 51 at page 5, note 3) rather than obtained
15 directly via O'Keefe's Telegram account as O'Keefe now alleges.
16 This is a meaningful distinction. If the only messages that PV
17 accessed were those stored on PV's systems, then O'Keefe could
18 not state a claim under the SCA, which prohibits unauthorized
19 access to "a facility through which an electronic communication
20 service is provided." 18 U.S.C. 2701. Courts interpreting the
21 statute have understood this to mean that it protects electronic
22 communications "stored on an electronic communication service
23 provider systems after they have been delivered as opposed to
24 emails stored on a personal computer" or a "company computer's
25 memory." *Obeid ex rel. Gemini Real Estate vs. La Mack*, 2017 WL

1  1215753 at *9, S.D.N.Y. March 31st, 2017.  See *Pure Power Boot
2  Camp vs. Warrior Fitness Boot Camp*, 587 F.Supp.2d 548 to 555 to
3  56, S.D.N.Y. 2008.  In other words, even if O'Keefe was aware
4  that PV had accessed O'Keefe's Telegram messages, the key
5  question was how those messages were obtained, whether from the
6  memory of a PV-owned computer or from within O'Keefe's personal
7  messaging accounts maintained by Telegram.
8         Nonetheless, this question was answered in July 2024
9  by Hughes's testimony at the PI hearing.  Hughes specifically
10 stated that PV possessed Telegram and iMessage messages "that
11 had been synched on devices at Project Veritas from
12 Mr. O'Keefe's accounts."  That's the July 29, 2024 transcript at
13 181, also 188.  According to O'Keefe's own definition of
14 synchronization, by admitting that PV accessed synched messages
15 from O'Keefe's account, Hughes put O'Keefe on notice that PV had
16 accessed these messages "via telegram's third-party server."
17 O'Keefe's reply at 2.  Because the proposed SCA claim is
18 premised on precisely this allegation -- that PV accessed
19 O'Keefe's private messages via Telegram and similar messaging
20 accounts without authorization -- O'Keefe could have asserted
21 the SCA claim a year ago.
22         O'Keefe argues that he "did not consider that
23 testimony alone enough, undeveloped as it was, to bring a cause
24 of action for violation of the SCA."  That's O'Keefe's brief at
25 5.  He therefore sought Mr. Hughes's deposition, but it was

1  postponed several times and had not yet taken place by the time
2  the instant motion was filed.  Also O'Keefe's brief at 5.
3  O'Keefe further claims that the deposition testimony of the
4  Project Veritas Action Fund's president Joseph Barton on
5  November 7, 2024, "affirmed the likelihood of a SCA violation,"
6  but that disputes as to confidentiality designations prevented
7  him from relying on this testimony until the day before the
8  instant motion was filed.  Again, brief at 5.  Similarly, the
9  proposed amendment relies on text exchanges between PV's former
10 chief operating officer and a PV board member, which were
11 produced in November, confidentiality of which was still in
12 dispute when PV's counsel withdrew and discovery was held in
13 abeyance.  That's in O'Keefe's brief at 5 to 7.
14          Although O'Keefe states that the lingering discovery
15 disputes arising from PV's confidentiality designations under
16 the protective order were not resolved until May 5th, 2025, the
17 letter he cites as resolving these disputes makes no references
18 to the confidentiality of these text messages.  That's ECF 149.
19 And it is thus unclear when the parties reached agreement as to
20 this issue.
21          Finally, O'Keefe avers that he is still waiting on a
22 flash drive of his Telegram messages that PV promised to send in
23 response to discovery requests issued on September 6, 2024.
24 That's in his brief at 7.
25          First, it is not clear why O'Keefe considered Hughes's

1  testimony insufficient, especially given that the recent
2  deposition testimony that O'Keefe insists "conclusively
3  established his claim" -- that's in O'Keefe's reply at 2 --
4  apparently provided very little detail beyond what was
5  established at the PI hearing.  And while O'Keefe argues that
6  issues with confidentiality also delayed his amendment, this
7  argument is undercut by the fact that he made no effort to file
8  the motion with redactions or request an extension for amendment
9  until the confidentiality was resolved.
10            Regardless, even if O'Keefe was able to amass
11 additional evidence, including the Hughes deposition, the Barton
12 deposition, and the text messages, to "affirm the likelihood" of
13 his SCA claim after the deadline for amendment had passed,
14 O'Keefe's brief at 15, this does not suffice to show good cause,
15 given that the "essential allegations" underlying the proposed
16 SCA claim (in O'Keefe at 15) were available to O'Keefe prior to
17 the deadline.  See *La Liberte* at *5 where good cause was not
18 found where "plaintiff possessed sufficient information from the
19 outset of the case to assert a proposed claim, even if plaintiff
20 believes that discovery revealed additional evidence to bolster
21 her proposed claims."  *380544 Canada vs. Aspen*, 2011 WL 4089876
22 at *4, S.D.N.Y. September 14, 2011, holding that even where
23 documents obtained later in discovery may have buttressed
24 plaintiff's allegations, good cause was not shown because the
25 substance of the proposed allegations could have been included

