UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROJECT VERITAS and PROJECT VERITAS ACTION FUND,<br><br>    Plaintiffs/Counterclaim-Defendants,<br><br>v.<br><br>JAMES O'KEEFE and TRANSPARENCY 1, LLC d/b/a O'KEEFE MEDIA GROUP,<br><br>    Defendants/Counterclaimants. | Civil Action No. 7:23-cv-04533 |

**COUNTERCLAIMANTS' RESPONSE IN OPPOSITION TO
COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii
FACTUAL AND PROCEDURAL BACKGROUND ............................................................. 1
LEGAL STANDARD ............................................................................................................... 3
ARGUMENT ............................................................................................................................. 6
   I. Judicial Economy Strongly Favors Retention ................................................................ 9
   II. Convenience to the Parties Supports Retention ........................................................... 10
   III. Fairness Demands Retention Given Project Veritas' Conduct ................................... 11
   IV. Comity Does Not Counsel Dismissal ......................................................................... 12
CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ................................................................................................................ 11

*Catzin v. Thank You & Good Luck Corp.*,
    899 F.3d 77 (2d Cir. 2018) ............................................................................................... 3, 5, 10

*Chimarev v. TD Waterhouse Inv. Srvs., Inc.*,
    280 F.Supp.2d 208 (2d Cir. 2003) .............................................................................................. 5

*JT IP Holding, LLC v. Florence*,
    No. 1:20-CV-10433-IT, 2024 WL 4190044 (D. Mass. Sept. 12, 2024) ..................................... 5

*Kurtz v. Lupica*,
    No. 20 Civ. 3401 (PAE), 2023 WL 3510646 (S.D.N.Y. Apr. 26, 2023) .................................... 9

*Lawless v. Steward Health Care Sys., LLC*,
    894 F.3d 9 (1st Cir. 2018) .......................................................................................................... 5

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
    711 F.3d 106 (2d. Cir. 2013) ...................................................................................................... 9

*Martinez v. Sunnova Energy Corp.*,
    No. 2:24-CV-06346-MRA-MAR, 2025 WL 732350 (C.D. Cal. Mar. 7, 2025) ...................... 12

*Martinez v. Sunnova Energy*,
    No. 25-2284, 2025 WL 1899099 (9th Cir. Apr. 17, 2025) ...................................................... 12

*Nowak v. Ironworkers Local 6 Pension Fund*,
    81 F.3d 1182 (2d Cir. 1996) ....................................................................................................... 9

*O'Rear v. Diaz*,
    24CV 1669 (PAE), 2025 WL 835018 (S.D.N.Y Mar. 14, 2025) ................................... 7, 8, 12

*Orix Cap. Mkts., LLC v. Super Future Equities, Inc.*,
    No. CIV.A.3:06-CV-0271-B, 2008 WL 4820767 (N.D. Tex. Nov. 6, 2008) ............................ 5

*Penske Media Corp. v. Shutterstock, Inc.*,
    No. 20-CV-04583, 2024 WL 1313356 (S.D.N.Y. Mar. 27, 2024) ................................ 9, 10, 13

*Roche v. John Hancock Mut. Life Ins. Co.*,
    81 F.3d 249 (1st Cir. 1996) ........................................................................................................ 6

*Rodriguez v. Doral Mortgage Corp.*,
    57 F.3d 1168 (1st Cir. 1995) ...................................................................................................... 6

*Royal Canin U.S.A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025) ................................................................................................................ 6, 12

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) ............................................................................................................. 3, 5

**Statutes**

17 U.S.C. §§ 101 et seq. ................................................................................................................ 1
18 U.S.C. § 1836 et seq. ........................................................................................................... 1, 8
28 U.S.C. § 1367 .................................................................................................................. 3, 4, 9

**FACTUAL AND PROCEDURAL BACKGROUND**

Project Veritas[1] initiated this action in May 2023, asserting federal claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., alongside state law claims for breach of contract, breach of fiduciary duty, breach of the duty of loyalty, conversion, and tortious interference. *See* Complaint and Demand for Jury Trial, ECF No. 1. In October 2023, Project Veritas amended its Complaint to add a second federal claim under the Copyright Act, 17 U.S.C. §§ 101 et seq. *See* First Amended Complaint and Demand for Jury Trial, ECF No. 16.