1  in the amendment before the deadline.  *Point 4 Data vs.*
2  *Tri-State Surgical*, 2012 WL 2458060 at *7, E.D.N.Y. June 27,
3  2012, finding no good cause where plaintiff's delayed amendment
4  to develop a "more solid basis" for their claim, *affirmed* 2012
5  WL 3306612, August 13, 2012, also E.D.N.Y.; see also *Bender vs.*
6  *GSA*, 2006 WL 1643345 at page 1, S.D.N.Y. June 9th, 2006, noting
7  that analyzing a motion to amend requires the Court merely to
8  access -- merely to -- try again.  Requires that the Court
9  merely assess the legal feasibility of the complaint, not assay
10 the weight of the evidence which might be offered in support
11 thereof.  Moreover, O'Keefe's claimed desire to accumulate
12 additional evidence prior to amending is undercut by the fact
13 that much of the evidence on which he was purportedly waiting
14 before moving to amend had still not been obtained at the time
15 his motion was filed.  The deposition of Mr. Hughes had still
16 not been taken, and the flash drive containing his Telegram
17 messages had still not been received.  See his brief at 5 and 7.
18         Further, as O'Keefe essentially concedes later in his
19 brief, the counterclaims he filed on August 21st, 2024, well
20 before the amendment deadline, demonstrate that he could have
21 asserted an SCA claim at this time and failed to do so -- at
22 that time, I mean, and failed to do so.
23         In connection with his argument that the proposed
24 amendment would not prejudice PV, O'Keefe points out that the
25 initial counterclaims included "scores of allegations concerned

with PV's acquisition, misuse, and disclosure of O'Keefe's private and personal information and digital communications that PV accessed," several of which "track almost exactly the essential allegations that must be made under the SCA." That's O'Keefe's brief at 15 to 16. Indeed, in support of the counterclaim for publication of private facts, O'Keefe alleges that "Project Veritas servers posted several of O'Keefe's personal private (non-public) messaging accounts, including his Telegram and Apple iMessage accounts" and that "after constructively terminating O'Keefe, Project Veritas accessed his private messaging accounts without O'Keefe's permission." That's ECF No. 73 at paragraphs 137 to 138. The fact that O'Keefe affirmatively alleged in August 2024 that PV viewed his messages by "accessing his private messaging accounts" shows that he understood that his Telegram account, which contained messages hosted by Telegram, was accessed, not merely PV's own servers, and undermines his current argument that Hughes's June 25 deposition was needed to "correct and clarify" PV's assertion that the messages had been saved to PV's servers.

Further, while O'Keefe's motion was filed before the close of fact discovery, allowing the proposed amendment would almost certainly result in a further discovery extension, which may prejudice PV by requiring it to "expend significant additional resources" and "significantly delay resolution of the dispute." *Scalia vs. Sarene Services*, 740 F.Supp.3d 251 at 276,

1  E.D.N.Y. 2024.  See *La Liberte* at *6.
2           Although the substance of the allegations that would
3  support the proposed SCA claim were discussed at the PI hearing,
4  and previously asserted in support of the publication of the
5  private facts claim, as discussed above, the evidence required
6  to prove and oppose each claim would likely be quite different.
7  For example, defending against an SCA claim would require the
8  parties to explore technical issues such as whether messages
9  were accessed from computer memory or directly from interfaces
10 such as Telegram, as well as whether PV's actions were
11 authorized within the meaning of the SCA in light of its
12 electronic communications policy.  See PV's opposition at 24 and
13 O'Keefe's reply at *5 and note 7.
14          And given PV's position that publication of private
15 facts is not a cognizable claim under New York law, see PV's
16 opposition 17 note 6, a position with which I am inclined to
17 agree, see *Sweigert vs. Goodman*, 2024 WL 4493768 at *6, S.D.N.Y.
18 October 11, 2024, *reconsideration denied*, 2024 WL 5047302,
19 December 9, 2024, it is far from clear that the discovery PV
20 would have already conducted to oppose this claim would suffice
21 to oppose a claim brought under a new legal theory.
22          O'Keefe argues in his reply at 10 that the need for
23 additional discovery is insufficient to establish prejudice.
24 But the case he cites addressed prejudice in the context of a
25 Rule 15 analysis rather than a Rule 16 analysis.  See *Duling vs.*