Project Veritas aggressively pursued federal jurisdiction. In June and July 2024, it filed extensive briefing in support of a preliminary injunction, including a 25-page Reply in Support of Motion for Preliminary Injunction and Response Memorandum in Opposition [ECF No. 53] to Counterclaimants, James O'Keefe's and O'Keefe Media Group's (collectively "Counterclaimants", or "Defendants"), Cross Motion to Compel Arbitration. [ECF No. 52]. Project Veritas strenuously opposed arbitration and desired that this Court exercise its jurisdiction, arguing that its claims were non-arbitrable and urging this Court to exercise jurisdiction over the entire dispute. *See* ECF No. 53 at 12-19. Project Veritas' desired injunction rested entirely on its state law claims. *See* ECF No. 16 at ¶¶ 88, 136, 137, 210, 211, 250, and 265.[2] The Court denied Project Veritas' request for a

---

[1] Plaintiffs include both Project Veritas and Project Veritas Action Fund, referred to collectively in this Response as "Project Veritas", "Plaintiffs", or "Counterclaim-Defendants."

[2] Project Veritas' request for an injunction was pled within its claims for Breach of Contract (Count I), Tortious Interference with Contract (Counts VIII, XI, and XII).

1

preliminary injunction on July 30, 2024, after significant judicial effort and an evidentiary hearing. [ECF No. 65].

Following the Court's denial of Project Veritas' desired injunction, discovery proceeded under this Court's supervision, with a scheduling order entered on August 2, 2024. [ECF No. 68]. Counterclaimants answered and responded with state law counterclaims, mirroring Project Veritas' state law claims. *See* Defendants O'Keefe and O'Keefe Media Group's Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint and Demand for Jury Trial, and Defendants' Counterclaims Against Plaintiffs. [ECF No. 73]. All fact discovery, including depositions, was carefully managed by the Court. No less than five hearings were conducted to manage discovery. All depositions are now complete. Two years after initiating this action—and after causing the expenditure of substantial judicial resources—Project Veritas voluntarily dismissed its federal claims, leaving only Counterclaimants' state law claims. It now moves to dismiss the remaining counterclaims for lack of subject matter jurisdiction, claiming no basis for supplemental jurisdiction. *See* Project Veritas' Brief in Support of Project Veritas' Motion to Dismiss, ECF No. 217.

Project Veritas' gamesmanship should not be countenanced. Its federal claims were proven to be unviable through the course of this litigation and discovery. Project Veritas has never produced the "donor lists" on which its Defend Trade Secrets Act claim supposedly rested. Similarly, Mr. O'Keefe has always been the registered copyright holder of *Breakthrough, American Pravda,* and *American Muckraker,* and Project Veritas has never produced a transfer of copyright for any of Mr. O'Keefe's best-selling books. *See*

2

ECF No. 73 at 6-8. Project Veritas manufactured federal jurisdiction through two unviable federal claims to force Mr. O'Keefe and O'Keefe Media Group into federal court, argued against Defendants' efforts to arbitrate the dispute, and forced a preliminary injunction hearing premised entirely on Project Veritas' state law claims. When it realized the weakness of its case and sought to destroy the federal jurisdiction it had clamored for, Project Veritas voluntarily dismissed its federal claims after two years of litigation. Project Veritas' dismissal was a gambit to have the case dismissed for lack of federal jurisdiction.

## LEGAL STANDARD

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims after dismissing all federal claims, but it is not required to do so. The decision is discretionary and guided by factors of judicial economy, convenience, fairness, and comity. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Second Circuit has emphasized that where a case has advanced significantly, including through completed discovery, courts should retain jurisdiction to avoid waste and duplication. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018) (affirming retention where litigation was "far advanced").

Section 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

3

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c).

In *Catzin*, the Second Circuit explained at length how Section 1367(c) is to be applied.

> "If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction. **If one of those categories applies, 'a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'** *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ); *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity."). The declining of supplemental jurisdiction must actually promote those values as 'the fact that one or more of the grounds for declining to exercise supplemental jurisdiction set forth in section 1367(c) applies does not mean that dismissal is mandated.' *Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 439 (2d Cir. 2011). We have emphasized both that, insofar as a § 1367(c) category is applicable, supplemental jurisdiction is a "doctrine of discretion, not of plaintiffs' right,' *Kolari*, 455 F.3d at 122 (quoting *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130), and that '[i]n providing that a district court 'may'

4

decline to exercise [supplemental] jurisdiction, [§ 1367(c)] is permissive rather than mandatory,' *Valencia*, 316 F.3d at 305." *Catzin*, 899 F.3d at 85.