1  *Gristede's*, 265 F.R.D. 91 at 99 to 101, S.D.N.Y. 2010; that's
2  therefore distinguishable given that Rule 16 -- given that "Rule
3  16(b) was designed to offer a measure of certainty in pretrial
4  proceedings ensuring that at some point both the parties and the
5  pleadings will be fixed."  *Red Rock Sourcing* at *4.  See also
6  *Ahmed* at *3, rejecting the argument that an amendment sought
7  shortly before the end of fact discovery wouldn't result in
8  prejudice where the deadline to amend had passed and the
9  proposed amendment would substantially alter the theory of the
10 case.
11         And even if I were to agree with O'Keefe that the
12 proposed amendment would not prejudice PV, which I do not, the
13 absence of prejudice to the nonmoving party does not require me
14 to allow amendment given my finding that O'Keefe failed to act
15 diligently.  See *Ahmed* at *3.
16         Moreover, under both Rule 16 and the more lenient
17 standard of Rule 15, "leave to amend is not appropriate where,
18 as here, the motion is filed solely in anticipation of an
19 adverse ruling."  *Dellefave vs. Access Temporaries*, 2001 WL
20 25745 at *9, S.D.N.Y. January 10th, 2001; see *Franconero vs.
21 Universal Music*, 2011 WL 566794 at *6, S.D.N.Y. February 11,
22 2011, noting that granting a motion to amend on the eve of an
23 adverse ruling would be especially prejudicial, *affirmed* 542
24 F.App'x 14; and *Berman v. Parco*, 986 F.Supp. 195 at 218 to 19,
25 S.D.N.Y. 1997, which denied leave to amend under Rule 16 where

1  the amendment appeared to be in anticipation of an adverse
2  ruling.
3           Here, O'Keefe first informed the Court that he sought
4  to amend on May 6, 2025, (ECF No. 150) less than a month after
5  PV pointed out that all federal claims had been dismissed and
6  argued that the Court should decline to exercise jurisdiction
7  over the state law counterclaims.  See ECF 144.  In O'Keefe's
8  reply letter on May 15, 2025, he argued that the proposed SCA
9  claim, which he had first mentioned only nine days earlier in
10 the face of possible dismissal on grounds of subject matter
11 jurisdiction, could provide a basis for federal jurisdiction.
12 That's ECF 155.  And then in his memoranda in support of the
13 instant motion, he states that "OMG/O'Keefe should be permitted
14 to pursue these claims, not least of all because PV purports to
15 plan to soon file a motion to dismiss that it contends will
16 result in dismissal of certain of OMG/O'Keefe's other claims in
17 this action."  That's in his brief at 17.
18          The timing of O'Keefe's motion, especially considering
19 the substantial delay in seeking amendment despite his awareness
20 of the underlying facts, as discussed above, suggests that the
21 proposed amendment is merely a stratagem to avoid dismissal.
22          For these reasons, the motion for leave to amend is
23 denied.  The Clerk has to terminate motion number 175, and now
24 we have to talk about the motion to dismiss.
25          What I am going to suggest is that the parties brief

1  just the supplemental jurisdiction issue, and if I decide to
2  retain, then we move on to 12(b)(6); but if I don't, I will have
3  saved that work, and I think the supplemental jurisdiction issue
4  isn't going to be complicated, and I can get to it fairly
5  quickly.
6              So I guess it would be your motion, Mr. Harris, to
7  tell me why I shouldn't exercise supplemental jurisdiction over
8  the counterclaims.
9              MR. HARRIS:  Yes.  Thank you, Your Honor.  Are you
10 asking me to tell you now or we are going to brief it?
11             THE COURT:  Tell me when you would like to brief it.
12             MR. HARRIS:  Probably within the next three weeks, I
13 would say.
14             THE COURT:  Okay.  That would take us to -- let's see,
15 October 14th.
16             And when can you respond, Mr. Whitney?
17             MR. WHITNEY:  It looks like three weeks after that
18 would be November 4th.
19             THE COURT:  Okay.  Let's see, I am off by a day,
20 actually.  Three weeks from today is -- oh, it's a holiday.
21 That's why I got confused.  Okay.  So three weeks thereafter
22 would be November 4th.  And reply, Mr. Harris?
23             MR. HARRIS:  Would two weeks be agreeable?
24             THE COURT:  All right.  November 18th.
25             Let me ask Mr. Clark for to find a date for let's say

```
 1  three weeks later for me to give a ruling from the bench if I am
 2  going to do it from the bench.  That will force me to jump the
 3  line with this motion.
 4              (Pause)
 5              THE DEPUTY CLERK:  Yes, Judge.  December 12th, 2025,
 6  at 2:15 p.m.
 7              THE COURT:  All right.  And then if I deny the motion,
 8  we will set a schedule then for the 12(b)(6), which I imagine
 9  will be more involved.
10              All right.  Anything more we should do at this time?
11              MR. WHITNEY:  Not from O'Keefe, Your Honor.
12              MR. HARRIS:  Nothing from plaintiff, Your Honor.
13  Thank you.
14              THE COURT:  All right.  Thank you both.
15                                -o0o-
16
17
18
19          I, Darby Ginsberg, certify that the foregoing is a
20  correct transcript from the record of proceedings in the
21  above-entitled matter.
22
23              /s/ Darby Ginsberg, RPR, RCR
24              Official Court Reporter
                Southern District of New York
25
```