"When federal claims have been dismissed, a district court may decline to exercise jurisdiction when it 'has dismissed all claims over which it has original jurisdiction.' **Nonetheless, it retains authority to hear such claims.** The factors a court should weigh in determining whether to retain jurisdiction over state law claims include 'judicial economy, convenience, fairness and comity." *Chimarev v. TD Waterhouse Inv. Srvs., Inc.*, 280 F.Supp.2d 208 (2d Cir. 2003) (internal citations omitted).

"District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Orix Cap. Mkts., LLC v. Super Future Equities, Inc.*, No. CIV.A.3:06-CV-0271-B, 2008 WL 4820767, at *3 (N.D. Tex. Nov. 6, 2008). "In determining whether to maintain jurisdiction after the dismissal of all federal claims, "courts should exercise their discretion in a way that best serves the principles of economy, convenience, fairness, and comity." *Id.*

"There may [ ] be situations in which ... the argument for exercise of pendent jurisdiction is particularly strong," *JT IP Holding, LLC v. Florence*, No. 1:20-CV-10433-IT, 2024 WL 4190044, at *2 (D. Mass. Sept. 12, 2024); citing *Gibbs*, 383 U.S. at 726–27, and the court does not automatically lose jurisdiction over pendent state-law claims where they arise from the same nucleus of operative facts, *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 19–20 (1st Cir. 2018). Instead, pendent jurisdiction doctrine indicates a presumption in favor of dismissal that can be overridden when the aforementioned

5

factors weigh strongly enough in favor of jurisdictional retention. *See Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996) The preferred approach is pragmatic and case specific. "Thus, in 'an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims.'" *Id.* (quoting *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)).

## ARGUMENT

The Court should deny Plaintiffs' Motion to Dismiss and retain supplemental jurisdiction over the remaining state law counterclaims. Project Veritas, having initiated this federal litigation, cannot now invoke its own voluntary dismissal—two years after filing its Complaint — as a gambit to divest this Court of jurisdiction. The *Gibbs* factors of judicial economy, convenience, fairness, and comity overwhelmingly favor retention. Despite the U.S. Supreme Court's recent decision in *Royal Canin*, Project Veritas' gamesmanship does not force this Court to refuse to exercise its supplemental jurisdiction over the remaining state-law counterclaims.

Project Veritas' voluntary dismissal of its claims was a stratagem to defeat the same federal jurisdiction it invoked in bringing this case in May 2023. Project Veritas leans heavily on the Supreme Court's recent decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). There, Justice Kagan wrote for a unanimous court wrestling with the effect of an early amendment on a federal court's jurisdiction and held that an amendment excising federal claims divests a district court of federal-question jurisdiction and supplemental jurisdiction over state law claims. But *Royal Canin* addressed a case

6

still in the early stages of pleading, without discovery having commenced, much less depositions complete and discovery closed.

Despite the recency of the *Royal Canin* decision, this Court has already had the opportunity to reject similar tactics by a plaintiff to "escape from federal court." *O'Rear v. Diaz*, 24CV 1669 (PAE), 2025 WL 835018 (S.D.N.Y Mar. 14, 2025). The *O'Rear* opinion recites the plaintiff's conduct and a procedural history remarkably similar to the present action.

> "As of today, fact discovery has been ongoing for 10 months, since May 7, 2024. The deadline for fact discovery, which has been extended three times, is Monday, March 24, 2025. The litigation has been contentious. The Court has been called upon to resolve numerous motions, including eight filed by O'Rear. The Court has issued two extensive decisions."
> *Id.* at *2.

Fact discovery has been ongoing in the present case for 14 months, since the Court entered its Civil Case Discovery Plan and Scheduling Order on August 2, 2024. [ECF No. 68]. The deadline for fact discovery has now passed, after being extended multiple times to allow for additional depositions, including Project Veritas' request to take Plaintiff James O'Keefe's and O'Keefe Media Group's corporate representatives' depositions long after the original fact discovery deadline had passed. ECF Nos. 161, 174. The litigation has been contentious. The Court has been called upon to resolve numerous motions, with two evidentiary hearings necessitated by Project Veritas' desire for a preliminary injunction and, later, a protective order based on unsupported allegations of witness intimidation. ECF Nos. 50-51, 161, 164, 167, 169. The Court has issued two extensive

7

decisions, one again related to Project Veritas' request for a preliminary injunction and the other related to Counterclaimants' desired amendment to add a claim under the Stored Communications Act. ECF Nos. 65, 70, 217-1].

Less than one month after voluntarily dismissing all of its claims, Project Veritas asked this Court to divest itself of jurisdiction to adjudicate the remaining state-law counterclaims. "*Royal Canin* does not provide a charter for a plaintiff to amend a complaint long after the deadline to do so has passed, let alone to do so as a means to avoid a forum choice which, in light of a series of adverse rulings, the plaintiff has now apparently come to rue." *O'Rear,* 2025 WL 835018 at * 3. Similarly, *Royal Canin* should not provide a charter for Project Veritas to dismiss its claims, long after the deadline for amendment has passed, to divest this Court of jurisdiction following Project Veritas' choice to bring suit in this federal forum and insistence on this Court's jurisdiction when the Defendants urged arbitration. Like *O'Rear*, Project Veritas "filed suit in federal court" and "thus chose this forum." *Id.* at *3, n.1.

Project Veritas' dismissal, "as a precursor for a motion to dismiss this case . . . would disserve the interests of justice." *Id.* at *4. "[Project Veritas'] gambit to [dismiss] now to circumvent the federal forum that [it] chose and in which this case has long been litigated . . . epitomizes gamesmanship." *Id.*

As this Court emphasized in *O'Rear*, the question of whether this Court should exercise supplemental jurisdiction over the remaining state-law claims "[should] not be governed by *Royal Canin*. Instead, it [should] be governed by the familiar standards under federal law guiding the exercise or not of supplemental jurisdiction **at this stage.**" *Id.* at *

8

5 (emphasis added); citing *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 117-18 (2d. Cir. 2013) (in deciding whether to exercise supplemental jurisdiction, courts consider 'the values of judicial economy, convenience, fairness, and comity'); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ("[T]he district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction[.]") (citing 28 U.S.C. § 1367(c)(3); *Kurtz v. Lupica*, No. 20 Civ. 3401 (PAE), 2023 WL 3510646, at *1 (S.D.N.Y. Apr. 26, 2023) ("The Court's judgment here is that exercising supplemental jurisdiction over the surviving state-law claim will serve the interests of judicial economy, convenience, and fairness.").

**I. Judicial Economy Strongly Favors Retention**

This Court has overseen this case since May 2023, investing nearly two and a half years in managing pleadings, motions, a preliminary injunction hearing, and full fact discovery. All depositions are complete, and written discovery is near-completion. The case is poised for summary judgment or trial. Dismissing now would force a state court to duplicate this effort, starting anew with unfamiliar facts, parties, and procedural history.

As Project Veritas acknowledges in its Brief, this Court has recognized that the decision to retain supplemental jurisdiction where all federal claims have been voluntarily dismissed is discretionary. *Penske Media Corp. v. Shutterstock, Inc.*, No. 20-CV-04583, 2024 WL 1313356, at *1 (S.D.N.Y. Mar. 27, 2024) ("Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy,

9

convenience, fairness, and comity in deciding whether to exercise jurisdiction.") (internal quotation marks and citations omitted). "Nonetheless, even '[w]hen [Section] 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors." *Id*. citing *Catzin*, 899 F.3d at 86.

The Second Circuit has consistently held that completed discovery weighs heavily in favor of retention. In *Catzin*, the Second Circuit overturned the district court's declination to exercise supplemental jurisdiction where discovery was complete after two years of litigation. 899 F.3d at 86. "The District Court did not explain how comity between state and federal courts is advanced by saddling a state court colleague with a [ ] case of the type that is tried in federal court every day. Nor does the record lend itself to an understanding as to how convenience or fairness was served by setting backwards the course of a case the parties had vigorously litigated for nearly two years and causing them to expend who knows how much time, legal fees, and distraction starting over in state court." *Id.*

## II. Convenience to the Parties Supports Retention

The parties have conducted all discovery under this Court's Federal Rules and orders, including depositions and document production. [ECF No. 68]. Transferring to state court would burden the state court with duplicative proceedings, impose new procedures, delay resolution, and increase costs.

Moreover, this Court is already familiar with the parties, the facts, and the legal issues. A state court would need to become acquainted with a complex, two-and-a-half-

year litigation involving multiple parties and claims. This duplication would serve no one's interests.

### III. Fairness Demands Retention Given Project Veritas' Conduct

Fairness strongly militates against dismissal, particularly given Project Veritas' conduct. As the aggressor, Project Veritas chose federal court, filed federal claims, and vehemently opposed Counterclaimants' motion to compel arbitration. *See* ECF No. 53 at 12-19 (arguing strenuously that this Court should exercise jurisdiction over all claims and denying arbitrability). Project Veritas demanded a preliminary injunction, requiring extensive briefing—including a 43-page opposition brief and a 25-page reply—and a court hearing. [ECF Nos. 52, 53, 65].

Having invoked this Court's jurisdiction and expended its resources for Project Veritas' benefit, Project Veritas cannot now use its voluntary dismissal to forum-shop and force Counterclaimants to re-litigate the case in state court. This conduct epitomizes the "manipulative tactics" that courts disfavor. *See, Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case"). Counterclaimants initially argued for arbitration, only to be opposed by Project Veritas, which insisted on federal court resolution. Allowing Project Veritas to escape this forum after losing on preliminary relief would reward gamesmanship and prejudice Counterclaimants, who have litigated in good faith under this Court's orders.

The Supreme Court has cautioned that jurisdictional rules should not be manipulated to gain tactical advantage. *Id.* Here, Project Veritas seeks exactly that: after

11

two and a half years of federal litigation conducted on its terms, it now seeks dismissal to deprive Counterclaimants of this forum. Fairness demands that Project Veritas be held to its choice of forum.

As other district courts have observed about the *Royal Canin* decision, "because federal court 'is not where [the plaintiff] wanted the case to be resolved,' she 'amended her complaint to delete its every mention of the FDCA, leaving her state claims to stand on their own.'" *Martinez v. Sunnova Energy Corp.*, No. 2:24-CV-06346-MRA-MAR, 2025 WL 732350, at *6 (C.D. Cal. Mar. 7, 2025), appeal dismissed sub nom. *Martinez v. Sunnova Energy*, No. 25-2284, 2025 WL 1899099 (9th Cir. Apr. 17, 2025); citing *Royal Canin* at *29. The procedural posture in *Royal Canin* was markedly distinct from the present case, where Project Veritas has not amended, but has instead dismissed its claims in their entirety to avoid and, at a minimum, substantially delay resolution of the case after this Court's extensive efforts to manage the case through the close of discovery.

Following *Royal Canin*, this Court has dealt with similar tactics and refused to abandon its supplemental jurisdiction over state-law claims where plaintiff's "gambit [was designed] to circumvent the federal forum that [plaintiff] chose and in which this case has long been litigated." *O'Rear,* 2025 WL 835018 at * 4. Fairness demands the same result here.

## IV. Comity Does Not Counsel Dismissal

Comity concerns do not weigh against retention. The remaining state law claims involve straightforward issues—such as breach of contract and breach of fiduciary duty—that federal courts routinely adjudicate without difficulty. There are no novel or

12

complex state law questions requiring specialized state court expertise. Project Veritas nods towards "state-law claims raising unsettled questions of law" [ECF No. 217 at 11], but fails to identify any unsettled questions of law implicated by the counterclaims. As the *Penske* court noted, comity is not offended where state law claims "are not particularly 'novel' or 'unsettled'." 2024 WL 1313356 at *2.

## CONCLUSION

For the foregoing reasons, the Court should deny Counterclaim-Defendants' motion and retain supplemental jurisdiction over the remaining state law counterclaims. The *Gibbs* factors—judicial economy, convenience, fairness, and comity—all support retention, particularly given the advanced state of this litigation and Project Veritas' prior insistence on federal jurisdiction.

Respectfully submitted,

Dated: November 4, 2025.



2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

*/s/ Nicholas P. Whitney*
Nicholas P. Whitney
Florida Bar No. 119450
Seldon J. Childers
Florida Bar No. 61112
jchilders@smartbizlaw.com
nwhitney@smartbizlaw.com
notice@smartbizlaw.com
*Counsel for Counterclaimants*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically with the Clerk of the Court using CM/ECF on November 4, 2025, which served same electronically upon all counsel of record.

*/s/ Nicholas P. Whitney*
Attorney
